UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID R. HURWITZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) Civil Action No. |
| Plaintiff, | ) ) CLASS ACTION ) |
| vs. | ) ) |
| CAPRI HOLDINGS LIMITED, JOHN D. IDOL, THOMAS J. EDWARDS, JR., TAPESTRY, INC., JOANNE C. CREVOISERAT, and SCOTT A. ROE, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |
| | ) DEMAND FOR JURY TRIAL |

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

ROBBINS GELLER RUDMAN
& DOWD LLP
Christopher H. Lyons (#5493)
Tayler D. Bolton (#6640)
1521 Concord Pike, Suite 301
Wilmington, DE  19803
Telephone: (302) 467-2660

**DECEMBER 23, 2024**

Plaintiff David R. Hurwitz ("plaintiff"), on behalf of himself and all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings of Tapestry, Inc. ("Tapestry") and Capri Holdings Limited ("Capri"), Tapestry's and Capri's press releases, filings in *Federal Trade Commission v. Tapestry, Inc.*, No. 1:24-cv-03109-JLR (S.D.N.Y. filed Apr. 23, 2024) (hereinafter "*FTC v. Tapestry*"), analyst reports, media reports, and other publicly disclosed reports and information about Tapestry's failed attempted acquisition of Capri (the "Capri Acquisition").[1]  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a securities class action on behalf of all persons who purchased Capri stock or sold Capri puts between August 10, 2023 and October 24, 2024, both dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "1934 Act") against Capri, Tapestry, and certain Capri and Tapestry senior officers and directors.

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act, 15 U.S.C. §78aa.

---

[1]    All emphasis added throughout unless otherwise noted.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), and §27 of the 1934

Act.  Defendants transact business in this District and disseminated the statements alleged to be

materially false and misleading herein into this District.  Defendants further agreed that the state

and federal courts of Delaware, including this Court, are proper forums for adjudicating their

claims related to the Capri Acquisition.  In particular, defendants agreed that their contractual

disputes arising out of the Agreement and Plan of Merger, dated August 10, 2023 ("Merger

Agreement"), and Termination Agreement ("Merger Termination Agreement"), dated November

13, 2024 would be litigated exclusively in the state and federal courts of Delaware and that both

the Merger Agreement and Merger Termination Agreement are governed by Delaware law, stating

in pertinent part as follows:

> This [Merger] Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware . . . .
>
> . . . Each of the Parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Court of Chancery of the State of Delaware, or, if (and only if) such court finds it lacks jurisdiction, the Federal court of the United States of America sitting in Delaware, or, if (and only if) such courts find they lack jurisdiction, any state court sitting in Delaware, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement . . . .
>
> *       *       *
>
> This [Termination] Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware . . . .
>
> . . . Each of the Parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Court of Chancery of the State of Delaware, or, if (and only if) such court finds it lacks jurisdiction, the Federal court of the United States of America sitting in Delaware, or, if (and only if) such courts find they lack jurisdiction, any state court sitting in Delaware, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement . . . .

4.      Moreover, the brand subsidiaries at issue in this action are incorporated in

Delaware, including Michael Kors LLC, Michael Kors (USA) Holdings, Inc., Michael Kors (USA)

Inc., Coach (US) Partnership, LLC, Kate Spade Holdings LLC, and Kate Spade LLC.  The true business of these Delaware-incorporated entities, including the level of competition between them, is central to the claims in this action.  As a result of the foregoing, a substantial part of the events and omissions giving rise to the claim occurred, and/or a substantial part of the property from which this litigation arises is situated, in this District.

5.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

**Plaintiff**

6.     Plaintiff David R. Hurwitz, as set forth in the certification attached hereto and incorporated by reference herein, sold Capri puts and purchased Capri stock during the Class Period and suffered damages as a result.

**The Capri Defendants**

7.     Defendant Capri is a fashion firm.  Capri stock is listed on the New York Stock Exchange ("NYSE") under the ticker symbol "CPRI."  Capri owns fashion brands such as Michael Kors, Jimmy Choo, and Versace.

8.     Defendant John D. Idol ("Idol") served as Chairman, Chief Executive Officer ("CEO"), and director of Capri during the Class Period.

9.     Defendant Thomas J. Edwards, Jr. ("Edwards") served as Executive Vice President, Chief Financial Officer ("CFO"), and Chief Operating Officer ("COO") of Capri during the Class Period.

**The Tapestry Defendants**

10.     Defendant Tapestry is a fashion firm.  Tapestry stock is listed on the NYSE under the ticker symbol "TPR."  Tapestry owns fashion brands such as Coach, Kate Spade, and Stuart Weitzman.

11.     Defendant Joanne C. Crevoiserat ("Crevoiserat") served as President, CEO, and director of Tapestry during the Class Period.

12.     Defendant Scott A. Roe ("Roe") served as CFO and COO of Tapestry during the Class Period.

13.     The defendants referenced in ¶¶8-9 and 11-12 above are collectively referred to herein as the "Individual Defendants."  The Individual Defendants are liable for the false and misleading statements pled herein because, through their positions as senior executives and/or members of the Board of Directors (the "Board") of Tapestry or Capri, possessed the power and ultimate authority to control the contents of these companies' quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  They were provided with copies of the reports and press releases alleged herein to be misleading, prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions within Capri and Tapestry, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations being made were then materially false and misleading.

**BACKGROUND**

14.     Capri is a fashion firm that owns several fashion brands, such as Michael Kors, which is a fashion house that manufactures and sells handbags, among other things.  Tapestry is

similarly a fashion firm, and it owns fashion brands such as Coach and Kate Spade. Like Michael Kors, Coach and Kate Spade are fashion houses that manufacture and sell, among other things, handbags.

15.    In mid-March 2023, Tapestry CEO Crevoiserat approached Capri CEO Idol to discuss strategic opportunities. Crevoiserat and Idol held a meeting on April 4, 2023, during which Crevoiserat proposed to acquire Capri in an all-cash transaction priced at $60 per share. Other companies expressed interest in acquiring certain brands owned by Capri, but the Capri Board purportedly determined that pursuing a sale of Capri as a whole would be more advantageous. As such, on May 9, 2023, the Capri Board authorized Capri's management to provide Tapestry with due diligence information. On July 31, 2023, Capri's Board approved an acquisition price of $57 per share. Due diligence on the proposed Capri Acquisition continued until August 2023.

16.    On August 10, 2023, Capri and Tapestry jointly announced their entry into the Merger Agreement, pursuant to which Tapestry would purchase Capri for $57 per share in cash. On September 20, 2023, Capri filed a Definitive Proxy Statement for the Capri Acquisition (the "Proxy") with the SEC to solicit shareholder approval of the Merger Agreement. On October 25, 2023, Capri announced that its shareholders had voted to approve adoption of the Merger Agreement.

17.    The Capri Acquisition would combine three close competitors: Tapestry's Coach and Kate Spade brands and Capri's Michael Kors brand. Yet, Tapestry and Capri repeatedly stated in public filings and press releases that, because their brands purportedly "face competitive pressures from both lower- and higher-priced products," the acquisition would not stifle competition, and that they expected to obtain antitrust approval for the Capri Acquisition and for the deal to close in calendar year 2024.

18.     On November 3, 2023, the Federal Trade Commission ("FTC") issued a Second Request to Capri and Tapestry for information in connection with its antitrust review of the Capri Acquisition, allowing it to obtain a wide array of confidential materials not disclosed to the public.[2]

19.     Notwithstanding defendants' assurances to investors, on April 22, 2024, the FTC brought an action to enjoin the Capri Acquisition in the United States District Court for the Southern District of New York, and subsequently moved for a preliminary injunction on August 6, 2024.  The FTC alleged that, if allowed, the Capri Acquisition would eliminate direct head-to-head competition between Kate Spade, Coach, and Michael Kors.  The FTC's allegations hinged on its argument that there are three distinct submarkets within the broader market of handbags: (i) "mass market"; (ii) "true luxury"; and (iii) "accessible luxury."  The FTC alleged that, as Kate Spade, Coach, and Michael Kors all compete within the "accessible luxury handbag market," Tapestry's acquisition of Michael Kors would give it a dominant share of that market, thereby likely creating an anticompetitive effect.

20.     Defendants strongly disputed the FTC's factual allegations and represented that the Capri Acquisition would be "pro-consumer" and have no negative effects on competition because Capri and Tapestry operated in highly fragmented markets.  For example, in response to the FTC's lawsuit, Capri issued the following statement regarding the "market realities" underpinning the Capri Acquisition, stating in pertinent part as follows:

> "Capri Holdings strongly disagrees with the FTC's decision. ***The market realities, which the government's challenge ignores, overwhelmingly demonstrate that this transaction will not limit, reduce, or constrain competition. Tapestry and Capri operate in the fiercely competitive and highly fragmented***

---

[2]     In connection with the FTC's review of a pending merger or acquisition, if the FTC has reason to believe the deal will impede competition in a relevant market, it may request more information by way of "Request for Additional Information and Documentary Materials," commonly referred to as a "Second Request."

*global luxury industry.  Consumers have hundreds of handbag choices at every price point across all channels, and barriers to entry are low*."

21.     Ultimately, the court in *FTC v. Tapestry* found defendants' representations regarding the Capri Acquisition and its likely competitive effects "not . . . credible," citing a trove of internal company documents demonstrating that defendants had private views and economic understandings during the Class Period that were at odds with their public statements.  On October 24, 2024, the court granted the FTC's motion for preliminary injunction and blocked the Capri Acquisition.  In its order, the court cited to hundreds of pages of internal documents revealing that defendants secretly understood that their three brands (*i.e.*, Kate Spade, Coach, and Michael Kors) were close competitors within a well-defined "accessible luxury handbag market," and that the Capri Acquisition would hurt competition (indeed, cornering the accessible luxury handbag market was a key internal rationale for the deal), exposing Capri investors to an acute risk that the Capri Acquisition would be blocked by regulators.  Yet, as detailed below, the true nature of that risk was known only to defendants as they continuously misled investors regarding those adverse facts and the actual likelihood that the Capri Acquisition would be consummated as structured, if at all.

22.     On October 24, 2024, Capri stock closed at $41.60 per share.  After the close of trading that day, the court issued its ruling enjoining the Capri Acquisition.  On October 25, 2024, the price of Capri stock fell to $21.26 per share as of the close of trading – a nearly 50% decline – damaging plaintiff and the Class (defined herein).

**MATERIALLY FALSE AND MISLEADING
STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD**

23.     The Class Period begins on August 10, 2023.  On that date, Capri and Tapestry announced the Merger Agreement under which Tapestry would acquire Capri for $57 per share in an all-cash transaction valued at approximately $8.5 billion.  In a press release announcing the Capri Acquisition jointly issued by Tapestry and Capri, Capri's CEO, defendant Idol, stated that

"'[t]oday's announcement marks a major milestone for Capri. . . .  We are confident this combination will deliver immediate value to our shareholders.'"

24.    Defendant Roe, Tapestry's CFO and COO, stated in an investor conference call held that same day, entitled "Tapestry Inc to Acquire Capri Holdings Ltd," that "[t]he Board of Directors of both Tapestry and Capri have unanimously approved the transaction, and we expect the deal to close in calendar year 2024, subject to customary closing conditions, approval by Capri shareholders and receipt of the required regulatory approvals."

25.    During an August 17, 2023 Tapestry earnings call in which defendants Crevoiserat and Roe discussed "the planned acquisition of Capri," an analyst with TD Cowen asked the following question regarding regulatory approvals and the potential overlap between Capri and Tapestry handbag brands:

> [W]ould love [for] you to talk to us a little bit about the approval process or major hurdles or catalysts ahead.  And also, how you thought about the differences and the opportunity of the Michael Kors brand [owned by Capri] given that you have so much research – consumer research there.  We're looking at cross-product elasticity and diversion ratios, just to understand the relationships between the [two] brands and the big opportunity, financial and strategic?

26.    Defendant Crevoiserat responded by claiming the brands were "highly complementary" and "distinctive and have unique positioning in the market," stating in pertinent part as follows:

> I'll hit on the regulatory questions and the Michael Kors question briefly because I know we're running over time.  But just in short, **we're confident in our ability to complete this transaction.  This is a transaction.  It is highly complementary.  It expands our portfolio reach and diversification.  And . . . we fielded a lot of research coming into this transaction**.  We know that the portfolio at Capri includes – and including Michael Kors, they're strong brands and they're well positioned in attractive markets and market segments.
>
> We're excited about the opportunity that we see working together putting these brands on our platform.  **They're distinctive and have unique positioning in the market, which is why they're so attractive to us.  And that does include the Kors brand, putting that – all of the brands on our platform allows us to take**

*these iconic brands with heritage put them on our consumer engagement platform to drive more innovation, more connectivity and really more relevance for the consumer which will benefit all of our stakeholders around the world.* So we're excited about the opportunities ahead.

27.    On November 6, 2023, Capri and Tapestry disclosed that they each received a request for additional information from the FTC in connection with its antitrust review of the Capri Acquisition.  On this news, the price of Capri stock declined from $50.66 per share on November 6, 2023 to $48.82 per share on November 7, 2023 on abnormally high trading volume.

28.    On that day, Capri issued a statement reaffirming the purported timeline for closing the Capri Acquisition, stating in pertinent part as follows:

> On November 3, 2023, Capri and Tapestry each received a request for additional information and documentary materials (the "Second Request") from the Federal Trade Commission (the "FTC") in connection with the FTC's review of the Transaction.  The effect of the Second Request is to extend the waiting period imposed by the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act"), until 30 days after Capri and Tapestry have substantially complied with the Second Request, unless that period is extended voluntarily by Capri and Tapestry or terminated sooner by the FTC.  Both Capri and Tapestry expect to promptly respond to the Second Request and to continue to work cooperatively with the FTC in its review of the Transaction.  *Capri continues to expect that the Transaction will be completed in calendar year 2024*, subject to the expiration or termination of the waiting period under the HSR Act and the satisfaction or waiver of the other closing conditions specified in the Merger Agreement.

29.    Tapestry issued a similar statement, claiming the company "continues to expect that the Transaction will be completed in calendar year 2024."

30.    During a November 9, 2023 earnings call, defendant Roe discussed "the planned acquisition of Capri" and claimed that the parties still expected the Capri Acquisition to close in calendar year 2024 as they responded to FTC requests, stating in pertinent part as follows:

> Before closing, I wanted to touch more holistically on the planned acquisition of Capri.  We believe the acquisition will drive significant value creation with immediate accretion to adjusted earnings, enhanced cash flow and strong financial returns underpinned by a compelling industrial logic that's consistent with our commitment to being disciplined financial operators.  It's

important to highlight that we still expect Capri to generate double-digit EPS [earnings per share] accretion on an adjusted basis and compelling ROIC [return on invested capital]. Embedded in these expectations is the assumption that the stand-alone Capri business will generate free cash flow in the area of $500 million on a non-GAAP unsynergized basis.

Importantly, we're making progress towards transaction close. First, the shareholders of Capri Holdings Limited approved the transaction last month, satisfying one of the conditions to close. Second, ***we're working towards receiving all required regulatory approvals, including responding to the FTC's second request. We remain confident in our ability to complete the transaction with a close anticipated in calendar 2024, consistent with our prior outlook***. Third, we expect to fund the purchase through a combination of permanent financing, term loans, excess Tapestry cash and expected future cash flow. A portion of which will be used to pay certain of Capri's existing outstanding debt. Our financing strategy will support rapid debt paydown with prepayable debt in order to achieve our stated leverage target within 24 months post close, given the combined company's strong cash flow generation.

And finally, our integration planning efforts are moving forward as planned, and we continue to project run rate cost synergies of more than $200 million achieved within 3 years of the close. Overall, we remain excited by the opportunity to expand our house of powerful brands, increasing our position in growing and durable categories with enhanced cash flow to invest in brand building, while funding debt pay down. This combination is transformational, ***and we are confident in our ability to execute***, positioning Tapestry as a leader in innovation, talent development and shareholder return for years to come.

31.     During a February 8, 2024 earnings call, defendant Roe stated that "the planned acquisition of Capri" was moving towards regulatory approval with an expected close later in the year, stating in pertinent part as follows:

Before closing, I want to touch more holistically on the planned acquisition of Capri. We believe the acquisition will drive significant value creation with immediate accretion to adjusted earnings, enhanced cash flow and strong financial returns, underpinned by a compelling industrial logic that is consistent with our commitment to being disciplined financial operators.

To this end, it's important to highlight that we continue to expect Capri to generate double-digit EPS accretion on an adjusted basis and compelling ROIC. Embedded in these expectations is the assumption that the stand-alone Capri business will generate free cash flow in the area of $500 million on a non-GAAP unsynergized basis.

And as noted, we've made further progress towards transaction close. In November, we issued $6.1 billion in USD and euro bonds, achieving an all-in debt interest rate of 6.5%, inclusive of Tapestry's existing debt and consistent with our expectations. Our financing strategy supports rapid debt paydown in order to achieve our stated leverage target within 24 months post close, given the combined company's strong free cash flow generation. We're moving forward with integration planning efforts and continue to gain confidence in our ability to achieve run rate cost synergies of over $200 million within 3 years of closing.

And finally, **we're continuing to work towards receiving all required regulatory approvals**, and as publicly announced by the Chinese regulatory authority, the transaction received clearance in China. **In terms of timing, we remain confident in our ability to complete the transaction with a close expected in calendar 2024, consistent with our original expectations**.

32.     In mid-April 2024, FTC Bureau of Competition Director Henry Liu made comments about the agency's focus at the 2024 American Bar Association Antitrust spring meeting in Washington, D.C. Multiple news outlets reported that investors were concerned that Liu may have been referencing the Capri Acquisition as a potential enforcement target through his comments. On this news, the price of Capri stock declined from $44.03 per share on April 9, 2024 to $39.31 per share on April 12, 2024 on abnormally high trading volume.

33.     Defendants pushed back on those reports and again misrepresented the market dynamic between Capri and Tapestry. For example, on April 15, 2024, defendant Crevoiserat reiterated that she still expected the Capri Acquisition to close in calendar year 2024 in an interview with *Women's Wear Daily*. The article, entitled "Tapestry CEO Joanne Crevoiserat Signals Confidence in Capri Deal," quoted defendant Crevoiserat, who stated that "'[t]he FTC is still reviewing it, and we continue to work collaboratively with the FTC in that effort . . . . But we continue to be confident because we know that this is a transaction that is pro-consumer.'" Defendant Crevoiserat continued in pertinent part as follows:

"We expected that the regulatory process particularly would be a long one, just understanding the environment and the landscape that we're operating in . . . . So we do have a pretty wide window, and we haven't been specific and we haven't tried to be more specific given the nature of the environment and just how long

these reviews take. ***We had set a calendar 2024 expectation, and we're still confident that we can complete the deal***."

Crevoiserat also stated that Capri's recent drop in sales and revenue "just illustrates the transaction's potential," stating in pertinent part as follows:

> "It underscores the opportunity we have ahead of us . . . .  What we do know about all three of the Capri brands – Jimmy Choo, Versace, Michael Kors – they all have strong brand equity and arguably opportunities to improve relevance with consumers."

> . . . Tapestry's brand-building platform and discipline could "bring more relevant product across all three brands to the market for more consumers."

*    *    *

> "We think that there's a tremendous value to unlock and opportunity with all of these brands . . . ."

34.    The same day, Crevoiserat told *Bloomberg* that the issues with regulators would work themselves out over time and "that Tapestry doesn't plan to shed brands to complete the acquisition: 'We don't think that it's necessary.'"

35.    On April 17, 2024, *The New York Times* reported that the FTC was preparing to sue to block the Capri Acquisition, according to "two people with knowledge of the matter who were not authorized to discuss the deliberations."  On this news, the price of Capri stock declined from $38.93 per share on April 16, 2024 to $37.87 per share on April 17, 2024 on abnormally high trading volume.

36.    Defendants again disputed these news reports.  On April 18, 2024, *Forbes* reported that Tapestry claimed to "'strongly believe this is a deal that deserves to clear as it is pro-consumer and pro-competitive'" and that "'[w]e have full confidence in the merits of this transaction and in our legal arguments, should we need to make them.'"

37.    On April 22, 2024, in a heavily redacted filing with little information disclosed beyond generalized allegations, the FTC filed suit in the United States District Court for the

Southern District of New York to enjoin the Capri Acquisition.  The complaint alleged that, if allowed, the Capri Acquisition would eliminate direct head-to-head competition between Kate Spade, Coach, and Michael Kors, which it claimed all compete within the "accessible luxury handbag market."   The FTC complaint alleged that there are three distinct submarkets for handbags: (i) "accessible luxury" (a.k.a., "affordable luxury" or "aspirational luxury"), "crafted predominantly in Asia from high-quality materials and with fine craftsmanship at affordable prices" (*e.g.*, Tory Burch, Marc Jacobs, Longchamp); (ii) "mass market" (a.k.a., "fast fashion" or "opening price point"), "made in bulk in China from lower-quality materials and sold at lower prices" (*e.g.*, Zara, H&M, Steve Madden); and (iii) "true luxury" (a.k.a., "luxury," "pure luxury," "traditional luxury," "European luxury," etc.), "crafted predominantly in Europe that sell at significantly higher prices" (*e.g.*, Louis Vuitton, Dior, Gucci, Chanel, Prada, Fendi, Hermès).  The FTC complaint described "accessible luxury" handbags as those that "boast quality leather and craftsmanship (as distinguished from mass-market handbags) at an affordable price (as distinguished from true luxury handbags)."   The FTC alleged that Tapestry's acquisition of Michael Kors – which competes against Coach and Kate Spade – would give Tapestry a dominant share of the "'accessible luxury' handbag market."  On this news, the price of Capri stock declined from $37.96 per share on April 22, 2024 to $34.81 per share on April 25, 2024 on abnormally high trading volume.

38.    Also on April 22, 2024, Capri issued a statement, which it filed with the SEC on Form 8-K, claiming that the FTC had misrepresented the "'market realities'" undergirding the Capri Acquisition, stating in pertinent part as follows:

> "Capri Holdings strongly disagrees with the FTC's decision. ***The market realities, which the government's challenge ignores, overwhelmingly demonstrate that this transaction will not limit, reduce, or constrain competition. Tapestry and Capri operate in the fiercely competitive and highly fragmented***

*global luxury industry.  Consumers have hundreds of handbag choices at every price point across all channels, and barriers to entry are low.*  Capri intends to vigorously defend this case in court alongside Tapestry and complete the pending acquisition.  The U.S. FTC is the only regulator that did not approve this transaction, which received required approvals from all other jurisdictions.  We remain confident in this combination and the value it will bring to all stakeholders."

39.   That same day, Tapestry issued a similar statement "in response to the [FTC's]

attempt to block its proposed acquisition of Capri," stating in pertinent part as follows:

*"There is no question that this is a pro-competitive, pro-consumer deal and that the FTC fundamentally misunderstands both the marketplace and the way in which consumers shop.  Tapestry and Capri operate in an intensely competitive and highly fragmented industry alongside hundreds of rival brands, including both established players and new entrants.*

*We also compete for consumers who are cross-shopping a wide range of channels and brands along a vast pricing spectrum when considering what to purchase.  The reality is that consumers have a host of choices when shopping for luxury handbags and accessories, footwear, and apparel, and they are exercising them.*

*The bottom line is that Tapestry and Capri face competitive pressures from both lower- and higher-priced products.  In bringing this case, the FTC has chosen to ignore the reality of today's dynamic and expanding $200 billion global luxury industry.*

This transaction will unite six brands that offer products across a wide range of categories.  With Capri, Tapestry will gain access to a broader set of global luxury consumers and geographies and will drive sustainable, healthy growth for Capri's iconic brands, building desire and engagement with consumers globally.  Tapestry has a strong record of not only innovating for consumers but also providing industry-leading wages and benefits for our employees.  The combined company will continue to set the bar for both consumer and employee experiences.

*We have full confidence in the merits and pro-competitive nature of this transaction.  It will bring significant benefits to the combined company's customers, employees, partners, and shareholders in the U.S. and around the world.  We have strong legal arguments in defense of this transaction and look forward to presenting them in court and working expeditiously to close the transaction in calendar year 2024.*"

40.   Defendant Crevoiserat gave an interview to *The New York Times* that same day

lambasting the FTC's case, claiming: "'*It's quite clear to us that they don't understand how*

- 14 -

*consumers shop today and they don't understand the dynamics of a marketplace with no barriers to entry, constant influx of new competitors.*'"

41.    During a May 9, 2024 investor conference call, defendant Crevoiserat stated that the 2024 timeline to close the Capri Acquisition "*always contemplated the potential for litigation*" and that the deal was "pro-competitive" and "pro-consumer," stating in pertinent part as follows:

> I'd like to provide an update on our pending acquisition of Capri.  First and foremost, we remain excited by the opportunity to expand our house of powerful brands, positioning Tapestry as a leader in innovation.  The combined company will bring significant benefits to customers, employees, partners and shareholders around the world.
>
> By investing in and growing Capri's brands, we will bring more innovation to more consumers globally, positioning us to better compete within the growing over $200 billion global luxury market for handbags, accessories, footwear and apparel.  Further, through this combination, we will be a home and incubator for talent, driving our purpose-led and people-centered mission and continuing to elevate employee and consumer experiences.
>
> With regard to the transaction time line, following unconditional approval from the European Commission and regulatory approvals in China and Japan, the FTC filed a suit on April 22 to block the proposed acquisition.  *We remain confident in the merits and pro-competitive, pro-consumer nature of this transaction and look forward to presenting our strong legal arguments in court. Our time line always contemplated the potential for litigation, and we continue to expeditiously work to close the transaction in calendar year 2024*.  In the meantime, and as always, we remain focused on continuing to execute on our current business and strategic growth agenda.

42.    Defendants' statements referenced in ¶¶23-26, 28-31, 33-34, 36, and 38-41 above were materially false and misleading when made because they misrepresented and failed to disclose adverse facts about Capri's business, operations, market dynamics, and the prospects for approval of the Capri Acquisition, which were known to defendants or recklessly disregarded by them, as follows:

(a)      that the accessible luxury handbag market is a distinct and well-defined market within the overall handbag market and understood as such by the Individual Defendants, as well as by other Capri and Tapestry executives;

(b)      that Capri and Tapestry maintained analogous production facilities and supply chains for their accessible luxury handbags that were distinct from the production facilities and supply chains used to manufacture luxury or mass market handbags, confirming that the accessible luxury handbag market is distinct from the mass market and luxury handbag markets;

(c)      that Capri and Tapestry internally considered Coach and Michael Kors to be each other's closest and most direct competitors;

(d)      that, conversely, Capri and Tapestry did not internally consider their handbag brands to be in direct competition with luxury handbags or mass market handbags;

(e)      that a primary internal rationale for the Capri Acquisition was to consolidate prevalent brands within the accessible luxury handbag market so as to reduce competition, increase prices, improve profit margins, and reduce consumer choice within that market; and

(f)      that, as a result of (a)-(e) above, the risk of adverse regulatory actions and/or the Capri Acquisition being blocked was materially higher than represented by defendants.

43.    After a seven-day hearing, on October 24, 2024, Judge Jennifer L. Rochon of the United States District Court for the Southern District of New York granted the FTC's motion to preliminarily enjoin the Capri Acquisition.  The court determined that a "substantial body of compelling evidence" demonstrated that, in contrast to their public statements quoted above, defendants themselves believed that their brands were direct competitors in a well-defined "accessible luxury handbag market."  Finding that Capri's and Tapestry's "internal documents are telling," the court ruled that "Tapestry and Capri executives explicitly recognize Coach, Michael

Kors, and Kate Spade as close competitors." According to the court, defendants' statements to the investing public did not fit with the "commercial realities" to which defendants themselves were keenly attuned. Underscoring this point, the court observed that "[d]efendants [Tapestry and Capri] repeatedly used the term ['accessibly luxury'] in the months before and after the announcement of the merger – only for the term to disappear from their lexicon once the FTC filed suit in April 2024," despite being regularly used by both companies prior to the FTC filing suit.

44.     As a result of this news, the price of Capri stock dropped from $41.60 per share on October 24, 2024 to $21.26 per share on October 25, 2024, a nearly 50% decline on abnormally high trading volume.

45.     Both Capri and Tapestry were the makers of the misleading statements identified herein. Both companies agreed in the Merger Agreement that "neither the Company [Capri] nor Parent [Tapestry], nor any of their respective Subsidiaries, shall issue or cause the publication of any press release or other public announcement or disclosure with respect to the Merger, the other Transactions or this Agreement without the prior written consent of the other Party," subject to various exceptions not relevant here. The Individual Defendants were also the makers of the statements, as they had ultimate authority over the public statements made by Capri and Tapestry during the Class Period as the companies' most-senior executives.

46.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of Capri securities, plaintiff and other Class members have suffered significant losses and economic damages under the federal securities laws.

## ADDITIONAL SCIENTER ALLEGATIONS

47.     As alleged herein, defendants acted with scienter in that defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of Capri and Tapestry, or in their own name, during the Class

Period were materially false and misleading.  Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding Capri, and their control over and/or receipt and/or modification of Tapestry and/or Capri's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

48.     Defendants knew and/or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public.  The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of Capri and Tapestry, including the Individual Defendants.

49.     The Individual Defendants, because of their respective positions with Capri and Tapestry, controlled the contents of Capri's and Tapestry's respective public statements during the Class Period.  The Individual Defendants were each provided with or had access to the respective information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected.  Because of their positions and access to material, non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading.  Indeed, the specific undisclosed issues involved critical information for investors that the Individual Defendants held themselves out as the persons most knowledgeable about.  As a result, each of the Individual Defendants was responsible for the accuracy of Capri's and Tapestry's respective corporate statements during the Class Period and was, therefore,

responsible and liable for the related representations contained therein and knowingly, or at the very least recklessly, disseminated the material misrepresentations detailed herein.

50. In addition, internal documents, testimony, and other evidence revealed in the *FTC v. Tapestry* litigation confirm that defendants were aware of, or at the very least recklessly disregarded, the adverse facts detailed herein that rendered their Class Period statements materially misleading.

## LOSS CAUSATION

51. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Capri securities and operated as a fraud or deceit on Class Period purchasers of Capri securities by failing to disclose and misrepresenting the adverse facts detailed herein. When defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Capri securities declined significantly as the prior artificial inflation came out of the price of such securities.

52. As a result of their purchases of Capri securities during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws. Defendants' false and misleading statements had the intended effect and caused Capri securities to trade at artificially inflated levels throughout the Class Period, with Capri stock trading as high as $54 per share.

53. By concealing from investors the adverse facts detailed herein, defendants presented a misleading picture of Capri's business, financial results, risks, and future financial prospects. When the truth about the acquisition was revealed to the market, the price of Capri securities fell significantly. The price of Capri stock fell to a low of $21.26 per share on October

25, 2024, removing the prior artificial inflation therefrom and causing economic loss to investors who had purchased Capri securities during the Class Period.

54.     The decline in the price of Capri securities after the corrective disclosures came to light was a direct result of the nature and extent of defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price decline in Capri securities negates any inference that the losses suffered by plaintiff and the other Class members were caused by changed market conditions, macroeconomic or industry factors, or company-specific facts unrelated to defendants' fraudulent conduct.

55.     The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of Capri securities and the subsequent significant declines in the value of Capri securities when defendants' prior misrepresentations and other fraudulent conduct were revealed.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action as a class action on behalf of a class consisting of all persons who purchased Capri stock or sold Capri puts during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers, directors, and affiliates of defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

57.     ***Numerosity***.  The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Capri stock was actively traded on the NYSE and there was a robust market for other Capri securities.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record

owners and other members of the Class may be identified from records maintained by Capri or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

58.    ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

59.    ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

60.    ***Commonality***.  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether defendants' statements during the Class Period were materially false and misleading;

(b)    whether defendants acted with scienter in issuing materially false and misleading statements during the Class Period; and

(c)    the extent of injuries sustained by the members of the Class and the appropriate measure of damages.

61.    ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to

individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**APPLICABILITY OF THE PRESUMPTION OF RELIANCE:**
**FRAUD ON THE MARKET**

62.    At all relevant times, the market for Capri securities was an efficient market for the following reasons, among others:

(a)    Capri common stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient, national stock market;

(b)    as a regulated issuer, Capri filed periodic public reports with the SEC;

(c)    Capri regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)    Capri was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms, and were publicly available and entered the public marketplace; and

(e)    unexpected material news about Capri was rapidly reflected in and incorporated into the price of Capri securities during the Class Period.

63.    As a result of the foregoing, the market for Capri securities promptly digested current information regarding Capri from all publicly available sources and reflected such information in the price of Capri securities.  Under these circumstances, all purchasers of Capri securities during the Class Period suffered similar injury through their purchases of Capri securities at artificially inflated prices and a presumption of reliance applies.

**NO SAFE HARBOR**

64.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pled in this complaint.  Many of the specific statements pled herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pled herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and/or the forward-looking statement was authorized and/or approved by an executive officer of Capri and/or Tapestry who knew that those statements were false when made.

**COUNT I**

**For Violation of §10(b) of the 1934 Act**
**and Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

65.    Plaintiff incorporates ¶¶1-64 above.

66.    During the Class Period, defendants disseminated or approved the statements specified above, which they knew or deliberately disregarded were false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

67.    The defendants named herein violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes, and artifices to defraud;

(b)    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Capri securities during the Class Period.

68.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Capri securities.  Plaintiff and the Class would not have purchased Capri securities at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

69.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Capri securities during the Class Period.

### COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

70.    Plaintiff incorporates ¶¶1-69 above.

71.    The Individual Defendants respectively acted as controlling persons of Capri and Tapestry within the meaning of §20(a) of the 1934 Act.  By virtue of their respective positions as officers and/or directors of Capri or Tapestry, participation in and/or awareness of Capri's or Tapestry's operations, intimate knowledge of the respective false and misleading statements made during the Class Period, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Capri or Tapestry, including the content and dissemination of the false and misleading statements alleged herein.

72.     Defendants were provided with or had unlimited access to copies of the respective statements alleged to be misleading prior to and/or shortly after those statements were issued, and had the ability to prevent the issuance of those statements or cause those statements to be corrected.

73.     As set forth above, defendants had the ability to exercise control over, and did control, a person or persons who have each violated §10(b) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder, by their acts and omissions in connection with the false and materially misleading Class Period statements as alleged herein.

74.     By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action; designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  December 23, 2024          ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                                 Christopher H. Lyons (#5493)
                                                 Tayler D. Bolton (#6640)


*/s/ Christopher H. Lyons*
CHRISTOPHER H. LYONS

1521 Concord Pike, Suite 301
Wilmington, DE  19803
Telephone: (302) 467-2660
clyons@rgrdlaw.com
tbolton@rgrdlaw.com

Attorneys for Plaintiff