IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID R. HURWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>   vs.<br><br>CAPRI HOLDINGS LIMITED, JOHN D. IDOL, THOMAS J. EDWARDS, JR., TAPESTRY, INC., JOANNE C. CREVOISERAT, and SCOTT A. ROE,<br><br>                   Defendants. | C.A. No.  1:24-cv-01410-MN<br><br>Hon. Judge Maryellen Noreika<br><br><u>CLASS ACTION</u> |
| FNY PARTNERS FUND LP, on Behalf of Itself and All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>   vs.<br><br>CAPRI HOLDINGS LIMITED, JOHN D. IDOL, THOMAS J. EDWARDS, JR., TAPESTRY, INC., JOANNE C. CREVOISERAT, and SCOTT A. ROE,<br><br>                   Defendants. | C.A. No.  1:25-cv-00116-MN |

**OPENING BRIEF IN SUPPORT OF LEANDRO ROMAN ALVAREZ OSUNA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

**BIELLI & KLAUDER, LLC**
Ryan M. Ernst, Esq.
1204 N. King Street
Wilmington, DE 19801
Main: (302) 803-4600
Direct: (302) 321-5411
rernst@bk-legal.com

February 21, 2025

OF COUNSEL:

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

NATURE AND STAGE OF PROCEEDINGS .......................................................4

SUMMARY OF THE ARGUMENT ......................................................................4

STATEMENT OF FACTS .......................................................................................5

ARGUMENT ...........................................................................................................9

    I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ..........9

    II.     ALVAREZ OSUNA SHOULD BE APPOINTED LEAD
           PLAINTIFF .......................................................................................10

           A.     Alvarez Osuna Is Willing to Serve as a Class
                Representative .........................................................................12

           B.     Alvarez Osuna Is the Most Adequate Plaintiff under
                the PSLRA ..............................................................................12

    III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
           APPROVED ......................................................................................17

CONCLUSION .....................................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**                                                                   **Page(s)**

*Clair v. DeLuca*,
   232 F.R.D. 219 (W.D. Pa. 2005)......................................................................13

*Federal Trade Commission v. Tapestry, Inc.*,
   No. 1:24-cv-03109-JLR (S.D.N.Y. filed Apr. 23, 2024) ...............................2, 8

*Freeman v. Musk*,
   324 F.R.D. 73 (D. Del. 2018).........................................................................9

*Hurwitz v. Capri Holdings Limited et al*,
   No. 1:24-cv-01410, D.I. No. 1 .................................................1, 2, 5, 10, 11, 12

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005).......................................................................17

*Klein v. Altria Group, Inc. et al*,
   No. 3:20-cv-00075 (E.D. Va.)........................................................................18

*Lax v. First Merchants Acceptance Corp*,
   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997). ............................13

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014) ..................................................................16

*Ret. Sys. v. Horizon Lines, Inc.*,
   No. 08-969, 2009 WL 1811067 (D. Del. June 18, 2009)..................................14

*Roofers' Pension Fund v. Papa*,
   No. 2:16-cv-02805 (D.N.J.) ..........................................................................18

*Rubenstahl v. Philip Morris Int'l, Inc.*,
   No. 17-13504 (ES) (MAH), 2019 WL 585429 (D.N.J. Feb. 13,
   2019) ........................................................................................................13

*Soto v. Hensler*,
   235 F. Supp. 3d 607 (D. Del. 2017) ................................................................10

*Stires v. Eco Science Solutions, Inc.*,
   Nos. 17-3707, 2018 WL 5784817 (D.N.J. Feb. 13, 2018)................................10

*Vandevelde v. China Natural Gas, Inc.*,
   277 F.R.D. 126 (D. Del. 2011) .................................................................... 14

*Wigginton v. Advance Auto Parts, Inc.*,
   No. 18-212 (MN), 2018 WL 5729733 (D. Del. Nov. 2, 2018) ......................... 14

**Statutes**

15. U.S.C. §78j(b) ...................................................................................... 13

15 U.S.C. § 78t(a) ........................................................................................ 1

15 U.S.C. § 78u-4(a)(3) ................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) .................................................................. 10

15 U.S.C. § 78u-4(a)(3)(B) ..................................................................... 11, 12

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................... 4, 11, 13

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................. 13

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................ 2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc) ...................................................... 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ............................................................ 14

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ............................................................ 14

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................... 18

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................... 17

Private Securities Litigation Reform Act of 1995 ........... 1, 2, 4, 5, 11, 12, 13, 14, 17

**Rules**

Fed. R. Civ. P. 23 ................................................................................ 11, 14, 15

Fed. R. Civ. P. 42 .................................................................................. 1, 2, 4, 9

**Other Authorities**

17 C.F.R. § 240.10b-5 .................................................................................. 1

Leandro Roman Alvarez Osuna ("Alvarez Osuna") respectfully submits this Opening Brief in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Alvarez Osuna as Lead Plaintiff on behalf of a class (the "Class") consisting of all investors other than the above-captioned defendants ("Defendants") that purchased Capri Holdings Limited ("Capri" or the "Company") stock or sold Capri puts between August 10, 2023 and October 24, 2024, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff Alvarez Osuna's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Bielli & Klauder, LLC ("Bielli & Klauder") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that Defendants defrauded investors who purchased Capri stock or sold Capri puts during the Class Period in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), by misrepresenting Capri's business and operations. *See Hurwitz v. Capri Holdings Limited et al*, No. 1:24-cv-

1

01410 (the "*Hurwitz* Action"), D.I. No. 1 (the "*Hurwitz* Complaint"), *FNY Partners Fund, LP v. Capri Holdings Limited et al*, No. 1:25-cv-00116, D.I. No. 1 (the "*FNY Partners* Complaint" and, together with the *Hurwitz* Complaint, the "Complaints"). Capri investors, including Alvarez Osuna, incurred significant losses arising from a disclosure on October 24, 2024 concerning a ruling by the United States District Court for the Southern District of New York in the matter *Federal Trade Commission v. Tapestry, Inc.*, No. 1:24-cv-03109-JLR (S.D.N.Y. filed Apr. 23, 2024) ("*FTC v. Tapestry*") enjoining a proposed acquisition of the Company (the "Capri Acquisition"). *See Hurwitz* Complaint ¶¶ 14-22; *FNY Partners* Complaint ¶¶ 1-12.

Consolidation is appropriate under Fed. R. Civ. P. 42(a) where actions involve common questions of law or fact. Here, the Related Actions are both putative class actions alleging violations of the federal securities laws by the same Defendants occurring during the same Class Period arising from the same alleged fraudulent misconduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Under the PSLRA, the Court is to appoint as lead plaintiff the movant with the largest financial interest in the outcome of the action and that satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Alvarez Osuna believes he should benefit from a rebuttable presumption arising from his

2

having the largest financial interest. Alvarez Osuna incurred losses of approximately $134,420 in connection with his Class Period purchases of Capri securities. *See* Ernst Decl., Ex. A.

Beyond his significant financial interest, Alvarez Osuna also meets the Rule 23 requirements because his claims are typical of absent class members and because he will fairly and adequately represent the Class's interests.

To fulfill his lead plaintiff responsibilities and vigorously prosecute the Related Actions on behalf of the Class, Alvarez Osuna has selected Pomerantz as Lead Counsel. Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors. In 2018 alone, Pomerantz secured a recovery of $3 billion on behalf of Petrobras investors, the fifth largest class action settlement ever achieved in the United States. Based in New York, Pomerantz has offices in Chicago, Los Angeles, Paris, France, Tel Aviv, Israel, and London, U.K.

Based on his being the "most adequate plaintiff," his significant financial interest, his satisfaction of Rule 23 requirements, and his commitment to overseeing the Related Actions, Alvarez Osuna respectfully requests that the Court enter an order consolidating the Related Actions, appointing him as Lead Plaintiff, and approving Pomerantz as Lead Counsel and Bielli & Klauder as Liaison Counsel for the Class.

3

## NATURE AND STAGE OF PROCEEDINGS

The Complaints filed in the Related Actions assert claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act on behalf of all persons who purchased Capri stock or sold Capri puts during the Class Period. The Related Actions are in the preliminary stages of litigation and, pursuant to the PSLRA, require appointment of a Lead Plaintiff and Lead Counsel.

## SUMMARY OF THE ARGUMENT

1.      Consolidation is appropriate under Fed. R. Civ. P. 42(a) where actions involve common questions of law or fact. Here, the Related Actions are both putative class actions alleging violations of the federal securities laws by the same Defendants occurring during the same Class Period arising from the same alleged fraudulent misconduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

2.      The PSLRA requires district courts to appoint the "most adequate plaintiff" as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Alvarez Osuna respectfully submits that he is the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff because he: (1) timely filed a motion; (2) to the best of his knowledge, has the largest financial interest in the relief sought by the Class; and (3) will fairly and adequately represent the interests of the Class. *See id.* § 78u-4(a)(3)(B)(iii)(I).

4

3.      The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v).  Accordingly, Alvarez Osuna respectfully requests that the Court approve his selection of Pomerantz as Lead Counsel and Bielli & Klauder as Liaison Counsel for the Class.

## STATEMENT OF FACTS

Capri is a fashion firm that owns several fashion brands, such as Michael Kors, which is a fashion house that manufactures and sells handbags, among other things.  *See Hurwitz* Complaint ¶ 14.  Tapestry Inc. ("Tapestry") is similarly a fashion firm, and it owns fashion brands such as Coach and Kate Spade.  *See id.* Like Michael Kors, Coach and Kate Spade are fashion houses that manufacture and sell, among other things, handbags.  *Id.*

In mid-March 2023, Tapestry Chief Executive Officer ("CEO") Defendant Joanne C. Crevoiserat ("Crevoiserat") approached Capri CEO Defendant John D. Idol ("Idol") to discuss strategic opportunities.  *See id.* ¶ 15.  Crevoiserat and Idol held a meeting on April 4, 2023, during which Crevoiserat proposed to acquire Capri in an all-cash transaction priced at $60 per share.  *Id.*  Other companies expressed interest in acquiring certain brands owned by Capri, but the Capri Board of Directors (the "Board") purportedly determined that pursuing a sale of Capri as a whole would be more advantageous.  *See id.*  As such, on May 9, 2023, the Capri Board authorized

5

Capri's management to provide Tapestry with due diligence information. *Id.* On July 31, 2023, Capri's Board approved an acquisition price of $57 per share. *Id.* Due diligence on the proposed Capri Acquisition continued until August 2023. *Id.*

On August 10, 2023, Capri and Tapestry jointly announced their entry into the Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Tapestry would purchase Capri for $57 per share in cash. *See id.* ¶ 16. On September 20, 2023, Capri filed a Definitive Proxy Statement for the Capri Acquisition (the "Proxy") with the SEC to solicit shareholder approval of the Merger Agreement. *Id.* On October 25, 2023, Capri announced that its shareholders had voted to approve adoption of the Merger Agreement. *Id.*

The Capri Acquisition would combine three close competitors: Tapestry's Coach and Kate Spade brands and Capri's Michael Kors brand. *Id.* ¶ 17. Yet, Tapestry and Capri repeatedly stated in public filings and press releases that, because their brands purportedly "face competitive pressures from both lower- and higher-priced products," the acquisition would not stifle competition, and that they expected to obtain antitrust approval for the Capri Acquisition and for the deal to close in calendar year 2024. *Id.*

On November 3, 2023, the Federal Trade Commission ("FTC") issued a Second Request to Capri and Tapestry for information in connection with its antitrust

review of the Capri Acquisition, allowing it to obtain a wide array of confidential materials not disclosed to the public.  *Id.* ¶ 18.

Notwithstanding defendants' assurances to investors, on April 22, 2024, the FTC brought an action to enjoin the Capri Acquisition in the United States District Court for the Southern District of New York, and subsequently moved for a preliminary injunction on August 6, 2024.  *Id.* ¶ 19.  The FTC alleged that, if allowed, the Capri Acquisition would eliminate direct head-to-head competition between Kate Spade, Coach, and Michael Kors.  *Id.*  The FTC's allegations hinged on its argument that there are three distinct submarkets within the broader market of handbags: (i) "mass market"; (ii) "true luxury"; and (iii) "accessible luxury."  *Id.* The FTC alleged that, as Kate Spade, Coach, and Michael Kors all compete within the "accessible luxury handbag market," Tapestry's acquisition of Michael Kors would give it a dominant share of that market, thereby likely creating an anticompetitive effect.  *Id.*

Defendants strongly disputed the FTC's factual allegations and represented that the Capri Acquisition would be "pro-consumer" and have no negative effects on competition because Capri and Tapestry operated in highly fragmented markets. *Id.* ¶ 20.  For example, in response to the FTC's lawsuit, Capri issued the following statement regarding the "market realities" underpinning the Capri Acquisition, stating in pertinent part as follows:

7

"Capri Holdings strongly disagrees with the FTC's decision. *The market realities, which the government's challenge ignores, overwhelmingly demonstrate that this transaction will not limit, reduce, or constrain competition. Tapestry and Capri operate in the fiercely competitive and highly fragmented global luxury industry. Consumers have hundreds of handbag choices at every price point across all channels, and barriers to entry are low*."

*Id.*

Ultimately, the court in *FTC v. Tapestry* found defendants' representations regarding the Capri Acquisition and its likely competitive effects "not . . . credible," citing a trove of internal company documents demonstrating that defendants had private views and economic understandings during the Class Period that were at odds with their public statements. *Id.* ¶ 21. On October 24, 2024, the court granted the FTC's motion for preliminary injunction and blocked the Capri Acquisition. *Id.* In its order, the court cited to hundreds of pages of internal documents revealing that defendants secretly understood that their three brands (*i.e.*, Kate Spade, Coach, and Michael Kors) were close competitors within a well-defined "accessible luxury handbag market," and that the Capri Acquisition would hurt competition (indeed, cornering the accessible luxury handbag market was a key internal rationale for the deal), exposing Capri investors to an acute risk that the Capri Acquisition would be blocked by regulators. *Id.* Yet, the true nature of that risk was known only to defendants as they continuously misled investors regarding those adverse facts and

8

the actual likelihood that the Capri Acquisition would be consummated as structured, if at all.  *See id.*

On October 24, 2024, Capri stock closed at $41.60 per share.  *Id.* ¶ 22.  After the close of trading that day, the court issued its ruling enjoining the Capri Acquisition.  *Id.*  On October 25, 2024, the price of Capri stock fell to $21.26 per share as of the close of trading – a nearly 50% decline – damaging plaintiff and the Class.  *See id.*

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *Freeman v. Musk*, 324 F.R.D. 73, 78 (D. Del. 2018) ("The Court has broad authority to consolidate actions for trial involving common questions of law or fact if, in its discretion, it finds that

such consolidation would 'facilitate the administration of justice.'" (quoting *Ellerman Lines, Ltd. v. All. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964))).

The Related Actions at issue here clearly involve common questions of law **and** fact. Each action was brought against Capri, Tapestry, and certain Capri and Tapestry senior officers and directors, in connection with violations of the federal securities laws. *See Hurwitz* Complaint ¶¶ 1, 7-12; *FNY Partners* Complaint ¶¶ 13, 19-24. Accordingly, the Related Actions allege substantially the same wrongdoing—namely that the Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Capri's securities and subsequently damaged the Class members when Capri's stock price plunged as the truth emerged. *See Hurwitz* Complaint ¶¶ 14-22; *FNY Partners* Complaint ¶¶ 1-12. Consolidation of the Related Actions is therefore appropriate. *See Soto v. Hensler*, 235 F. Supp. 3d 607, 613 (D. Del. 2017) (ordering consolidation of related securities class actions, finding "no dispute that both cases involve common questions of law and fact"); *Stires v. Eco Science Solutions, Inc.*, Nos. 17-3707 (RMB/KMW), 2018 WL 5784817, at *2-3 (D.N.J. Feb. 13, 2018) (same).

## II.   ALVAREZ OSUNA SHOULD BE APPOINTED LEAD PLAINTIFF

Motions by proposed lead plaintiffs must be filed within 60 days of the publication of notice of the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). In this

10

case, the notice of the *Hurwitz* Action was published on December 23, 2024.  *See* Ernst Decl., Ex. B.  The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).  Alvarez Osuna's instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. § 78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter . . . the 'most adequate plaintiff')." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).  Alvarez Osuna is the "most adequate plaintiff" within the PSLRA's meaning and should therefore be appointed as Lead Plaintiff.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff[s]" "is the person or group of persons that" (i) either filed the complaint or made a lead plaintiff motion; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii) otherwise satisfies the requirements of Fed. R. Civ. P. 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  Alvarez Osuna readily satisfies all three of these criteria

11

and thus believes he is entitled to the rebuttable presumption that he is the most adequate plaintiff under the PSLRA.

For all these reasons, as detailed below, Alvarez Osuna respectfully urges the Court to appoint him to serve as Lead Plaintiff overseeing the Related Actions.

### A.   Alvarez Osuna Is Willing to Serve as a Class Representative

On December 23, 2024, counsel for plaintiff in the *Hurwitz* Action caused a notice to be published over *Globe Newswire* pursuant to PSLRA Section 21D(a)(3)(A)(i) ("Notice"), announcing that litigation had been filed against Defendants and advising investors in Capri securities that they had until February 21, 2025—*i.e.*, 60 days—to file a motion to be appointed as lead plaintiff. *See* Ernst Decl., Ex. B.  Alvarez Osuna filed the instant motion pursuant to the Notice and attached a signed Certification attesting that he is willing to serve as a Class representative and to provide testimony at deposition and trial if necessary. *See id.*, Ex. C.  Accordingly, Alvarez Osuna satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B.   Alvarez Osuna Is the Most Adequate Plaintiff under the PSLRA

When faced with competing lead plaintiff motions, under 15 U.S.C. § 78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most

12

adequate plaintiff').'" *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).  Alvarez Osuna is the "most

adequate plaintiff" within the PSLRA's meaning and should thus be appointed Lead

Plaintiff.

### 1.    Alvarez Osuna Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a rebuttable presumption that "the most

adequate plaintiff . . . is the person or group of persons that . . . in the determination

of the court, has the largest financial interest in the relief sought by the class."  15

U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Alvarez Osuna has the

largest financial interest of any Capri investor seeking to serve as Lead Plaintiff.  For

claims arising under Exchange Act § 10(b), courts frequently assess financial interest

based upon the four factors articulated in the seminal case *Lax v. First Merchants

Acceptance Corp.*: (1) the number of shares purchased during the class period; (2)

the number of net shares purchased during the class period (also referred to as

"retained shares"); (3) the total net funds expended during the class period; and (4)

the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill.

Aug. 6, 1997).  In accord with courts nationwide, these so-called *Lax* factors have

been expressly adopted by courts in the Third Circuit, and implicitly by courts in this

Judicial District.  *See, e.g.*, *Clair v. DeLuca*, 232 F.R.D. 219, 227 (W.D. Pa. 2005)

(expressly adopting *Lax* factors in assessing financial interest); *Rubenstahl v. Philip

Morris Int'l, Inc.*, No. 17-13504 (ES) (MAH), 2019 WL 585429, at *2 (D.N.J. Feb.

13

13, 2019) (same) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)); *Wigginton v. Advance Auto Parts, Inc.*, No. 18-212 (MN), 2018 WL 5729733, at *3 (D. Del. Nov. 2, 2018) (in determining financial interest, "the Court 'should consider, among other things [. . .] the approximate losses suffered by the plaintiffs'" (quoting *Cendant*, 264 F.3d at 262)).

During the Class Period, Alvarez Osuna: (1) purchased 8,000 shares of Capri stock; (2) expended $336,490 on his purchases of Capri stock; (3) retained 6,000 of his shares of Capri stock; and (4) incurred losses of approximately $134,420 in connection with his transactions in Capri securities. *See* Ernst Decl., Ex. A. Alvarez Osuna thus believes he has the largest financial interest among any potential lead plaintiff movants in the Related Actions, thereby entitling him to a rebuttable presumption that he is the "most adequate plaintiff" within the PSLRA's meaning (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)), given that he also satisfies the Fed. R. Civ. P. 23 requirements.

### 2.   Alvarez Osuna Otherwise Satisfies the Requirements of Rule 23

For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that he is the "most adequate plaintiff," he must also demonstrate that he "otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). A *prima facie* showing suffices for this determination. *Vandevelde v. China Natural Gas, Inc.*, 277 F.R.D. 126, 132 (D. Del. 2011); *City of Roseville Emps.' Ret. Sys. v.*

14

*Horizon Lines, Inc.*, No. 08-969, 2009 WL 1811067, at \*2 (D. Del. June 18, 2009) ("Our inquiry here 'need not be extensive,' and 'institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements.'" (quoting *Cendant*, 264 F.3d. at 263-65)).   Alvarez Osuna readily passes muster.

Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) adds that common questions must predominate over any questions affecting only individual class members and that a class action must be superior to other available methods for fairly and efficiently adjudicating the case.  *See* Fed. R. Civ. P. 23(b)(3).  Here, the Complaints plead Rule 23(a)(1) numerosity, Rule 23(a)(2) common questions, Rule 23(b)(3) predominance, and superiority in a manner common to all lead plaintiff candidates.  The sufficiency of these allegations is not upset by any facts uniquely concerning Alvarez Osuna.

Alvarez Osuna satisfies the threshold for Rule 23(a)(3) typicality.  "For typicality, the court will consider whether the factual claims or legal theories advanced by the movant[] 'are markedly different' from the claims of the class."

15

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 401 (D. Del. 2014) (quoting *Cendant*, 264 F.3d at 264). Alvarez Osuna's claims easily meet this standard. Like all Class members, Alvarez Osuna alleges that: (1) Defendants violated the Exchange Act by knowingly or recklessly making false or misleading statements of material facts and/or omitting to disclose material facts concerning Capri; (2) Alvarez Osuna and the Class members purchased Capri stock and/or sold Capri put options during the Class Period at prices inflated by Defendants' misrepresentations or omissions; and (3) Alvarez Osuna and the Class members were damaged upon the revelation of Defendants' fraud through a corrective disclosure that drove Capri's stock price downward. These shared claims, based on the same legal theories arising from the same underlying facts and course of conduct, demonstrate Alvarez Osuna's typicality under Rule 23(a)(3).

Alvarez Osuna also satisfies the Rule 23(a)(4) adequacy requirement. "For adequacy, the court will consider whether movants have 'the ability and incentive' to represent the class 'vigorously,' whether there are any conflicts between the movants and the class, and whether the movants have 'obtained adequate counsel,' including whether selected counsel is competent." *OFI Risk Arbitrages*, 63 F. Supp. 3d at 401 (quoting *Cendant*, 264 F.3d at 265). Alvarez Osuna has submitted a signed Certification declaring his commitment to protect the Class's interests. *See* Ernst Decl., Ex. C. Further demonstrating his adequacy, Alvarez Osuna has submitted a

16

Declaration attesting to, *inter alia*, his background, his investing experience, his experience working with counsel, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class.  *See* Ernst Decl., Ex. D.

Alvarez Osuna's significant losses from his Class Period trades in Capri securities demonstrate a sufficient interest in the litigation's outcome that aligns with the interests of Class members.  Alvarez Osuna has no conflicts of interest or antagonism with the Class he seeks to represent.  Finally, in Pomerantz and Bielli & Klauder, Alvarez Osuna has retained qualified and experienced counsel.

Indeed, Alvarez Osuna has already demonstrated his ability to pursue securities fraud claims through his choice of counsel, Pomerantz.  Pomerantz is one of the nation's leading plaintiff-side securities litigation firms, as discussed in greater detail in § III., *infra*.  Alvarez Osuna's and Pomerantz's willingness and ability to zealously litigate the claims in the Related Actions on behalf of the Class cannot reasonably be questioned.

## III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in a lead plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead

plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

The Court should not interfere with Lead Plaintiff's selection unless it is necessary

to do so in order "to protect the interests of the class." 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II)(aa).

Alvarez Osuna has selected Pomerantz to serve as Lead Counsel for the Class.

Pomerantz is a premier firm, highly experienced in the areas of securities litigation

and class action lawsuits, which has successfully prosecuted numerous such actions

on behalf of investors over its 80+ year history, as detailed in its firm resume. *See*

Ernst Decl., Ex. E. Pomerantz is based in New York, with offices in Chicago, Los

Angeles, Paris, France, Tel Aviv, Israel, and London, U.K. As lead counsel in *In re*

*Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently

secured a recovery of $3 billion on behalf of Petrobras investors, the largest

settlement ever in a class action involving a foreign issuer and the fifth largest class

action settlement ever achieved in the United States. Petrobras is part of a long line

of record-setting recoveries led by Pomerantz, including the $225 million settlement

in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825

(E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group,*

*Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *Id.* In the Third Circuit,

Pomerantz recently obtained a $97 million settlement in *Roofers' Pension Fund v.*

*Papa*, No. 2:16-cv-02805 (D.N.J.).

18

Finally, Bielli & Klauder is well qualified to represent the class as Liaison Counsel as the firm has substantial experience litigating complex securities class actions. *See* Ernst Decl., Ex. F.

As a result of their extensive experience in litigation involving issues similar to those raised in the Related Actions, Alvarez Osuna's chosen counsel have the skill, knowledge, expertise, and experience that will enable them to prosecute these actions effectively and expeditiously. Thus, the Court may be assured that by approving Alvarez Osuna's chosen counsel, with Pomerantz as Lead Counsel and Bielli & Klauder as Liaison Counsel, the Class members will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Alvarez Osuna respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Alvarez Osuna as Lead Plaintiff for the Class; and (3) approving his selection of Pomerantz as Lead Counsel and Bielli & Klauder as Liaison Counsel for the Class.

Dated:  February 21, 2025                    Respectfully submitted,

**BIELLI & KLAUDER, LLC**

*/s/Ryan M. Ernst*
Ryan M. Ernst, Esq. (No. 4788)
1204 N. King Street
Wilmington, DE 19801
Main: (302) 803-4600
Direct: (302) 321-5411

19

rernst@bk-legal.com

*Counsel for Lead Plaintiff Movant Leandro Roman Alvarez Osuna and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Leandro Roman Alvarez Osuna and Proposed Liaison Counsel for the Class*

20