## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE CAPRI HOLDINGS LTD. SECURITIES LITIGATION | Case No. 1:24-cv-01410-MN<br><br>CLASS ACTION |

## CORRECTED OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS TAPESTRY, INC., JOANNE C. CREVOISERAT, AND SCOTT A. ROE

**Of Counsel:**

**WILMER CUTLER PICKERING HALE & DORR L.L.P.**
Timothy Perla
Sonia Sujanani
60 State Street
Boston, MA 02109
Telephone: (617) 233-6766
timothy.perla@wilmerhale.com
sonia.sujanani@wilmerhale.com

Jessica Lewis
2600 El Camino Real
Palo Alto, CA 94306
Telephone: (628) 235-1160
jessica.lewis@wilmerhale.com

**MCCOLLOM D'EMILIO SMITH UEBLER LLC**

*/s/ Thomas A. Uebler*
Thomas A. Uebler (#5074)
Terisa A. Shoremount (#7113)
2751 Centerville Road, Suite 401
Wilmington, DE 19808
Telephone: (302) 468-5960
tuebler@mdsulaw.com
tshoremount@mdsulaw.com

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................................... 2

BACKGROUND .................................................................................................................... 3

      A.    The Proposed Transaction........................................................................... 3

      B.    Antitrust Proceedings.................................................................................. 5

      C.    Nature And Stage Of Proceedings .............................................................. 8

ARGUMENT .......................................................................................................................... 9

I.     The Court Should Dismiss The Section 10(b) Claim (Count I)......................................... 9

      A.    The Purchaser-Seller Rule Forecloses Plaintiff's Claim Against
            The Tapestry Defendants .......................................................................... 9

      B.    The Safe Harbor For Forward-Looking Statements Forecloses
            Liability ................................................................................................... 10

            1.    The Challenged Statements Are Forward-Looking     11

            2.    Most Of The Forward-Looking Statements Were Accompanied By
                Sufficient Cautionary Language     14

            3.    The Forward-Looking Statements Were All Made Without Actual
                Knowledge By The Speaker That They Were False Or Misleading     17

      C.    The Complaint Fails To Allege A False Statement ............................................. 18

            1.    All The Statements Are Inactionable Opinions     18

      D.    The Complaint Fails To Allege Scienter ............................................................ 23

II.    The Court Should Dismiss The Section 20 Claim (Count II)......................................... 30

CONCLUSION...................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Adolor Corp. Sec. Litig.*,
   616 F. Supp. 2d 551 (E.D. Pa. 2009) ......................................................................29

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999).....................................................................................24

*In re Aetna, Inc. Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010).................................................................9, 10, 15, 30

*In re Aratana Therapeutics Inc. Sec. Litig.*,
   315 F. Supp. 3d 737 (S.D.N.Y. 2018).....................................................................20

*In re AstraZeneca Sec. Litig.*,
   559 F. Supp. 2d 453 (S.D.N.Y. 2008).....................................................................29

*United States v. Baker Hughes Inc.*,
   908 F.2d 981 (D.C. Cir. 1990) ................................................................................13

*In re Bio-Tech. Gen. Corp. Sec. Litig.*,
   380 F. Supp. 2d 574 (D.N.J. 2005) .........................................................................25

*Burges v. BancorpSouth, Inc.*,
   2015 WL 4198795 (M.D. Tenn. July 10, 2015) .................................................11, 12

*Christian v. BT Grp. PLC*,
   2020 WL 1969941 (D.N.J. Apr. 24, 2020) ..............................................................27

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)....................................................................................20

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
   70 F.4th 668 (3d Cir. 2023) ....................................................................................19

*In re Egalet Corp. Sec. Litig.*,
   340 F. Supp. 3d 479 (E.D. Pa. 2018) ......................................................................14

*Elliott Assocs., L.P. v. Covance, Inc.*,
   2000 WL 1752848 (S.D.N.Y. Nov. 28, 2000)..........................................................19

*Emps. Ret. Sys. of R.I. v. Williams Cos., Inc.*,
   889 F.3d 1153 (10th Cir. 2018) ..............................................................................30

*In re Evolus, Inc. Sec. Litig.*,
2024 WL 4306786 (S.D.N.Y Sept. 26, 2024) ...........................................................................23

*Fed. Trade Comm'n v. Meta Platforms Inc.*,
654 F. Supp. 3d 892 (N.D. Cal. 2023) ...........................................................................21, 28, 29

*Fed. Trade Comm'n v. Microsoft Corp., et al.*,
681 F. Supp. 3d 1069, 1101 (N.D. Cal. 2023) ...........................................................................29

*Fed. Trade Comm'n v. RAG-Stiftung*,
436 F. Supp. 3d 278 (D.D.C. 2020) ...........................................................................21

*Fed. Trade Comm'n v. Tapestry, Inc.*,
No. 24-cv-03109 (S.D.N.Y. 2024) ...........................................................................5, 6, 22

*Fed. Trade Comm'n v. Tapestry, Inc.*,
755 F. Supp. 3d 386, 404 (S.D.N.Y. 2024) ...........................................................................8

*Fed. Trade Comm'n v. Thomas Jefferson Univ.*,
505 F. Supp. 3d 522 (E.D. Pa. 2020) ...........................................................................21

*In re Focus Fin. Partners*,
2025 WL 961488 (D. Del. Mar. 31, 2025) (Noreika, J.) ...........................................................................19, 20, 21

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016) ...........................................................................29

*In re GlaxoSmithkline PLC Sec. Litig.*,
2006 WL 2871968 (S.D.N.Y. Oct. 6, 2006) ...........................................................................13, 14

*In re Google Antitrust Litig.*,
721 F. Supp. 3d 230 (S.D.N.Y 2024) ...........................................................................26

*Grobler v. Neovasc Inc.*,
2016 WL 6897760 (D. Mass. Nov. 22, 2016) ...........................................................................13

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019) ...........................................................................22, 23

*Hampton v. root9B Techs., Inc.*,
897 F.3d 1291 (10th Cir. 2019) ...........................................................................26

*Hering v. Rite Aid Corp.*,
331 F. Supp. 3d 412 (M.D. Pa. 2018) ...........................................................................10, 12, 14, 15, 23

*In re Hertz Glob. Holdings, Inc.*,
905 F.3d 106 (3d Cir. 2018) ...........................................................................23, 24

iii

*Lewakowski v. Aquestive Therapeutics, Inc.*,
  2023 WL 2496504 (D.N.J. Mar. 14, 2023)........................................................................29, 30

*Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharm., Inc.*,
  838 F.3d 76 (1st Cir. 2016)................................................................................................20

*Malaney v. UAL Corp.*,
  434 Fed. App'x. 620 (9th Cir. 2011) .................................................................................28

*National Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ...............................................................................16, 24

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*,
  2013 WL 1188050 (D. Conn. Mar. 23, 2013) .....................................................................12

*Nolte v. Capital One Fin. Corp.*,
  390 F.3d 311 (4th Cir. 2004) .........................................................................................27, 28

*In re NutriSystem, Inc. Sec. Litig.*,
  653 F. Supp. 2d 563 (E.D. Pa. 2009) ..................................................................................12

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d Cir. 2016).....................................................................................11, 12, 17

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015).................................................................................................18, 19, 23

*Ret. Sys. v. Energy Transfer LP*,
  532 F. Supp. 3d 189 (E.D. Pa. 2021) ..................................................................................15

*Ret. Sys. v. Horizon Lines, Inc.*,
  713 F. Supp. 2d 378 (D. Del. 2010).................................................................................24, 25

*Roofer's Pension Fund v. Papa*,
  2018 WL 3601229 (D.N.J. July 27, 2018)...........................................................................29

*Roofer's Pension Fund v. Papa*,
  687 F. Supp. 3d 604 (D.N.J. 2023) .................................................................................27, 30

*United States v. Sabre Corp.*,
  452 F. Supp. 3d 97 (D. Del. 2020).................................................................................12, 13

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015)..............................................................................22, 29

*Sarafin v. BioMimetic Therapeutics, Inc.*,
  2013 WL 139521 (M.D. Tenn. Jan. 10, 2013)....................................................................28

iv

*In re Skechers U.S.A., Inc. Sec. Litig.*,
    2005 WL 8168047 (C.D. Cal. Mar. 21, 2005)........................................................17

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006)...............................................................................24

*Tanaskovic v. Realogy Holdings Corp.*,
    2021 WL 211049 (D.N.J. Jan. 21, 2021)...........................................................16

*U.S. Healthcare, Inc. v. Healthsource, Inc.*,
    986 F.2d 589 (1st Cir. 1993)..............................................................................26

*Union Asset Mgmt. Holding AG v. Sandisk Corp.*,
    2016 WL 406283 (N.D. Cal. Jan. 22, 2016).......................................................11

*Va. Vermiculite Ltd. v. W.R. Grace & Co. Conn.*,
    98 F. Supp. 2d 729 (W.D. Va. 2000) ..................................................................28

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011)............................................................11, 12

*United States v. Waste Mgmt., Inc.*,
    743 F.2d 976 (2d Cir. 1984)..................................................................................6

*Water Island Event-Driven Fund, LLC v. Tribune Media Co.*,
    39 F.4th 402 (7th Cir. 2022) ...............................................................................12

*Winer Fam. Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007)................................................................................24

**Federal Statutes**

Application of Safe Harbor, 15 U.S.C.A. § 78u-5.................................10, 11, 14, 15, 17

Clayton Antitrust Act, 15 U.S.C. § 18 .............................................................................12

Private Securities Litigation Act, 15 U.S.C. § 78u-4............................................ *passim*

Securities Exchange Act of 1934, 15 U.S.C. § 78j....................................................2, 9

Defendants Tapestry, Inc. ("Tapestry"), Joanne C. Crevoiserat, and Scott A. Roe (collectively, the "Tapestry Defendants") respectfully submit this Opening Brief in Support of their Motion to Dismiss, together with the Declaration of Timothy Perla which attaches the exhibits cited herein (cited as "Ex."). The Tapestry Defendants also incorporate by reference the Motion to Dismiss ("Capri MTD") and briefing filed by Capri Holdings Limited ("Capri"), John D. Idol, and Thomas J. Edwards, Jr.

## INTRODUCTION

Defendant Tapestry, a company that owns three fashion brands and sells women's handbags, accessories, footwear, ready-to-wear, home décor, and other women's and men's products, entered into an agreement to purchase the stock of a competitor, Defendant Capri. While Tapestry believed the overall market in which both companies operated was sufficiently large, competitors so numerous, and barriers to entry so low that the government would not object to the merger, it nevertheless amply disclosed that the transaction was subject to antitrust risk, which the market understood. As it turned out, unlike China, Japan, and the European Union, which all approved the merger, the Federal Trade Commission ("FTC") took a different position, based on a recently changed standard and argued there was a narrow submarket for "accessible luxury" handbags within which the merger might lessen competition. A New York federal court preliminarily agreed and issued a preliminary injunction.

In this case, Plaintiff, a purchaser of *Capri* stock (not Tapestry stock), claims that Tapestry's statements to its own (Tapestry) stockholders about the expected timeline for, and benefits of, the merger to its own (Tapestry) stockholders somehow defrauded Capri investors. This not only defies well-established standing rules but also reduces Plaintiff's claim to impermissible fraud by hindsight, which is not actionable. Optimism about the future—and

1

failure to predict regulatory and court rulings—does not constitute securities fraud.

In particular, the Consolidated Complaint for Violations of the Federal Securities Laws (Dkt. No. 32) (the "Complaint") fails to state a claim for four independent reasons:

## SUMMARY OF ARGUMENT

1. Plaintiff lacks standing.  The mismatch between the securities it bought (Capri) and the company it accuses of fraud (Tapestry) contravenes the "purchaser/seller" rule limiting Securities Exchange Act of 1934 ("Exchange Act") standing to buyers of the security at issue.  That rule flows from Supreme Court jurisprudence and has been embraced by both courts of appeal to consider it in this context.

2. The Tapestry Defendants' statements are protected by the Private Securities Litigation Reform Act's ("PSLRA") safe harbor for forward-looking statements.  Predictions about the merger's timing, consumer benefits, and the FTC's litigation prospects were unverifiable when made.  Further, most were identified as forward-looking and accompanied by meaningful cautionary language.  In any event, no speaker knew any statement was false.

3. Plaintiff fails to allege a false or misleading statement.  Cases are legion where an adverse regulatory or litigation outcome is insufficient to show contemporaneous falsity.  Tapestry was under no duty to be clairvoyant.  Many of the challenged statements are non-actionable opinions.  Others are indisputably true.  And all are opinions which Plaintiff fails to allege the Tapestry Defendants did not sincerely believe.

4. The Complaint fails to allege facts supporting any inference—and certainly not a strong inference—that any Tapestry Defendant acted with scienter.  Allegations based on status or involvement in the statements are insufficient.  Moreover, the documents Plaintiff cites

do not show fraudulent intent.  Use or discontinuation of the vague term "accessible luxury," monitoring competitor pricing, or early-stage discussions about reducing discounting while improving quality do not suggest knowledge that the merger would be challenged or blocked.  Plaintiff also alleges no motive—indeed, it would make no sense for Tapestry to inflate Capri's stock price.[1]

5. Because Plaintiff fails to state a claim under Section 10(b), Plaintiff's Section 20 claim also must be dismissed.

## BACKGROUND

### A.    The Proposed Transaction

Tapestry owns three fashion brands: Coach, Kate Spade, and Stuart Weitzman.  ¶ 17.[2] Coach carries women's handbags, other women's accessories, and men's products.  Ex. 1 (Aug. 17, 2023 Tapestry 10-K) at 3, 8.  Kate Spade offers women's handbags, ready-to-wear jewelry, footwear, gifts, and home décor.  *Id.* at 5.  Stuart Weitzman primarily sells women's footwear. *Id.* at 6, 8.  Defendants Joanne C. Crevoiserat ("Ms. Crevoiserat") and Scott A. Roe ("Mr. Roe") are Tapestry's CEO and CFO, respectively.  ¶¶ 22–23.

Capri owns three brands: Michael Kors, Jimmy Choo, and Versace.  ¶ 17.  Michael Kors offers women's handbags, leather goods, footwear, and apparel.  Ex. 2 (May 31, 2023 Capri 10-K) at 12.  Versace offers accessories, haute-couture, ready-to-wear, footwear, and home décor. *Id.*  Jimmy Choo's core product line centers on women's luxury shoes, but also offers handbags, leather goods, jewelry, scarves, belts, and men's luxury shoes.  *Id.*

---

[1] The Complaint also fails to plead loss causation. Tapestry fully disclosed and the market understood the risk that the transaction could be successfully challenged, so the stock price drop after the New York federal court's decision was simply a materialization of a known risk, not "corrective." *See* Capri MTD at 29–30.

[2] All paragraph references refer to the paragraphs in the Complaint.

On August 10, 2023, Capri and Tapestry (the "Companies") announced a transaction whereby Tapestry would acquire Capri for $57 per share (the "Transaction").[3]  ¶ 102.  Tapestry's SEC filings and earnings/conference calls contained forward-looking statement notices, referred to cautionary language from an annual report or contained similar language (and, sometimes, additional cautionary language).  *See* Appendix A.  For example, Tapestry issued a Form 8-K attaching a joint press release and a copy of the merger agreement.  ¶ 104; Ex. 3 (Aug. 10, 2023 Tapestry 8-K); Ex. 4 (Aug. 10, 2023 Tapestry 8-K, Exhibit 2.1).  The Form 8-K stated that the Transaction was subject to "the expiration or termination of the waiting period under the Hart-Scott-Rodino [Act] and receipt of other regulatory approvals."  Ex. 3, at 2.  Finally, the Form 8-K warned investors of risks concerning "the ability of the parties to consummate the proposed transaction on a timely basis or at all" and "the satisfaction of the conditions precedent to consummation of the proposed transaction, including the ability to secure regulatory approvals on the terms expected, at all or in a timely manner."  *Id.* at 4.

One week later, on August 17, 2023, Tapestry filed its Annual Report on Form 10-K. Ex. 1.  The report described the Transaction and addressed risks, including the risk that the Transaction might not close due to regulatory issues:

> ***We may not complete our acquisition of Capri within the time frame we anticipate or at all.***
>
> The completion of our acquisition of Capri is subject to a number of conditions, including . . . receipt of Capri shareholder approval, receipt of certain global anti-trust clearances, including expiration or termination of the waiting period under the Hart-Scott-Rodino [Act] and receipt of certain other regulatory approvals.
>
> The failure to satisfy the required conditions could delay the completion of the acquisition for a significant period of time or prevent it from occurring at all.

---

[3] During the month prior to the merger announcement, Capri stock was trading at approximately $35–37 per share.  Ex. 5 (Capri Stock Price from Jul. 9 to Aug. 9, 2023).

*Ex.* 1 at 22 (emphasis in original).  The report also warned that "***We may be subject to litigation challenging the Capri acquisition, and an unfavorable judgment or ruling in any such lawsuits could prevent or delay the consummation of our acquisition of Capri and/or result in substantial costs.***"  *Id.* at 23 (emphasis in original).

###    B.    Antitrust Proceedings

Tapestry disclosed that the Transaction was subject to antitrust clearance from regulatory authorities worldwide and cautioned that such approvals might not be obtained.  The analyst reports cited in the Complaint also indicate that the FTC had recently adopted a more aggressive enforcement posture—an evolving risk that the market recognized—even as analysts continued to acknowledge the strategic merits of the Transaction.  *See, e.g.*, Ex. 6 (Apr. 22, 2024 Bloomberg Article) at 2 (FTC Chair and DOJ Antitrust Chief recently have "brought the highest number of merger challenges since the US began requiring antitrust reviews before deals close in 1976. Their success in litigation has been more mixed, however, with the FTC losing two high-profile challenges in its first year."); Ex. 7 (Feb. 11, 2024 TD Cowen Analyst Report) at 1 (reporting confidence in merits of Transaction but stating "investors continue to be in a wait-and-see mode in terms of FTC approval" and "acknowledge[ing] the [Companies'] combined market share is substantial if you chose to define the outlet market or $300–500 price band only").  Capri's stock price also reflected investors' recognition of the risk that the Transaction might not close.  Ex. 8 (Capri Stock Price from Aug. 10, 2023 to Oct. 24, 2024).

Antitrust regulators in Europe, China, Japan, Korea, and elsewhere reviewed and approved the Transaction.  *See* ¶ 145; Ex. 9 (Answer, *Fed. Trade Comm'n v. Tapestry, Inc.*, No. 24-cv-03109 (S.D.N.Y. 2024) (the "FTC Litigation"), Dkt. No. 91) at 4 (describing antitrust reviews).  The European Commission, for example, conducted a market investigation of competitors and customers over many months and concluded that the handbag industry is

"constantly evolving and characterized by low barriers to entry and frequent entry of new players." *Id.* at 4. The European Commission also stated that "the relevance of Michael Kors is declining," that even "relatively small" competitors can constrain prices of larger companies, and that "independent brands and new entrants would be able to compete effectively with the [Companies' brands] post-merger."[4]  *Id.*

The FTC, however, ultimately took a different view. On November 3, 2023, each company received a "second request" for information from the FTC, which the Tapestry Defendants promptly disclosed to investors. ¶¶ 118–19. Citing unsourced statistics, the Complaint asserts that, 70–80% of the time, a second request precedes an FTC enforcement action, an FTC settlement, or a transaction restructuring. ¶ 118. In response to the request, Tapestry told investors it would reply promptly and work cooperatively with the FTC. Ex. 10 (Nov. 6, 2023 Tapestry 8-K) at 2. Tapestry provided updates to investors with respect to its compliance with the second request. Ex. 11 (Nov. 9, 2023 Tapestry Earnings Call) at 7, 15.

On April 22, 2024, the FTC sued to block the Transaction.[5] ¶ 126. It contended that, although the Companies each marketed an array of products (home décor, shoes, accessories, etc.), and there were numerous other handbag manufacturers, the Transaction would likely lessen competition in a submarket for "accessible luxury" handbags. *See e.g.*, Ex. 12 (Operative Complaint, FTC Litigation, Dkt. 97-1) ¶ 2. The Companies issued press releases disagreeing with the FTC's position (¶¶ 149–50), which they reiterated in subsequent filings (¶¶ 151–52, 156–57, 163, 166, 170). Tapestry stated that it had "confidence in the merits" of the Transaction

---

[4] Low barriers to entry dictate that even firms with large market shares do not possess market power. *See United States v. Waste Mgmt., Inc.*, 743 F.2d 976, 983 (2d Cir. 1984).
[5] Plaintiff speculates that unspecified communications between the Companies and the FTC "certainly" would have occurred prior to the FTC Litigation but pleads no such facts. ¶ 127.

and "look[ed] forward to presenting its strong legal arguments in court."  ¶¶ 151, 156; *see also* ¶¶ 157, 163, 166, 170 (all similar).[6]

The FTC Litigation moved through discovery.  ¶ 83.  Plaintiff cites documents from the FTC Litigation docket that show that the Companies tracked each other's data and that Tapestry intended to revitalize Michael Kors after the Transaction closed.  ¶¶ 41–53, 65–78, 80–82. Regarding the former, Plaintiff cites an August 2022 presentation, ¶¶ 65–68, that compares not only Coach and Michael Kors, but also Calvin Klein, Chanel, Dooney & Bourke, Fossil, Gucci, Guess, Louis Vuitton, Nine West, Prada, and Tory Burch.  Ex. 13 (Aug. 29, 2022 Tapestry Presentation) at 7, 9, 12.  The same presentation explicitly recognizes that Coach and Michael Kors consumers shopped for products in different markets.  *Id.* at 12 (Michael Kors consumers considering Tory Burch and Nine West and Coach consumers considering brands "higher on the luxury spectrum" when making their latest purchase).

Many of the additional pricing presentations that Plaintiff cites similarly identify additional brands that competed with those owned by Tapestry and Capri.  *See, e.g.*, ¶¶ 59 (citing February 2019 Tapestry presentation comparing brands to "Tory Burch, Longchamp, MCM[,] and Furla"), 59 (citing August 2023 Capri presentation comparing brands to "Tory Burch, Marc Jacobs, and Longchamp"), 70 (citing February 2023 Tapestry presentation comparing brands to "Tory Burch, Furla, Longchamp and Marc Jacobs").  Moreover, other presentations Plaintiff lifts from the FTC Litigation show that Capri, and later Tapestry, intended to reinvigorate the Michael Kors brand and better connect with consumers.  *See, e.g.*, ¶ 90 (citing presentation

---

[6] External experts expressed surprise at the FTC's position.  For example, the Chair of the Fashion Retail, and Consumer Practice of a nationally renowned firm stated, "[t]he FTC's decision to sue is surprising because there's no shortage of competition for fashion, apparel and accessories."  Ex. 14 (Apr. 22, 2024 Reuters Article) at 2.

stating Capri's "mission" is "to re-establish Michael Kors as [a] leader . . . .") (emphasis omitted); Ex. 15 (Feb. 17, 2022 Tapestry Presentation) at 5 (discussing increasing customers' willingness to pay by increasing the products' "valuing attributes").

On October 24, 2024, the court found that the FTC was entitled to a preliminary injunction.  ¶ 124; *Fed. Trade Comm'n v. Tapestry, Inc.*, 755 F. Supp. 3d 386, 404 (S.D.N.Y. 2024).  On November 13, 2024, the Companies terminated the Transaction.  ¶¶ 9–10, 12.

### C.      Nature And Stage Of Proceedings

Plaintiff filed this lawsuit seeking to convert the failure to predict the regulatory response to the Transaction—and a subsequent district court decision entered after a seven-day hearing involving complex antitrust issues—into securities fraud.  The Complaint attacks almost every instance in which the Transaction was mentioned between the date it was announced (August 10, 2023) and the date of the injunction in the FTC Litigation (October 24, 2024).[7]  This approach yields challenges to the following statements by the Tapestry Defendants (the "Challenged Statements"): (1) statements that Tapestry expected the Transaction to close in 2024 and/or was confident in the Companies' ability to complete the Transaction, ¶¶ 103–05, 112, 115, 119–23, 128, 131–33, 136, 155; (2) statements about the nature of the luxury goods market (*e.g.*, that the market was a "$200 billion luxury market" and "fragmented") and that the Transaction would be pro-consumer, ¶¶ 103, 109, 115, 128, 142–43; and (3) statements made after the FTC Litigation was filed expressing disagreement with the FTC's position, ¶¶ 149–52, 156–57, 160, 163, 166, 170.

---

[7] The Complaint does not attack the August 17, 2023 Tapestry Form 10-K or the August 15, 2024 Tapestry Form 10-K.

## ARGUMENT

### I.    The Court Should Dismiss The Section 10(b) Claim (Count I)

To state a claim under Section 10(b) of the Exchange Act, the plaintiff must plead (1) a material misrepresentation (or omission); (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010).  In addition, the PSLRA requires the complaint to specify with particularity (1) each alleged misleading statement and why it is misleading and (2) facts giving rise to a strong inference that the defendant acted with the required state of mind.  15 U.S.C. § 78u-4(b)(1), (2).

#### A.    The Purchaser-Seller Rule Forecloses Plaintiff's Claim Against The Tapestry Defendants

Plaintiff—a Capri shareholder—challenges statements by Tapestry to its own shareholders concerning Tapestry's expectations regarding the timing and benefits of the Transaction.[8]  But the purchaser-seller rule confers standing only on plaintiffs who bought or sold the security about which an alleged misstatement was made.  This bright-line rule was cemented by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, which held that "a person who is neither a purchaser nor a seller of securities may not bring an action under [Section] 10(b)."  421 U.S. 723, 723 (1975) ("*Blue Chip Stamps*") (emphasizing concerns over speculative litigation).  In *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, the Second Circuit applied *Blue Chip Stamps* to dismiss claims brought by investors in an acquiring company who had purchased stock in International Flavors & Fragrances Inc. ("IFF") but sued over misstatements allegedly made by Frutarom Industries Ltd., a company acquired by IFF.  54

---

[8] To the extent Plaintiff challenges statements made by Capri, those statements are inactionable for the reasons explained below.  *See infra* §§ B, C, D (addressing ¶¶ 104, 119, 149, 163).

F.4th 82, 86, 88 (2d Cir. 2022) ("*Menora*") (reaffirming that standing under Rule 10b-5 is limited to purchasers or sellers of the specific securities about which alleged misstatements were made). Similarly, the Ninth Circuit recently endorsed this "bright-line" rule in *In re: CCIV / Lucid Motors Sec. Litig.*, dismissing claims brought by Special Purpose Acquisition Company ("SPAC") investors against a car manufacturer challenging statements made before it was acquired by the SPAC. 110 F.4th 1181, 1185–86 (9th Cir. 2024) ("*Lucid Motors*"). This outcome makes sound sense. Were the law otherwise, any issuer that said something that arguably affected the value of another company's stock could be liable to investors in that other company. Such an expansive regime would clearly implicate the concern in *Blue Chip Stamps*.

Magistrate Judge Hatcher in *Levy v. Luo* declined to follow *Menora* and *Lucid Motors*. 2025 WL 437022, at *4 (D. Del. Feb. 7, 2025). However, *Levy v. Luo* lacked meaningful engagement with the Second and Ninth Circuits' reasoning and failed to provide a clear rationale for its departure from their interpretation of *Blue Chip Stamps*. This Court is not bound by Magistrate Judge Hatcher's ruling, and the Tapestry Defendants respectfully submit that this Court should follow the Second and Ninth Circuits and dismiss the claims against them.[9]

**B.    The Safe Harbor For Forward-Looking Statements Forecloses Liability**

"Under the PSLRA, alleged misrepresentations are not actionable if they fall within the safe harbor for forward-looking statements." *In re Aetna Sec. Litig.*, 617 F.3d at 278 (citing 15 U.S.C. § 78u-5(c)). Statements identified as forward-looking and accompanied by adequate cautionary language fall within the safe harbor, 15 U.S.C. § 78u-5(c)(1)(A)(i), as do other forward-looking statements unless they were made by an individual "with actual knowledge . . .

---

[9] In *Hering v. Rite Aid Corp.*, Rite Aid investors sued both Rite Aid and Walgreens, challenging statements made by both companies. 331 F. Supp. 3d 412 (M.D. Pa. 2018). However, *Rite Aid* pre-dates both *Menora* and *Lucid Motors* and Walgreens did not raise, and the court did not consider, whether plaintiffs had standing to sue Walgreens under *Blue Chip Stamps*.

that [they were] false or misleading" or made by a business entity with the approval of an executive officer of that entity "with actual knowledge . . . that [they were] false or misleading." 15 U.S.C. § 78u-5(c)(1)(B)(i), (ii).  Moreover, where a forward-looking statement is accompanied by sufficient cautions, the statement is not actionable regardless of knowledge of falsity.  *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 502–03 (3d Cir. 2016) (safe harbor prongs disjunctive).[10]  Forward-looking statements include "a statement of the plans and objectives of management for future operations," "a statement of future economic performance," and "any statement of the assumptions underlying or relating to any [such] statement." 15 U.S.C. § 78u-5(i)(1).  Statements are forward-looking if their "accuracy can only be verified after they are made."  *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016).

### 1.    The Challenged Statements Are Forward-Looking

Most of the Challenged Statements prior to the filing of the FTC Litigation on April 22, 2024, are expressions of expectation and/or confidence that the Transaction would close, *e.g.*, ¶¶ 112, 115, 146, and, in some instances, that the Transaction would close in 2024, *e.g.*, ¶¶ 103 (2024 "timeline to closing" is "realistic"), 104 (expressing expectation that Transaction would close in 2024), 105, 119, 120–23, 128, 131–33, 142 (same).[11]  Courts routinely find statements exactly like these to be forward-looking.  *Union Asset Mgmt. Holding AG v. Sandisk Corp.*, 2016 WL 406283, at *2 (N.D. Cal. Jan. 22, 2016) (statement that "[w]e expect the . . . acquisition to close in our third fiscal quarter"); *Burges v. BancorpSouth, Inc.*, 2015 WL 4198795, at *3 (M.D. Tenn. July 10, 2015) (statements that defendant "expected the mergers to close in the second

---

[10] The Complaint's boilerplate assertions to the contrary do not change the calculus.  ¶ 205.
[11] Plaintiff alleges that several statements made by Capri are attributable to Tapestry by virtue of language in the Transaction agreement.  ¶¶ 100, 104, 119, 149, 163.  Those statements are inactionable for the reasons set forth here and in Capri's Motion to Dismiss.

quarter of 2014"); *see also Water Island Event-Driven Fund, LLC v. Tribune Media Co.*, 39 F.4th 402, 405 (7th Cir. 2022) (statement that "predictions that the merger was likely to proceed"); *Rite Aid,* 331 F. Supp. 3d at 426 (statement about expected timing).  Moreover, many of these Challenged Statements incorporate the "'linguistic cues' denoting forward-looking statements: 'the company *anticipates*' [*e.g.*, 104, 123] and 'the company *expects*' [*e.g.*, ¶¶ 105, 119, 120, 121, 122, 128, 131, 132, 133, 136]." *NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*, 2013 WL 1188050, at \*17 (D. Conn. Mar. 23, 2013); *see also Cooper Tire*, 834 F.3d at 501 (the term "'expected' . . . identifies the statement as forward-looking").

Several Challenged Statements describe the Transaction as "pro-consumer" or "pro-competition."  *E.g.,* ¶¶ 103 (Transaction "brings tremendous value to consumers"), 104 (Transaction "will deliver immediate value to our shareholders"), 105 (similar), 109 (Companies "play in a resilient $200 billion luxury market"), 112 (Transaction will "drive more innovation, more connectivity and really more relevance for the consumer"), 115 (Companies' brands "provide optionality and diversification"), 143 (divesting brands unnecessary), 128 (Transaction is "pro-consumer"), 142 (same), 146 (Transaction "pro-consumer and pro-competitive").  These too are forward-looking statements because they refer to the impact on consumers and competition ***in the future*** if the Transaction closes.  Stated differently, their accuracy can be verified only after the fact.  *In re Vivendi Universal*, 765 F. Supp. 2d at 569; *In re NutriSystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 579 (E.D. Pa. 2009) (finding statement regarding business model forward-looking because it "could not be verified as strong without examining its future performance").  Indeed, the relevant antitrust provision, Section 7 of the Clayton Act, is inherently predictive because it bars transactions whose effect "***may*** be substantially to lessen competition."  15 U.S.C. § 18 (emphasis added); ¶ 126 (FTC found Transaction "***may***

substantially lessen competition") (emphasis added); *United States v. Sabre Corp.*, 452 F. Supp. 3d 97, 146 (D. Del. 2020), *vacated on other grounds*, 2020 WL 4915824 (3d Cir. July 20, 2020) (merger analysis is "forward-looking analysis"); *United States v. Baker Hughes Inc.*, 908 F.2d 981, 988, 991 (D.C. Cir. 1990) (explaining that merger analysis "focus[es] on the future" and requires the court to "[p]redict[] future competitive conditions").

The Challenged Statements postdating the FTC Litigation consist of Defendants' comments on the merits of the FTC's position, including assertions that the Tapestry Defendants intended to challenge the FTC's arguments in court. ¶¶ 149 (Capri "strongly disagrees with the FTC's decision" and "intends to vigorously defend this case"), 150 (the FTC "misunderstands . . . the marketplace"), 151–52 (similar), 156 (Tapestry is "confident in the merits" of the Transaction and "looks forward to presenting its strong legal arguments in court"), 157, 160, 163, 166, 170 (all similar).[12] In context, although they use some present language, these are all forward-looking predictions about the outcome of the litigation. *Grobler v. Neovasc Inc.*, 2016 WL 6897760 at *3–7 (D. Mass. Nov. 22, 2016) (finding statements that legal claims were "without merit" or "baseless" were forward-looking "because they were predictions about the future outcome of the pending litigation, and could only be invalidated by reference to the ultimate outcome of the case"); *Dang v. Amarin Corp. plc,* 750 F. Supp. 3d 431, 467 (D.N.J. 2024) (finding statements regarding "whether [defendant] will succeed in the litigation" forward-looking)*; In re GlaxoSmithkline PLC Sec. Litig.*, 2006 WL 2871968, at *9–10 (S.D.N.Y. Oct. 6, 2006) (finding defendant's statement that "the courts eventually will recognize the letter of the

---

[12] Following the FTC's complaint, the Companies also continued to discuss their confidence in their ability to close the transaction, *e.g.*, ¶¶ 149–50, 155–57, 160, 163, 166, 170, and the pro-consumer nature of the transaction, *e.g.*, ¶¶ 149–52, 156–57, 160, 163, 166, 170. For the same reasons described above, these are inactionable forward-looking statements.

13

law" regarding its patent was "clearly protected" as forward-looking).

### 2. Most Of The Forward-Looking Statements Were Accompanied By Sufficient Cautionary Language

Most of the Challenged Statements were identified as forward-looking and included meaningful cautionary language. 15 U.S.C. § 78u-5(c)(1)(A). Appendix A contains relevant portions of the underlying documents containing Challenged Statements (or referred to by the documents containing Challenged Statements) that flagged the existence of forward-looking statements and provided meaningful cautionary language.

As Appendix A shows, Tapestry's SEC filings and investor/earnings calls (1) included prefatory language that forward-looking statements were being made and (2) incorporated the risk factors appearing in Tapestry's annual reports for fiscal years 2023 and/or 2024 that could cause the actual results to differ from the Tapestry Defendants' expectations, including an express warning that the Transaction needed but might not receive antitrust clearance. Appendix A; *see, e.g.*, Ex. 1 at 22–23 (risks included "receipt of certain global anti-trust clearances," "receipt of certain other regulatory approvals," which could "prevent [the Transaction] from occurring," and "[l]awsuits related to [the Transaction] . . . could prevent" its completion); Ex. 16 (Aug. 15, 2024 Tapestry 10-K) at 1, 19 (risks included "satisfaction of the conditions precedent to consummation of the [Transaction], including the ability to secure regulatory approval," "outcome of the antitrust lawsuit by the Federal Trade Commission," and "[t]here can be no assurance as to the outcome of litigation with the FTC or that we will receive regulatory approval from the FTC," which could result in "the abandonment of the [Transaction]"). This cautionary language is sufficient to invoke the safe harbor. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 505 (E.D. Pa. 2018), *aff'd sub nom. Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020) (finding regulatory risk disclosure in Form 10-K sufficient); *Rite Aid,*

14

331 F. Supp. 3d at 424 (same).  Further, while not required because incorporation of an Annual Report is sufficient,[13] the SEC filings and earnings calls typically also independently reiterated the risk that the Transaction might not receive regulatory clearance.  *See* Appendix A.

Two of the Challenged Statements contained in an SEC filing or earnings/conference call were made before the August 17, 2023 Annual Report but nonetheless contained sufficient cautionary language.  ¶¶ 104 (citing August 10, 2023 Tapestry 8-K containing statement that Transaction would close in 2024), 105 (citing August 10, 2023 Tapestry conference call containing similar pro-consumer statement).  The August 10, 2023 Tapestry 8-K referred readers to Tapestry's investor presentation and both referred readers to its other SEC filings containing risk factors.  *See* Ex. 3 at 4; Ex. 17 (August 10, 2023 Tapestry 8-K, Exhibit 99.1) at 4; Ex. 18 (Aug. 10, 2023 Tapestry Conference Call) at 10 (citing Ex. 19 (Aug. 10, 2023 Tapestry 8-K, Exhibit 99.2).  Both the investor presentation and the existing SEC filings contained substantially the same warnings as the later annual reports.  *Compare* Ex. 1 at 22–23; Ex. 16 at 1, 19, *with* Ex. 3 at 4; Ex. 17 at 4; Ex. 18 at 2; Ex. 19 at 2.

Finally, additional protected Challenged Statements were made by Ms. Crevoiserat during interviews (some of which were published in articles).[14]  ¶¶ 103 (citing August 10, 2023 CNBC interview statement that she expected the Transaction would close and was "pro-

---

[13] "Cautionary statements disclosed in SEC filings may be incorporated by reference; they 'do not have to be in the same document as the forward-looking statements.'"  *In re Aetna Sec. Litig.*, 617 F.3d at 282 (citation omitted).

[14] "The standards for oral forward-looking statements are similar."  *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 206 (E.D. Pa. 2021).  An issuer is not liable if (1) the issuer informs the audience that the statement is forward-looking and that actual results may differ materially from the predictions; (2) the issuer orally directs the audience to other "readily available" written documents that contain the additional information about important factors relating to the forward-looking statement; and (3) the identified documents set forth satisfactory cautionary statements.  15 U.S.C.A. § 78u-5(c)(2)(B).

consumer"); 109 (citing August 11, 2023 Yahoo! Finance interview containing similar pro-consumer statement); 142 (citing April 15, 2024 Women's Wear Daily article containing similar pro-consumer statement); 143 (citing April 15, 2024 Bloomberg article containing similar pro-consumer statement); 151 (citing April 22, 2024 Reuters article in which Ms. Crevoiserat discussed merits of the FTC's position); 152 (citing April 25, 2024 CNBC television broadcast to same effect). Most of Ms. Crevoiserat's statements—which were forward-looking for the above reasons—were accompanied by warnings that the Transaction might not close due to antitrust concerns. *See* Ex. 20 (Aug. 10, 2023 CNBC Interview Transcript) at 2 (cautioning Transaction's "closing conditions" would require "regulatory [approval]"); Ex. 21 (Apr. 15, 2024 Women's Wear Daily Article) at 1, 4 (cautioning FTC was still "looking at the buyout," FTC's "second request for more information . . . made Wall Street antsy," and "investors are fretting over just what Washington has under the microscope"); Ex. 22 (Apr. 15, 2024 Bloomberg Article) at 2 (cautioning FTC could kill the Transaction and "market participants see the odds" that "the deal will be completed" as "closer to 40%"); Ex. 14 at 2 (cautioning "investors are skeptical of the deal winning approval"); Ex. 23 (Apr. 25, 2024 Squawk on the Street Transcript) at 1 (cautioning Ms. Crevoiserat was "speaking to lawyers about" regulatory approval and previewing FTC's legal arguments). The cautionary language in these interviews and articles, which is tailored specifically to the risk of the Transaction not closing, is sufficient to trigger the safe harbor. *Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *17 (D.N.J. Jan. 21, 2021) (sufficient cautionary language where defendant disclosed risks that "could cause the actual results to differ from [defendant's] expectations"); *National Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 536 (D.N.J. 2010) (cautionary language need only mention "important factors that could cause actual results to differ" (citation omitted)).

16

### 3.    The Forward-Looking Statements Were All Made Without Actual Knowledge By The Speaker That They Were False Or Misleading

The forward-looking statements are independently shielded under the PSLRA safe harbor because Plaintiff fails to allege that Tapestry or Ms. Crevoiserat had actual knowledge that they were false or misleading when made (as discussed below).  15 U.S.C. §§ 78u-5(c)(1)(B)(i), (ii); *Cooper Tire*, 834 F.3d at 490.  They must be dismissed for the same reasons.  *See infra* §§ C.1., D; *Avaya*, 564 F.3d at 259 ("This scienter conclusion provides a ground for dismissing . . . claims relating to the forward-looking statements, one that would apply even assuming defendants' cautionary language was inadequate.").

Finally, four of the forward-looking Challenged Statements were contained in third-party publications that Plaintiff alleges were attributable to Tapestry.  ¶¶ 115 (citing August 23, 2023 Guggenheim analyst report containing statement that Transaction was pro-consumer); 136 (citing March 6, 2024 TAG analyst report containing expectation that Transaction would close); 146 (citing April 18, 2024 Forbes article containing statement that Transaction was pro-consumer); 160 (citing May 23, 2024 Morgan Stanley analyst report containing statement concerning merits of the FTC's position).  These statements, too, are protected by the safe harbor because the underlying statements by Tapestry executives that the third parties quoted or paraphrased were themselves forward-looking, and Plaintiff fails to plead that they were made with actual knowledge that they were false or misleading.  15 U.S.C. § 78u-5(c)(1)(B)(ii).  A protected forward-looking statement cannot lose safe harbor status merely because an analyst repeats it.  *In re Skechers U.S.A., Inc. Sec. Litig.*, 2005 WL 8168047, at *7 (C.D. Cal. Mar. 21, 2005), *aff'd*, 273 F. App'x 626 (9th Cir. 2008) ("Plaintiff may not evade the safe harbor merely by recharacterizing [d]efendants' otherwise protected statements as unprotected statements made by analysts.").

17

### C.    The Complaint Fails To Allege A False Statement

The Complaint also fails to plead the Tapestry Defendants made or are otherwise liable for a false or misleading statement.  Plaintiff challenges three categories of statements.  First, Plaintiff challenges the Tapestry Defendants' statements that they expected the Transaction to close in 2024.  ¶¶ 103 (comment that "we think" the timeline for a 2024 closing was "realistic"), 104 (deal "anticipated to close" in 2024); 105, 120–23, 131–33, 136, 155 (all similar).   In several instances, the Tapestry Defendants stated that they were "confident in our ability to complete this transaction."  ¶ 112; *see also* ¶¶ 115, 122–23, 128, 132–33, 136 (same). Second, Plaintiff challenges the Tapestry Defendants' views about the nature of the luxury goods market or the Transaction.  ¶¶ 103 (challenging statement that Transaction "brings tremendous value to consumers as well as to our brand"), 109 ("[Tapestry and Capri] play in a resilient $200 billion luxury market"), 115 ("The [C]ompanies operate in an attractive, growing, global, highly fragmented market."), 128 (similar); 142 ("pro-consumer"); 143 (statement that CEO does not think divesting brands is necessary). Third, Plaintiff challenges statements made after the filing of the FTC Litigation about the deal and expressing belief in a successful litigation outcome. ¶¶ 150 (expressing the deal is pro-consumer, pro-competitive, and the FTC misunderstood market realities), 151 ("We see the FTC as fundamentally misunderstanding the marketplace and the way consumers shop today[.]"), 156 ("confiden[ce] in the merits and pro-competitive, pro-consumer nature of this transaction"), 157 (nearly identical), 166 ("The Company is confident in the merits and pro-competitive, pro-consumer nature of this transaction and looks forward to presenting its strong legal arguments in court, working expeditiously to close the transaction in calendar year 2024."); 170 (similar).  Each of these statements is an inactionable opinion.

### 1.    All The Statements Are Inactionable Opinions

As the Supreme Court has explained, "[a]n opinion is 'a belief[,] a view,' or a 'sentiment

18

which the mind forms of persons or things,'" whereas a fact is a "'thing done or existing' or '[a]n actual happening.'" *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (citations omitted).  The Third Circuit has held an opinion statement is misleading only "if it: (i) was not sincerely believed when made; (ii) contains an expressly embedded, untrue factual assertion; or (iii) reasonably implies untrue facts and omits appropriate qualifying language."  *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.,* 70 F.4th 668, 686 (3d Cir. 2023) (adopting *Omnicare* standard for Section 10(b) claims).  Under this test, all the Challenged Statements were inactionable opinions.

**a)  Statements Regarding The Merger Timeline And Procompetitive Impacts Are Inactionable Opinions**

The Tapestry Defendants' statements regarding the merger timeline and procompetitive effects are opinions.  ¶¶ 103 ("[W]e ***think*** that's a realistic timeline to closing . . . . We're ***confident*** that this deal brings tremendous value to consumers[.]" (emphasis added)); 104 ("***anticipated*** to close" (emphasis added)); 104 ("anticipated"), 105 ("we ***expect***" (emphasis added)); 112, 115, 119–23, 128, 131–33, 136, 142, 146, 155 (all similar).  Each statement speaks of the Tapestry Defendants' thoughts, beliefs, and expectations.  *See Omnicare*, 575 U.S. at 184; *Elliott Assocs., L.P. v. Covance, Inc.*, 2000 WL 1752848, at *2, 9 (S.D.N.Y. Nov. 28, 2000) ("remain[ing] on track to close" statements were "merely opinions" about the future).  The statements are therefore not actionable unless *Omnicare* is satisfied.

As to the first prong, a "sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless [of] whether an investor can ultimately prove the belief wrong." *Omnicare,* 575 U.S. at 186.  Plaintiff fails to plead facts permitting an inference that the Tapestry Defendants did not genuinely believe their statements about the merger timeline and pro-consumer effects.  *In re Focus Fin. Partners,* 2025 WL 961488, at *4–5 (D. Del. Mar. 31, 2025)

19

(Noreika, J.) (conclusory allegations of insincere belief insufficient to plead actionable opinion regarding statements about merger process and outcome). "The Complaint does not, for example, point to any statements that undermine the conviction of any of the [Defendants]" that the merger would go forward and benefit consumers. *Id.* at \*5. Indeed, the Complaint offers nothing bearing directly on any Defendant's state of mind. The internal documents cited concerning pricing and competition hardly show the Tapestry Defendants actually believed the FTC would challenge the Transaction and that it would ultimately be enjoined. *See supra* at 18–19. At best, viewed in the light most favorable to Plaintiff, they provide some evidence suggesting it was possible that the FTC might decide to argue for a narrow market definition, and might succeed in a court challenge. But the Tapestry Defendants never said success was a sure thing, and they cautioned that it was not. In any event, the mere existence of facts contrary to a stated opinion is not sufficient to undermine genuine belief. *See, e.g.*, *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170–71 (3d Cir. 2014). Indeed, the Tapestry Defendants' very pursuit of the merger and vigorous defense of the litigation show they genuinely believed it would go through. *Id.* at 170 ("[T]he initiation of Phase 3 cost millions of dollars and required FDA approval, rendering it improbable that defendants would have continued if they did not believe their interpretation of the interim results or if they thought the drug a complete failure."); *Local No. 8 IBEW Ret. Plan & Tr. v. Vertex Pharm., Inc.*, 838 F.3d 76, 81 (1st Cir. 2016) (investment in clinical trial suggests that company "must have thought that positive results were possible"). In short, optimism is not actionable under securities laws. *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757–58 (S.D.N.Y. 2018).

As to the second prong, the statements contain no embedded factual assertions and Plaintiff does not allege otherwise. *See In re Focus Fin. Partners*, 2025 WL 961488 at \*6

(statement about likelihood of a transaction—rather than "an actual happening"—was opinion).

As to the third prong, Plaintiff does not identify any "untrue facts" implied by the statements. The Complaint points to Tapestry's November 2023 receipt of a second request from the FTC and argues it was an ominous sign for the Transaction. ¶ 118. But statements postdating the second request did not imply there was no second request or that it was unimportant; to the contrary, Tapestry disclosed the second request and cautioned the Transaction might not receive regulatory approval. This fact also shows the Challenged Statements did not omit appropriate qualifying language. Moreover, Plaintiff's premise that a second request dooms a transaction is just wrong. ¶ 118 (acknowledging that, following second request, potential outcomes include no FTC action, restructuring the transaction, or a settlement); *see e.g.*, *Fed. Trade Comm'n v. Meta Platforms Inc.*, 654 F. Supp. 3d 892, 941 (N.D. Cal. 2023) (FTC lost motion for preliminary injunction involving social media network); *Fed. Trade Comm'n v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522 (E.D. Pa. 2020) (hospital merger); *Fed. Trade Comm'n v. RAG-Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020) (chemical used for manufacturing semiconductors).

**b)      Statements Regarding The Nature Of The Market Are Inactionable Opinions**

Plaintiff also challenges the Tapestry Defendants' statements regarding the nature of the luxury market. *See* ¶¶ 109 ("resilient $200 billion luxury market"), 115 ("fragmented market"); 128 ("$200 billion . . . fragmented [market] . . . [with] low barriers to entry . . . ."), 149 ("fiercely competitive and highly fragmented global luxury industry"), 150 ("intensely competitive and highly fragmented industry"), 152 ("intensely competitive"), 160 ("high fragmentation & low barriers to entry"), 163 (similar). These statements, too, are opinions and/or characterizations that were intertwined with the optimistic statements that the Transaction was pro-consumer and

21

likely would pass FTC review and court scrutiny.

Plaintiff fails to allege that the Tapestry Defendants did not sincerely believe their statements regarding the nature of the market.[15]  Plaintiff points to cherry-picked internal documents that suggest Coach and Michael Kors viewed one another as their respective top competitors in an "accessible luxury" segment, and that in an early exploratory document, Tapestry considered whether the Transaction could facilitate less discounting of Michael Kors. ¶¶ 38, 65–68.  But (as explained in more detail below) that is not inconsistent with the proposition that Tapestry and Capri (whose businesses encompass far more than simply Coach and Michael Kors) are part of a larger "$200 billion luxury market *that includes handbags, footwear, and apparel*." ¶ 109 (emphasis added and omitted).  Nor does it establish that Tapestry did not sincerely believe its view of the relevant market would prevail.  Indeed, the very pricing document on which Plaintiff relies states that 28% of Coach buyers considered purchasing other luxury handbags such as Louis Vuitton, Gucci, Chanel, and Prada.  ¶ 66. Again, Defendants' genuine belief is evident from their vigorous pursuit of the merger even after the FTC challenged it.[16]

c)      **Statements After The FTC Litigation Are Inactionable Opinions**

The Tapestry Defendants' statements after the FTC Litigation about their expectation of success are also inactionable opinions. ¶¶ 149–57, 160, 163, 166, 170.  "[S]tatements regarding the viability of the lawsuits . . . clearly constitute opinions regarding the success of the litigation,

---

[15] The statement that there were low barriers to entry was not only true but also was a finding of the European Union antitrust regulators.  FTC Litigation, Dkt. No. 91 at 4.

[16] Courts have held an issuer's previously expressed opinions that it would receive approval to be genuinely held even when an agency later disagrees. *E.g.*, *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 530–34 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (finding defendants honestly believed statements regarding likelihood of obtaining timely FDA approval even though FDA rejected initial application).

22

rather than statements of fact." *Hall v. Johnson & Johnson*, No. 18-1833, 2019 WL 7207491, at *19 (D.N.J. Dec. 27, 2019) (citing *Axar Master Fund, Ltd. v. Bedford*, 308 F. Supp. 3d 743, 756–57 (S.D.N.Y. 2018)); *see also Amarin*, 750 F. Supp. 3d at 461 (statements about expected successful outcome of a litigation are opinion).  Indeed, forecasting the outcome of litigation involving a complex legal analysis, such as defining the relevant antitrust market, inherently involves "matters about which reasonable minds could differ." *In re Evolus, Inc. Sec. Litig.*, 2024 WL 4306786, at *19 (S.D.N.Y Sept. 26, 2024) (challenged statements concerning complex litigation prospects inactionable opinions).[17]

The Complaint does not allege a single fact to permit an inference that the Tapestry Defendants did not sincerely believe they would prevail in the litigation.  That their belief turned out to be mistaken is insufficient.  *See Omnicare*, 575 U.S. at 184.  Indeed, the cases are legion where the FTC sues to enjoin a merger but the court denies a preliminary injunction motion.  *See supra* at 21.  And as explained above, the mere existence of a handful of internal documents that the court found supported a narrow submarket analysis do not show the Tapestry Defendants did not genuinely believe the relevant antitrust market was broader and that they would prevail.  Plaintiff also offers no facts to show Ms. Crevoiserat did not genuinely believe it would not be necessary for the Companies to divest brands.  Obviously, Ms. Crevoiserat's statement was part and parcel of her overall belief that the merger would close.  Nor does Plaintiff allege that the statements regarding the litigation contained, or implied, untrue facts.

**D.      The Complaint Fails To Allege Scienter**

To adequately plead scienter, which is a high bar, the plaintiff must plead a mental state

---

[17] To the extent *Rite Aid* sustained certain timing statements, the complaint there—unlike here— alleged that the FTC had "raised concerns" about the merger, yet Walgreens downplayed them by falsely stating it had "inside knowledge" about the review process that gave it confidence. *Hering v. Rite Aid Corp.*, 331 F. Supp. 3d 412, 427–28 (M.D. Pa. 2018).

"'embracing [an] intent to deceive, manipulate, or defraud,' either knowingly or recklessly." *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 114 (3d Cir. 2018).  Recklessness requires more than negligence—it must be an "extreme departure from the standards of ordinary care" that "presents a danger of misleading buyers and sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999) *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  The PSLRA further requires a "strong inference" of scienter—one that is "cogent and at least as compelling as any opposing inference." *Id*. at 324.  If a non-culpable inference is more plausible, dismissal is required.  *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007).  As discussed below, Plaintiff fails to meet these standards.

*First,* Plaintiff alleges that Ms. Crevoiserat and Mr. Roe acted with scienter based on their roles as CEO and CFO, respectively, asserting that the alleged fraud "could not have been perpetrated" without their "knowledge and complicity" and they were "the persons most knowledgeable about" the allegedly undisclosed information.  ¶¶ 175–76.  This is classic impermissible "scienter-by-status."  Courts consistently reject such generalized allegations as insufficient.  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006) ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company."); *Pharmanet*, 720 F. Supp. 2d at 556 (rejecting allegations imputing knowledge to corporate officers absent "individualized allegations" at those officers).

*Second,* Plaintiff alleges that the Tapestry Defendants acted with scienter because of their alleged participation in, or control over, the Challenged Statements.  ¶¶ 174–75.  Courts routinely disregard such conclusory allegations.  *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 403 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011) (no

24

scienter on basis that individual defendants "participated in the making of" misstatements)*; In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 587 (D.N.J. 2005) (similar). If mere involvement in making a statement sufficed, scienter would always be presumed.

*Third,* Plaintiff cites internal documents and FTC Litigation testimony that purportedly indicate that the Tapestry Defendants used the term "accessible luxury," considered Michael Kors and Coach to be competitors, "[Ms.] Crevoiserat herself closely monitored gains and losses in market share between Coach and Michael Kors," and both Ms. Crevoiserat and Mr. Roe received materials that allegedly indicated the Transaction would reduce competition; therefore, alleging the risk of adverse action was higher than disclosed to investors. ¶¶ 177, 182–84. This invocation of the FTC Litigation record is a red herring. To invoke a strong inference of scienter, the documents would need to support that the Tapestry Defendants *knew* the Transaction would reduce competition in the "accessible luxury" handbag submarket *at the time the Tapestry Defendants made the challenged public statements*. The FTC litigation documents do no such thing. Nothing in any of the documents supports an inference that any Tapestry Defendant knew, or recklessly disregarded, that the FTC would challenge, and that the court would reject, the Transaction at any point during the relevant period. Instead, Plaintiff's allegations rely purely on hindsight—based on the court's later narrow submarket determination in the FTC Litigation—and do not constitute contemporaneous evidence of fraudulent intent as required to plead scienter.

Rather, Plaintiff's argument is that the Tapestry Defendants internally acknowledged their brands competed with Capri's brands in a narrow submarket, while publicly denying such a submarket existed. Plaintiff selectively cites documents and testimony to suggest that Tapestry tracked Capri's pricing, reported it to the board, and used the term "accessible luxury" internally

25

while avoiding it externally.[18]  ¶¶ 41–53, 55–63, 65–82, 87–92 (citing internal company documents, board documents, and SEC filings using the term "accessible luxury"), 185 (alleging defendants "ceas[ed] to refer to the accessible luxury market in public filings . . . after FTC filed suit").  But antitrust market definition is a complex economic inquiry that cannot be reduced to internal labels.  *U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 598 (1st Cir. 1993) (citing *United States* v. *E.I. du Pont De Nemours & Co.*, 351 U.S. 377 (1956) ("There is no subject in antitrust law more confusing than market definition," which involves "very complex economic interactions.").  Tapestry's use of that term—and its discontinuation—is immaterial.  *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291 (10th Cir. 2019) (defendant's removal of language in response to bad press did not support finding that it was misleading).

Similarly, the fact that Tapestry tracked Michael Kors or considered it a competitor (even a "fierce" one) does not mean that other brands (as well as potential market entrants) did not also constrain Tapestry's pricing.  ¶ 182.  *See, e.g., In re Google Antitrust Litig.*, 721 F. Supp. 3d 230, 254 (S.D.N.Y 2024) (relevant product market consists of "products that have reasonable interchangeability for purposes for which they are produced" and examines factors such as barriers to entry).  Indeed, the internal documents at issue are replete with references to numerous other brands and competition from those brands, not to mention a larger, $200 billion market.  ¶¶ 109–10, 128–29, 150, 154 ($200 billion market statements); 59 (citing February 2019

---

[18] Plaintiff also alleges that Ms. Crevoiserat and Mr. Roe tried to "conceal their knowledge of the true nature of competition in the handbag market" by "downplaying the fierce competition between Michael Kors and Coach" during the FTC trial. ¶ 185.  Even if true, strong brand competition is not inconsistent with a broader relevant market.  Moreover, to the extent Plaintiff alleges the FTC Court did not find the Tapestry Defendants' testimony "credible," ¶ 89, its disagreement with the Tapestry Defendants' interpretation of a few documents does not render Tapestry's legal position untenable.  Indeed, the FTC Court never found the Tapestry Defendant's theory totally baseless or in bad faith, but rather defined the relevant antitrust market differently than the Tapestry Defendants did.

Tapestry presentation comparing brands to "Tory Burch, Longchamp, MCM[,] and Furla" and citing August 2023 Capri presentation comparing brands to Tory Burch, Marc Jacobs, and Longchamp); 70 (citing February 2023 Tapestry presentation comparing brands to Tory Burch, Furla, Longchamp and Marc Jacobs); 65–68 (citing Ex. 13 comparing brands to Calvin Klein, Chanel, Dooney & Bourke, Fossil, Gucci, Guess, Louis Vuitton, Nine West, Prada, and Tory Burch); Ex. 1 at 19 (disclosing "significant competition" from "European and American luxury brands"); Ex. 16 at 9 (disclosing "significant competition" and "intense competition from many other brands"). Plaintiff cherry picks one soundbite from a multipage report analyzing the overall "luxury" market, which says nothing about "competitive" risks. *See* ¶ 69.

Plaintiff's reliance on a single document suggesting the merger might facilitate reduced discounting of Michael Kors is also misplaced. That presentation—dated a year before the merger and two and a half years before the FTC's injunction—was exploratory, and, more importantly, was presented *to* Ms. Crevoiserat, not authored by her, or alleged otherwise to reflect her views.[19] ¶¶ 65–68. This falls far short of raising a "strong inference" that Ms. Crevoiserat intended to raise prices, or knew—or was reckless in not knowing—that the FTC would challenge the merger, let alone that a court would block a merger years later. *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 316 (4th Cir. 2004) (no scienter where plaintiffs failed to plead that the speaking defendants "adopted [an employee's] opinion but then publicly declared"

---

[19] Plaintiff's attempt to plead corporate scienter without alleging facts showing scienter by any individual fails. ¶ 65 (alleging Tapestry employee "emailed" Crevoiserat to "discuss potential M&A targets" and "attached a slide deck she had prepared"). The Third Circuit has not adopted the corporate scienter doctrine. *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 631 (D.N.J. 2023). The doctrine requires a strong inference that *someone* at the company acted with scienter in making false or misleading statements—an allegation not made here. *Christian v. BT Grp. PLC*, 2020 WL 1969941, at *8 (D.N.J. Apr. 24, 2020), *aff'd sub nom. Pamcah-UA Loc. 675 Pension Fund v. BT Grp. PLC*, 2021 WL 3415060 (3d Cir. Aug. 5, 2021).

27

something to the contrary); *Sarafin v. BioMimetic Therapeutics, Inc.*, 2013 WL 139521, at *19 (M.D. Tenn. Jan. 10, 2013) ("aware[ness] of employee's views" do not suggest "strong inference of fraudulent intent"), *aff'd*, 747 F.3d 435 (6th Cir. 2014).  Moreover, in full, the presentation supports a broader market view, noting that 28% of Coach customers would consider purchasing "luxury" brand handbags such as Louis Vuitton, Gucci, Chanel, and Prada.  ¶ 66.

Other presentations also suggest that Tapestry intended to increase Michael Kors's value proposition to consumers, which would be pro-consumer.  *See e.g.*, ¶ 90 (citing presentation stating, "Capri's 'mission' is 'to re-establish Michael Kors as [a] leader . . . .'" (emphasis omitted)); Ex. 15, at 5 (discussing increasing customers' willingness to pay by increasing the products' "valuing attributes."[20]

***Fourth,*** Plaintiff alleges that the Tapestry Defendants knew the risks of adverse action by the FTC were higher than disclosed.  ¶¶ 37, 172, 177.  The Tapestry Defendants never guaranteed a successful result or otherwise quantified their chances of success, so the allegation is implausible on its face.  Further, this theory lacks factual support.  At bottom, Plaintiff is simply recharacterizing the same internal documents and arguments discussed above, and this argument too fails for the same reasons.  Even if the documents reflected an awareness that Tapestry and Capri competed, that alone does not support scienter.  Large competitors routinely receive regulatory clearance to merge.  ¶ 66; *see, e.g., Malaney v. UAL Corp.*, 434 Fed. App'x. 620, 622 (9th Cir. 2011) (rejecting challenge to United Airlines-Continental Airlines merger); Order Denying Plaintiff's Motion for Preliminary Injunction (ECF No. 549), *FTC v. Meta Platforms Inc., et al.*, 654 F. Supp. 3d 892, 941 (N.D. Cal. 2023) (rejecting FTC's challenge to

---

[20] A price increase driven by higher demand does not imply market power. *Va. Vermiculite Ltd. v. W.R. Grace & Co. Conn.*, 98 F. Supp. 2d 729, 736–37 (W.D. Va. 2000).

Meta and Within Unlimited merger in virtual reality market); Preliminary Injunction Opinion (ECF No. 305), *Fed. Trade Comm'n v. Microsoft Corp., et al.*, 681 F. Supp. 3d 1069, 1101 (N.D. Cal. 2023), *aff'd*, 136 F.4th 954 (9th Cir. 2025) (rejecting FTC challenge to Microsoft and Activision Blizzard merger in gaming markets).

That the court in the FTC Litigation ultimately disagreed with Tapestry and found the documents supported a narrow antitrust submarket does not establish scienter—it merely shows that Plaintiff's theory is based solely on hindsight. *Cf. In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 566 (E.D. Pa. 2009) (rejecting scienter where the FDA's differing view on study methodology merely showed "grounds for disagreement" with defendants' position); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 471 (S.D.N.Y. 2008), *aff'd sub nom. State Universities Ret. Sys. of Ill. v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009) (FDA and defendant's documents "both present the honest analysis and conclusions of their authors").  The Tapestry Defendants could not have known the competition between the Companies would necessarily prevent approval.  *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 579 (S.D.N.Y. 2016) (no scienter where management did not know "that certain facts will ***necessarily*** prevent the regulatory approval" (emphasis added)).  The more compelling inference is that the Tapestry Defendants believed the Transaction would close.  *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 544 (dismissing claims where "the most logical inference" was defendants "sincerely held their optimistic views" and "were surprised and disappointed by" the FDA's differing view).

***Finally,*** Plaintiff fails to allege any other indicia of scienter.  Plaintiff identifies no confidential witnesses.  *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *19 (D.N.J. July 27, 2018) (absence of "confidential witnesses addressing these issues" cuts against inference of scienter).  Nor does Plaintiff allege that any Tapestry insider benefited by selling ***Capri*** stock.

*Lewakowski v. Aquestive Therapeutics, Inc.*, 2023 WL 2496504, at *12 (D.N.J. Mar. 14, 2023) (the absence of insider trading weighs "against an inference of scienter").

Plaintiff also fails to allege any plausible motive to commit fraud. Although not required, failure to plead motive can undermine any strong inference of scienter. *Tellabs*, 551 U.S. at 325–26; *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 618 (D.N.J. 2023) ("[P]laintiff's failure to show motive to commit fraud is 'significant'" in scienter analysis). Here, there is no logical reason why *Tapestry* executives would want to inflate *Capri's* stock price—particularly when they were pursuing the merger at a fixed price per share and actively defending it against regulatory challenge. *Roofer's Pension Fund,* 687 F. Supp. 3d at 619; *Emps. Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1173 (10th Cir. 2018) (If defendant "thought there was a substantial likelihood that the . . . merger would not go through, what would be its motive to press forward on the transaction?"); *Arbitrage Event-Driven Fund*, 2020 WL 60186, at *10 (N.D. Ill. Jan. 6, 2020) (company's participation in regulatory process "cuts against . . . scienter and weighs in favor of [defendants'] good faith belief that the merger would be approved").

In short, Plaintiff fails to raise facts sufficient to plead a strong inference of scienter. But even if it has, the more cogent and compelling inference is innocent: that Tapestry believed the transaction would close, and had no reason to believe it was misleading anyone by its statements and assessments of the market. *Tellabs*, 551 U.S. at 324.

## II.    The Court Should Dismiss The Section 20 Claim (Count II)

The Court should dismiss Count II given Plaintiff's failure to state a claim under Count I. *In re Aetna Sec. Litig.*, 617 F.3d at 278.

## CONCLUSION

The Court should dismiss the claims against the Tapestry Defendants with prejudice.

Dated: July 15, 2025

Respectfully submitted,

**Of Counsel:**

**WILMER CUTLER PICKERING HALE & DORR L.L.P.**
Timothy Perla
Sonia Sujanani
60 State Street
Boston, MA 02109
Telephone: (617) 233-6766
timothy.perla@wilmerhale.com
sonia.sujanani@wilmerhale.com

Jessica Lewis
2600 El Camino Real
Palo Alto, CA 94306
Telephone: (628) 235-1160
jessica.lewis@wilmerhale.com

**MCCOLLOM D'EMILIO SMITH UEBLER LLC**

*/s/ Thomas A. Uebler*
Thomas A. Uebler (#5074)
Terisa A. Shoremount (#7113)
2751 Centerville Road, Suite 401
Wilmington, DE 19808
(302) 468-5960
tuebler@mdsulaw.com
tshoremount@mdsulaw.com

**Appendix A: Forward-Looking Statement Cautions**

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| Exhibit 3 (Aug. 10, 2023 Tapestry 8-K) | ¶¶ 104, 106, 107 | Under the terms of the Merger Agreement, the completion of the Merger is subject to certain customary closing conditions, including, among others: . . . (iv) the absence of any law or order of certain specified jurisdictions prohibiting the consummation of the Merger in certain jurisdictions; [and] (v) the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and receipt of other regulatory approvals . . . . |
| | | The Company and/or Capri may terminate the Merger Agreement under certain specified circumstances, including (i) by mutual written consent, (ii) if a governmental entity of certain specified jurisdictions has issued a final, non-appealable order or permanent action prohibiting the Merger. . . . |
| | | **Forward-Looking Statements**[:] This report includes forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. Forward-looking statements relate to future events and anticipated results of operations, business strategies, the anticipated benefits of the proposed transaction, the anticipated impact of the proposed transaction on the combined company's business and future financial and operating results, the expected amount and timing of synergies from the proposed transaction, the anticipated closing date for the proposed transaction and other aspects of the Company's operations or operating results. These forward-looking statements generally can be identified by phrases such as "will," "expects," "anticipates," "foresees," "forecasts," "estimates" or other words or phrases of similar import. It is uncertain whether any of the events anticipated by the forward-looking statements will transpire or occur, or if any of them do, what impact they will have on the results of operations and financial condition of the combined company or the price of the Company's or Capri's stock. These forward-looking statements involve certain risks and uncertainties, many of which are beyond the parties' control, that could cause actual results to differ materially from those indicated in such forward-looking statements, including but not limited to: the effect of the announcement of the Merger on the ability of the Company or Capri to retain and hire key personnel and maintain relationships with customers, suppliers and others |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | with whom the Company or Capri do business, or on the Company's or Capri's operating results and business generally; risks that the Merger disrupts current plans and operations and the potential difficulties in employee retention as a result of the Merger; the outcome of any legal proceedings related to the Merger; the ability of the parties to consummate the proposed transaction on a timely basis or at all; the satisfaction of the conditions precedent to consummation of the proposed transaction, including the ability to secure regulatory approvals on the terms expected, at all or in a timely manner; the ability of the Company to successfully integrate Capri's operations; the ability of the Company to implement its plans, forecasts and other expectations with respect to its business after the completion of the transaction and realize expected synergies; and business disruption following the Merger. These risks, as well as other risks related to the proposed transaction, will be included in the proxy statement that will be filed with the SEC in connection with the proposed transaction. While the list of factors presented here is considered representative, no such list should be considered to be a complete statement of all potential risks and uncertainties. For additional information about other factors that could cause actual results to differ materially from those described in the forward-looking statements, please refer to the Company's and Capri's respective periodic reports and other filings with the SEC, including the risk factors identified in the Company's and Capri's most recent Quarterly Reports on Form 10-Q and Annual Reports on Form 10-K. The forward-looking statements included in this communication are made only as of the date hereof. Neither the Company nor Capri undertakes any obligation to update any forward-looking statements to reflect subsequent events or circumstances, except as required by law. <br><br> [*Filed concurrently with Exhibits 99.1 and 99.2 below*] |
| Exhibit 17 (Aug. 10, 2023 Exhibit 99.1 to Tapestry 8-K) | ¶¶ 104, 106, 107 | The transaction is anticipated to close in calendar year 2024, subject to approval by the Capri Holdings shareholders, as well as the receipt of required regulatory approvals, and other customary closing conditions. . . . <br><br> **Forward-Looking Statements**[:] This communication relates to a proposed business combination transaction between Tapestry, Inc. and Capri Holdings Limited ("Capri"). This communication |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | includes forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. Forward-looking statements relate to future events and anticipated results of operations, business strategies, the anticipated benefits of the proposed transaction, the anticipated impact of the proposed transaction on the combined company's business and future financial and operating results, the expected amount and timing of synergies from the proposed transaction, the anticipated closing date for the proposed transaction and other aspects of our operations or operating results. These forward-looking statements generally can be identified by phrases such as "will," "expects," "anticipates," "foresees," "forecasts," "estimates" or other words or phrases of similar import. It is uncertain whether any of the events anticipated by the forward-looking statements will transpire or occur, or if any of them do, what impact they will have on the results of operations and financial condition of the combined companies or the price of Tapestry, Inc. or Capri stock. These forward-looking statements involve certain risks and uncertainties, many of which are beyond the parties' control, that could cause actual results to differ materially from those indicated in such forward-looking statements, including but not limited to: the effect of the announcement of the merger on the ability of Tapestry, Inc. or Capri to retain and hire key personnel and maintain relationships with customers, suppliers and others with whom Tapestry, Inc. or Capri do business, or on Tapestry, Inc.'s or Capri's operating results and business generally; risks that the merger disrupts current plans and operations and the potential difficulties in employee retention as a result of the merger; the outcome of any legal proceedings related to the merger; the ability of the parties to consummate the proposed transaction on a timely basis or at all; the satisfaction of the conditions precedent to consummation of the proposed transaction, including the ability to secure regulatory approvals on the terms expected, at all or in a timely manner; the ability of Tapestry, Inc. to successfully integrate Capri's operations; the ability of Tapestry, Inc. to implement its plans, forecasts and other expectations with respect to Tapestry, Inc.'s business after the completion of the transaction and realize expected synergies; and business disruption following the merger. For additional information about other factors that could cause actual results to differ materially from those described in the forward-looking statements, please refer to Tapestry, Inc.'s and Capri's respective periodic reports and other filings with the SEC, including the |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | risk factors identified in Tapestry, Inc.'s and Capri's most recent Quarterly Reports on Form 10-Q and Annual Reports on Form 10-K. The forward-looking statements included in this communication are made only as of the date hereof. Neither Tapestry, Inc. nor Capri undertakes any obligation to update any forward-looking statements to reflect subsequent events or circumstances, except as required by law. . . . |
| Exhibit 19 (Aug. 10, 2023 Exhibit 99.2 to Tapestry 8-K) | | This presentation contains certain "forward-looking statements" based on management's current expectations.  Forward-looking statements include, but are not limited to statements which can be identified by the use of forward-looking terminology such as "may," "will," "can," "should," "expect," "intend," "estimate," "continue," "project," "guidance," "forecast," "outlook," "anticipate," "moving," "leveraging," "capitalizing," "developing," "drive," "targeting," "assume," "plan," "build," "pursue," "maintain," "on track," "well positioned to," "look forward to," "to acquire," "achieve," "focus," "strategic vision," "growth opportunities," "strategy," or comparable terms, and similar or other references to future periods.  Statements herein regarding our business and growth strategies; our plans, objectives, goals, beliefs, future events, business conditions, results of operations and financial position; and our business outlook and business trends are forward-looking statements. Such financial projections, estimates and statements are as to future events and are not to be viewed as facts, and they reflect various assumptions of management concerning the future performance of the combined company and other external factors and are subject to significant business, financial, economic, operating, competitive and other risks and uncertainties and contingencies (many of which are difficult to predict and/or beyond the control of the combined company) that could cause actual results to differ materially from the projections, estimates and statements included herein. Forward-looking statements are neither historical facts nor assurances of future performance.  Instead, they are based only on our current beliefs, expectations and assumptions regarding the future of our business and the combined company, future plans and strategies, projections, anticipated events and trends, and other future conditions.  Because forward-looking statements relate to the future, they are subject to inherent uncertainties, risks and changes in circumstances that are difficult to predict and many of which are outside of our control. |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | Our actual results and financial condition, and the results of the combined company, may differ materially from those indicated in the forward-looking statements due to a number of important factors.  Therefore, you should not rely on any of these forward-looking statements.  Important factors that could cause our actual results and financial condition to differ materially from those indicated in the forward-looking statements include, among others, the following:<br><br>• the ability to realize the anticipated synergies of the combined company;<br>• the incurrence of significant integration related costs by the combined company;<br>• the terms on the debt financing incurred in connection with the proposed transaction;<br>• the risk that the proposed transaction disrupts current plans and operations and the potential difficulties in employee retention as a result of the proposed transaction;<br>• the effect of the announcement of the proposed transaction on the ability of Tapestry or Capri Holdings to retain and hire key personnel and maintain relationships with customers, suppliers and others with whom Tapestry or Capri Holdings do business, or on Tapestry's or Capri Holdings's operating results and business generally;<br>• the outcome of any legal proceedings related to the acquisition;<br>• the ability of the parties to consummate the proposed transaction on a timely basis or at all;<br>• the satisfaction of the conditions precedent to consummation of the proposed transaction, including the ability to secure regulatory approvals on the terms expected, at all or in a timely manner;<br>• the ability of Tapestry to successfully integrate Capri Holdings's operations;<br>• the risk of business disruption following the proposed transaction;<br>• the impact of economic conditions, recession and inflationary measures;<br>• the impact of the Covid-19 pandemic;<br>• the ability to control costs; |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | • the ability to anticipate consumer preferences and retain the value of our brands, including our ability to execute on our e-commerce and digital strategies;<br>• the risks associated with operating in international markets and global sourcing activities;<br>• the ability to successfully implement the initiatives under our 2025 growth strategy;<br>• the ability to achieve intended benefits, cost savings and synergies from acquisitions;<br>• the risk of cybersecurity threats and privacy or data security breaches;<br>• the impact of pending and potential future legal proceedings;<br>• the risks associated with potential changes to international trade agreements;<br>• the impact of tax and other legislation; and<br>• the risks associated with climate change and other corporate responsibility issues.<br><br>Please refer to each of Tapestry's and Capri Holdings's latest Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q and their other filings with the Securities and Exchange Commission for a complete list of risks and important factors. The forward-looking statements included in this presentation are made only as of the date hereof.  We assume no obligation to revise or update any such forward-looking statements for any reason, except as required by law. . . . |
| Exhibit 24 (Aug. 10, 2023 Capri 8-K) | ¶¶ 104, 106, 107 | **Forward-Looking Statements[:]** *This report contains statements which are, or may be deemed to be, "forward-looking statements." Forward-looking statements are prospective in nature and are not based on historical facts, but rather on current expectations and projections of the management of Capri about future events and are therefore subject to risks and uncertainties which could cause actual results to differ materially from the future results expressed or implied by the forward-looking statements. All statements other than statements of historical facts included herein, may be forward-looking statements. Without limitation, any statements preceded or followed by or that include the words "plans", "believes", "expects", "intends", "will", "should", "could", "would", "may", "anticipates", "might" or similar words or phrases, are forward-looking statements. Such forward-looking statements involve known and unknown risks and uncertainties that could* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *significantly affect expected results and are based on certain key assumptions, which could cause actual results to differ materially from those projected or implied in any forward-looking statements, including regarding the proposed transaction. These risks, uncertainties and other factors include the impact of the COVID-19 pandemic; changes in consumer traffic and retail trends; the timing, receipt and terms and conditions of any required governmental and regulatory approvals for the proposed transaction that could delay or result in the termination of the proposed transaction, the occurrence of any other event, change or other circumstances that could give rise to the termination of the merger agreement entered into in connection with the proposed transaction, the possibility that Capri's shareholders may not approve the proposed transaction, the risk that the parties to the Merger Agreement may not be able to satisfy the conditions to the proposed transaction in a timely manner or at all, risks related to disruption of management time from ongoing business operations due to the proposed transaction, the risk that any announcements relating to the proposed transaction could have adverse effects on the market price of the Ordinary Shares, the risk of any unexpected costs or expenses resulting from the proposed transaction, the risk of any litigation relating to the proposed transaction, the risk that the proposed transaction and its announcement could have an adverse effect on the ability of Capri to retain customers and retain and hire key personnel and maintain relationships with customers, suppliers, employees, shareholders and other business relationships and on its operating results and business generally, and the risk the pending proposed transaction could divert the attention of Capri's management; as well as those risks that are outlined in Capri's disclosure filings and materials, which you can find on http://www.capriholdings.com, such as its Form 10-K, Form 10-Q and Form 8-K reports that have been filed with the SEC. Please consult these documents for a more complete understanding of these risks and uncertainties. Any forward-looking statement in this press release speaks only as of the date made and Capri disclaims any obligation to update or revise any forward-looking or other statements contained herein other than in accordance with legal and regulatory obligations.*<br><br>*[Filed concurrently with Exhibit 99.1 below]* |
| Exhibit 25 (Aug. 10, 2023 | ¶¶ 104, 106, 107 | The transaction is anticipated to close in calendar year 2024, subject to approval by the Capri Holdings shareholders, as well |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| Exhibit 99.1 to Capri 8-K) | | as the receipt of required regulatory approvals, and other customary closing conditions. . . .<br><br>**Forward-Looking Statements[:]** This communication relates to a proposed business combination transaction between Tapestry, Inc. and Capri Holdings Limited ("Capri"). This communication includes forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. Forward-looking statements relate to future events and anticipated results of operations, business strategies, the anticipated benefits of the proposed transaction, the anticipated impact of the proposed transaction on the combined company's business and future financial and operating results, the expected amount and timing of synergies from the proposed transaction, the anticipated closing date for the proposed transaction and other aspects of our operations or operating results. These forward-looking statements generally can be identified by phrases such as "will," "expects," "anticipates," "foresees," "forecasts," "estimates" or other words or phrases of similar import. It is uncertain whether any of the events anticipated by the forward-looking statements will transpire or occur, or if any of them do, what impact they will have on the results of operations and financial condition of the combined companies or the price of Tapestry, Inc. or Capri stock. These forward-looking statements involve certain risks and uncertainties, many of which are beyond the parties' control, that could cause actual results to differ materially from those indicated in such forward-looking statements, including but not limited to: the effect of the announcement of the merger on the ability of Tapestry, Inc. or Capri to retain and hire key personnel and maintain relationships with customers, suppliers and others with whom Tapestry, Inc. or Capri do business, or on Tapestry, Inc.'s or Capri's operating results and business generally; risks that the merger disrupts current plans and operations and the potential difficulties in employee retention as a result of the merger; the outcome of any legal proceedings related to the merger; the ability of the parties to consummate the proposed transaction on a timely basis or at all; the satisfaction of the conditions precedent to consummation of the proposed transaction, including the ability to secure regulatory approvals on the terms expected, at all or in a timely manner; the ability of Tapestry, Inc. to successfully integrate Capri's operations; the ability of Tapestry, Inc. to implement its plans, forecasts and other expectations with respect to Tapestry, Inc.'s business after |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | the completion of the transaction and realize expected synergies; and business disruption following the merger. For additional information about other factors that could cause actual results to differ materially from those described in the forward-looking statements, please refer to Tapestry, Inc.'s and Capri's respective periodic reports and other filings with the SEC, including the risk factors identified in Tapestry, Inc.'s and Capri's most recent Quarterly Reports on Form 10-Q and Annual Reports on Form 10-K. The forward-looking statements included in this communication are made only as of the date hereof. Neither Tapestry, Inc. nor Capri undertakes any obligation to update any forward-looking statements to reflect subsequent events or circumstances, except as required by law. |
| Exhibit 18 (Aug. 10, 2023 Tapestry Conference Call) | ¶¶ 105, 106, 107 | Before we begin, I would like to note that today's discussion contains forward-looking statements that are subject to the risks identified in both Company's [sic] SEC filings and other written communications related to the announcement. Please refer to the information on Slide 2 of the presentation posted to our website as well as the additional information contained in the SEC filing of both Tapestry, Inc. and Capri Holdings Limited. . . .<br><br>The Board of Directors of both Tapestry and Capri have unanimously approved the transaction and we expect the deal to close in calendar year 2024 subject to customary closing conditions approval by Capri shareholders and receipt of the required regulatory approvals. . . . |
| Exhibit 20 (Aug. 10, 2023 CNBC Interview Transcript) | ¶¶ 103, 106 | [Responding to a question about whether Tapestry has regulatory concerns:] We expect to go through the normal closing conditions that are required including regulatory and we think that the timeline that we've laid out reflects just what we see in the market today. . . . |
| Exhibit 1 (Aug. 17, 2023 Tapestry 10-K) | | **SPECIAL NOTE ON FORWARD-LOOKING INFORMATION**[:] This document, and the documents incorporated by reference in this document, our press releases and oral statements made from time to time by us or on our behalf, may contain certain "forward-looking statements" within the meaning of the federal securities laws, including Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, and are based on management's current expectations, that involve risks and uncertainties that could cause our actual results to differ materially from our current expectations. In this context, forward-looking statements often address expected future |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | business and financial performance and financial condition, and often contain words such as "may," "can," "continue," "project," "should," "expect," "confidence," "goals," "trends," "anticipate," "intend," "estimate," "on track," "future," "well positioned to," "plan," "potential," "position," "believe," "seek," "see," "will," "would," "target," similar expressions, and variations or negatives of these words. Forward-looking statements by their nature address matters that are, to different degrees, uncertain. Such statements involve risks, uncertainties and assumptions. If such risks or uncertainties materialize or such assumptions prove incorrect, the results of Tapestry, Inc. and its consolidated subsidiaries could differ materially from those expressed or implied by such forward-looking statements and assumptions. All statements other than statements of historical fact are statements that could be deemed forward-looking statements. Tapestry, Inc. assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law. <br><br> Tapestry, Inc.'s actual results could differ materially from the results contemplated by these forward-looking statements and are subject to a number of risks, uncertainties, estimates and assumptions that may cause actual results to differ materially from current expectations due to a number of factors, including those discussed in the sections of this Form 10-K filing entitled "Risk Factors" and "Management's Discussion and Analysis of Financial Condition and Results of Operations." These factors include, but are not limited to: . . .(xiii) our ability to achieve intended benefits, cost savings and synergies from acquisitions, including our proposed acquisition of Capri Holdings Limited ("Capri"); . . . [and] (xv) the impact of pending and potential future legal proceedings; . . . . These factors are not necessarily all of the factors that could cause actual results to differ materially from those expressed in any of our forward-looking statements. . . . <br><br> *You should consider carefully all of the information set forth or incorporated by reference in this document and, in particular, the following risk factors associated with the business of the Company and forward-looking information in this document. Please also see "Special Note on Forward-Looking Information" at the beginning of this report. The risks described below are not the only ones we face. Additional risks not* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *presently known to us or that we currently deem immaterial may also have an adverse effect on us. If any of the risks below actually occur, our business, results of operations, cash flows or financial condition could suffer. . . .*<br><br>***Mergers, acquisitions and other strategic investments may not be successful in achieving intended benefits, cost savings and synergies and may disrupt current operations.***<br><br>One component of our historical growth strategy has been acquisitions, and, consistent with our longer-term capital allocation priorities, our management team expects to maintain M&A flexibility and may from time to time evaluate and consider acquisitions or other strategic investments. These involve various inherent risks and as a result, the expected benefits, cost savings and synergies may not be realized.<br><br>The integration process of any newly acquired company, such as our proposed acquisition of Capri Holdings Limited ("Capri"), may be complex, costly and time-consuming. The potential difficulties of integrating the operations of an acquired business and realizing our expectations for an acquisition, including the benefits that may be realized, include, among other things:<br><br>• failure of the business to perform as planned following the acquisition or achieve anticipated revenue or profitability targets;<br><br>• delays, unexpected costs or difficulties in completing the integration of acquired companies or assets;<br><br>• higher than expected costs, lower than expected cost savings or synergies and/or a need to allocate resources to manage unexpected operating difficulties;<br><br>• difficulties assimilating the operations and personnel of acquired companies into our operations;<br><br>• diversion of the attention and resources of management or other disruptions to current operations; |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | • the impact on our or an acquired business' internal controls and compliance with the requirements under the Sarbanes-Oxley Act of 2002;<br><br>• changes in applicable laws and regulations or the application of new laws and regulations;<br><br>• changes in the combined business due to potential divestitures or other requirements imposed by antitrust regulators;<br><br>• retaining key customers, suppliers and employees; • retaining and obtaining required regulatory approvals, licenses and permits;<br><br>• operating risks inherent in the acquired business and our business;<br><br>• lower than anticipated demand for product offerings by us or our licensees;<br><br>• assumption of liabilities not identified in due diligence; and<br><br>• other unanticipated issues, expenses and liabilities.<br><br>Our failure to successfully complete the integration of any acquired business and any adverse consequences associated with future acquisition activities, could have an adverse effect on our business, financial condition and operating results.<br><br>Completed acquisitions may result in additional goodwill and/or an increase in other intangible assets on our Consolidated Balance Sheets. We are required annually, or as facts and circumstances exist, to assess goodwill and other intangible assets to determine if impairment has occurred. If the testing performed indicates that impairment has occurred, we are required to record a non-cash impairment charge for the difference between the carrying value of the goodwill or other intangible assets and the implied fair value of the goodwill or the fair value of other intangible assets in the period the determination is made. We cannot accurately predict the amount and timing of any potential future impairment of assets. Should the value of goodwill or other intangible assets become |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---------|----------------|-------------------------------------|
| | | impaired, there could be a material adverse effect on our financial condition and results of operations. |
| | | ***We may not complete our acquisition of Capri within the time frame we anticipate or at all.*** |
| | | The completion of our acquisition of Capri is subject to a number of conditions, including, among others, receipt of Capri shareholder approval, receipt of certain global anti-trust clearances, including expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and receipt of certain other regulatory approvals. |
| | | The failure to satisfy the required conditions could delay the completion of the acquisition for a significant period of time or prevent it from occurring at all. For example, under certain limited conditions, we and/or Capri may elect to terminate the merger agreement, which could materially and adversely affect our business and reputation. A delay in completing the acquisition could cause us to realize some or all of the benefits later than we otherwise expect to realize them if the acquisition is successfully completed within the anticipated time frame, which could result in additional transaction costs or in other negative effects associated with uncertainty about the completion of the acquisition. |
| | | ***We may fail to realize all of the anticipated benefits of the Capri acquisition, and the merger or those benefits may take longer to realize than expected.*** |
| | | We believe that there are significant benefits and synergies that may be realized through our acquisition of Capri. However, the efforts to realize these benefits and synergies will be a complex process and may cost more than we anticipate. Further, our efforts to realize these benefits and synergies may disrupt both companies' existing operations if not implemented in a timely and efficient manner. The full benefits of the acquisition, including the anticipated sales or growth opportunities, may not be realized as expected or may not be achieved within the anticipated time frame, or at all. Failure to achieve the anticipated benefits of the acquisition could adversely affect our results of operations or cash flows, cause dilution to our earnings per share, decrease or delay any accretive effect of the |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | acquisition and negatively impact the price of our common stock. |
| | | In addition, we will be required post-closing to devote significant attention and resources to successfully align our business practices and operations. This process may disrupt the businesses and, if ineffective, would limit the anticipated benefits of the acquisition. |
| | | ***We may be subject to litigation challenging the Capri acquisition, and an unfavorable judgment or ruling in any such lawsuits could prevent or delay the consummation of our acquisition of Capri and/or result in substantial costs.*** |
| | | Lawsuits related to our acquisition of Capri may be filed against us, Capri, and our respective affiliates, directors and officers. If dismissals are not obtained or a settlement is not reached, these lawsuits could prevent or delay completion of the acquisition and/or result in substantial costs to us. |
| Exhibit 26 (Aug. 17, 2023 Tapestry Earnings Call) | ¶¶ 111-113 | Before we begin, we must point out that this conference call will involve certain forward-looking statements within the meaning of the Private Securities Litigation Reform Act. This includes projections for our business in the current or future quarters or fiscal years. Forward-looking statements are not guarantees, and our actual results may differ materially from those expressed or implied in the forward-looking statements. Please refer to our annual report on Form 10-K[,] the press release we issued this morning[,] and our other filings with the Securities and Exchange Commission for a complete list of risks and other important factors that could impact our future results and performance. |
| Exhibit 27 (Aug. 23, 2023 Guggenheim Analyst Report) | ¶¶ 115, 116 | **Risks**[:] Risks . . . include . . . an inability to execute transformation/acquisition. . . . |
| Exhibit 10 (Nov. 6, 2023 Tapestry 8-K) | ¶¶ 118, 120 | On November 3, 2023, the Company and Capri each received a request for additional information and documentary materials . . . from the Federal Trade Commission . . . in connection with the FTC's review of the Transaction. . . . |
| | | The Company continues to expect that the Transaction will be completed in calendar year 2024, subject to the expiration or termination of the waiting period under the HSR Act and the |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | satisfaction or waiver of the other closing conditions specified in the Merger Agreement. |
| | | **Forward-Looking Statements**[:] This report includes forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. Forward-looking statements relate to future events and anticipated results of operations, business strategies, the anticipated benefits of the proposed transaction, the anticipated impact of the proposed transaction on the combined company's business and future financial and operating results, the expected amount and timing of synergies from the proposed transaction, the anticipated closing date for the proposed transaction and other aspects of the Company's operations or operating results. These forward-looking statements generally can be identified by phrases such as "will," "expects," "anticipates," "foresees," "forecasts," "estimates" or other words or phrases of similar import. It is uncertain whether any of the events anticipated by the forward-looking statements will transpire or occur, or if any of them do, what impact they will have on the results of operations and financial condition of the combined company or the price of the Company's or Capri's stock. These forward-looking statements involve certain risks and uncertainties, many of which are beyond the parties' control, that could cause actual results to differ materially from those indicated in such forward-looking statements, including but not limited to, statements regarding the Company's expectations regarding the timing for the completion of the Transaction. For additional information about other factors that could cause actual results to differ materially from those described in the forward-looking statements, please refer to the Company's and Capri's respective periodic reports and other filings with the SEC, including the risk factors identified in the Company's and Capri's most recent Quarterly Reports on Form 10-Q and Annual Reports on Form 10-K. The forward-looking statements included in this communication are made only as of the date hereof. Neither the Company nor Capri undertakes any obligation to update any forward-looking statements to reflect subsequent events or circumstances, except as required by law. |
| Exhibit 28 (Nov. 6, 2023 Capri 8-K) | ¶¶ 118, 119, 191 | On November 3, 2023, Capri and Tapestry each received a request for additional information and documentary materials . . , from the Federal Trade Commission . . . in connection with the FTC's review of the Transaction. . . . |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | Capri continues to expect that the Transaction will be completed in calendar year 2024, subject to the expiration or termination of the waiting period under the HSR Act and the satisfaction or waiver of the other closing conditions specified in the Merger Agreement. |
| | | **Forward-Looking Statements**[:] This communication contains statements which are, or may be deemed to be, "forward-looking statements." Forward-looking statements are prospective in nature and are not based on historical facts, but rather on current expectations and projections of the management of Capri about future events and are therefore subject to risks and uncertainties which could cause actual results to differ materially from the future results expressed or implied by the forward-looking statements. All statements other than statements of historical facts included herein, may be forward-looking statements. Without limitation, any statements preceded or followed by or that include the words "plans", "believes", "expects", "intends", "will", "should", "could", "would", "may", "anticipates", "might" or similar words or phrases, are forward-looking statements. Such forward looking statements involve known and unknown risks and uncertainties that could significantly affect expected results and are based on certain key assumptions, which could cause actual results to differ materially from those projected or implied in any forward-looking statements, including regarding the proposed transaction. These risks, uncertainties and other factors include the impact of the COVID-19 pandemic; changes in consumer traffic and retail trends; the timing, receipt and terms and conditions of any required governmental and regulatory approvals for the proposed transaction that could delay or result in the termination of the proposed transaction, the occurrence of any other event, change or other circumstances that could give rise to the termination of the Merger Agreement, the risk that the parties to the Merger Agreement may not be able to satisfy the conditions to the proposed transaction in a timely manner or at all, risks related to disruption of management time from ongoing business operations due to the proposed transaction, the risk that any announcements relating to the proposed transaction could have adverse effects on the market price of Capri's ordinary shares, the risk of any unexpected costs or expenses resulting from the proposed transaction, the risk of any litigation relating to the proposed transaction, the risk that the proposed transaction and its announcement could have an adverse effect on the ability of Capri to retain customers and retain and hire key personnel and |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | maintain relationships with customers, suppliers, employees, shareholders and other business relationships and on its operating results and business generally, and the risk the pending proposed transaction could divert the attention of Capri's management; as well as those risks that are outlined in Capri's disclosure filings and materials, which you can find on http://www.capriholdings.com, such as its Form 10-K, Form 10-Q and Form 8-K reports that have been filed with the SEC. Please consult these documents for a more complete understanding of these risks and uncertainties. Any forward-looking statement in this press release speaks only as of the date made and Capri disclaims any obligation to update or revise any forward-looking or other statements contained herein other than in accordance with legal and regulatory obligations. |
| Exhibit 29 (Nov. 9, 2023 Tapestry 10-Q) | ¶¶ 121, 130 | **SPECIAL NOTE ON FORWARD-LOOKING INFORMATION**[:] This document, and the documents incorporated by reference in this document, our press releases and oral statements made from time to time by us or on our behalf, may contain certain "forward-looking statements" within the meaning of the federal securities laws, including Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, and are based on management's current expectations, that involve risks and uncertainties that could cause our actual results to differ materially from our current expectations. In this context, forward-looking statements often address expected future business and financial performance and financial condition, and often contain words such as "may," "can," "continue," "project," "assumption," "should," "expect," "confidence," "goals," "trends," "anticipate," "intend," "estimate," "on track," "future," "well positioned to," "plan," "potential," "position," "believe," "seek," "see," "will," "would," "target," similar expressions, and variations or negatives of these words. Forward-looking statements by their nature address matters that are, to different degrees, uncertain. Such statements involve risks, uncertainties and assumptions. If such risks or uncertainties materialize or such assumptions prove incorrect, the results of Tapestry, Inc. and its consolidated subsidiaries could differ materially from those expressed or implied by such forward-looking statements and assumptions. All statements other than statements of historical fact are statements that could be deemed forward-looking statements. Tapestry, Inc. assumes no obligation to |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | revise or update any such forward-looking statements for any reason, except as required by law. |
| | | Tapestry, Inc.'s actual results could differ materially from the results contemplated by these forward-looking statements and are subject to a number of risks, uncertainties, estimates and assumptions that may cause actual results to differ materially from current expectations due to a number of factors, including, but not limited to: . . . (xiii) our ability to achieve intended benefits, cost savings and synergies from acquisitions, including our proposed acquisition of Capri Holdings Limited ("Capri"); . . . [and] (xv) the impact of pending and potential future legal proceedings; . . . . These factors are not necessarily all of the factors that could cause actual results to differ materially from those expressed in any of our forward-looking statements. . . . |
| | | Refer to Part 1, Item 1A, "Risk Factors" in our Annual Report on Form 10-K for the fiscal year ended July 1, 2023 for a description of certain significant risks and uncertainties to which our business, financial condition and results of operations are subject. |
| Exhibit 30 (Nov. 9, 2023 Tapestry 8-K) | ¶¶ 122, 130 | [*Filed concurrently with Exhibit 99.1 below*] |
| Exhibit 31 (Nov. 9, 2023 Exhibit 99.1 to Tapestry 8-K) | ¶¶ 122, 130 | Tapestry is working to receive all required regulatory approvals, including responding to the U.S. Federal Trade Commission's second request received on November 3, 2023. . . . *This information to be made available in this press release may contain forward-looking statements based on management's current expectations. Forward-looking statements include, but are not limited to, the statements under "Financial Outlook," statements regarding long term performance, statements regarding the Company's capital deployment plans, including anticipated annual dividend rates and share repurchase plans, and statements that can be identified by the use of forward-looking terminology such as "may," "will," "can," "should," "expect," "expectation," "potential," "intend," "estimate," "continue," "project," "guidance," "forecast," "outlook," "commit," "anticipate," "goal," "leveraging," "sharpening," "transforming," "creating," accelerating," "enhancing," "innovation," "drive," "targeting," "assume," "plan," "progress," "confident," "future," "uncertain," "on track,"* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *"achieve," "strategic," "growth," "view," "we can stretch what's possible," or comparable terms. Future results may differ materially from management's current expectations, based upon a number of important factors, including risks and uncertainties such as the impact of economic conditions, recession and inflationary measures, the impact of the Covid-19 pandemic, risks associated with operating in international markets and our global sourcing activities, the ability to anticipate consumer preferences and retain the value of our brands, including our ability to execute on our e-commerce and digital strategies, the ability to successfully implement the initiatives under our 2025 growth strategy, the effect of existing and new competition in the marketplace, our ability to control costs, the effect of seasonal and quarterly fluctuations on our sales or operating results; the risk of cybersecurity threats and privacy or data security breaches, our ability to protect against infringement of our trademarks and other proprietary rights, the impact of tax and other legislation, the risks associated with potential changes to international trade agreements and the imposition of additional duties on importing our products, our ability to achieve intended benefits, cost savings and synergies from acquisitions including our proposed acquisition of Capri Holdings Limited ("Capri"), the anticipated impact of the proposed acquisition of Capri on the combined company's business and future financial and operating results, the anticipated closing date for the proposed acquisition of Capri, risks related to the availability of funding for our bridge loan facility associated with our proposed acquisition of Capri, the impact of pending and potential future legal proceedings, and the risks associated with climate change and other corporate responsibility issues, etc. In addition, purchases of shares of the Company's common stock will be made subject to market conditions and at prevailing market prices. Please refer to the Company's latest Annual Report on Form 10-K and its other filings with the Securities and Exchange Commission for a complete list of risks and important factors. The Company assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law.* |
| Exhibit 11 (Nov. 9, 2023 Tapestry Earnings Call) | ¶¶ 123, 128, 130 | Before we begin, we must point out that this conference call will involve certain forward-looking statements within the meaning of the Private Securities Litigation Reform Act. This includes projections for our business in the current or future quarters or fiscal years. Forward-looking statements are not guarantees, and |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---------|----------------|-------------------------------------|
| | | our actual results may differ materially from those expressed or implied in the forward-looking statements. Please refer to our annual report on Form 10-K, the press release we issued this morning and our other filings with the Securities and Exchange Commission for a complete list of risks and other important factors that could impact our future results and performance. . . . |
| | | [W]e're working towards receiving all required regulatory approvals, including responding to the FTC's second request. . . . |
| | | [O]n the regulatory front, we are working to receive all the required regulatory approvals, including . . . responding to the FTC second request. |
| Exhibit 32 (Feb. 8, 2024 Tapestry 10-Q) | ¶¶ 131, 134 | **SPECIAL NOTE ON FORWARD-LOOKING INFORMATION**[:] This document, and the documents incorporated by reference in this document, our press releases and oral statements made from time to time by us or on our behalf, may contain certain "forward-looking statements" within the meaning of the federal securities laws, including Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, and are based on management's current expectations, that involve risks and uncertainties that could cause our actual results to differ materially from our current expectations. In this context, forward-looking statements often address expected future business and financial performance and financial condition, and often contain words such as "may," "can," "continue," "project," "assumption," "should," "expect," "confidence," "goals," "trends," "anticipate," "intend," "estimate," "on track," "future," "well positioned to," "plan," "potential," "position," "believe," "seek," "see," "will," "would," "target," similar expressions, and variations or negatives of these words. Forward-looking statements by their nature address matters that are, to different degrees, uncertain. Such statements involve risks, uncertainties and assumptions. If such risks or uncertainties materialize or such assumptions prove incorrect, the results of Tapestry, Inc. and its consolidated subsidiaries could differ materially from those expressed or implied by such forward-looking statements and assumptions. All statements other than statements of historical fact are statements that could be deemed forward-looking statements. Tapestry, Inc. assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law. |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | Tapestry, Inc.'s actual results could differ materially from the results contemplated by these forward-looking statements and are subject to a number of risks, uncertainties, estimates and assumptions that may cause actual results to differ materially from current expectations due to a number of factors, including, but not limited to: . . . (xiii) our ability to achieve intended benefits, cost savings and synergies from acquisitions, including our proposed acquisition of Capri Holdings Limited ("Capri"); . . . [and] (xv) the impact of pending and potential future legal proceedings; . . . . These factors are not necessarily all of the factors that could cause actual results to differ materially from those expressed in any of our forward-looking statements. . . . <br><br> Refer to Part I, Item 1A, "Risk Factors" in our Annual Report on Form 10-K for the fiscal year ended July 1, 2023 for a description of certain significant risks and uncertainties to which our business, financial condition and results of operations are subject. |
| Exhibit 33 (Feb. 8, 2024 Tapestry 8-K) | ¶¶ 132, 134 | [*Filed concurrently with Exhibit 99.1 below*] |
| Exhibit 34 (Feb. 8, 2024 Exhibit 99.1 to Tapestry 8-K) | ¶¶ 132, 134 | Tapestry continues to work toward receiving required regulatory approvals. . . . <br><br> *This information to be made available in this press release may contain forward-looking statements based on management's current expectations. Forward-looking statements include, but are not limited to, the statements under "Financial Outlook," statements regarding long term performance, statements regarding the Company's capital deployment plans, including anticipated annual dividend rates and share repurchase plans, and statements that can be identified by the use of forward-looking terminology such as "may," "will," "can," "should," "expect," "expectation," "potential," "intend," "estimate," "continue," "project," "guidance," "forecast," "outlook," "commit," "anticipate," "goal," "leveraging," "sharpening," transforming," "creating," accelerating," "enhancing," "innovation," "drive," "targeting," "assume," "plan," "progress," "confident," "future," "uncertain," "on track," "achieve," "strategic," "growth," "view," "vision," "we can stretch what's possible," or comparable terms. Future results may differ materially from management's current expectations, based upon a number of important factors, including risks and* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *uncertainties such as the impact of economic conditions, recession and inflationary measures, the impact of the Covid-19 pandemic, risks associated with operating in international markets and our global sourcing activities, the ability to anticipate consumer preferences and retain the value of our brands, including our ability to execute on our e-commerce and digital strategies, the ability to successfully implement the initiatives under our 2025 growth strategy, the effect of existing and new competition in the marketplace, our ability to control costs, the effect of seasonal and quarterly fluctuations on our sales or operating results; the risk of cybersecurity threats and privacy or data security breaches, our ability to protect against infringement of our trademarks and other proprietary rights, the impact of tax and other legislation, the risks associated with potential changes to international trade agreements and the imposition of additional duties on importing our products, our ability to achieve intended benefits, cost savings and synergies from acquisitions including our proposed acquisition of Capri Holdings Limited ("Capri"), the anticipated impact of the proposed acquisition of Capri on the combined company's business and future financial and operating results, the anticipated closing date for the proposed acquisition of Capri, the satisfaction of the conditions precedent to consummation of the proposed acquisition of Capri, including the ability to secure regulatory approvals on the terms expected, at all or in a timely manner, the impact of pending and potential future legal proceedings, and the risks associated with climate change and other corporate responsibility issues, etc. In addition, purchases of shares of the Company's common stock will be made subject to market conditions and at prevailing market prices. Please refer to the Company's latest Annual Report on Form 10-K and its other filings with the Securities and Exchange Commission for a complete list of risks and important factors. The Company assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law.* |
| Exhibit 35 (Feb. 8, 2024 Tapestry Earnings Call) | ¶¶ 133, 134 | Before we begin, we must point out that this conference call will involve certain forward-looking statements within the meaning of the Private Securities Litigation Reform Act. This includes projections for our business in the current or future quarters or fiscal years. Forward-looking statements are not guarantees, and our actual results may differ materially from those expressed or implied in the forward-looking statements. Please refer to our annual report |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | on Form 10-K, the press release we issued this morning and our other filings with the Securities and Exchange Commission for a complete list of risks and other important factors that could impact our future results and performance. . . .<br><br>[W]e're continuing to work towards receiving all required regulatory approvals . . . . |
| Exhibit 36 (Mar. 6, 2024 Telsey Advisory Group Analyst Report) | ¶¶ 136, 137 | Risks . . . include . . . unfavorable government regulations . . . . |
| Exhibit 21 (Apr. 15, 2024 Women's Wear Daily Article) | ¶¶ 142, 144 | [T]he U.S. Federal Trade Commission . . . [is still] looking at the buyout . . . . [T]he FTC, which made a second request for more information in November . . . has made Wall Street antsy. . . .<br><br>[Quoting Joanne Crevoiserat:] The FTC is still reviewing it, and we continue to work collaboratively with the FTC in that effort . . . .<br><br>[Quoting Joanne Crevoiserat:] We expected that the regulatory process particularly would be a long one, just understanding the environment and the landscape that we're operating in . . . . |
| Exhibit 22 (Apr. 15, 2024 Bloomberg Article) | ¶¶ 143, 144 | [Commenting on the likelihood the Merger will go through:] [T]he market is pricing in a roughly 50% probability that the deal will be completed . . . . Some market participants see the odds closer to 40% . . . . |
| Exhibit 37 (Apr. 18, 2024 Forbes Article) | ¶¶ 146, 147 | [Quoting statement made by Tapestry executive:] We cannot speculate on the FTC's intentions . . . .<br><br>[T]he Biden Administration has taken a tougher stance on mergers and acquisitions recently. |
| Exhibit 38 (Apr. 22, 2024 Capri 8-K) | ¶¶ 149, 153 | In the press release, [Capri] states that it strongly disagrees with the FTC's decision [to seek to enjoin the Merger] and intends to vigorously defend the case alongside Tapestry in working toward completing the Merger.<br><br>[*Filed concurrently with Exhibit 99.1 below*] |
| Exhibit 39 (Apr. 22, 2024 Exhibit 99.1 to Capri 8-K) | ¶¶ 149, 153 | Capri Holdings strongly disagrees with the FTC's decision. . . . Capri intends to vigorously defend this case in court alongside Tapestry . . . . The U.S. FTC is the only regulator that did not approve this transaction . . . . |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | **Forward-Looking Statements**[:] *This report contains statements which are, or may be deemed to be, "forward-looking statements." Forward-looking statements are prospective in nature and are not based on historical facts, but rather on current expectations and projections of the management of Capri about future events and are therefore subject to risks and uncertainties which could cause actual results to differ materially from the future results expressed or implied by the forward-looking statements. All statements other than statements of historical facts included herein, may be forward-looking statements. Without limitation, any statements preceded or followed by or that include the words "plans", "believes", "expects", "intends", "will", "should", "could", "would", "may", "anticipates", "might" or similar words or phrases, are forward-looking statements. Such forward-looking statements involve known and unknown risks and uncertainties that could significantly affect expected results and are based on certain key assumptions, which could cause actual results to differ materially from those projected or implied in any forward-looking statements, including regarding the pending merger transaction with a wholly-owned subsidiary of Tapestry, Inc. (the "Merger"). These risks, uncertainties and other factors include the impact of the COVID-19 pandemic; changes in consumer traffic and retail trends; the timing, receipt and terms and conditions of any required governmental and regulatory approvals for the pending Merger that could delay or result in the termination of the pending Merger, the occurrence of any other event, change or other circumstances that could give rise to the termination of the merger agreement entered into in connection with the pending Merger, the risk that the parties to the merger agreement may not be able to satisfy the conditions to the pending Merger in a timely manner or at all, risks related to disruption of management time from ongoing business operations due to the pending Merger, the risk that any announcements relating to the pending Merger could have adverse effects on the market price of Capri's shares, the risk of any unexpected costs or expenses resulting from the pending Merger, the risk of any litigation relating to the pending Merger, the risk that the pending Merger and its announcement could have an adverse effect on the ability of Capri to retain customers and retain and hire key personnel and maintain relationships with customers, suppliers, employees, shareholders and other business relationships and on its operating results and business generally, and the risk the pending Merger could divert the* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *attention of Capri's management; as well as those risks that are outlined in Capri's disclosure filings and materials, which you can find on http://www.capriholdings.com, such as its Form 10-K, Form 10-Q and Form 8-K reports that have been filed with the SEC. Please consult these documents for a more complete understanding of these risks and uncertainties. Any forward-looking statement in this press release speaks only as of the date made and Capri disclaims any obligation to update or revise any forward-looking or other statements contained herein other than in accordance with legal and regulatory obligations.* |
| Exhibit 40 (Apr. 22, 2024 Tapestry 8-K) | ¶¶ 150, 153 | On April 22, 2024, the U.S. Federal Trade Commission filed a complaint in the United States District Court . . . seeking to enjoin the Merger . . . . <br><br> [*Filed concurrently with Exhibit 99.1 below*] |
| Exhibit 41 (Apr. 22, 2024 Exhibit 99.1 to Tapestry 8-K) | ¶¶ 150, 153 | We have strong legal arguments in defense of this transaction and look forward to presenting them in court . . . . <br><br> The FTC is the last regulatory yet to approve the transaction. . . . <br><br> *This communication relates to a proposed business combination transaction between Tapestry, Inc. and Capri Holdings Limited. This communication includes forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. Forward-looking statements relate to future events and anticipated results of operations, business strategies, the anticipated benefits of the proposed transaction, the anticipated impact of the proposed transaction on the combined company's business and future financial and operating results, the expected amount and timing of synergies from the proposed transaction, the anticipated closing date for the proposed transaction and other aspects of our operations or operating results. These forward-looking statements generally can be identified by phrases such as "will," "expects," "anticipates," "foresees," "forecasts," "estimates" or other words or phrases of similar import. It is uncertain whether any of the events anticipated by the forward looking statements will transpire or occur, or if any of them do, what impact they will have on the results of operations and financial condition of the combined companies or the price of Tapestry, Inc. or Capri Holdings Limited stock. These forward-looking statements involve certain risks and uncertainties, many of which are beyond the parties' control, that could cause actual results to differ materially from those indicated in such forward looking statements, including but not limited to: the effect of the* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *announcement of the merger on the ability of Tapestry, Inc. or Capri Holdings Limited to retain and hire key personnel and maintain relationships with customers, suppliers and others with whom Tapestry, Inc. or Capri Holdings Limited do business, or on Tapestry, Inc.'s or Capri Holdings Limited's operating results and business generally; risks that the merger disrupts current plans and operations and the potential difficulties in employee retention as a result of the merger; the outcome of any legal proceedings related to the merger; the ability of the parties to consummate the proposed transaction on a timely basis or at all; the satisfaction of the conditions precedent to consummation of the proposed transaction, including the ability to secure regulatory approvals on the terms expected, at all or in a timely manner; the ability of Tapestry, Inc. to successfully integrate Capri Holdings Limited's operations; the ability of Tapestry, Inc. to implement its plans, forecasts and other expectations with respect to Tapestry, Inc.'s business after the completion of the transaction and realize expected synergies; and business disruption following the merger. For additional information about other factors that could cause actual results to differ materially from those described in the forward-looking statements, please refer to Tapestry, Inc.'s and Capri Holdings Limited's respective periodic reports and other filings with the SEC, including the risk factors identified in Tapestry, Inc.'s and Capri Holdings Limited's most recent Quarterly Reports on Form 10-Q and Annual Reports on Form 10-K. The forward-looking statements included in this communication are made only as of the date hereof. Neither Tapestry, Inc. nor Capri Holdings Limited undertakes any obligation to update any forward-looking statements to reflect subsequent events or circumstances, except as required by law.* |
| Exhibit 14 (Apr. 22, 2024 Reuters Article) | ¶¶ 151, 153, 154 | [I]nvestors are skeptical of the deal winning approval . . . . |
| Exhibit 23 (Apr. 25, 2024 Squawk on the Street Transcript) | ¶¶ 152, 153 | [Paraphrasing Joanne Crevoiserat:] She said . . . I've spen[t] a lot of time . . . looking into this, speaking to lawyers about this.<br><br>[Paraphrasing Joanne Crevoiserat:] [Tapestry] expected a tough regulatory environment . . . . |
| Exhibit 42 (May 9, 2024 Tapestry 10-Q) | ¶¶ 155, 158, 159 | **SPECIAL NOTE ON FORWARD-LOOKING INFORMATION**[:] This document, and the documents incorporated by reference in this document, our press releases and oral statements made from time to time by us or on our |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | behalf, may contain certain "forward-looking statements" within the meaning of the federal securities laws, including Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, and are based on management's current expectations, that involve risks and uncertainties that could cause our actual results to differ materially from our current expectations. In this context, forward-looking statements often address expected future business and financial performance and financial condition, and often contain words such as "may," "can," "continue," "project," "assumption," "should," "expect," "confidence," "goals," "trends," "anticipate," "intend," "estimate," "on track," "future," "well positioned to," "plan," "potential," "position," "believe," "seek," "see," "will," "would," "target," similar expressions, and variations or negatives of these words. Forward-looking statements by their nature address matters that are, to different degrees, uncertain. Such statements involve risks, uncertainties and assumptions. If such risks or uncertainties materialize or such assumptions prove incorrect, the results of Tapestry, Inc. and its consolidated subsidiaries could differ materially from those expressed or implied by such forward-looking statements and assumptions. All statements other than statements of historical fact are statements that could be deemed forward-looking statements. Tapestry, Inc. assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law. <br><br> Tapestry, Inc.'s actual results could differ materially from the results contemplated by these forward-looking statements and are subject to a number of risks, uncertainties, estimates and assumptions that may cause actual results to differ materially from current expectations due to a number of factors, including, but not limited to: . . . (xiii) our ability to achieve intended benefits, cost savings and synergies from acquisitions, including our proposed acquisition of Capri Holdings Limited ("Capri"); (xiv) satisfaction of the conditions precedent to consummation of the proposed acquisition of Capri, including the ability to secure regulatory approval in the United States on the terms expected, at all or in a timely manner; (xv) the outcome of the antitrust lawsuit by the Federal Trade Commission against us and Capri related to the consummation of the proposed acquisition; [and] (xvi) the impact of pending and potential future legal proceedings; . . . . These factors are not necessarily all of the |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | factors that could cause actual results to differ materially from those expressed in any of our forward-looking statements. . . . |
| | | The Company has received regulatory approval from all countries except for the United States. On April 22, 2024, the Federal Trade Commission . . . filed a complaint against the Company and Capri in the United States District Court . . . seeking to enjoin the consummation of the Capri Acquisition. . . . The Company . . . intends to defend the lawsuit vigorously. . . . |
| | | On April 22, 2024, the FTC filed a complaint against the Company and Capri in the United States District Court . . . seeking to enjoin the consummation of the Merger. . . . The Company . . . intends to defend the lawsuit vigorously. . . . |
| | | The Company has received regulatory approval from all countries except for the United States. On April 22, 2024, the Federal Trade Commission . . . filed a complaint against the Company and Capri in the United States District Court . . . seeking to enjoin the consummation of the Capri Acquisition. . . . The Company . . . intends to defend the lawsuit vigorously. . . |
| | | The Company has received regulatory approval from all countries except for the United States. On April 22, 2024, the FTC filed a complain in the United States District Court . . . seeking to enjoin the consummation of the Capri Acquisition. . . . [W]e intend to defend the lawsuit vigorously. . . . |
| | | In connection with the Company's proposed acquisition of Capri, we have been named as a defendant in a legal proceeding by the FTC. On April 22, 2024, the FTC filed a lawsuit in the United States District Court . . . against us and Capri seeking to block the proposed acquisition of Capri . . . . [W]e intend to defend the lawsuit vigorously. . . . |
| | | Refer to Part I, Item 1A, "Risk Factors" in our Annual Report on Form 10-k for the fiscal year ended July 1, 2023 for a description of certain significant risks and uncertainties to which our business, financial condition and results of operations are subject. |
| Exhibit 43 (May 9, 2024 Tapestry 8-K) | ¶¶ 156, 158, 159 | [*Filed concurrently with Exhibit 99.1 below*] |
| Exhibit 44 (May 9, 2024 Exhibit 99.1 to Tapestry 8-K) | ¶¶ 156, 158, 159 | *This information to be made available in this press release may contain forward-looking statements based on management's current expectations. Forward looking statements include, but are not limited to, the statements under "Financial Outlook,"* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *statements regarding long term performance, statements regarding the Company's capital deployment plans, including anticipated annual dividend rates and share repurchase plans, and statements that can be identified by the use of forward-looking terminology such as "may," "will," "can," "should," "expect," "expectation," "proposed acquisition," "looks forward to," "move forward," "working expeditiously," "potential," "intend," "estimate," "continue," "guidance," "forecast," "outlook," "commit," "anticipate," "goal," "leveraging," "sharpening," transforming," "create," accelerating," "expand," "unlock," "generate," "enhancing," "innovation," "drive," "targeting," "assume," "plan," "effort," "progress," "confident," "future," "uncertain," "achieve," "strategic," "growth," "vision," "we can stretch what's possible," or comparable terms. Future results may differ materially from management's current expectations, based upon a number of important factors, including risks and uncertainties such as the impact of economic conditions, recession and inflationary measures, the impact of the Covid-19 pandemic, risks associated with operating in international markets and our global sourcing activities, the ability to anticipate consumer preferences and retain the value of our brands, including our ability to execute on our e-commerce and digital strategies, the ability to successfully implement the initiatives under our 2025 growth strategy, the effect of existing and new competition in the marketplace, our ability to control costs, the effect of seasonal and quarterly fluctuations on our sales or operating results; the risk of cybersecurity threats and privacy or data security breaches, our ability to protect against infringement of our trademarks and other proprietary rights, the impact of tax and other legislation, the risks associated with potential changes to international trade agreements and the imposition of additional duties on importing our products, our ability to achieve intended benefits, cost savings and synergies from acquisitions including our proposed acquisition of Capri Holdings Limited ("Capri"), the anticipated impact of the proposed acquisition of Capri on the combined company's business and future financial and operating results, the anticipated closing date for the proposed acquisition of Capri, the satisfaction of the conditions precedent to consummation of the proposed acquisition of Capri, including the ability to secure regulatory approval in the United States on the terms expected, at all or in a timely manner, the outcome of the antitrust lawsuit by the Federal Trade Commission against us and Capri related to the consummation of the proposed* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *acquisition, the impact of pending and potential future legal proceedings, and the risks associated with climate change and other corporate responsibility issues, etc. In addition, purchases of shares of the Company's common stock will be made subject to market conditions and at prevailing market prices. Please refer to the Company's latest Annual Report on Form 10-K and its other filings with the Securities and Exchange Commission for a complete list of risks and important factors. The Company assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law.* |
| Exhibit 45 (May 9, 2024 Tapestry Earnings Call) | ¶¶ 157, 158, 159 | Before we begin, we must point out that this conference call will involve certain forward-looking statements within the meaning of the Private Securities Litigation Reform Act. This includes projections for our business in the current or future quarters or fiscal years. Forward-looking statements are not guarantees and our actual results may differ materially from those expressed or implied in the forward-looking statements. Please refer to our annual report on Form 10-K, the press release we issued this morning and our other filings with the Securities and Exchange Commission for a complete list of risks and other important factors that could impact our future results and performance. . . . <br><br> [T]he FTC filed a suit on April 22 to block the proposed acquisition. We . . . look forward to presenting our strong legal arguments in court. |
| Exhibit 46 (May 23, 2024 Morgan Stanley Analyst Report) | ¶¶ 160, 161 | Meetings focused primarily on the proposed [Capri] acquisition, particularly . . . deal status . . . . |
| Exhibit 47 (May 29, 2024 Capri 8-K) | ¶¶ 163, 164 | [*Filed concurrently with Exhibit 99.1 below*] |
| Exhibit 48 (May 29, 2024 Exhibit 99.1 to Capri 8-K) | ¶¶ 163, 164 | In April, the FTC filed an unprecedent lawsuit to block the proposed transaction. . . . Capri intends to vigorously defend this case in court alongside Tapestry. . . . <br><br> **Forward**[-]**Looking Statements**[:] *This press release contains statements which are, or may be deemed to be, "forward-looking statements." Forward-looking statements are prospective in nature and are not based on historical facts, but rather on current expectations and projections of the management of Capri about future events and are therefore subject to risks and uncertainties which could cause actual results to differ* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *materially from the future results expressed or implied by the forward-looking statements. All statements other than statements of historical facts included herein, may be forward-looking statements. Without limitation, any statements preceded or followed by or that include the words "plans", "believes", "expects", "intends", "will", "should", "could", "would", "may", "anticipates", "might" or similar words or phrases, are forward looking statements. Such forward-looking statements involve known and unknown risks and uncertainties that could significantly affect expected results and are based on certain key assumptions, which could cause actual results to differ materially from those projected or implied in any forward-looking statements, including regarding the pending Merger. These risks, uncertainties and other factors include but are not limited to, our ability to respond to changing fashion, consumer traffic and retail trends; fluctuations in demand for our products; high consumer debt levels, recession and inflationary pressures; loss of market share and increased competition; reductions in our wholesale channel; the impact of the COVID-19 pandemic, or other unforeseen epidemics, pandemics, disasters or catastrophes; levels of cash flow and future availability of credit; Capri's ability to successfully execute its growth strategies; departure of key employees or failure to attract and retain highly qualified personnel; risks associated with operating in international markets and global sourcing activities, including disruptions or delays in manufacturing or shipments; the risk of cybersecurity threats and privacy or data security breaches; extreme weather conditions and natural disasters; general economic, political, business or market conditions; acts of war and other geopolitical conflicts; the outcome of the U.S. Federal Trade Commission's lawsuit attempting to block the pending Merger, the occurrence of any other event, change or other circumstances that could give rise to the termination of the merger agreement entered into in connection with the pending Merger; the risk that the parties to the merger agreement may not be able to satisfy the conditions to the pending Merger in a timely manner or at all; risks related to disruption of management time from ongoing business operations due to the pending Merger; the risk that any announcements relating to the pending Merger could have adverse effects on the market price of Capri's ordinary shares; the risk of any unexpected costs or expenses resulting from the pending Merger; the risk of any litigation relating to the pending Merger; the risk that the pending Merger could have an adverse* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *effect on the ability of Capri to retain and maintain relationships with customers, suppliers and other business partners and retain and hire key personnel and on its operating results and business generally, as well as those risks that are outlined in Capri's disclosure filings and materials, which you can find on http://www.capriholdings.com, such as its Form 10-K, Form 10-Q and Form 8-K reports that have been filed with the SEC. Please consult these documents for a more complete understanding of these risks and uncertainties. Any forward-looking statement in this press release speaks only as of the date made and Capri disclaims any obligation to update or revise any forward-looking or other statements contained herein other than in accordance with legal and regulatory obligations.* |
| Exhibit 49 (Aug. 15, 2024 Tapestry 8-K) | ¶¶ 166, 167, 168 | [*Filed concurrently with Exhibit 99.1 below*] |
| Exhibit 50 (Aug. 15, 2024 Exhibit 99.1 to Tapestry 8-K) | ¶¶ 166, 167, 168 | On April 22, 2024, the Federal Trade Commission (FTC) filed a lawsuit in an attempt to block the proposed acquisition. The Company . . . looks forward to presenting its strong legal arguments in court . . . . <br><br> *This information to be made available in this press release may contain forward-looking statements based on management's current expectations. Forward-looking statements include, but are not limited to, the statements under "Financial Outlook," statements regarding long term performance, statements regarding the Company's capital deployment plans, including anticipated annual dividend rates and share repurchase plans, and statements that can be identified by the use of forward-looking terminology such as "may," "will," "can," "should," "expect," "expectation," "proposed acquisition," "looks forward to," "working expeditiously," "potential," "intend," "estimate," "continue," "guidance," "forecast," "outlook," "commit," "anticipate," "goal," "leveraging," "create," "accelerating," "expand," "unlock," "generate," "enhancing," "innovation," "drive," "targeting," "assume," "plan," "effort," "progress," "confident," "future," "uncertain," "achieve," "strategic," "growth," "vision," "we can stretch what's possible," or comparable terms. Future results may differ materially from management's current expectations, based upon a number of important factors, including risks and uncertainties such as the impact of economic conditions, recession and inflationary measures, risks associated with operating in international markets and our global sourcing activities, the* |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | *impact of the Covid-19 pandemic, the ability to anticipate consumer preferences and retain the value of our brands, including our ability to execute on our e-commerce and digital strategies, the ability to successfully implement the initiatives under our 2025 growth strategy, the effect of existing and new competition in the marketplace, the satisfaction of the conditions precedent to consummation of the proposed acquisition of Capri Holdings Limited ("Capri"), including the ability to secure regulatory approval in the United States on the terms expected, at all or in a timely manner, our ability to achieve intended benefits, cost savings and synergies from acquisitions including our proposed acquisition of Capri, the outcome of the antitrust lawsuit by the Federal Trade Commission against us and Capri related to the consummation of the proposed acquisition, our ability to control costs, the effect of seasonal and quarterly fluctuations on our sales or operating results; the risk of cybersecurity threats and privacy or data security breaches, our ability to satisfy our outstanding debt obligations or incur additional indebtedness, the risks associated with climate change and other corporate responsibility issues, the impact of tax and other legislation, the risks associated with potential changes to international trade agreements and the imposition of additional duties on importing our products, our ability to protect against infringement of our trademarks and other proprietary rights, and the impact of pending and potential future legal proceedings, etc. In addition, purchases of shares of the Company's common stock will be made subject to market conditions and at prevailing market prices. Please refer to the Company's latest Annual Report on Form 10-K and its other filings with the Securities and Exchange Commission for a complete list of risks and important factors. The Company assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law.* |
| Exhibit 16 (Aug. 15, 2024 Tapestry 10-K) | ¶ 87 | **SPECIAL NOTE ON FORWARD-LOOKING INFORMATION**[:] This document, and the documents incorporated by reference in this document, our press releases and oral statements made from time to time by us or on our behalf, may contain certain "forward-looking statements" within the meaning of the federal securities laws, including Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, and are based on management's current expectations, that involve risks and uncertainties that could cause our actual results to differ |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | materially from our current expectations. In this context, forward-looking statements often address expected future business and financial performance and financial condition, and often contain words such as "may," "can," "continue," "project," "assumption," "should," "expect," "confidence," "goals," "trends," "anticipate," "intend," "estimate," "on track," "future," "well positioned to," "plan," "potential," "position," 'believe," "seek," "see," "will," "would," "target," similar expressions and variations or negatives of these words. Forward-looking statements by their nature address matters that are, to different degrees, uncertain. Such statements involve risks, uncertainties and assumptions. If such risks or uncertainties materialize or such assumptions prove incorrect, the results of Tapestry, Inc. and its consolidated subsidiaries could differ materially from those expressed or implied by such forward-looking statements and assumptions. All statements, other than statements of historical fact, are statements that could be deemed forward looking statements. Tapestry, Inc. assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law. <br><br> Tapestry, Inc.'s actual results could differ materially from the results contemplated by these forward-looking statements and are subject to a number of risks, uncertainties, estimates and assumptions that may cause actual results to differ materially from current expectations due to a number of factors, including those discussed in the sections of this Form 10-K filing entitled "Risk Factors" and "Management's Discussion and Analysis of Financial Condition and Results of Operations." These factors include, but are not limited to: . . . (vii) satisfaction of the conditions precedent to consummation of the proposed acquisition of Capri Holdings Limited ("Capri"), including the ability to secure regulatory approval in the United States on the terms expected, at all or in a timely manner; (viii) our ability to achieve intended benefits, cost savings and synergies from acquisitions, including our proposed acquisition of Capri; (ix) the outcome of the antitrust lawsuit by the Federal Trade Commission against us and Capri related to the consummation of the proposed acquisition; . . . and (xviii) the impact of pending and potential future legal proceedings. These factors are not necessarily all of the factors that could cause actual results to |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | differ materially from those expressed in any of our forward looking statements. . . .<br><br>You should consider carefully all of the information set forth or incorporated by reference in this document and, in particular, the following risk factors associated with the business of the Company and forward-looking information in this document. Please also see "Special Note on Forward-Looking Information" at the beginning of this report. The risks described below are not the only ones we face. Additional risks not presently known to us or that we currently deem immaterial may also have an adverse effect on us. If any of the risks below actually occur, our business, results of operations, cash flows or financial condition could suffer. . . .<br><br>***In order to consummate the Capri Acquisition (as defined below), we and Capri must obtain certain regulatory approvals and satisfy closing conditions, and if such approvals are not granted or are granted untimely and/or with conditions, and if closing conditions are not satisfied, consummation of the Capri Acquisition may be jeopardized or the anticipated benefits of the Capri Acquisition may not be realized.***<br><br>On August 10, 2023, we entered into an Agreement and Plan of Merger (the "Merger Agreement"), by and among us, Capri and Sunrise Merger Sub, Inc. ("Merger Sub"), pursuant to which we agreed to acquire any and all of Capri's ordinary shares (other than (a) Capri's ordinary shares that are issued and outstanding immediately prior to the consummation of the acquisition that are owned or held in treasury by us or by Capri or any of its direct or indirect subsidiaries and (b) Capri's ordinary shares that are issued and outstanding immediately prior to the consummation of the acquisition that are held by holders who have properly exercised dissenters' rights in accordance with, and who have complied with, Section 179 of the BVI Business Companies Act, 2004 (as amended) of the British Virgin Islands) in cash at a purchase price of $57.00 per share, without interest, subject to any required tax (the "Capri Acquisition"). The consummation of the Capri Acquisition remains subject to the receipt of certain regulatory approvals and the satisfaction of certain closing conditions. Subject to limited exceptions, we or Capri may terminate the Merger Agreement if the Capri |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | Acquisition is not consummated on or before August 10, 2024, subject to two extensions of up to three months each in certain circumstances, including to obtain required regulatory approvals. On April 22, 2024, the Federal Trade Commission ("FTC") filed a preliminary injunction action against Tapestry and Capri in the United States District Court for the Southern District of New York seeking to enjoin the consummation of the Capri Acquisition. The FTC's action alleges that the Capri Acquisition, if consummated, would violate Section 7 of the Clayton Act and that the Merger Agreement and the Capri Acquisition constitute unfair methods of competition in violation of Section 5 of the Federal Trade Commission Act and should be enjoined.

There can be no assurance as to the outcome of litigation with the FTC or that we will receive regulatory approval from the FTC on a timely basis or at all, and there can be no assurance that if regulatory clearance is obtained, it will not be subject to the compliance of certain conditions or impose limitations, obligations or restrictions that could have the direct or indirect effect of delaying or preventing the completion of the Capri Acquisition, imposing additional material costs on or materially limiting our revenues following the Capri Acquisition or otherwise reducing the anticipated benefits of the Capri Acquisition, or resulting in the abandonment of the Capri Acquisition.

If the Capri Acquisition is not completed on a timely basis or at all, our ongoing business may be adversely affected as follows:

• we may experience negative reactions from the financial markets, including investors and rating agencies, and the price of our common stock could decline;
• we have incurred, and will continue to incur, significant costs, expenses and fees, in connection with the Capri Acquisition and the transactions contemplated by the Capri Acquisition, for which we may receive little or no benefit if the Capri Acquisition is not completed, including in connection with the issuance and mandatory redemption of $4.50 billion of Capri Acquisition USD Senior Notes and €1.50 billion of Capri Acquisition EUR Senior Notes (both as defined below) at 101% of par value if the Capri Acquisition is not completed by |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---------|----------------|-------------------------------------|
|         |                | February 10, 2025 (or such later date mutually agreed between us and Capri); <br>• investor and consumer confidence in our business could decline, relationships with vendors, service providers, investors and other third parties may be adversely impacted, and we may be unable to retain key personnel; <br>• we may be subject to litigation, which could result in significant costs and expenses; <br>• management's focus may be diverted from day-to-day business operations and pursuing other opportunities that could have been beneficial to us; and <br>• the anticipated benefits of the Capri Acquisition could be delayed or reduced. <br><br>***Mergers, acquisitions and other strategic investments may not be successful in achieving intended benefits, cost savings and synergies and may disrupt current operations.*** <br><br>One component of our historical growth strategy has been acquisitions, and, consistent with our longer-term capital allocation priorities, our management team expects to maintain M&A flexibility and may from time to time evaluate and consider acquisitions or other strategic investments. These involve various inherent risks and as a result, the expected benefits, cost savings and synergies may not be realized. <br><br>The integration process of any newly acquired company, such as our proposed Capri Acquisition, may be complex, costly and time consuming. The potential difficulties of integrating the operations of an acquired business and realizing our expectations for an acquisition, including the benefits that may be realized, include, among other things: <br><br>• failure of the business to perform as planned following the acquisition or achieve anticipated revenue, cash flow or profitability targets; <br>• delays, unexpected costs or difficulties in completing the acquisition or integration of acquired companies or assets, including as a result of regulatory challenges; <br>• higher than expected costs, lower than expected cost savings or synergies and/or a need to allocate resources to manage unexpected operating difficulties; |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
|  |  | • difficulties assimilating the operations and personnel of acquired companies into our operations;<br>• diversion of the attention and resources of management or other disruptions to current operations;<br>• the impact on our or an acquired business' internal controls and compliance with the requirements under the Sarbanes-Oxley Act of 2002;<br>• changes in applicable laws and regulations or the application of new laws and regulations;<br>• changes in the combined business due to potential divestitures or other requirements imposed by antitrust regulators;<br>• failures or delays in receiving the necessary approvals by the relevant regulators and authorities; • retaining key customers, suppliers and employees; • retaining and obtaining required regulatory approvals, licenses and permits;<br>• operating risks inherent in the acquired business and our business;<br>• lower than anticipated demand for product offerings by us or our licensees;<br>• assumption of liabilities not identified in due diligence; and<br>• other unanticipated issues, expenses and liabilities.<br><br>Our failure to successfully complete the integration of any acquired business, including as a result of regulatory challenges, and any adverse consequences associated with future acquisition activities, could have an adverse effect on our business, financial condition and operating results. Even if the integration of any acquired business is successfully completed, the full expected benefits and synergies of the acquisition may not be realized. Additional unanticipated costs, which could be material, may also be incurred in the integration of our business and the acquired business. Additionally, the full benefits of an acquisition may not be realized if the combined business does not perform as expected or demand for the combined company's services does not meet our expectations.<br><br>Completed acquisitions may result in additional goodwill and/or an increase in other intangible assets on our Consolidated Balance Sheets. We are required annually, or as facts and circumstances exist, to assess goodwill and other intangible assets to determine if impairment has occurred. If the testing |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | performed indicates that impairment has occurred, we are required to record a non-cash impairment charge for the difference between the carrying value of the goodwill or other intangible assets and the implied fair value of the goodwill or the fair value of other intangible assets in the period the determination is made. We cannot accurately predict the amount and timing of any potential future impairment of assets. Should the value of goodwill or other intangible assets become impaired, there could be a material adverse effect on our financial condition and results of operations. . . .<br><br>In connection with the Company's proposed acquisition of Capri, we have been named as a defendant in legal proceedings by the FTC. On April 22, 2024, the FTC filed a lawsuit in the United States District Court . . . against us and Capri seeking to block the proposed acquisition of Capri . . . . We . . . intend to defend the lawsuit vigorously. . . .<br><br>The Company has received regulatory approval from all applicable jurisdictions except for the United States. On April 22, 2024, the FTC filed a complaint against the Company and Capri in the United States District Court. . . seeking to enjoin the consummation of the Capri Acquisition. . . . The Company . . . intends to defend the lawsuit vigorously. . . .<br><br>The Company has received regulatory approval from all applicable jurisdictions except for the United States. On April 22, 2024, the FTC filed a complaint against the Company and Capri in the United States District Court. . . seeking to enjoin the consummation of the Capri Acquisition. . . . The Company. . . intends to defend the lawsuit vigorously. |
| Exhibit 51 (Sept. 27, 2024 Tapestry Schedule 14A Definitive Proxy Statement) | ¶¶ 170, 171 | **SPECIAL NOTE ON FORWARD-LOOKING INFORMATION**[:] This document contains certain "forward-looking statements" within the meaning of the federal securities laws, including Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended, and are based on management's current expectations, that involve risks and uncertainties that could cause actual results to differ materially from current expectations. In this context, forward-looking statements often address expected future business and financial performance and financial condition, and often contain words such as "believes," "may," "can," "will," "should," "expect," "confidence," |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | "trends," "intend," "estimate," "on track," "are positioned to," "on course," "opportunity," "continue," "project," "guidance," "target," "forecast," "anticipate," "plan," "potential," "position," "see," "would," the negative of these terms or comparable terms. These statements include, but are not limited to, those regarding the Company's 2025 growth strategy, futurespeed and other strategic initiatives and certain agreements and plans that will require us to provide compensation to our executives upon the occurrence of future events, such as the achievement of Company objectives and the termination of an individual's employment or a change in control of the Company, and those regarding expectations that certain performance goals and/or targets for management and/or the Company will be attained. These future events may not occur as and when expected, if at all, and, together with the Company's business, are subject to various risks and uncertainties. These risks and uncertainties include that future compensation to our Named Executive Officers, and the events that could trigger such payments, may vary materially from the descriptions described herein due to factors beyond our control, such as the timing during the year of a triggering event, the amount of future non-equity incentive compensation and the value of our stock on the date of a triggering event. The Company assumes no obligation to revise or update any such forward-looking statements for any reason, except as required by law.<br><br>The Company's actual results could differ materially from the results contemplated by these forward-looking statements and are subject to a number of risks, uncertainties, estimates and assumptions that may cause actual results to differ materially from current expectations due to a number of important factors, including but not limited to: . . . (vii) satisfaction of the conditions precedent to consummation of the proposed acquisition of Capri Holdings Limited ("Capri"), including the ability to secure regulatory approval in the United States on the terms expected, at all or in a timely manner; (viii) our ability to achieve intended benefits, cost savings and synergies from acquisitions, including our proposed acquisition of Capri; (ix) the outcome of the antitrust lawsuit by the Federal Trade Commission against us and Capri related to the consummation of the proposed acquisition; . . . (xviii) the impact of pending and potential future legal proceedings; and (xix) the other risk factors set forth in the Company's Annual Report on Form 10-K for the fiscal year ended June 29, 2024 ("fiscal year 2024"), or those described from time to time in the Company's future reports |

| Exhibit | Compl. Cite(s) | Forward-Looking Statement Cautions |
|---|---|---|
| | | filed with the Securities and Exchange Commission (the "SEC"). . . . <br><br> On April 22, 2024, the Federal Trade Commission . . . filed a lawsuit in an attempt to block the proposed acquisition and a trial was conducted in September 2024, the results of which are pending. |