UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE CAPRI HOLDINGS LTD. SECURITIES LITIGATION | Case No. 24-cv-1410-SB |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS BY
DEFENDANTS TAPESTRY, INC., JOANNE C. CREVOISERAT, AND SCOTT A. ROE**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**Date: September 12, 2025**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ....................................................................................................1

II.  ABBREVIATED SUMMARY OF ALLEGATIONS...........................................2

     A.  The Tapestry Defendants Devised the Capri Acquisition to Eliminate
         Tapestry's Biggest Competitor in the Accessible Luxury Market..........................2

     B.  The Tapestry Defendants Schemed to Fraudulently Mislead Investors
         as to the Level of Regulatory Risk Faced by the Capri Acquisition.......................3

     C.  Once the Full Truth Emerges, Capri Stock Plummets............................................5

III. LEGAL STANDARDS ...........................................................................................5

IV.  ARGUMENT...........................................................................................................6

     A.  Plaintiffs Plead "In Connection With" and Statutory Standing as to the
         Tapestry Defendants ..............................................................................................6

         1.  The Tapestry Defendants' Statements Were Made "In
             Connection With" the Purchase or Sale of Capri Securities.......................6

         2.  The Complaint Pleads Statutory Standing ..................................................7

     B.  Tapestry is Also Responsible for Capri's Misleading Statements..........................8

     C.  The Tapestry Defendants' Statements Made During Regulatory
         Review Support Liability Under Myriad Third Circuit Authority........................10

     D.  The Complaint Adequately Alleges Materially False and Misleading
         Statements and Omissions ...................................................................................13

         1.  The Tapestry Defendants Made Materially False and
             Misleading Statements of Fact Regarding Competition in the
             Accessible Luxury Handbag Market .........................................................13

         2.  The Tapestry Defendants Made Materially False and
             Misleading Statements and Omissions Regarding the Nature of
             the Acquisition ........................................................................................15

     E.  The Tapestry Defendants' Misrepresentations Are Not Protected by
         the PSLRA Safe Harbor for Forward-Looking Statements ..................................19

         1.  The Challenged Misrepresentations Are Not Forward-Looking...............19

         2.  The Tapestry Defendants' Misrepresentations Were Not
             Accompanied by Sufficiently Cautionary Warnings .................................21

**Page**

3.    The Tapestry Defendants' Misrepresentations Were Made by
Individuals and Entities with Actual Knowledge that the
Statements Were False or Misleading..........................................................24

F.    The Complaint Pleads a Strong, Compelling Inference of Scienter ......................24

G.    The Complaint Pleads Loss Causation ..................................................................29

H.    The Complaint Pleads Scheme Liability................................................................30

I.    The Complaint Pleads Claims Under §20(a) ........................................................30

V.    CONCLUSION...................................................................................................................30

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
554 F.3d 342 (3d Cir. 2009)............................................................................10

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)........................................................................................16

*Burges v. BancorpSouth, Inc.*,
2015 WL 4198795 (M.D. Tenn. July 10, 2015) ...................................................20

*Chabot v. Walgreens Boots All., Inc.*,
2019 WL 2992242 (M.D. Pa. Apr. 15, 2019).............................................. *passim*

*Chabot v. Walgreens Boots All., Inc.*,
2023 WL 2908827 (M.D. Pa. Mar. 31, 2023)............................................. *passim*

*Christian v. BT Grp. PLC*,
2020 WL 1969941 (D.N.J. Apr. 24, 2020) ..........................................................26

*City of Warren Police & Fire Ret. Sys v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) ..............................................................................9

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
22 F.4th 1 (1st Cir. 2021).........................................................................14, 15

*Deutschman v. Beneficial Corp.*,
841 F.2d 502 (3d Cir. 1988)..............................................................................7

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................29

*EP Medsystems, Inc. v. EchoCath, Inc.*,
235 F.3d 865 (3d Cir. 2000)............................................................................23

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................................9

*Hering v. Rite Aid Corp.*,
331 F. Supp. 3d 412 (M.D. Pa. 2018) ....................................................... *passim*

*In re Bradley Pharms., Inc. Sec. Litig.*,
421 F. Supp. 2d 822 (D.N.J. 2006) ....................................................................26

**Page**

*In re Bristol-Myers Squibb Sec. Litig.*,
   2005 WL 2007004 (D.N.J. Aug. 17, 2005) ............................................................27

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   2020 WL 3026564 (D.N.J. June 5, 2020) ...............................................................30

*In re Constar Int'l Inc. Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009)...................................................................................17

*In re Egalet Corp. Sec. Litig.*,
   340 F. Supp. 3d 479 (E.D. Pa. 2018),
   *aff'd on other grounds sub nom.*, *Spizzirri v. Zyla Life Scis.*,
   802 F. App'x 738 (3d Cir. 2020) ...........................................................................22

*In re Enzymotec Sec. Litig.*,
   2015 WL 8784065 (D.N.J. Dec. 15, 2015)..............................................................25

*In re EQT Corp. Sec. Litig.*,
   504 F. Supp. 3d 474 (W.D. Pa. 2020).....................................................................24

*In re Focus Financial Partners*,
   2025 WL 961488 (D. Del. Mar. 31, 2025) ..............................................................16

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
   2020 WL 1479128 (E.D. Pa. Mar. 25, 2020)......................................................22, 23

*In re Maiden Holdings, Ltd. Sec. Litig.*,
   __ F.4th __, 2025 WL 2406864 (3d Cir. Aug. 20, 2025) .............................. *passim*

*In re Majesco Sec. Litig.*,
   2006 WL 2846281 (D.N.J. Sep. 29, 2006) ..............................................................20

*In re Nature's Sunshine Prods. Sec. Litig.*,
   486 F. Supp. 2d 1301 (D. Utah 2007).....................................................................27

*In re Pfizer Inc. Sec. Litig.*,
   819 F.3d 642 (2d Cir. 2016)......................................................................................9

*In re Stone & Webster, Inc., Sec. Litig.*,
   414 F.3d 187 (1st Cir. 2005).....................................................................................21

*In re Veritas Software Corp. Sec. Litig.*,
   2006 WL 1431209 (D. Del. May 23, 2006).............................................................24

*In re Viropharma Inc. Sec. Litig.*,
   21 F. Supp. 3d 458 (E.D. Pa. 2014) ..................................................................14, 27

**Page**

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011).................................................................................20

*In re Wilmington Tr. Sec. Litig.*,
29 F. Supp. 3d 432 (D. Del. 2014).....................................................................................29

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)........................................................................................ *passim*

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)........................................................................................................8, 9

*Laborers' Int'l Union v. Foster Wheeler Energy Corp.*,
26 F.3d 375 (3d Cir. 1994)..........................................................................................19, 30

*Levy v. Luo*,
2025 WL 437022 (D. Del. Feb. 7, 2025) ........................................................................7, 9

*Lungu v. Antares Pharma Inc.*,
2022 WL 212309 (3d Cir. Jan. 25, 2022) ..........................................................................11

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
54 F.4th 82 (2d Cir. 2022) ..............................................................................................7, 8

*Nolte v. Cap. One Fin. Corp.*,
390 F.3d 311 (4th Cir. 2004) .............................................................................................28

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)..........................................................................................13, 14, 15, 16

*Ret. Sys. of La. v. Pfizer, Inc.*,
2015 WL 1139640 (2d Cir. Mar. 4, 2015)...........................................................................9

*Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) .................................................................................23

*Rowinski v. Salomon Smith Barney Inc.*,
398 F.3d 294 (3d Cir. 2005)................................................................................................6

*Sarafin v. BioMimetic Therapeutics, Inc.*,
2013 WL 139521 (M.D. Tenn. Jan. 10, 2013).....................................................................28

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
351 F. Supp. 3d 874 (E.D. Pa. 2018) ..................................................................................11

**Page**

*SEC v. Lucent Techs., Inc.*,
  363 F. Supp. 2d 708 (D.N.J. 2005) ...................................................................................27

*SEC v. Medallion Fin. Corp.*,
  2024 WL 4227753 (S.D.N.Y. Sep. 18, 2024)......................................................................9

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000)................................................................................. *passim*

*Shapiro v. UJB Fin. Corp.*,
  964 F.2d 272 (3d Cir. 1992)...........................................................................................15

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) .........................................................................14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)......................................................................................................5, 6

*Tomaszewski v. Trevena, Inc.*,
  482 F. Supp. 3d 317 (E.D. Pa. 2020) ..........................................................................11, 12

*Union Asset Mgmt. Holding AG v. Sandisk Corp.*,
  2016 WL 406283 (N.D. Cal. Jan. 22, 2016) ...................................................................20

*United States v. Schiff*,
  538 F. Supp. 2d 818 (D.N.J. 2008),
  *aff'd*, 602 F.3d 152 (3d Cir. 2010)...............................................................................18

*United States v. Schiff*,
  602 F.3d 152 (3d Cir. 2010)............................................................................................18

*Utesch v. Lannett Co., Inc.*,
  385 F. Supp. 3d 408 (E.D. Pa. 2019) .............................................................................26

*Water Island Event-Driven Fund, LLC v. Tribune Media Co.*,
  39 F.4th 402 (7th Cir. 2022) ..........................................................................................20

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b)......................................................................................................... *passim*
  §78t ...............................................................................................................1, 30

Plaintiffs FNY Partners Fund LP and David R. Hurwitz respectfully submit this brief in opposition to the Tapestry Defendants' Motion to Dismiss the Consolidated Complaint.[1]

## I.   INTRODUCTION

This is a classic case of securities fraud.  This proposed class action alleges violations of §§10(b) and 20(a) of the 1934 Act and Rule 10b-5, arising out of Defendants' material misrepresentations and omissions about the true level of regulatory risk inherent in the Capri Acquisition.  Unbeknownst to investors, Defendants had devised the Capri Acquisition to eliminate the fierce head-to-head competition between Coach and Michael Kors in the accessible luxury handbag market.  In furtherance of that scheme, Defendants repeatedly and falsely assured investors that their brands competed in a broad, fragmented market and that the transaction would close in 2024.  Previously confidential—but now exposed—communications and corporate presentations make clear that Defendants' public statements about Capri securities and the Capri Acquisition were false and misleading, causing economic harm to Plaintiffs and other similarly situated investors when the truth came to light.

The Complaint plausibly alleges, in great detail, how the Tapestry Defendants fraudulently downplayed the level of regulatory risk inherent in the Capri Acquisition.  Myriad decisions from and within the Third Circuit recognize that similar statements about an ongoing regulatory review give rise to viable claims under the securities laws.  Indeed, in a trilogy of decisions, the Middle District of Pennsylvania faithfully applied Supreme Court and Third Circuit precedent to sustain nearly identical §10(b) and Rule 10b-5 claims brought by investors in a target company (like Capri)

---

[1]   "¶__" and "¶¶__" refer to the Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint"), filed on May 15, 2025.  D.I. 32.  "Tapestry Mot." and "Capri Mot." refer to Defendants' respective Opening Briefs in Support of Motion to Dismiss.  D.I. 41, 49.  Unless otherwise noted: (a) all emphasis is added; (b) internal citations and quotation marks are omitted; and (c) all defined terms herein shall have the same definitions as set forth in the Complaint.

impacted by misleading statements of an acquirer (like Tapestry) during the pendency of a merger ultimately blocked by the FTC. *See Hering v. Rite Aid Corp.*, 331 F. Supp. 3d 412, 421 (M.D. Pa. 2018) ("*Walgreens I*"); *Chabot v. Walgreens Boots All., Inc.*, 2019 WL 2992242, at *3 (M.D. Pa. Apr. 15, 2019) ("*Walgreens II*"); *Chabot v. Walgreens Boots All., Inc.*, 2023 WL 2908827, at *11 (M.D. Pa. Mar. 31, 2023) ("*Walgreens III*") (together, the "*Walgreens* Trilogy").

Unable to surmount this authority, the Tapestry Defendants instead erect a series of straw arguments in an attempt to cast the gravamen of Plaintiffs' securities fraud claim as the Tapestry Defendants' inability to predict the outcome of complex antitrust analysis. This fails. Under Third Circuit precedent, the Complaint, as written, amply states a claim for securities fraud. The Complaint adequately alleges that the Tapestry Defendants' statements were made "in connection with" the purchase or sale of Capri securities and that Plaintiffs have standing to bring suit against the Tapestry Defendants under Third Circuit law. The Complaint also sufficiently alleges that the Tapestry Defendants omitted material known facts regarding the level of regulatory risk inherent in the Capri Acquisition. And Plaintiffs have alleged a strong, compelling inference of scienter based on numerous non-public Tapestry records showing that the Tapestry Defendants knew that the extreme regulatory risk faced by the Capri Acquisition was far higher than what they publicly disclosed. Thus, the Tapestry Defendants' motion should be denied in its entirety.

## II.    ABBREVIATED SUMMARY OF ALLEGATIONS

### A.    The Tapestry Defendants Devised the Capri Acquisition to Eliminate Tapestry's Biggest Competitor in the Accessible Luxury Market

Tapestry and Capri are fashion firms that sell handbags through well-known subsidiary brands, including Tapestry's Coach and Kate Spade brands and Capri's Michael Kors brand. ¶2. As hundreds of pages of confidential documents reveal, the Tapestry Defendants have secretly known for almost a decade that Coach and Michael Kors were direct competitors in the well-

defined accessible luxury handbag market.  *See* ¶¶38-82.  Emails and presentations evidence that the Tapestry Defendants viewed Michael Kors as Coach's top competitor.  *See* ¶¶38-53.  Tapestry executives knew that Coach and Michael Kors directly competed for market share, *see, e.g.*, ¶¶40, 182, and secretly monitored Michael Kors's marketing campaigns, design, and pricing, *see* ¶¶38-53, 70, 75-76, 82.  Confidential benchmarking documents demonstrate that Defendants did not believe that the handbag market is fragmented; instead, they consistently distinguished between mass market, accessible luxury, and luxury brands.  *See* ¶¶54-63, 70, 74.  Defendants knew that their customers do not purchase bags at luxury price points; Tapestry executives commented that "saying we're in the same market with true luxury is a joke."  ¶¶61-62.

Tapestry executives zeroed in on Capri as an acquisition target precisely in order to eliminate Tapestry's top competition in the accessible luxury handbag market and raise prices.  *See, e.g.*, ¶¶64-69.  The Tapestry Defendants knew that their brands dominated the accessible luxury handbag market:  an internal analysis shows that Tapestry calculated their combined brands would account for 83% of the accessible luxury market.  *See* ¶33.  Numerous documents show that Tapestry executives intended to leverage the combined entity's market share power to reduce discounting and raise prices, and were aware the Capri Acquisition posed a high risk of anticompetitive effects, including cannibalization.  *See* ¶¶64-69.  Given these known facts, the Tapestry Defendants knew that the risk of adverse action by the FTC was high.  *See, e.g.*, ¶37.

### B.    The Tapestry Defendants Schemed to Fraudulently Mislead Investors as to the Level of Regulatory Risk Faced by the Capri Acquisition

On August 10, 2023, Tapestry and Capri announced the Capri Acquisition, whereby Tapestry would purchase all outstanding Capri securities for $57.00 per share.  *See* ¶1.  Upon announcing the Capri Acquisition, the Tapestry Defendants engaged in a fraudulent scheme designed to conceal the anticompetitive nature of the Acquisition from investors.  *See* ¶¶83-173.

The Tapestry Defendants deceived the market as to the true level of risk involved in the Capri Acquisition by falsely asserting that Capri and Tapestry compete in a "highly fragmented" (¶115), "$200 billion luxury market" (¶109); falsely characterizing the Capri Acquisition as pro-consumer (*see* ¶128); and misleadingly failing to disclose material facts while touting their "confiden[ce] in our ability to complete this transaction" (¶¶112, 115) in "calendar year 2024" (¶¶103-154).

When federal regulators expressed increasing interest in taking action to block the Capri Acquisition, the Tapestry Defendants stepped up their public campaign to downplay any notion of an actual anticompetitive risk. *See* ¶¶118-171. Following Tapestry's November 6, 2023 disclosure of the Second Request, the Tapestry Defendants pushed back on this countervailing news. *See* ¶¶118-130. For example, in direct response to an analyst's question on a November 9, 2023 earnings call, Crevoiserat stated: "We still expect to close the deal in fiscal '24" because "we operate in a large market … it's the $200 billion market. It's fragmented. There are low barriers to entry and the transaction is pro-consumer." ¶128. Defendants likewise maintained confidence that the deal would close in response to the market's partial revelations of the truth, including negative reporting that FTC Director Henry Liu referenced the Capri Acquisition as a potential enforcement target in comments at the 2024 ABA Antitrust Spring Meeting; and that the FTC was preparing to block the Acquisition. *See* ¶¶138-147.

Even after the FTC filed suit in federal court to enjoin the Capri Acquisition, the Tapestry Defendants continued to forcefully and falsely deny any antitrust concerns, while misrepresenting the true nature of competition between Michael Kors and Coach in the accessible luxury handbag market. *See* ¶¶148-171. In various public filings, Tapestry stated that it "expected" the Capri Acquisition "to close during calendar year 2024" because "Tapestry and Capri operate in an intensely competitive and highly fragmented industry … [and] face competitive pressures from

both lower- and higher-priced products." *See, e.g.*, ¶¶150, 155. Additionally, the Tapestry Defendants attempted to conceal their knowledge of the well-defined accessible luxury handbag market and the fierce competition between Michael Kors and Coach: (a) immediately after the FTC filed suit by removing all references to "accessible luxury" from public filings; and (b) during the preliminary injunction hearing by providing false and/or misleading testimony. *See* ¶¶86-98.

### C.    Once the Full Truth Emerges, Capri Stock Plummets

On October 24, 2024, Judge Rochon granted the FTC's motion to preliminarily enjoin the Capri Acquisition. *See* ¶172. In its order, the *Tapestry* Court cited to hundreds of pages of internal documents, which, given the confidential nature of the proceedings, were not revealed to the market until Judge Rochon issued her opinion. *See* ¶¶1, 148, 172. These documents reveal that the Tapestry Defendants secretly understood that Coach and Michael Kors compete head-to-head in the accessible luxury handbag market; Tapestry's primary rationale for the Capri Acquisition was to reduce competition; and, given these known facts, the risk of adverse action by the FTC was significantly higher than the Tapestry Defendants represented to Capri investors during the Class Period. *See* ¶172. On this news, the price of Capri stock dropped from $41.60 per share on October 24, 2024 to $21.26 per share on October 25, 2024, a nearly 50% decline on abnormally high trading volume. *See* ¶173. Analysts expressed surprise: reporting on Capri and Tapestry, Wells Fargo wrote: "In very surprising news, AMC Judge Rochon blocked the TPR/CPRI deal that was announced last Aug." *Id.* As a result of the Tapestry Defendants' wrongful acts and omissions, Plaintiffs have suffered significant losses and economic damages. *See* ¶¶186-196.

### III.    LEGAL STANDARDS

In reviewing a motion to dismiss, the Court must treat the pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). Rather than parse the allegations, the "court[] must consider the complaint

- 5 -

in its entirety." *Id.* at 322. "To state a valid claim under Rule 10b-5, a plaintiff must show that the defendant (1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 174 (3d Cir. 2000). The Complaint adequately pleads all elements.

## IV.    ARGUMENT

### A.    Plaintiffs Plead "In Connection With" and Statutory Standing as to the Tapestry Defendants

#### 1.    The Tapestry Defendants' Statements Were Made "In Connection With" the Purchase or Sale of Capri Securities

The Complaint adequately alleges a connection between the Tapestry Defendants' materially false and misleading statements and the purchase or sale of Capri securities. The Third Circuit's ruling in *Semerenko* is on point. In that case, the Third Circuit sustained §10(b) and Rule 10b-5 claims brought by investors in a target company impacted by the misleading statements of an acquirer during the pendency of a failed merger—just like the facts here. Under those facts, the Third Circuit held that the class of target stockholders "may establish the 'in connection with' element simply by showing that the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated." *Semerenko*, 223 F.3d at 176; *see also Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 301 (3d Cir. 2005) (same). Plaintiffs have satisfied this standard here. The Complaint alleges that the Tapestry Defendants disseminated their materially false and misleading statements to the market in financial reports filed with the SEC; in conference calls with financial analysts; and in interviews with the financial press—each a "medium upon which a reasonable investor would rely." *See Semerenko*, 223 F.3d at 176; ¶¶99-171.

- 6 -

### 2.    The Complaint Pleads Statutory Standing

According to the Third Circuit, "[t]he only standing limitation recognized by the Supreme Court with respect to §10(b) damage actions is the requirement that the plaintiff be a purchaser or seller of a security." *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 506 (3d Cir. 1988). Moreover, "such plaintiffs need not be in any relationship of privity with the defendant charged with misrepresentation." *Id.* It is undisputed that Plaintiffs purchased and/or sold Capri securities. Plaintiffs have therefore established standing under Third Circuit law.

The Tapestry Defendants, however, argue that this Court should deviate from established Third Circuit precedent and adopt an approach from the Second Circuit that invokes a different "purchaser-seller rule" to address standing. *See* Tapestry Mot. at 9-10 (citing *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 86, 88 (2d Cir. 2022)). The Third Circuit, however, has clearly affirmed the ability of target stockholders to bring claims for misleading statements by an acquirer during the pendency of a merger. *See Semerenko*, 223 F.3d at 176. The Tapestry Defendants ignore *Semerenko*. *See* Tapestry Mot. at 9-10. Moreover, the test laid out in *Menora* has not been accepted by any court in this Circuit and was, in fact, explicitly rejected in this Court by Magistrate Judge Hatcher as being inconsistent with Third Circuit precedent:

> [T]he Third Circuit has held that "[t]he *only* standing limitation recognized by the Supreme Court with respect to section 10(b) damage actions is the requirement that the plaintiff be a purchaser or seller of a security." *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 506 (3d Cir. 1988) (emphasis added).… The Third Circuit has not adopted the standard set forth in *Menora* or *Lucid Motors* and, thus, my analysis remains controlled by *Blue Chips* and *Deutschman*.

*Levy v. Luo*, 2025 WL 437022, at *5 (D. Del. Feb. 7, 2025).

Additionally, even if the Court were to apply *Menora* here, the statements made by the Tapestry Defendants were certainly "about" Capri securities. *See* 54 F.4th at 88 ("[T]he question is whether the plaintiff bought or sold the securities *about* which the misstatements were made.").

- 7 -

The Complaint alleges that the misstatements concerned Tapestry's completion of a transaction involving the purchase of all outstanding Capri securities. *See, e.g.*, ¶1 ("Defendants' public statements about Capri securities and the Capri Acquisition were false and misleading…."); ¶99 ("These material misstatements and omissions about Tapestry's anticipated purchase of all outstanding Capri securities….").[2]  Indeed, numerous financial analysts relied upon the Tapestry Defendants' statements when making investment recommendations for Capri. *See, e.g.*, ¶130 (Guggenheim, reporting on Capri: "Tapestry expects the transaction to close in 2024. Accordingly, we remain Neutral."); *see also* ¶¶134, 162, 165.  These facts also squarely align with the *Walgreens* Trilogy, where the Middle District of Pennsylvania denied two motions to dismiss and two motions for summary judgment, sending the case to trial.

Moreover, as described directly below, the Merger Agreement implicates Tapestry and Capri as joint makers of the statements issued by either party. *See infra* §IV.B.  Therefore, both parties can be held liable for one another's misstatements.  As such, it would make no sense to dismiss the Tapestry Defendants on standing grounds, while the Capri Defendants remain liable for the same statements, made to the same investing public, that were misleading for the same reasons.  The Tapestry Defendants do not address this issue. *See* Tapestry Mot. at 9-10.  In sum, the Complaint adequately pleads standing.

## B.    Tapestry is Also Responsible for Capri's Misleading Statements

To incur liability under Rule 10b-5, one "must have 'made' the material misstatements" at issue. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011).  "[F]or a person or entity to 'make' a statement, that person or entity must have 'ultimate authority over the

---

[2]    In contrast, in *Menora*, investors in an acquiring company asserted standing to sue a target company based on statements that the target had made about "*itself*"—the statements did not have anything to do with the issuing company or the merger. *See Menora*, 54 F.4th at 86.

statement.'"  *City of Warren Police & Fire Ret. Sys v. Prudential Fin., Inc.*, 70 F.4th 668, 688 (3d Cir. 2023) (quoting *Janus*, 564 U.S. at 142).  This Court has recognized that "[n]othing in *Janus* precludes a single statement from having multiple makers."  *Levy*, 2025 WL 437022, at *6 (quoting *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 427 (7th Cir. 2015)).

The Complaint alleges that, under the Merger Agreement, Tapestry and Capri shared "ultimate authority" over statements issued by one another.  ¶100.  The Merger Agreement provides that:  "*neither [Capri] nor [Tapestry] … shall issue or cause the publication of any press release or other public announcement or disclosure with respect to the Merger … without the prior written consent of the other Party*."  *Id.*  The Tapestry Defendants do not contest that they can be held liable for the Capri Defendants' statements.  *See* Tapestry Mot. at 11 n.11.

Courts have determined that, as here, parties who contractually consent to or approve statements issued by another may be held liable as a maker of those statements.  The Second Circuit in *Pfizer* held that a drug "Co-Promotion Agreement" was a "factor" in determining whether Pfizer had "ultimate authority" over statements issued by Pharmacia.  *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 655-58 (2d Cir. 2016).  The contract provided that: "Neither party shall originate any news release or other public announcement, written or oral, relating to the Agreements without the prior written approval of the other party."  *Tchr.'s Ret. Sys. of La. v. Pfizer, Inc.*, 2015 WL 1139640, at *26 (2d Cir. Mar. 4, 2015) (Reply Brief for Plaintiffs-Appellants).  As such, the Second Circuit held: "[T]he district court erred in determining that, as a matter of law, Pfizer lacked sufficient authority over the eight allegedly fraudulent statements that … Pharmacia employees made to the media, such that Pfizer could not have 'made' the statements…."  *Pfizer*, 819 F.3d at 657-58; *see also SEC v. Medallion Fin. Corp.*, 2024 WL 4227753, at *13 (S.D.N.Y. Sep. 18, 2024) (client and consultant shared "ultimate authority" over statements issued by consultant under

- 9 -

contract providing that the client must provide prior written approval). Accordingly, under the provisions of the Merger Agreement here, the Tapestry Defendants can be held liable for the statements issued by the Capri Defendants.

### C.    The Tapestry Defendants' Statements Made During Regulatory Review Support Liability Under Myriad Third Circuit Authority

The Complaint plausibly alleges that the Tapestry Defendants intentionally misled investors as to the level of regulatory risk faced by the Capri Acquisition. Third Circuit courts have consistently held that misleading statements made during and about ongoing regulatory review are actionable. In *Pharmacia*, the Third Circuit sustained "materially false statements about a clinical study" of pain medication. *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 344 (3d Cir. 2009). It held: "While it is true that a legitimate disagreement over scientific data does not give rise to a securities fraud claim, plaintiffs alleged something quite different: a bad faith misrepresentation of scientific data. Those allegations are sufficient to withstand the '[e]xacting pleading requirements' of the PSLRA…." *Id.* at 352.

The *Walgreens* Trilogy held similarly. As here, the plaintiffs alleged that Walgreens executives misled investors as to the level of regulatory risk faced by Walgreens's acquisition of Rite Aid. In *Walgreens I*, the court held on motion to dismiss that statements estimating the timetable for closing the deal and expressing confidence that the deal would close, among others, were actionable as they "pertain[ed] to the Walgreens Defendants' present assessment of the regulatory review process." 331 F. Supp. 3d at 425. Because the statements "were made specifically to counteract reports that the merger may not be approved," they were "more than mere statements of corporate optimism." *Id.* at 428. As such, the plaintiffs "pled sufficient facts to strongly infer that Walgreens was at least reckless in making statements that would mislead a reasonable investor about the level of regulatory risk." *Id.* The court reaffirmed its scienter finding

- 10 -

on a subsequent motion to dismiss, holding in greater detail that allegations that "Defendants knew or should have known that FTC approval was unlikely but consistently denied that they were having issues with the FTC" were sufficient. *Walgreens II*, 2019 WL 2992242, at *3.

Lastly, in *Walgreens III*, the court ruled on summary judgment that the plaintiffs' claims should proceed to trial. 2023 WL 2908827, at *15-*17. The defendants argued their statements were inactionable because: "*[F]irst*, their confidence in the merger closing was genuine, *second*, their beliefs in that respect were objectively reasonable, and *third*, they had no duty to disclose interim regulatory feedback." *Id.* at *15 (emphasis in original). Again, the court determined that the executives "did not offer mere projections; they spoke to the *present* state of the FTC approval process, expressed *present* reasons for confidence the merger would obtain approval, disputed *present* rumors and reports regarding the approval process, and expressed and implied *present* facts about that process. Once they elected to make such statements, they had the duty to do so without being misleading." *Id.* at *17 (emphasis in original) (distinguishing *Lungu v. Antares Pharma Inc.*, 2022 WL 212309, at *6 (3d Cir. Jan. 25, 2022)).

Consistent with this authority, multiple decisions from within the Third Circuit recognize that misleading statements about regulatory review are not immune from liability under the securities laws. *See, e.g.*, *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 331 (E.D. Pa. 2020) ("[A]t the time he made the statements, Soergel knew that the NDA would be deficient because he knew that Trevena's studies did not conform the primary or secondary endpoints to the FDA's requirements."); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 885 (E.D. Pa. 2018) (omitted facts "significantly impacted the chances of obtaining FDA approval").

As such, the Tapestry Defendants cannot assert the mere fact of ongoing regulatory review as a shield to liability. Throughout their motion to dismiss, the Tapestry Defendants disregard the

- 11 -

well-pleaded allegations of the Complaint to argue that Plaintiffs' claims are, at bottom, "fraud by hindsight." *See* Tapestry Mot. at 1. The Tapestry Defendants argue that they only made statements about the merits of the FTC action; that they cannot be held liable for failing to predict the outcome of the FTC action; and that they did not act with scienter because the legal outcome of the antitrust review was uncertain. *See id.* at 12-13, 21-29.

For instance, the Tapestry Defendants selectively excerpt portions of their statements—which Plaintiffs do not challenge—to argue that they are "forward-looking predictions about the outcome of the litigation." *See id* at 13.[3] Not so. Plaintiffs allege that the Tapestry Defendants misled investors as to the level of regulatory risk faced by the Capri Acquisition.[4] Likewise, relying on a series of inapposite cases, the Tapestry Defendants argue that their "very pursuit of the merger and vigorous defense of the litigation show they genuinely believed it would go through." *See* Tapestry Mot. at 20; *see also id.* at 22 n.16, 29. *Trevena* rejected this very same argument: "Soergel argues … that Trevena's continued investment in oliceridine demonstrates a belief that oliceridine would succeed.… Plaintiffs do not allege that oliceridine had no path to approval; rather, they allege that Defendants deceived investors about the increased *risk* that it would not be approved." 482 F. Supp. 3d at 333-34 (emphasis in original). Plaintiffs' allegations state a valid claim for securities fraud in the Third Circuit.

---

[3]   *Compare* ¶¶149, 151-52, *with* Tapestry Mot. at 13 ("Capri 'strongly disagrees with the FTC's decision' and 'intends to vigorously defend this case'"); *compare* ¶¶156-157, 160, 163, 166, 170, *with* Tapestry Mot. at 13 (Tapestry "'looks forward to presenting its strong legal arguments in court'").

[4]   Thus, the Tapestry Defendants' cases concerning allegations based on the merits or likely outcome of pending litigation or regulatory review are misplaced. *See* Tapestry Mot. at 13, 22-23, 29. Citations to antitrust authorities are likewise misplaced. *See id.* at 6 n.4, 12, 26, 28-29.

**D.**     **The Complaint Adequately Alleges Materially False and Misleading Statements and Omissions**

The Complaint sets forth each alleged misrepresentation and specifies the reason it was false.  That is sufficient to plead falsity.  *See Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 259 (3d Cir. 2009) (plaintiff need only "specify each allegedly misleading statement, the reason or reasons why the statement is misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity").

As described below, many of the challenged statements are plainly actionable statements of fact.  And to the extent that certain statements can be characterized as opinions, they remain actionable because the Tapestry Defendants intentionally omitted material facts concerning their contemporaneous analysis of the level of regulatory risk faced by the Capri Acquisition.  *See In re Maiden Holdings, Ltd. Sec. Litig.*, __ F.4th __, 2025 WL 2406864, at *5 (3d Cir. Aug. 20, 2025) (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86, 188-89 (2015)).  While "[a] speaker need not disclose every contrary fact … they cannot omit material facts underlying the opinion if those facts 'conflict with what a reasonable investor would take from the statement itself.'"  *Walgreens III*, 2023 WL 2908827, at *12.[5]

**1.**     **The Tapestry Defendants Made Materially False and Misleading Statements of Fact Regarding Competition in the Accessible Luxury Handbag Market**

The Tapestry Defendants' statements concerning the competition between their brands in the "luxury market" are statements of fact.  *See, e.g.*, ¶109 (Crevoiserat: "We [Tapestry and Capri] play in a resilient $200 billion luxury market…."); *see also* ¶¶115, 128, 143, 146, 149-152, 160, 163.  The "most significant difference between statements of fact and expressions of opinion is

---

[5]   Because the Tapestry Defendants can be held liable for statements issued by the Capri Defendants, *see supra* §IV.B, this section discusses all statements challenged in the Complaint.

that 'a statement of fact ("the coffee is hot") expresses certainty about a thing, whereas a statement of opinion ("I think the coffee is hot") does not.'" *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 7-8 (1st Cir. 2021) (quoting *Omnicare*, 575 U.S. at 183). The Tapestry Defendants attempt to twist these statements in order to argue alternative meanings; but such factual disputes are inappropriate on motion to dismiss. *See In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 470 n.20 (E.D. Pa. 2014).

The Tapestry Defendants' factual representations describing competition in the market are simply not the subjective beliefs contemplated by *Omnicare*. Rather, each "expresse[d] certainty" about the market in which Capri and Tapestry compete. *See Omnicare*, 575 U.S. at 183. These statements conveyed to investors that the Tapestry Defendants had detailed internal knowledge that Capri and Tapestry's brands were purportedly mid-sized firms competing in a broad, fragmented market. Financial analysts likewise understood the Tapestry Defendants' misstatements as statements of fact. *See Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1139 (N.D. Cal. 2017) (contemporaneous analyst and media reports can show how "investors interpreted Defendants' statements"); *see, e.g.*, ¶¶108, 114, 134, 159. Indeed, Crevoiserat stated these statements were based on Tapestry's market research: "*We spend time in the market and we have data* and it is intensely competitive." ¶152. Yet the Complaint alleges that confidential documents directly contradicted those representations. Those documents show that *very same research* indicated that Michael Kors and Coach in fact dominated the accessible luxury handbag market. *See, e.g.*, ¶¶106-107, 110; *see infra* §§IV.D.2, IV.F. And even if these statements are considered

- 14 -

opinions, they remain actionable as they fraudulently omitted these and other material facts.  *See*

*Maiden Holdings*, 2025 WL 2406864, at *5.[6]

### 2. The Tapestry Defendants Made Materially False and Misleading Statements and Omissions Regarding the Nature of the Acquisition

When affirmatively making a statement on any subject, thereby putting it "in play," "the

securities laws are clearly implicated if [the statement] nevertheless intentionally or recklessly

omits certain facts contradicting these representations." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272,

282 (3d Cir. 1992).  The Third Circuit recently reiterated the standard for alleging a false or

misleading opinion statement in *Maiden Holdings*, a published opinion:

> The Supreme Court identified two ways in which an opinion statement may mislead investors "about the speaker's basis for holding that view."  First, an opinion statement may mislead investors about what the speaker did by "omit[ting] material facts about the issuer's inquiry into" the facts relevant to the opinion ("inquiry theory").…  Second, an opinion statement may mislead investors about what the speaker knew by "omit[ting] material facts about the issuer's ... knowledge" of the evidence for and against the opinion ("knowledge theory").

2025 WL 2406864, at *5 (quoting *Omnicare*, 575 U.S. at 188-89).  In *Maiden Holdings*, the

plaintiff's "theory of securities fraud was that Maiden unlawfully omitted known, materially

adverse historical loss ratios that conflicted with Maiden's loss ratio estimates and loss reserve

statements as reported in SEC disclosure forms." *Id.* at *7.  The Third Circuit sustained this theory:

> [V]iewed holistically, the evidence in the current record provides the full "context" necessary to raise a genuine issue of material fact as to whether the omission of AmTrust's historical loss data was material….  Maiden's omission … is material so long as it is "significant" enough that it would, if revealed to a reasonable investor, "alter[] the 'total mix' of information" presented.

---

[6]    The Tapestry Defendants attempt to argue that these statements are opinion statements because they "were intertwined with … optimistic statements." Tapestry Mot. at 21.  This mischaracterizes Plaintiffs' allegations.  *See Carbonite*, 22 F.4th at 8 ("Defendants' … argument that investors would have understood [a] statement to be only 'an opinion about future potential,' and thus not a statement of present or historical fact, simply mischaracterizes the statement.").

- 15 -

*Id.* at \*8-\*9 (citing *Omnicare*, 575 U.S. at 190; *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988)).

Under this controlling authority, Plaintiffs have amply alleged "that [the Tapestry Defendants'] omission of [their contemporaneous analysis] when announcing its optimistic predictions would mislead investors." *Id.* The Tapestry Defendants publicly touted a misleading view of the Capri Acquisition by: (a) purporting confidence that the transaction would close; (b) claiming that the Acquisition was "pro-competitive" and "pro-consumer"; and (c) insisting that the transaction would close in 2024; all while concealing material facts concerning its level of regulatory risk. *See, e.g.*, ¶133 (Roe: "[W]e remain confident in our ability to complete the transaction.…"); *id.* (Crevoiserat: "We're making progress as we expected towards the close in this calendar year that's unchanged from our prior outlook."); ¶142 (Crevoiserat: "[W]e continue to be confident because we know that this is a transaction that is pro-consumer."); ¶146 (Tapestry "'strongly believe[s] this is a deal that deserves to clear as it is pro-consumer and pro-competitive'"). The Complaint also alleges these statements at ¶¶103-105, 109, 112, 115, 119-123, 128, 131-132, 136, 143, 155-157, 160, 166, 170.

Under the "knowledge theory" of *Omnicare*, "[t]he critical question is whether the omitted [facts were] material." *Maiden Holdings*, 2025 WL 2406864, at \*7.[7] The Complaint contains extensive allegations as to the materiality of the facts the Tapestry Defendants knew but fraudulently omitted while offering opinions on the same subjects:

- The Tapestry Defendants' primary rationale for the Capri Acquisition was to eliminate Tapestry's top competition and leverage the post-Acquisition entity's market share power to raise prices. An August 2022 M&A slide deck analyzing

---

[7] The Tapestry Defendants reliance on *In re Focus Financial Partners*, 2025 WL 961488 (D. Del. Mar. 31, 2025) is unavailing. *See* Tapestry Mot. at 19-20. There, the plaintiffs only pled vague and unspecific facts. By contrast, the Complaint is supported by hundreds of pages of confidential documents produced by Defendants.

the Capri Acquisition noted that it would present the opportunity to increase prices and reduce discounting for Michael Kors. *See, e.g.*, ¶¶33, 64-69, 106-107.

- The Tapestry Defendants secretly viewed Michael Kors as Coach's top competitor; recognized that Coach and Michael Kors directly competed for market share; and monitored Michael Kors's marketing campaigns, design, and pricing, including visiting stores to gather information. *See, e.g.*, ¶¶38-53, 106-107.

- The Tapestry Defendants did not believe that the handbag market is fragmented. Instead, they consistently distinguished between "mass market," "accessible luxury," and "luxury" brands in benchmarking documents. *See, e.g.*, ¶¶55-59, 110.

- The Tapestry Defendants knew their brands dominated the accessible luxury handbag market. Tapestry calculated that Defendants' combined brands would account for 83% of the accessible luxury market. *See, e.g.*, ¶¶33, 55-56, 110.

- The Tapestry Defendants did not believe that Michael Kors and Coach compete against mass market or luxury brands. Tapestry executives knew that accessible luxury customers do not purchase bags at luxury prices. *See, e.g.*, ¶¶58-63, 110.

The Tapestry Defendants do not even attempt to argue that these omissions are not material. Nor could they. "It is well established that information concerning a tender offer or a proposed merger may be material to persons who trade in the securities of the target company, despite the highly contingent nature of both types of transactions." *Semerenko*, 223 F.3d at 177. The Tapestry Defendants' anticompetitive rationale for the Capri Acquisition, fierce competition with Michael Kors, and dominance in the accessible luxury handbag submarket materially increased the risk that the Capri Acquisition would be subjected to regulatory enforcement. "[I]f revealed to a reasonable investor," these facts would thus undoubtedly "alter[] the total mix of information presented." *Maiden Holdings*, 2025 WL 2406864, at \*9. The Third Circuit's ruling in *Semerenko* is again on point: "In this case, the defendants' misrepresentations were incorporated into the price of [Capri] common stock inasmuch as they spoke to the likelihood that the tender offer and the proposed merger would be successful…." 223 F.3d at 179 n.9.

Materiality is further supported by the dramatic drops in Capri's stock price when the omitted facts were revealed. *See* ¶¶118, 138-140, 145, 148, 173, 186-196; *In re Constar Int'l Inc.*

- 17 -

*Sec. Litig.*, 585 F.3d 774, 783 (3d Cir. 2009) ("materiality of disclosed information may be measured post hoc by looking to the movement … of the price of the firm's stock"). Also, "[w]hile stock drop evidence is generally accepted" to demonstrate materiality in the Third Circuit, "analyst and company reports discussing [the relevant subject] are themselves probative of this issue" as well. *United States v. Schiff*, 602 F.3d 152, 171 n.26 (3d Cir. 2010); *see also United States v. Schiff*, 538 F. Supp. 2d 818, 845 (D.N.J. 2008) (analyst and market participant reactions show "what information is important to investors" and go to "the heart of the dispute about materiality"), *aff'd*, 602 F.3d 152 (3d Cir. 2010). Here, "[a]s Tapestry and Capri executives well knew, investors, analysts, and the financial media intensely followed and paid close attention to the statements offered by the companies about the status of the Capri Acquisition, including the transaction's expected date of close, competitive and consumer impact, and the scope of the relevant product markets." ¶4. "[V]iewed holistically," this evidence "provides the full 'context' necessary to" plead that the omission of these facts from the Tapestry Defendants' statements was material. *Maiden Holdings*, 2025 WL 2406864, at *8.

The statements made after Tapestry received the Second Request and after the FTC filed suit are particularly misleading. *See, e.g.*, ¶128 (Crevoiserat: Tapestry's "outlook for closing the deal is unchanged ... [w]e still expect to close the deal in fiscal '24."). The Complaint plausibly alleges that, by these points in time, the Tapestry Defendants necessarily had received contradictory feedback directly from the FTC. *See* ¶¶125-127; *see, e.g.*, *Walgreens III*, 2023 WL 2908827, at *13 ("Pessina's statements convey the merger was proceeding largely as expected.… The record, however, contains evidence suggesting the FTC approval process was not going as smoothly as anticipated, and that Pessina knew it.").

- 18 -

Additionally, the Tapestry Defendants made these statements to push back on negative reporting on the Capri Acquisition and assuage analysts' and investors' concerns. *See, e.g.*, ¶¶130, 134, 154; *see infra* §IV.F. *Walgreens I* found similar statements "made specifically to counteract reports that the merger may not be approved" were "more than mere statements of corporate optimism." 331 F. Supp. 3d at 428. Plaintiffs amply plead that the Tapestry Defendants' statements expressing confidence that the Capri Acquisition would close and claiming that the Acquisition was "pro-competitive" and "pro-consumer" were materially misleading. *See Walgreens III*, 2023 WL 2908827, at *13 ("[O]nce he made the choice to share some information and his opinions about the process, the duty arose to be forthright in his disclosures.").[8]

### E.     The Tapestry Defendants' Misrepresentations Are Not Protected by the PSLRA Safe Harbor for Forward-Looking Statements

#### 1.     The Challenged Misrepresentations Are Not Forward-Looking

The Tapestry Defendants' statements are not protected by the PSLRA safe harbor as they are simply not forward-looking.[9] For example, statements that Capri and Tapestry operate in a "fragmented," "$200 billion market" describe present facts. *See, e.g.*, ¶128; *see Walgreens I*, 331 F. Supp. 3d at 424 ("statement regarding the market profiles of the two companies represented a

---

[8]     While the Tapestry Defendants do not make this argument, *Walgreens I* dismissed "statements about the number of stores to be divested and the anticipated time table for closing the deal." 331 F. Supp. 3d at 426. The court ruled that such statements were simply "best estimates" because "Defendants openly admitted that they did not know … when the deal would close" and because the statements "evolved over time." *Id.* at 427. By contrast, the Tapestry Defendants downplayed the regulatory risk inherent in the Capri Acquisition by purporting to maintain an unwavering view that they expected the Acquisition to close in 2024. *See* ¶¶118-171. Also, unlike the initial complaint in *Walgreens*, this Complaint contains detailed facts showing that analysts relied on Defendants' statements about the anticipated timing to close.

[9]     The Tapestry Defendants do not assert, and thus waive, the bespeaks caution doctrine. *See* Tapestry Mot. at 10-17; *Laborers' Int'l Union v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). Nevertheless, this doctrine does not protect or render Defendants' statements immaterial for the reasons discussion herein.

present fact indicating that the companies' operations did not significantly overlap"). Even those statements which incorporate "linguistic cues" such as "expect," *see* Tapestry Mot. at 12, are not forward-looking because they pertain to the Tapestry Defendants' present assessment of the review process. As in the *Walgreens* Trilogy, the challenged statements

> pertain to the [Tapestry] Defendants' present assessment of the regulatory review process, including (1) their confidence that the deal would close, (2) their belief that the present posture of the review was in line with what they expected, (3) their interpretation of the FTC's attitude toward the transaction, (4) their disagreement with journalists about the review process, [and] (5) their characterization of the FTC's second request for information.… [T]hese statements relate to the [Tapestry] Defendant's present impressions about the regulatory review process.

*Walgreens I*, 331 F. Supp. 3d at 425; *see also Walgreens III*, 2023 WL 2908827, at *11 n.5 ("The challenged statements all pertain to present facts and assessments, or endeavor to contradict present news reportage. They are not forward looking.").[10] Additionally, the statements are not forward-looking because they omit and misrepresent existing facts. *See In re Majesco Sec. Litig.*, 2006 WL 2846281, at *4 (D.N.J. Sep. 29, 2006) ("[a]llegations based upon omissions of existing facts or circumstances do not constitute forward looking statements protected by the safe harbor"). The paragraphs in the Complaint alleging falsity make this clear. *See, e.g.*, ¶¶106-107, 110.

Unable to raise a substantive argument against this authority, the Tapestry Defendants instead mischaracterize the well-pleaded allegations of the Complaint by excerpting only the

---

[10] Ignoring this authority, the Tapestry Defendants rely on factually dissimilar, out-of-Circuit cases. *See* Tapestry Mot. at 11-12 (citing *Union Asset Mgmt. Holding AG v. Sandisk Corp.*, 2016 WL 406283, at *2 (N.D. Cal. Jan. 22, 2016) (statement about the effect of a merger on non-GAAP earnings); *Burges v. BancorpSouth, Inc.*, 2015 WL 4198795, at *3 (M.D. Tenn. July 10, 2015); *Water Island Event-Driven Fund, LLC v. Tribune Media Co.*, 39 F.4th 402, 405 (7th Cir. 2022) ("predictions that the merger was likely to proceed"); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011) (statements were not protected by safe harbor)). The Tapestry Defendants also misstate the holding of *Walgreens I*. As discussed above, the court there found that Walgreens' statements "[e]stimating the timetable for closing the deal" were *not* forward-looking. *Walgreens I*, 331 F. Supp. 3d at 426.

- 20 -

forward-looking portions of their statements—which Plaintiffs do not challenge—in order to mislabel the entire statement as such.  *See* Tapestry Mot. at 12.  For example, Plaintiffs allege that Crevoiserat's statement that "we're confident in our ability to complete this transaction" was false.  ¶112.  Yet, Defendants argue that her statement that the Capri Acquisition will "drive more innovation, more connectivity and really more relevance for the consumer" is an inactionable forward-looking statement.  Tapestry Mot. at 12 (citing ¶112).  The Complaint does not challenge this particular sentence.  *See* ¶99 n.184 (challenged "statements are italicized and bolded."); ¶112.

The Tapestry Defendants repeat this tactic as to multiple other statements in an attempt to evade the Third Circuit's holding that even "a mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present."[11]  *Avaya*, 564 F.3d at 255; *see also In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 213 (1st Cir. 2005) ("The mere fact that a statement contains some reference to a projection of future events cannot sensibly bring the statement within the safe harbor if the allegation of falsehood relates to non-forward-looking aspects of the statement.").  The Tapestry Defendants' attempted sleight-of-hand does not alter the fact that these statements "relate to the [Tapestry] Defendant's present impressions about the regulatory review process," and so are not "properly defined as forward-looking and, thus, they fall outside the safe harbor."  *Walgreens I*, 331 F. Supp. 3d at 425.

### 2. The Tapestry Defendants' Misrepresentations Were Not Accompanied by Sufficiently Cautionary Warnings

To the extent any statements can be characterized as forward-looking, they remain actionable as they were not accompanied by sufficient cautionary language.  Cautionary language

---

[11]  *Compare* ¶103, *with* Tapestry Mot. at 12 ("Transaction 'brings tremendous value to consumers'"); *compare* ¶¶104-105, *with* Tapestry Mot. at 12 ("Transaction 'will deliver immediate value to our shareholders'"); *compare* ¶115, *with* Tapestry Mot. at 12 ("Companies' brands 'provide optionality and diversification'").

must be "extensive yet specific … a vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored…." *Semerenko*, 223 F.3d at 182. Courts have "rejected the alleged significance of boilerplate warnings true to every company that interacts" with a particular regulatory agency. *See In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2020 WL 1479128, at *17-*18 (E.D. Pa. Mar. 25, 2020). Additionally, Third Circuit courts have found that cautionary language that does not "change[] over time to incorporate new information and risks" is insufficient. *See id.* at *17.

Where the Tapestry Defendants did issue warnings alongside statements, that language was boilerplate.[12] The cautionary language identified by Defendants provides warnings that are true to every merger and to every transaction subject to antitrust review by the FTC. In fact, Tapestry simply *copied* the cautionary language from previous unrelated mergers involving different companies.[13] For example, the cautionary language in Tapestry's August 10, 2023 Form 8-K announcing the Capri Acquisition was copied from Slack Technologies, Inc.'s December 1, 2020 Form 8-K announcing its merger with Salesforce.com, Inc. *See* Joint App'x A.[14] Tapestry failed to tailor that language for the unique issues pertaining to the Capri Acquisition. Indeed, the only

---

[12]  *See* Tapestry Mot., App'x A at Exs. 1, 3, 10-11, 16-19, 23-26, 28-35, 38-42, 44-45, 47-51 (citing ¶¶104-105, 112, 119-123, 128, 131-133, 149-150, 155-157, 163, 166, 170); Capri Mot., App'x A at Exs. A, C, H, I (citing ¶¶104, 119, 149, 163).

[13]  The plaintiffs in the Tapestry Defendants' authorities did not raise, and the courts did not consider, this argument. *See* Tapestry Mot. at 14-15 (citing *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 505 (E.D. Pa. 2018), *aff'd on other grounds sub nom.*, *Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020); *Walgreens I*, 331 F. Supp. 3d at 424).

[14]  Joint Appendix A to Plaintiffs' Oppositions to Defendants' Motions to Dismiss addresses such similarities between selected "cautionary language" and unrelated mergers. Other "cautionary language" identified by the Tapestry Defendants is omitted for the reasons discussed below.

substantive difference between the 2020 Slack disclosure and the 2023 Tapestry disclosure is that Tapestry deleted a sentence about the impacts of COVID-19. *Id.* Tapestry's "warnings" copied from unrelated mergers cannot possibly meet the Third Circuit's standard that cautionary language be "substantive and tailored." *Semerenko*, 223 F.3d at 182. Additionally, Defendants' boilerplate language did not change as the review process developed. For instance, Tapestry's cautions in its August 10, 2023 Form 8-K announcing the Capri Acquisition; November 6, 2023 Form 8-K disclosing the Second Request; and April 22, 2024 Form 8-K addressing the FTC action contain virtually identical warnings. *Compare* Joint App'x A at Entry 1 *with* Entry 9 *with* Entry 22.

The Tapestry Defendants also issued many statements without any warnings at all. Crevoiserat and Roe made numerous statements in interviews with analysts and the financial press without any cautionary language whatsoever. *See* ¶¶109, 115, 136, 142-143, 146, 151-152, 160.[15] "The standards for oral forward-looking statements are similar" to those for written forward-looking statements. *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 206 (E.D. Pa. 2021); *see also EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 873 n.3 (3d Cir. 2000). Yet, the Tapestry Defendants argue that vague and unspecific language, written by *third parties with no inside knowledge of Tapestry or the review process*, are equivalent to warnings made by the issuer. *See* Tapestry Mot. at 15-16. For instance, the Tapestry Defendants assert that a *Forbes* journalist's observation that "the Biden Administration has taken a tougher stance on mergers and acquisitions recently" is cautionary language "tailored" to the Capri Acquisition. *See* Tapestry Mot., App'x A at Ex. 37.[16] Nonsense. The Tapestry Defendants do not

---

[15]   *See also* Tapestry Mot., App'x A at Exs. 14, 20-23, 27, 36-37, 46.

[16]   The Tapestry Defendants claim that at least seven articles and analyst reports contain cautionary language. *See* Tapestry Mot., App'x A at Exs. 14, 21-22, 27, 36-37, 46. The purported cautionary language contains none of the hallmarks of cautionary language recognized by courts.

offer, and Plaintiffs have been unable to locate, any authority providing that statements made by third parties (such as journalists or analysts) may constitute cautionary language within the meaning of the PSLRA safe harbor. Indeed, such a principle would stretch the meaning of "cautionary language" beyond its limits.

> **3.** **The Tapestry Defendants' Misrepresentations Were Made by Individuals and Entities with Actual Knowledge that the Statements Were False or Misleading**

Even if the Tapestry Defendants' statements were forward-looking or accompanied by sufficiently cautionary language, these statements remain actionable because countless internal documents demonstrate that the Tapestry Defendants had actual knowledge that the statements were false or misleading. "Consistent with Third Circuit case law, an opinion about future events is actionable if it lacks a reasonable basis when made…. No manner of cautionary language can cure false statements knowingly made." *In re Veritas Software Corp. Sec. Litig.*, 2006 WL 1431209, at \*7 (D. Del. May 23, 2006). As discussed below, *infra* §IV.F, the Complaint details numerous non-public documents indicating that the Tapestry Defendants knew the Capri Acquisition faced heightened regulatory risks. As such, the Complaint adequately pleads actionable misrepresentations and omissions sufficient to overcome the PSLRA safe harbor.

> **F.** **The Complaint Pleads a Strong, Compelling Inference of Scienter**

"Scienter is satisfied by either knowledge or recklessness." *Walgreens I*, 331 F. Supp. 3d at 428. "[P]laintiffs' allegations of scienter 'need not be irrefutable, *i.e.*, of the "smoking-gun" genre.' Instead, [the Court's] inquiry is 'whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter.'" *Avaya*, 564 F.3d at 269. Scienter can be shown where the defendants "knew facts or had access to information suggesting that their public statements were not accurate." *In re EQT Corp. Sec. Litig.*, 504 F. Supp. 3d 474, 497 (W.D. Pa. 2020); *see, e.g.*, *Walgreens II*, 2019 WL 2992242, at \*3 (scienter alleged where plaintiffs plead facts showing that

- 24 -

"Defendants expressed confidence that the [FTC] would approve the merger despite indicators to the contrary" and "scrutiny from the press").

As in the *Walgreens* Trilogy, the Complaint pleads that the Tapestry Defendants fraudulently maintained confidence that the Capri Acquisition would close despite their knowledge of the true level of regulatory risk faced by the transaction. Crevoiserat, as President, CEO, and a member of the Tapestry Board, received board and executive team materials showing that Michael Kors was Coach's top competitor in the accessible luxury handbag market. *See* ¶¶182-183. Crevoiserat herself closely monitored changes in market share between Coach and Michael Kors. *See id.* Crevoiserat received materials indicating that the Capri Acquisition would reduce competition between Michael Kors and Coach in the accessible luxury handbag market—and that this was her primary rationale for the transaction. *See id.* An August 2022 M&A presentation created for Crevoiserat on Michael Kors as a potential acquisition target repeatedly noted opportunities to increase prices. *See* ¶¶65-68. Tapestry's financial advisor warned Crevoiserat that an acquisition of Michael Kors "would present cannibalization risks." ¶69. Roe, as CFO and COO, likewise received executive team materials showing that Michael Kors directly competed with Coach and Kate Spade. *See* ¶¶184-185. Roe received the August 2022 M&A presentation and the Morgan Stanley presentation. *See* ¶¶65-69. Furthermore, as a Tapestry senior executive, it is strongly inferable that Roe attended board meetings and developed or received many of the same materials shared with Crevoiserat and the Tapestry Board.[17]

---

[17]  To the extent the Complaint's individualized allegations are insufficient to allege scienter as to Roe, knowledge may be imputed as the disclosures involve Tapestry's core business. *See In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at *18 n.17 (D.N.J. Dec. 15, 2015) (statements "suggesting that the Company viewed itself as a participant in the infant formula industry" concerned a matter "central to the core business of the Company").

Disregarding this authority and the well-pled allegations of the Complaint, the Tapestry Defendants argue that Plaintiffs merely allege "scienter-by-status" and/or "group pleading" with respect to Crevoiserat and Roe. *See* Tapestry Mot. at 24-25. Not so. "[T]here can be a number of special circumstances which, taken together with an officer's position, may support a strong inference of scienter." *Avaya*, 564 F.3d at 271; *see, e.g.*, *In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 830 (D.N.J. 2006) (finding defendants' position, role in drafting statements, and access to information entitled to weight in scienter analysis). The Complaint alleges facts showing that Crevoiserat and Roe had direct roles in and knowledge of the nature of competition between Michael Kors and Coach. *See* ¶¶182-184. Crevoiserat and Roe made many of the misleading statements. *See, e.g.*, ¶¶105, 115 (Roe); ¶¶128, 142 (Crevoiserat). As such, the Tapestry Defendants' authorities are unsupportive, and their argument on corporate scienter fails.[18]

The Complaint alleges a strong inference that, in connection with its Second Request and thereafter, the FTC certainly raised serious concerns and issues directly to Defendants. ¶127; *see also Walgreens I*, 331 F. Supp. 3d at 428 ("Walgreens, by the time of the statements, had ample reason to understand that the merger was in trouble."). Yet, the Tapestry Defendants did not restrain their confidence and instead repeatedly pushed back on countervailing news. *See* ¶¶118-171; *see also Avaya*, 564 F.3d at 269 (executive "explicitly denied the existence of [the problem] in response to repeated questions about [the same issue] by analysts"); *Utesch v. Lannett Co., Inc.*, 385 F. Supp. 3d 408, 422 (E.D. Pa. 2019) (It is "significant when a high-ranking officer 'evin[ces] certitude' as to a matter, particularly where the underlying substance is being publicly questioned."). For example, after Tapestry disclosed the Second Request, Crevoiserat told an

---

[18]   *See* Tapestry Mot. at 24-25. Defendants concede that a strong inference of scienter alleged as to individual defendants may properly support a finding of corporate scienter. *See* Tapestry Mot. at 27 n.19 (citing *Christian v. BT Grp. PLC*, 2020 WL 1969941, at *8 (D.N.J. Apr. 24, 2020)).

analyst that "we remain confident in our ability to compete the transaction," because, among other things, "we operate in a large market … the $200 billion market." ¶128; *see also* ¶¶142-143, 146, 152; *Walgreens III*, 2023 WL 2908827, at *13 (Pessina "replied dismissively to a question about the FTC approval process by asserting '[n]othing has changed' other than a delay of the initial completion date and 'we don't see substantial differences from what we were expecting.'"). Indeed, Crevoiserat insinuated that she had inside knowledge contradicting negative reporting. *See, e.g.*, ¶152 ("We spend time in the market and we have data and it is intensely competitive.").

Additionally, "[e]vidence that a defendant has taken steps to cover-up a misdeed is strong proof of scienter." *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1310 (D. Utah 2007); *see also SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005) (similar); *In re Bristol-Myers Squibb Sec. Litig.*, 2005 WL 2007004, at *35 (D.N.J. Aug. 17, 2005) ("change in terminology from one draft to the next could be the source of a reasonable inference that BMS was attempting to downplay, to the public, the incidence and severity of" the issue). Here, the Complaint alleges in detail that the Tapestry Defendants took steps to cover up their knowledge of the level of regulatory risk faced by the Capri Acquisition, including removing references to "accessible luxury" from public filings and offering misleading testimony in court. *See* ¶¶83-98.

The Tapestry Defendants' alternative explanations are hardly more plausible than the strong inference of scienter pleaded in the Complaint. *See* Tapestry Mot. at 25-29. Defendants cite to a few documents underlying Plaintiffs' allegations in an attempt to contradict well-pleaded facts and seek defense-friendly inferences inappropriate here. *See Viropharma*, 21 F. Supp. 3d at 470 n.20. For example, Defendants cite to underlying presentations to argue that "other brands … constrain Tapestry's pricing." *See* Tapestry Mot. at 26-28. This factual dispute is simply wrong. The Complaint acknowledges that Michael Kors and Coach compete against smaller accessible

luxury brands, and that the submarket is ultimately constrained by the luxury and mass markets. *See, e.g.*, ¶62. An inference of scienter is far more compelling in light of documents indicating that Tapestry senior executives openly commented that "[Louis Vuitton and Gucci] are not competing with us." ¶61. Likewise, Defendants' argument that the August 2022 M&A presentation does not reflect Crevoiserat's views similarly fails in the face of communications directly authored by Crevoiserat indicating her deep knowledge of the accessible luxury market and competition between Michael Kors and Coach. *See* Tapestry Mot. at 27; *see, e.g.*, ¶182.[19]

The court in *Walgreens II* rejected similar competing inferences. 2019 WL 2992242, at *4. As here, the defendants argued that "[t]he most plausible alternative inference is that Defendants genuinely believed, albeit with cautious confidence, that their statements were accurate." *Id.* The court found that "Plaintiffs' allegations support[ed] an inference of fraudulent intent that is at least as compelling as any competing inference." *Id.* It reasoned:

> Defendants repeatedly insisted that the merger would pass regulatory review, while actively contradicting reports to the contrary.… Defendants refused to acknowledge that the merger was rapidly becoming less probable.…
>
> Plaintiffs also have made factual allegations suggesting Defendants knew or should have known of the merger's looming failure.... Given what Defendants knew or should have known, we must again conclude that Defendants were at least reckless with respect to their actionable statements.

*Id.* The Complaint thus alleges facts supporting an inference of fraudulent intent that is at least as compelling as any alternative inference.

Lastly, the Tapestry Defendants' argument that the Complaint must be dismissed because "Plaintiff[s] fail[] to allege any other indicia of scienter," such as "confidential witnesses" or a

---

[19] The Tapestry Defendants' authorities are thus not supportive. *See* Tapestry Mot. at 27-28 (citing *Nolte v. Cap. One Fin. Corp.*, 390 F.3d 311, 316 (4th Cir. 2004); *Sarafin v. BioMimetic Therapeutics, Inc.*, 2013 WL 139521, at *19 (M.D. Tenn. Jan. 10, 2013)).

"plausible motive to commit fraud," fails. Tapestry Mot. at 29-30. Plaintiffs' scienter allegations are based on now-exposed facts contained in previously confidential documents circulated within the highest levels of Tapestry. A confidential witness confirming those same facts and documents would be superfluous. Additionally, the Third Circuit has confirmed that "a general rule that motive allegations are sufficient—or necessary—is unsound." *Avaya*, 564 F.3d at 276-77. In any event, the court in *Walgreens III* rejected the same argument. *See* 2023 WL 2908827, at \*18 ("Plaintiffs identify a plausible motive: assuaging anxieties in the market and among Walgreens' shareholders while buying time to find a solution to the FTC's perceived intransigence and the increasingly bleak odds of approval.").

## G.    The Complaint Pleads Loss Causation

"Third Circuit precedent instructs that loss causation is a fact intensive inquiry which is best resolved by the trier of fact." *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432, 450 (D. Del. 2014). The Complaint need only allege a "short and plain statement … provid[ing] the defendant with fair notice" of Plaintiffs' loss causation theory. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). "[S]o long as the alleged misrepresentations were a substantial cause of the inflation in the price of a security and in its subsequent decline in value, other contributing forces will not bar recovery." *Semerenko*, 223 F.3d at 186-87.

The Complaint meets this standard by alleging that the Tapestry Defendants misrepresented the level of regulatory risk inherent in the Capri Acquisition, and that the price of Capri securities declined following: (a) the companies' November 6, 2023 disclosure of the Second Request; (b) comments by FTC Director Henry Liu at the 2024 ABA Antitrust Spring Meeting on April 11, 2024; (c) reporting on April 17, 2024 that the FTC was preparing to block the Capri Acquisition; (d) the filing of the FTC's suit on April 22, 2024; and (e) the *Tapestry* Court's decision on October 24, 2024. *See* ¶¶118, 138-140, 145, 148, 173, 186-196. No more is needed.

- 29 -

The Tapestry Defendants do not make a meaningful argument on this issue, and only write in a footnote that the last stock drop was the materialization of a known risk. *See* Tapestry Mot. at 3 n.1. This argument fails. In *Semerenko*, the Third Circuit accepted the same loss causation paradigm as alleged in this case. *See* 223 F.3d at 185-86; *see also Walgreens III*, 2023 WL 2908827, at *21 ("Those revelations relate squarely to the falsehoods and omissions alleged in this case, namely, that defendants knew in January and April 2017 that things were far more dire with the FTC than they publicly insisted."). The Complaint thus adequately alleges loss causation.

### H. The Complaint Pleads Scheme Liability

The Complaint adequately alleges scheme liability under Rule 10b-5(a) and (c). To state such a claim, a "plaintiff must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *16 (D.N.J. June 5, 2020) (sustaining scheme liability claim). As the Tapestry Defendants do not address Plaintiffs' scheme liability allegations, they have waived this issue. *See, e.g.*, ¶¶33-34, 174-175, 196, 208; *see Laborers' Int'l Union*, 26 F.3d at 398.

### I. The Complaint Pleads Claims Under §20(a)

Finally, the Tapestry Defendants make no unique argument as to control person liability and concede that this claim rises and falls with §10(b) claims. *See* Tapestry Mot. at 30. As the Complaint alleges violations of §10(b), it also pleads claims under §20(a).

## V. CONCLUSION

The Tapestry Defendants' motion to dismiss should be denied in its entirety.

DATED:  September 12, 2025

Of Counsel:

ENTWISTLE & CAPPUCCI LLP
Vincent R. Cappucci
Robert N. Cappucci
Jonathan H. Beemer
Brendan J. Brodeur
230 Park Avenue, 3rd Floor
New York, NY  10169
Telephone:  (212) 894-7200
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com
jbeemer@entwistle-law.com
bbrodeur@entwistle-law.com

– and –

Andrew J. Entwistle
Callie D. Crispin
500 W. 2nd Street, Suite 1900-16
Austin, Texas  78701
Telephone:  (512) 710-5960
aentwistle@entwistle-law.com
ccrispin@entwistle-law.com

*Counsel for Lead Plaintiff FNY Partners Fund LP, Lead Counsel for the Class and Chair of Executive Committee for the Class*

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Liaison Counsel for the Class*

Christopher H. Lyons (#5493)
ROBBINS GELLER RUDMAN
 & DOWD LLP
1521 Concord Pike, Suite 301
Wilmington, DE  19803
Telephone:  (302) 467-2660
clyons@rgrdlaw.com

*Executive Committee Member for the Class and Counsel for David R. Hurwitz*

Thomas Curry (#5877)
SAXENA WHITE P.A.
824 North Market Street, Suite 1003
Wilmington, DE 19801
Telephone:  (302) 484-0480
tcurry@saxenawhite.com

*Executive Committee Member for the Class*

- 31 -

- 32 -

David A. Knotts
Michaela Park
Jake Kalphat-Losego
ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
dknotts@rgrdlaw.com
malbert@rgrdlaw.com
jlosego@rgrdlaw.com

*Executive Committee Member for the
Class and Counsel for David R. Hurwitz*

David J. Schwartz
SAXENA WHITE P.A.
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone: (914) 437-8551
dschwartz@saxenawhite.com

– and –

Adam Warden
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
awarden@saxenawhite.com

*Executive Committee Member for the
Class*