# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE CAPRI HOLDINGS LTD. SECURITIES LITIGATION | Case No.  24-cv-1410-SB |

## ANSWERING BRIEF IN OPPOSITION TO THE CAPRI DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

**Dated: September 12, 2025**

**FARNAN LLP**
Brian E.  Farnan (Bar No.  4089)
Michael J.  Farnan (Bar No.  5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel.: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Liaison Counsel for Lead Plaintiff FNY Partners Fund LP and the Class*

[Additional counsel listed on signature block]

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

SUMMARY OF THE ALLEGATIONS ............................................................................4

LEGAL STANDARD........................................................................................................6

ARGUMENT.....................................................................................................................6

I.      THE CAPRI DEFENDANTS' MISSTATEMENTS ARE NOT INACTIONABLE
        OPINIONS .............................................................................................................7

        A.      The Market Realities Statements Are Materially Misleading.................9

        B.      The Timeline Statements Are Not Inactionable Opinions ...................12

II.     THE CAPRI DEFENDANTS' MISSTATEMENTS ARE NOT PROTECTED BY
        THE PSLRA'S FORWARD-LOOKING SAFE HARBOR................................13

        A.      The Market Realities Statements Are Not Forward-Looking...............14

        B.      The Timeline Statements Are Not Protected by the PSLRA Safe Harbor ...........16

III.    THE CAPRI DEFENDANTS' ATTEMPT TO DISCLAIM RESPONSIBILITY FOR
        STATEMENTS MADE BY TAPESTRY FAILS..............................................19

IV.     THE COMPLAINT PLEADS A STRONG, COMPELLING INFERENCE OF
        SCIENTER ...........................................................................................................20

V.      PLAINTIFFS SUFFICIENTLY PLEAD LOSS CAUSATION.......................26

VI.     THE CAPRI DEFENDANTS' STATEMENTS MADE DURING REGULATORY
        REVIEW SUPPORT LIABILITY UNDER MYRIAD THIRD CIRCUIT
        AUTHORITY .......................................................................................................27

VII.    THE COMPLAINT PLEADS SCHEME LIABILITY AGAINST THE CAPRI
        DEFENDANTS ....................................................................................................28

VIII.   PLAINTIFFS SUFFICIENTLY PLEAD SECTION 20(A) CLAIMS .............29

CONCLUSION................................................................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
554 F.3d 342 (3d Cir. 2009).......................................................................................... 27

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)........................................................................................................ 9

*Chabot v. Walgreens Boots All., Inc.*,
No. 1:18-cv-2118,  2019 WL 2992242  (M.D. Pa. Apr. 15, 2019)........................... 21, 25

*Chabot v. Walgreens Boots All., Inc.*,
No. 24-1118, 2023 WL 2908827 (M.D. Pa. Mar. 31, 2023) .................................... passim

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014)........................................................................................ 13

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)......................................................................................... 18

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) ....................................................................................... passim

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
22 F.4th 1 (1st Cir. 2021)............................................................................................... 9

*Dang v. Amarin Corp. plc*,
750 F. Supp. 3d 431 (D.N.J. 2024) ........................................................................ 11, 15

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)...................................................................................................... 26

*Elliott Assocs., L.P. v. Covance, Inc.*,
No. 00 Civ. 4115 SAS, 2000 WL 1752848 (S.D.N.Y. Nov. 28, 2000)........................... 13

*EP Medsystems, Inc. v. EchoCath, Inc.*,
235 F.3d 865 (3d Cir. 2000)........................................................................... 13, 14, 26

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ....................................................................................... 19

*Hering v. Rite Aid Corp.*,
331 F. Supp. 3d 412 (M.D. Pa. 2018)...................................................................... passim

*Ieradi v. Mylan Laboratories, Inc.*,
230 F.3d 594 (3d Cir. 2000)......................................................................................... 16

*In re Bristol-Myers Squibb Sec. Litig.*,
   No. Civ.A. 00–1990(SRC), 2005 WL 2007004 (D.N.J. Aug. 17, 2005)........................ 23

*In re Cell Pathways, Inc. Sec. Litig.*,
   No. 99-725, 2000 WL 805221 (E.D. Pa. June 20, 2000)................................................. 17

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   No. 16-6509 (ES) (CLW), 2020 WL 3026564 (D.N.J. June 5, 2020)............................ 28

*In re EQT Corp. Sec. Litig*,
   504 F. Supp. 3d 474 (W.D. Pa. 2020)............................................................................. 25

*In re Evolus Inc. Sec. Litig.*,
   No. 20 Civ. 8647 (PGG), 2024 WL 4306786 (S.D.N.Y. Sept. 26, 2024) ....................... 11

*In re Galena Biopharma, Inc. Sec. Litig.*,
   No. CV 17-929, 2019 WL 5957859 (D.N.J. Nov. 12, 2019)........................................... 18

*In re GlaxoSmithkline PLC*,
   No. 05 Civ. 3751(LAP), 2006 WL 2871968 (S.D.N.Y. Oct. 6, 2006) ............................ 15

*In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*,
   103 F. App'x 465 (3d Cir. 2004) ...................................................................................... 24

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
   No. 17-341, 2020 WL 1479128 (E.D. Pa. Mar. 25, 2020) .............................................. 18

*In re Lucent Techs., Inc. Sec. Litig.*,
   217 F. Supp. 2d 529 (D.N.J. 2002) .................................................................................. 17

*In re Maiden Holdings Ltd. Sec. Litig.*,
   No. 24-1118, 2025 WL 2406864 (3d Cir. Aug. 20, 2025) ...................................... passim

*In re Majesco Sec. Litig.*,
   No. CIV A 05CV–3557 PGS, 2006 WL 2846281 (D.N.J. Sept. 29, 2006).......... 13, 15, 17

*In re Pfizer Inc. Sec. Litig.*,
   819 F.3d 642 (2d Cir. 2016)............................................................................................. 19

*In re PTC Therapeutics, Inc. Sec. Litig.*,
   No. 16-1124 (KM) (MAH), 2017 WL 3705801 (D.N.J. Aug. 28, 2017) ........................ 28

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015)........................................................................... 24, 25

*In re Stone & Webster, Inc. Sec. Litig.*,
   414 F.3d 187 (1st Cir. 2005)....................................................................................... 14, 17

*In re Veritas Software Corp. Sec. Litig.*,
No. 04–831–SLR, 2006 WL 1431209 (D. Del. May 23, 2006) ...................................... 19

*In re ViroPharma Inc. Sec. Litig.*,
21 F. Supp. 3d 458 (E.D. Pa. 2014) ................................................................................ 20

*In re Vivendi SA Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016).............................................................................................. 17

*In re Wilmington Trust Sec. Litig.*,
29 F. Supp. 3d 432 (D. Del. 2014).................................................................................... 26

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
620 F. Supp. 3d 167 (D.N.J. 2022) ................................................................................. 16

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)...................................................................................... passim

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011).................................................................................................... 3, 19

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*,
26 F.3d 375 (3d Cir. 1994)............................................................................................... 28

*Levon v. CorMedix Inc.*,
No. 21-14020 (JXN) (CLW), 2025 WL 2400346 (D.N.J. Aug. 19, 2025)................. 13, 17

*Levy v. Luo*,
No. 23-653-GBW, 2025 WL 437022 (D. Del. Feb. 7, 2025) .......................................... 19

*Omnicare, Inc. v. Lab. Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................................ 8, 9, 11

*Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund
v. Dick's Sporting Goods, Inc.*,
No. 24-00196, 2025 WL 2325122 (W.D. Pa. Aug. 12, 2025)......................................... 21

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
351 F. Supp. 3d 874 (E.D. Pa. 2018) .............................................................................. 25

*SEC v. Lucent Techs., Inc.*,
363 F. Supp. 2d 708 (D.N.J. 2005) ................................................................................. 23

*SEC v. Medallion Fin. Corp.*,
No. 21-cv-11125 (LAK), 2024 WL 4227753 (S.D.N.Y. Sept. 18, 2024) ....................... 19

*Semerenko v. Cendant Corp.*,
223 F.3d 165 (3d Cir. 2000)...................................................................................... passim

*Shapiro v. UJB Fin. Corp.*,
    964 F.2d 272 (3d Cir. 1992)............................................................................. 7

*Skiadas v. Acer Therapeutics Inc.*,
    No. 1:19-cv-6137-GHW, 2020 WL 4208442 (S.D.N.Y. July 21, 2020).......................... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................... 6

*Tomaszewski v. Trevena, Inc.*,
    482 F. Supp. 3d 317 (E.D. Pa. 2020) ........................................................... 23, 27

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)............................................................................ 24

*Utesch v. Lannett Co., Inc.*,
    385 F. Supp. 3d 408 (E.D. Pa. 2019) ............................................................... 23

Plaintiffs FNY Partners Fund LP and David R. Hurwitz respectfully submit this memorandum of law in opposition to the Capri Defendants' Motion to Dismiss the Consolidated Complaint for Violations of the Federal Securities Laws.[1]

## **INTRODUCTION**

Internal Capri and Tapestry documents revealed in the *FTC v. Tapestry* preliminary injunction order overwhelmingly demonstrate that Capri and Tapestry agreed to merge ***specifically for the purpose of reducing competition***. Yet, as detailed in the Complaint, the Capri Defendants concealed the nature and purpose of the Capri Acquisition, misrepresented the realities of the market in which the two firms operate, and falsely portrayed the regulatory risk as modest and ordinary. The Capri Defendants thereby concealed the true anticompetitive purpose of the Capri Acquisition. This case is ***not*** simply about the failure to disclose the existence of an antitrust risk as Defendants now suggest; it is about the misstatements Defendants made in order to conceal the anticompetitive purpose of the Capri Acquisition and attendant heightened regulatory risk. As such, Plaintiffs state a valid claim under the securities laws.

The Capri Defendants misled investors by issuing four material misrepresentations that concealed their prior and contemporaneous documents and analyses to the contrary. First, when announcing the Capri Acquisition on August 10, 2023, Defendants touted a transaction timeline that assumed prompt antitrust approval, stating: "[*t*]*he transaction is anticipated to close in calendar year 2024*." ¶ 104. Yet the Capri Defendants knew this timeline was unrealistic and that

---

[1] "¶__" and "¶¶__" refer to the Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint"), filed on May 15, 2025. D.I. 32. "Capri Mot." refers to the Opening Brief in Support of the Capri Defendants' Motion to Dismiss the Consolidated Complaint. D.I. 41. "Opp. to Tapestry Mot." refers to Plaintiffs' Opposition to the Tapestry Defendants' Motion to Dismiss, filed concurrently with this brief. Unless otherwise noted: (a) all emphasis is added; (b) internal citations and quotation marks are omitted; and (c) all defined terms herein shall have the same definitions as set forth in the Complaint.

it was likely the Capri Acquisition would not even close. Second, after the FTC issued a Second Request, Defendants doubled down, stating in a November 6, 2023 press release: "***Capri continues to expect that the Transaction will be completed in calendar year 2024*** . . ." ¶ 119 (collectively, the "Timeline Statements").

Finally, after the FTC filed suit to enjoin the Capri Acquisition, the Capri Defendants continued their campaign of misinformation by making two statements that distorted the existing realities of the relevant market. Specifically, the Capri Defendants made the following false statement in press releases on April 22, 2024 and May 29, 2024:

> ***The market realities, which the government's challenge ignores, overwhelmingly demonstrate that this transaction will not limit, reduce, or constrain competition. Tapestry and Capri operate in the fiercely competitive and highly fragmented global luxury industry. Consumers have hundreds of handbag choices at every price point across all channels, and barriers to entry are low.***

¶¶ 149, 163 (collectively, the "Market Realities Statements").

Additionally, the Capri Defendants approved false and misleading public statements issued by the Tapestry Defendants, despite Capri's contractual right under the Merger Agreement to prevent such misstatements by withholding written consent. ¶ 100. And when the true extent of the regulatory risk was revealed, the price of Capri stock cratered, and Plaintiffs and other Class members suffered significant losses.

The Complaint adequately pleads the falsity of the Capri Defendants' misstatements. To the extent those misstatements can be characterized as opinions, they remain actionable as they "(i) w[ere] not sincerely believed when made; (ii) contain[ed] expressly embedded, untrue factual assertion[s]; [and]/or (iii) reasonably implie[d] untrue facts and omit[ted] appropriate qualifying language." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc*., 70 F.4th 668, 686 (3d Cir. 2023); *see In re Maiden Holdings Ltd. Sec. Litig*., 2025 WL 2406864, at *5 (3d Cir. Aug. 20,

2

2025).  Further, the misstatements are not protected by the statutory safe harbor because they are not forward-looking, lacked meaningful cautionary language, and were made with actual knowledge of their falsity.

The Complaint amply alleges actual knowledge of falsity and, alternatively, recklessness, based on contemporaneous documents, sworn testimony, and judicial findings.  The Capri Defendants' motion fundamentally mischaracterizes the scienter allegations in the Complaint.  The Complaint does not allege, or depend on, an inference that Defendants knew the Capri Acquisition was doomed to fail.  Rather, it alleges that Defendants knowingly or recklessly made false statements about the true level of regulatory risk faced by the Capri Acquisition.

In the face of these allegations, the Capri Defendants invoke a nonexistent rule to wrongly argue that, because of a purportedly known risk that the FTC would not approve the Capri Acquisition, their misstatements minimizing those risks could not have caused investor losses.  Capri Mot. at 29.  Capri's argument that the FTC's preliminary injunction merely "materialized known risks" cannot be reconciled with the reality that the Capri Defendants actively and affirmatively denied and misstated the facts that caused that risk to materialize.

In a similar fashion, the Capri Defendants also misapply *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) to suggest that they cannot be held liable for the many misstatements issued by the Tapestry Defendants.  However, as alleged in the Complaint, the Capri Defendants shared ultimate control over Tapestry's statements under the Merger Agreement, which is consistent with multiple cases interpreting *Janus*, and the Capri Defendants have no substantive answer to those allegations.

The integrity of the securities markets depends on the completeness and accuracy of issuer disclosures. The Capri Defendants' conduct undermined that foundation and caused tangible harm to investors.

## SUMMARY OF THE ALLEGATIONS

Capri is a global fashion firm that sells handbags through its subsidiary brand, Michael Kors. ¶ 2. In 2022, Capri found itself in extreme financial distress due to intense competition from its chief rival firm, Tapestry, which sells handbags through its subsidiary brands Coach and Kate Spade. ¶¶ 2-3. As Capri's efforts to compete head-to-head with Tapestry continued to fall short, the Capri Defendants accepted Tapestry's offer to acquire Capri for cash, subject to conditions, including regulatory approval. *Id*. The Capri Defendants were well aware that antitrust approval from the FTC presented a major risk to the Capri Acquisition because Tapestry was Capri's main competitor; indeed, they had internally calculated that Capri and Tapestry collectively controlled about 77% of the accessible luxury handbag market. ¶¶ 33, 64-70, 108, 135. Yet, when announcing the Capri Acquisition on August 10, 2023, Defendants suggested that the deal would sail through regulatory approval and close in 2024. ¶ 104.

Defendants' gamble did not pan out. On November 3, 2023, the FTC issued a Second Request for information in connection with its antitrust review of the transaction. ¶ 35. The Capri Defendants knew the Second Request was likely to uncover the true anticompetitive nature of the Capri Acquisition, inviting further enforcement action by the FTC and delaying or derailing the deal's closing. ¶ 35. Yet, Capri reassured the market that it still expected the transaction to close within calendar year 2024. ¶ 119. The Capri Defendants also permitted Tapestry to issue a series of misleading statements as described in Plaintiffs' Opposition to the Tapestry Motion. Financial analysts were swayed by Defendants' misstatements and relied on and repeated Defendants'

4

misstatements in making investment recommendations for Capri stock. *See*, *e.g.*, ¶¶ 130, 134, 162, 165. For example, TD Cowen analysts determined in a February 11, 2024 report that, even though "the combined market share is substantial if you chose to define the outlet market or $300-500 price band only," they did not believe that regulatory hurdles would inhibit the Capri Acquisition. ¶ 134.

The FTC, having reviewed a wide array of confidential Capri and Tapestry documents, filed suit in the United States District Court for the Southern District of New York on April 22, 2024 to block the transaction. ¶ 148. Even then, Capri continued to mislead shareholders, issuing the Market Realities Statements in a press release that day and repeating them in a press release the following month. ¶¶ 149, 163. However, as the Capri Defendants knew, the opposite was true. Capri's internal documents amply show that Tapestry and Capri dominated the accessible luxury handbag market and that the entire purpose of the Capri Acquisition was to reduce competition in that market so the merged company could raise prices. ¶¶ 1, 64-70. Capri's misstatements misled investors on the likelihood that the Capri Acquisition would obtain regulatory approval.

On October 24, 2024, following heavily redacted, confidential testimony and submissions, the Honorable Jennifer L. Rochon granted the FTC's motion to preliminarily enjoin the Capri Acquisition. ¶ 84. The 169-page opinion documented the market concentration, direct competition, and strategic intent behind the Capri Acquisition—previously known only to Defendants. ¶ 37. In its order, the *Tapestry* Court cited hundreds of pages of internal corporate documents revealing that Defendants secretly understood that: (i) their three brands compete in the "accessible luxury" handbag market, a well-defined submarket distinct from "luxury" and "mass market" handbag markets; (ii) Capri and Tapestry considered Coach and Michael Kors's accessible luxury handbags to be direct competitors; (iii) a primary rationale for the Capri

Acquisition was to reduce competition within the accessible luxury handbag market; and (iv) the risk of adverse action by the FTC was significantly higher than Defendants represented during the Class Period given these known facts. *Id*. Capri's stock collapsed following the ruling. ¶¶ 10, 193. Shareholders who relied on Capri's assurances saw their investments lose nearly half their value. ¶¶ 10, 193.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court must treat the pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Rather than parse the allegations, the "court[] must consider the complaint in its entirety." *Id*. at 322. "To state a valid claim under Rule 10b-5, a plaintiff must show that the defendant (1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 174 (3d Cir. 2000). The Complaint adequately pleads all elements.

## ARGUMENT

The Capri Defendants' motion fundamentally mischaracterizes the allegations in the Complaint and ignores, misstates, or misapplies established law holding similar allegations sufficient. Faced with overwhelming evidence of their internal knowledge about the extent to which Capri and Tapestry competed and the anticompetitive purpose of the Capri Acquisition, the Capri Defendants argue that their statements were inactionable statements of opinions. But the statements were not sincerely believed, implied untrue facts, and included expressly embedded false statements of fact. Nor are the Capri Defendants' statements entitled to protection under the PSLRA's safe harbor: the Market Realities Statements are not forward-looking, and the Timeline

6

Statements omitted present facts, were known by Defendants to be false at the time they were made, and were not accompanied by meaningful cautionary language.

The Capri Defendants' scienter and loss causation arguments also fail. First, scienter does not depend on Defendants knowing that the Capri Acquisition had no chance of approval. Rather, scienter is satisfied based on a strong inference that Defendants knew the risk of delay or non-approval was greater than they led the market to believe, and they fraudulently or recklessly concealed that risk when issuing public statements to the contrary. Second, the Complaint adequately pleads loss causation because the false statements inflated the price at which Plaintiffs bought Capri stock and deflated the price at which they sold Capri put options, resulting in economic harm. The Capri Defendants' speculation about what might have happened had the truth manifested in another way is, at best, a trial argument for reduced damages. The Capri Defendants' factual argument that they did not exercise their contractually mandated authority over many of the false statements made by the Tapestry Defendants is improperly based on untested facts outside the pleadings.

As written, the Complaint amply states a claim for securities fraud.

## I.    THE CAPRI DEFENDANTS' MISSTATEMENTS ARE NOT INACTIONABLE OPINIONS

Section 10(b) of the Exchange Act and Rule 10b-5 prohibit "any untrue statement of a material fact or [omission of] a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 259 (3d Cir. 2009). When affirmatively making a statement on any subject, thereby putting it "in play," "the securities laws are clearly implicated if [the statement] nevertheless intentionally or recklessly omits certain facts contradicting these representations." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992).

To adequately plead misstatements, a plaintiff need only "specify each allegedly misleading statement, the reason or reasons why the statement is misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Avaya*, 564 F.3d at 259. Plaintiffs easily clear this bar with respect to the four alleged misstatements made by the Capri Defendants. *See* ¶¶ 104, 119, 149, 163.

"[F]or claims under § 10(b) and Rule 10b-5, an opinion statement is misleading if it: (i) was not sincerely believed when made; (ii) contains an expressly embedded, untrue factual assertion; or (iii) reasonably implies untrue facts and omits appropriate qualifying language." *City of Warren*, 70 F.4th at 686. While "[a] speaker need not disclose every contrary fact… they cannot omit material facts underlying the opinion if those facts 'conflict with what a reasonable investor would take from the statement itself.'" *Chabot v. Walgreens Boots All., Inc.*, 2023 WL 2908827, at *12 (M.D. Pa. Mar. 31, 2023) ("*Walgreens III*").

The Third Circuit recently reiterated the standard for alleging a false or misleading opinion statement in *Maiden Holdings*:

> The Supreme Court identified two ways in which an opinion statement may mislead investors "about the speaker's basis for holding that view." … First, an opinion statement may mislead investors about what the speaker did by "omit[ting] material facts about the issuer's inquiry into" the facts relevant to the opinion ("inquiry theory") … Second, an opinion statement may mislead investors about what the speaker knew by "omit[ting] material facts about the issuer's ... knowledge" of the evidence for and against the opinion ("knowledge theory").

2025 WL 2406864, at *5 (quoting *Omnicare, Inc. v. Lab. Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015)). In *Maiden Holdings*, the plaintiff's "theory of securities fraud was that Maiden unlawfully omitted known, materially adverse historical loss ratios that conflicted with Maiden's loss ratio estimates and loss reserve statements as reported in SEC disclosure forms." 2025 WL 2406864, at *7. The Third Circuit sustained this theory:

8

> [V]iewed holistically, the evidence in the current record provides the full 'context' necessary to raise a genuine issue of material fact as to whether the omission of AmTrust's historical loss data was material…. Maiden's omission… is material so long as it is "significant" enough that it would, if revealed to a reasonable investor, "alter[] the 'total mix' of information" presented.

*Id*., at *8-9 (citing *Omnicare*, 575 U.S. at 190; *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988)).

Under this authority, the Capri Defendants publicly touted a misleading view of the Capri Acquisition by (a) claiming that Capri and Tapestry compete in a broad, fragmented market; and (b) insisting that the transaction would close in 2024; all while concealing material facts concerning its level of regulatory risk. Under the "knowledge theory" of *Omnicare*, "[t]he critical question is whether the omitted [facts were] material." *Maiden Holdings*, 2025 WL 2406864, at *7. The Complaint contains extensive allegations as to the materiality of the facts the Tapestry Defendants knew but fraudulently omitted while offering opinions on the same subjects.

### A.    The Market Realities Statements Are Materially Misleading

The Capri Defendants' Market Realities Statements are statements of fact and/or contain untrue, embedded facts within the related opinions. As the Supreme Court explained in *Omnicare*, "[a] fact is a thing done or existing or an actual happening" while "an opinion is a belief, a view, or a sentiment." *Omnicare*, 575 U.S. at 183 (cleaned up). The "most significant difference between statements of fact and expressions of opinion is that 'a statement of fact ("the coffee is hot") expresses certainty about a thing, whereas a statement of opinion ("I think the coffee is hot") does not.'" *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc*., 22 F.4th 1, 7-8 (1st Cir. 2021) (quoting *Omnicare*, 575 U.S. at 183). The Capri Defendants' factual representations describing competition in the market are simply not the subjective beliefs contemplated by *Omnicare*. Rather, each "expresse[d] certainty" about the market in which Capri and Tapestry compete. *See Omnicare*, 575 U.S. at 183.

Even if characterized as opinions, these statements remain actionable under established Third Circuit law. *See City of Warren*, 70 F.4th at 686; *Maiden Holdings*, 2025 WL 2406864, at *5-8. *First*, the Capri Defendants did not sincerely believe these statements. The Complaint alleges, based on contemporaneous documents and subsequent sworn testimony, that the Capri Defendants did not believe that the Capri Acquisition would "not limit, reduce or constrain competition" but rather understood that *the entire purpose of the transaction was to do exactly that*. ¶¶ 71-72. Nor did the Capri Defendants believe that Tapestry and Capri operated "in the fiercely competitive and highly fragmented global fashion luxury industry." ¶ 149. Rather, they privately understood and discussed internally that the two companies primarily operated in the distinct accessible luxury handbag market, that they were each other's top competitors, and had collectively cornered 77% of that market. ¶¶ 106-107, 110, 153. As discussed more fully in Section IV, *infra* (discussing scienter), the Complaint details numerous internal communications demonstrating the Capri Defendants' actual beliefs were directly contrary to these statements. ¶¶ 106-107, 110, 153. These allegations are sufficient. *See, e.g.*, *Walgreens III*, 2023 WL 2908827, at *15 (explaining that on defendants' motion for summary judgment, "[a] jury could reasonably find from this evidence that [defendant's] opinions about the status of Walgreens' relationship with the FTC and the viability of Fred's as a buyer were insincere or lacked a reasonable basis").

*Second*, as noted above, the Market Realities Statements include expressly embedded untrue factual assertions. The statements here—that the Capri Acquisition would "not limit, reduce, or constrain competition," that "Tapestry and Capri operate in a fiercely competitive and highly fragmented global fashion industry," and that "consumers have hundreds of handbag choices at every price point"—were each a false statement of "a thing existing or an actual happening." ¶¶ 149, 153, 163-64.

10

*Third*, the Market Realities Statements "reasonably impl[y]" untrue facts and omit appropriate qualifying language. *See City of Warren*, 70 F.4th at 686. Specifically, the Market Realities Statements implied that Capri and Tapestry experienced substantial competition from products at other price points. Yet, they omitted appropriate qualifying language, such as advising shareholders (i) that Capri internally defined "accessible luxury" handbags as the relevant market; (ii) that Tapestry and Capri collectively commanded 77% of that market; or (iii) that Capri's Michael Kors brand adjusted its pricing in lock-step with, or at least in direct response to, Tapestry's Coach brand but not true luxury brands. ¶¶ 106-107, 110, 153, 164. As the Third Circuit recently explained, "an opinion statement may mislead investors about what the speaker knew by 'omit[ting] material facts about the issuer's ... knowledge' of the evidence for and against the opinion." *Maiden Holdings,* 2025 WL 2406864, at *5 (quoting *Omnicare*, 575 U.S. 175 at 189) (alteration in original).

The Capri Defendants wrongly characterize the Market Realities Statements as "clearly opinions about the relevant legal analysis under the Clayton Act" and cite cases in which those defendants either predicted a positive outcome of litigation or merely reported the position they had taken in litigation.[2] Here, Capri did not merely summarize the position it was taking in litigation and/or predict the outcome of litigation. Rather, Capri affirmatively declared its view of the "Market Realities" and did so in terms that were diametrically at odds with its internal analysis. ¶¶ 106-107, 110, 153, 164.

---

[2] *See* Capri Mot. at 19 (citing *In re Evolus Inc. Sec. Litig.*, 2024 WL 4306786, at *15 (S.D.N.Y. Sept. 26, 2024) (predicting outcome of litigation over stolen bacterial strain but not claiming strain was not actually stolen); *Dang v. Amarin Corp. plc*, 750 F. Supp. 3d 431, 462 (D.N.J. 2024) (statements that litigation was going "very favorably," that its arguments were "persuasive," and that the company would make a "strong, substantive appeal" "clearly constitute[d] opinions regarding the success of the litigation, rather than statements of fact")).

### B.    The Timeline Statements Are Not Inactionable Opinions

The Capri Defendants incorrectly argue that the Timeline Statements are inactionable opinions.  Defendants' argument fails for two reasons.  *First*, the Timeline Statements were "not sincerely believed when made."  *City of Warren*, 70 F.4th at 686.  The Complaint alleges that the Capri Defendants knew from the announcement of the Capri Acquisition that the proposed deal faced major antitrust hurdles because Capri and Tapestry were each other's main competition in the "accessible luxury" handbag market and that the entire purpose of the Capri Acquisition was to reduce competition in that market.  Further, by the time of the latter Timeline Statement (November 6, 2023), the Capri Defendants knew that the FTC's Second Request was likely to uncover Capri's internal documents showing the anticompetitive nature of the Capri Acquisition, delaying it past 2024 ***or derailing it altogether***.  The Capri Defendants' true beliefs, contrary to the belief conveyed in the Timeline Statements, are clear from their internal documents, including documents authored by Defendant Idol, Defendant Edwards, and others within Capri's leadership.  *See*, *e.g.*, ¶¶ 39, 41-42, 45, 48-50, 53, 56-57, 72-73, 77-78, 88-93, 178-181.

*Second*, the Timeline Statements "reasonably impl[y] untrue facts and omit[ ] appropriate qualifying language."  *See City of Warren*, 70 F.4th at 686.  The Timeline Statements imply that the Capri Acquisition was not anticompetitive and was likely to swiftly obtain regulatory approval.  And these statements omit that, under Capri's internal view of the market, Coach and Michael Kors were each other's closest competitors, that Capri adjusted its pricing based on Tapestry's pricing, and that Capri had determined the two companies collectively commanded 77% of the accessible luxury market.  These omissions rendered the Timeline Statements, even if taken as opinions, actionably misleading.  *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 168

12

(3d Cir. 2014).[3] For this reason, the Capri Defendants' citation to the pre-*Omnicare* decision in *Elliott Associates, L.P. v. Covance, Inc.*, 2000 WL 1752848, at *2, 9 (S.D.N.Y. Nov. 28, 2000) is unavailing because that court explained, "***unless plaintiffs can sufficiently plead that the speakers were aware of contrary information at the time they expressed their opinions regarding the status of the merger***, such statements are not actionable under section 10(b) or Rule 10b–5." *Id.*, at *9. Here, the Complaint pleads exactly that, rendering the Timeline Statements actionable. *See also Levon v. CorMedix Inc.*, 2025 WL 2400346, at *17 (D.N.J. Aug. 19, 2025) ("to the extent Defendants argue that the subject statements related to DefenCath's NDA being 'on track' were opinions, the Court finds that they are actionable as they contain 'embedded' falsities").

## II. THE CAPRI DEFENDANTS' MISSTATEMENTS ARE NOT PROTECTED BY THE PSLRA'S FORWARD-LOOKING SAFE HARBOR

Under the PSLRA, "an issuer is not liable for a forward-looking statement if it is 'identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.'" *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 872-73 (3d Cir. 2000). "Courts have held that '[a]llegations based upon omissions of existing facts or circumstances do not constitute forward looking statements protected by the safe harbor of the Securities Act.'" *In re Majesco Sec. Litig.*, 2006 WL 2846281, at *4 (D.N.J. Sept. 29, 2006). Cautionary language must be "extensive yet specific… a vague or blanket (boilerplate) disclaimer

---

[3] *Walgreens I* dismissed "statements about the number of stores to be divested and the anticipated timetable for closing the deal." *Hering v. Rite Aid Corp.*, 331 F. Supp. 3d 412, 426 (M.D. Pa. 2018) ("*Walgreens I*"). The court ruled that such statements were simply "best estimates" because "Defendants openly admitted that they did not know… when the deal would close" and because the statements "evolved over time." *Id.* at 427. By contrast, the Capri Defendants downplayed the regulatory risk inherent in the Capri Acquisition by purporting to maintain an unwavering view that they expected the Capri Acquisition to close in 2024. *See* ¶¶ 118-171. Also, unlike the initial complaint in *Walgreens I*, this Complaint contains detailed facts showing that analysts relied on Defendants' statements about the anticipated timing to close.

which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored…." *Semerenko*, 223 F.3d at 182-83.[4]

The Capri Defendants' attempt to characterize their present statements as forward-looking (Capri Mot. at 15-16) fails. To the extent any of these statements can be characterized as forward-looking, they are not protected by the safe harbor, as the Complaint alleges that the Capri Defendants knew their statements were made without a reasonable basis and that those statements were not accompanied by meaningful cautionary language.

## A.    The Market Realities Statements Are Not Forward-Looking

The Capri Defendants' Market Realities Statements are not forward-looking. They are statements about purported then-existing "market realities" and what those realities demonstrated at the time. They are written in present tense—for example, "Tapestry and Capri *operate* in . . .;" "Consumers *have* hundreds. . .;" "barriers to entry *are* low"—and do not include verbal cues, such as "expect."[5]

---

[4] The Capri Defendants' argument as to the "bespeaks caution" doctrine (Capri Mot. at 18 n.13) fails for the same reasons discussed herein. *EP Medsystems*, 235 F.3d at 873-74 (The "bespeaks caution" doctrine "is essentially shorthand for the well-established principle that a statement or omission must be considered in context, so that accompanying statements may render it immaterial as a matter of law… [T]he 'bespeaks caution' doctrine, like the safe harbor provision in the Reform Act, is directed only to forward-looking statements."). Additionally, the bespeaks caution doctrine is ultimately a test of materiality, and it is improper to resolve this issue in Defendants' favor on a motion to dismiss. *See Semerenko*, 223 F.3d at 178 ("[T]he issue of materiality typically presents a mixed question of law and fact, and that the delicate assessment of inferences is generally best left to the trier of fact.").

[5] The one use of future tense is a clause in the misleading bolded language that lies within a present tense statement: "the market realities, which the government's challenge ignores, overwhelmingly demonstrate that this transaction will not limit, reduce, or constrain competition." ¶¶ 149, 163. The statement is alleged to be misleading not because of something it predicted, but because of what the existing market realities demonstrated *at the time*. ¶¶ 106-107, 110, 153, 164; *see In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 213 (1st Cir. 2005) ("The mere fact that a statement

14

Capri Defendants' cases on this point are inapposite because they involved allegations that statements were misleading because they wrongly predicted the outcome of litigation.[6]  Here, the Market Realities Statements do not predict the outcome of the litigation, and they are not alleged to be misleading on that basis.  Rather, they are false and misleading because they misrepresented and concealed then-existing facts.  ¶¶ 106-107, 110, 153, 164; *Walgreens I*, 331 F. Supp. at 424 ("statement regarding the market profiles of the two companies represented a present fact indicating that the companies' operations did not significantly overlap"); *Walgreens III*, 2023 WL 2908827, at *11 n.5 ("The challenged statements all pertain to present facts and assessments, or endeavor to contradict present news reportage. They are not forward looking.").  The mere fact that these statements were made near statements about the FTC action does not convert them into predictions about the outcome of the litigation.[7]  Moreover, the statements are not forward-looking because they omit and misrepresent existing facts.  *See Majesco*, 2006 WL 2846281, at *4 ("'[a]llegations based upon omissions of existing facts or circumstances do not constitute forward looking statements protected by the safe harbor.").  The Complaint's allegations of falsity make this clear.  *See*, *e.g.*, ¶¶ 106-107, 110.  In any event, as discussed immediately below, these statements were not accompanied by meaningful cautionary language and were made with actual knowledge of falsity.

---

contains some reference to a projection of future events cannot sensibly bring the statement within the safe harbor if the allegation of falsehood relates to non-forward-looking aspects of the statement.").

[6] *See* Capri Mot. at 13 (citing *In re GlaxoSmithkline PLC*, 2006 WL 2871968, at *10 (S.D.N.Y. Oct. 6, 2006); *Dang*, 750 F. Supp. at 467 ("each of the alleged statements about the Nevada Litigation address Amarin's intent to defend its patents, Amarin's belief and/or hope for how the litigation will proceed, Amarin's belief of whether it will succeed in the litigation and on appeal.")).

Capri Defendants' reliance on *Ieradi v. Mylan Laboratories, Inc.*, 230 F.3d 594, 599 (3d Cir. 2000) is misplaced. *Ieradi* turned on the materiality of the defendants' failure to disclose the existence and substance of two contracts, which the court found would "not have significantly altered the total mix of information available to the reasonable investor." The court noted its "serious[ ] doubt that 'the reasonable investor' possesses the depth of antitrust law expertise that would allow him or her to conclude that the contracts were susceptible to successful attack under the antitrust laws." *Id*. at 600. In contrast, the facts here—that the purpose of the Capri Acquisition was anticompetitive, that Capri and Tapestry's brands were each other's top competitors, and that they collectively commanded 77% of the accessible luxury handbag market—were material. That is, there is "a substantial likelihood that [ ] disclosure of [these facts] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id*. at 599; *see Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 192 (D.N.J. 2022) (finding unreasonable financial guidance actionable where "[t]he extraordinary risk that FDA action posed to Alaris sales in light of the product's software problems, and the lengthy period of time that BD would require to resolve these problems, were highly material"). The Capri Defendants notably do not meaningfully challenge materiality in this case. *See* Capri Mot. at 18 n.13. In sum, these statements "relate to the Defendant's present impressions about the regulatory review process," and so are not "properly defined as forward-looking and, thus, they fall outside the safe harbor." *Walgreens I*, 331 F. Supp. 3d at 425.

**B.      The Timeline Statements Are Not Protected by the PSLRA Safe Harbor**

The Capri Defendants' argument that the Timeline Statements are protected under the PSLRA safe harbor fails for three reasons. *First*, Capri's Timeline Statements addressed in paragraphs 104 and 119 of the Complaint are not purely forward-looking. Rather, they imply a present state of affairs justifying an expectation of swift regulatory approval and prompt closing.

"[A] mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present." *Avaya*, 564 F.3d at 255; *see Stone & Webster*, 414 F.3d at 213 ("The mere fact that a statement contains some reference to a projection of future events cannot sensibly bring the statement within the safe harbor if the allegation of falsehood relates to non-forward-looking aspects of the statement.").

*Levon,* 2025 WL 2400346, is on point. There, defendants argued that their statements about when they expected to obtain approval for a new drug from the FDA were protected forward-looking statements, but the court disagreed, holding "[c]ontrary to Defendants' argument, statements regarding the timing of the FDA's decision on DefenCath's NDA similarly do not fall within the PSLRA's safe harbor because Plaintiff alleges Defendants concealed adverse events and risks that occurred or were in the process of occurring." *Id.* at *15.

Likewise, here, while the statements at issue refer to an expectation about a future event, they were misleading because they omitted information about then-existing conditions, including that Capri and Tapestry viewed each other as their top competitor, that the purpose of the Capri Acquisition was to reduce competition in the accessible luxury market, and that Capri's internal documents demonstrated these existing facts. ¶¶ 107, 124; *see In re Vivendi SA Sec. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016). "Courts have held that '[a]llegations based upon omissions of existing facts or circumstances do not constitute forward looking statements protected by the safe harbor of the Securities Act.'" *Majesco*, 2006 WL 2846281, at *4; *see In re Cell Pathways, Inc. Sec. Litig.*, 2000 WL 805221, at *11 (E.D. Pa. June 20, 2000) ("allegations based upon omissions of existing facts or circumstances do not constitute forward looking statements protected by the safe harbor."); *In re Lucent Techs., Inc. Sec. Litig.*, 217 F. Supp. 2d 529, 557 (D.N.J. 2002) (finding

17

"since these statements depict, in part, the Company's past and current performance, safe-harbor protections are inapplicable"). [8]

*Second*, there is a lack of meaningful cautionary language. Capri's "boilerplate" caveats did not disclose the central truth—that Capri and Tapestry were each other's closest rivals in the accessible luxury handbag market. Courts have "rejected the alleged significance of boilerplate warnings true to every company that interacts" with a particular regulatory agency. *See In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2020 WL 1479128, at *17-18 (E.D. Pa. Mar. 25, 2020). Additionally, Third Circuit courts have found that cautionary language that does not "change[] over time to incorporate new information and risks" is insufficient. *See id.*, at *17. Here, while the Capri Defendants warned that regulatory approval was required for the Capri Acquisition to close and that it might not be obtained, this is boilerplate language that applies to every merger and to every transaction subject to antitrust review by the FTC. The Capri Defendants did not tailor that language to account for the specific and severe risk facing the Capri Acquisition due to its highly anticompetitive nature and purpose. Indeed, as discussed in Plaintiffs' Opposition to the Tapestry Motion, the Capri Defendants simply *copied* the cautionary language from previous unrelated mergers involving different companies. *See* Opp. to Tapestry Mot. at 21-24; Joint App'x A.[9] Additionally, Capri Defendants' boilerplate language did not change as the review process developed. This language, copied from other unrelated mergers, cannot possibly meet the Third

---

[8] The Capri Defendants' reliance on *City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) and *In re Galena Biopharma, Inc. Sec. Litig.*, 2019 WL 5957859, at *11 (D.N.J. Nov. 12, 2019) (Capri Mot. at 17) is also misplaced. In both cases, the defendants merely disclosed the existence of a DOJ investigation and the possible consequences, without commenting on the merits of the investigation or on the underlying realities related to those investigations, as the Capri Defendants did here.

[9] Joint Appendix A to Plaintiffs' Oppositions to Defendants' Motions to Dismiss addresses such similarities between selected "cautionary language" and unrelated mergers.

Circuit's standard that cautionary language be "substantive and tailored." *Semerenko*, 223 F.3d at 182.

*Third*, the PSLRA safe harbor does not apply to forward-looking statements made with "actual knowledge" of falsity. *See In re Veritas Software Corp. Sec. Litig.*, 2006 WL 1431209, at *20 (D. Del. May 23, 2006) ("Consistent with Third Circuit case law, an opinion about future events is actionable if it lacks a reasonable basis when made…. No manner of cautionary language can cure false statements knowingly made."). Here, as discussed further in Section IV, *infra*, the Complaint alleges Defendant Idol, Defendant Edwards, and other executives at Capri knew that the Capri Acquisition posed significant antitrust risks based on internal communications, analyses, and their own behavior, writings, and testimony. ¶¶ 39, 41-42, 45, 48-50, 53, 56-57, 72-73, 77-78, 88-93, 178-181. As such, the Complaint adequately pleads actionable misrepresentations and omissions sufficient to overcome the PSLRA safe harbor.

## III. THE CAPRI DEFENDANTS' ATTEMPT TO DISCLAIM RESPONSIBILITY FOR STATEMENTS MADE BY TAPESTRY FAILS

The Capri Defendants rely on *Janus* to argue that they cannot be liable for misstatements made by Tapestry and its executives. Capri Mot. at 23-24. Under *Janus*, a defendant is liable for a statement it "made"—*i.e.*, one it had ultimate authority over. 564 U.S. at 142. But "[n]othing in *Janus* precludes a single statement from having multiple makers." *Levy v. Luo*, 2025 WL 437022, at *6 (D. Del. Feb. 7, 2025) (quoting *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 427 (7th Cir. 2015)). Courts have determined that, as here, parties who contractually consent to or approve statements issued by another may be held liable as a maker of those statements. *See In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 655-658 (2d Cir. 2016); *SEC v. Medallion Fin. Corp.*, 2024 WL 4227753, at *14 (S.D.N.Y. Sept. 18, 2024). Here, the Merger Agreement prohibited Capri and Tapestry from making a public statement with respect to the Capri Acquisition "***without the***

19

*prior written consent of the other Party*." ¶ 100. Accordingly, the Capri Defendants can be held liable for the statements issued by the Tapestry Defendants.[10]

The Capri Defendants' argument that they lack ultimate authority over statements "made in unscripted settings" (Capri Mot. at 24) is unsupported by any authority and is, indeed, a factual dispute not ripe for resolution on a motion to dismiss. *In re ViroPharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 470 n.20 (E.D. Pa. 2014). For example, because the statements that Defendant Crevoiserat made to various news outlets were similar at each turn and were also similar to the statements filed with the SEC, it is reasonable to infer that the statements she made were scripted even if the interview setting itself might be considered "unscripted." *See*, *e.g.*, ¶¶ 112, 128. In any event, as the Capri Defendants concede, at least some of the Tapestry Defendants' statements were scripted. *See* Capri Mot. at 24; ¶¶ 120-122, 131-132, 150, 155-156, 166, 170.

## IV. THE COMPLAINT PLEADS A STRONG, COMPELLING INFERENCE OF SCIENTER

"Scienter is satisfied by either knowledge or recklessness." *Walgreens I*, 331 F. Supp. 3d at 428. "[P]laintiffs' allegations of scienter 'need not be irrefutable, *i.e.*, of the "smoking-gun" genre'… Instead, [the court's] inquiry is 'whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter.'" *Avaya*, 564 F.3d at 269. The Complaint pleads that the Capri Defendants knew that Tapestry and Capri were each other's "top" competitors, that they collectively commanded 77% of the accessible luxury market, that they adjusted pricing in lockstep, and that the purpose of the Capri Acquisition was anticompetitive. ¶¶ 33, 38-98, 174-181. As such, they knew their statements were false and would mislead investors.

Such allegations of actual knowledge of falsity adequately plead scienter in the Third Circuit. "A plaintiff can plead a strong inference of scienter where the complaint sufficiently

---

[10] For a more fulsome discussion on this point, see Plaintiffs' Opp. to Tapestry Mot. at 8-10.

alleges that the defendants 'knew facts or had access to information suggesting that their public statements were not accurate.'" *Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Dick's Sporting Goods, Inc.*, 2025 WL 2325122, at \*7 (W.D. Pa. Aug. 12, 2025); *see Chabot v. Walgreens Boots All., Inc.*, 2019 WL 2992242, at \*3 (M.D. Pa. Apr. 15, 2019) ("*Walgreens II*") (scienter alleged where plaintiffs pled facts showing that "Defendants expressed confidence that the [FTC] would approve the merger despite indicators to the contrary" and "scrutiny from the press.").

Regarding Defendant Idol and Defendant Edwards, far from alleging their knowledge based solely on their positions within Capri, the Complaint specifically alleges their respective personal knowledge of the concealed facts. With respect to Defendant Idol, the Complaint alleges:

> As alleged in detail above, contemporaneous Capri records reveal that Defendant Idol, Capri's Chairman, CEO, and member of the Capri Board, not only consistently identified Coach as Michael Kors's top competitor in the accessible luxury handbag market, but also personally directed Michael Kors's efforts to outpace Coach. Idol himself explicitly referred to Coach as "our [Michael Kors's] key competitor" and testified at the *Tapestry* preliminary injunction hearing that he "most frequently compare[s] Michael Kors handbag prices to Coach." As the *Tapestry* Court noted, "Idol monitor[ed] Coach's marketing emails so closely that his subordinates joke that he is 'the most engaged audience that Coach has.'" Idol personally directed Michael Kors executives to emulate Coach marketing campaigns, chase Coach prices and discounts, and replicate Coach handbag designs. Idol even requested that Michael Kors executives purchase Coach bags so that he could gather information about Coach's latest designs. Indeed, Idol has attended to Michael Kors's competition with Coach so closely that, on November 26, 2024, he appointed himself CEO of the brand.

> As Chairman, CEO, and member of the Capri Board, Idol was routinely presented with materials identifying Coach as Michael Kors's top competitor in the "accessible luxury" handbag market. For instance, an August 2021 presentation to the Capri Board entitled "MMK Price Increases Accessories & Footwear Global" priced Michael Kors and Coach accessories within mere dollars of one another under Michael Kors's pricing analysis. As CEO, Idol himself helped create Capri Board materials. For example, Idol participated in efforts to gather examples of "coach and kate spade racing to the bottom [with] such promotions," commenting in May 2023 on a Coach email he forwarded to Michael Kors executives: "A good one for the BOD deck."

21

¶¶ 178-179; *see* ¶¶ 39, 41-42, 45, 48-50, 53, 56, 72-73, 77-78, 93.

Regarding Defendant Edwards, the Complaint alleges:

As alleged in detail above, Defendant Edwards, as Capri's Executive Vice President, CFO, and COO, received countless materials identifying Coach as Michael Kors's top competitor in the accessible luxury handbag market. For example, Michael Kors President of Accessories & Footwear Newman Chapuis wrote to Edwards on June 4, 2021 regarding Capri's supplier: "In particular, they [Capri's supplier] shared that our biggest competitor is not facing these same dire issues" and, "[a]t some point, John [Idol] is going to want to know why our biggest competitor is not experiencing the same inventory issues as we are." Edwards was personally involved in Michael Kors's efforts to compete with Coach.

Edwards was also routinely presented materials referencing the "accessible luxury" handbag market and distinguishing between "accessible luxury" and "luxury" handbag brands. In fact, Edwards testified at the *Tapestry* preliminary injunction hearing that he instructed his colleagues to add the term "accessible luxury" to Capri Board materials. Edwards also received weekly updates from Capri Vice President of Investor Relations Davis on credit card spending trends for Michael Kors and its accessible luxury competitors Coach, Kate Spade, and Tory Burch, including on July 6, 2021; April 17, 2023; and September 6, 2023. Furthermore, as a member of Capri senior management, it is reasonably inferable that Edwards regularly attended Capri Board meetings and developed and/or received many of the same materials shared with Idol and the Capri Board. For example, both Idol and Edwards attended the August 1-2, 2023 Capri Board meeting at which Michael Kors CEO Wilmotte "discussed with the Board the U.S. leather goods market and the accessible luxury market."

¶¶ 180-181; *see* ¶¶ 39, 56, 57, 76, 88-93.[11]

The Complaint alleges a strong inference that, in connection with its Second Request and thereafter, the FTC raised serious concerns directly to Defendants. ¶¶ 125-127; *see Walgreens I*, 331 F. Supp. 3d at 428 ("Walgreens, by the time of the statements, had ample reason to understand that the merger was in trouble."). Yet, the Capri Defendants did not restrain their confidence and

---

[11] The Capri Defendants oddly criticize the lack of confidential witness statements (Capri Mot. at 26), but there is no such requirement to plead an actionable claim under the PSLRA. Here, Defendants' knowledge is demonstrated by contemporaneous documents and sworn testimony in open court, sources that are at least as probative as confidential witness accounts.

22

instead pushed back on countervailing news. ¶¶ 118-171; *see Avaya*, 564 F.3d at 269 (executive "explicitly denied the existence of [the problem] in response to repeated questions about [the same issue] by analysts"); *Utesch v. Lannett Co., Inc.*, 385 F. Supp. 3d 408, 422 (E.D. Pa. 2019) (It is "significant when a high-ranking officer 'evin[ces] certitude' as to a matter, particularly where the underlying substance is being publicly questioned.").

Additionally, "[e]vidence that a defendant has taken steps to cover-up a misdeed is strong proof of scienter." *SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005); *see In re Bristol-Myers Squibb Sec. Litig.*, 2005 WL 2007004, at *35 (D.N.J. Aug. 17, 2005) ("change in terminology from one draft to the next could be the source of a reasonable inference that BMS was attempting to downplay, to the public, the incidence and severity of" the issue). Here, the Complaint alleges in detail that the Capri Defendants took steps to conceal their knowledge of the level of regulatory risk inherent with the Capri Acquisition. *See* ¶¶ 83-98.

Faced with abundant allegations of actual personal knowledge that are supported by their own contemporaneous documents, the Capri Defendants simply mischaracterize the Complaint to argue against a strawman. *See* Capri Mot. at 24-26. Of course, Plaintiffs do not allege that Defendants knew all along that the Capri Acquisition had zero chance of success. Rather, Plaintiffs allege that Capri Defendants knew that their statements about the market realities were false and that they did not genuinely expect the Capri Acquisition to sail through antitrust approval and close in 2024. Other courts have rejected the same arguments that the Capri Defendants attempt here. *See*, *e.g.*, *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 333-34 (E.D. Pa. 2020) ("Plaintiffs do not allege that oliceridine had no path to approval; rather, they allege that Defendants deceived investors about the increased *risk* that it would not be approved.") (emphasis in original); *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 4208442, at *8 (S.D.N.Y. July 21, 2020) (rejecting

defendants' obtuse characterization of plaintiff's theory and explaining "[a]t the risk of repetition, however, [plaintiff's] theory of scienter is not that Defendants knew that the FDA would not approve EDSIVO.")

The Capri Defendants urge this Court to find that "the far more compelling inference is that Capri 'sincerely held [its] optimistic view' and believed it would prevail." (Capri Mot. at 26, quoting *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 544 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016))). This "competing inference" is not compelling and cannot possibly help Capri Defendants with the respect to the Market Realities Statements. The Market Realities Statements were not predictions that Capri and Tapestry would prevail in litigation and securing regulatory approval. They were false statements about existing facts. Accordingly, even if the Capri Defendants somehow believed they would prevail, scienter is still pled because they knew the statements were false and knew or recklessly disregarded that those false statements of facts would mislead investors about those realities and, consequently, the likelihood that the Capri Acquisition would close.

With respect to the Timeline Statements, the allegations overwhelmingly support the inference that the Capri Defendants did not believe them, especially after the FTC issued the Second Request. In light of the detailed allegations showing they knew the Capri Acquisition faced a difficult and protracted path to approval, the inference that they simply irrationally thought they would prevail, and prevail in time to close in 2024, is not more compelling than the inference of scienter. And, even if they somehow genuinely believed the statements, the Capri Defendants at least recklessly disregarded the risk that investors would be misled by the expression of such an irrationally optimistic timeline, unqualified by the many facts undercutting it. *See In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004) ("[W]hen the alleged fraud

24

is based on non-disclosure of facts, evidence that the defendants had actual knowledge of the facts is sufficient to show scienter."); *In re EQT Corp. Sec. Litig*, 504 F. Supp. 3d 474, 497 (W.D. Pa. 2020); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 905 (E.D. Pa. 2018).[12]

The court in *Walgreens II* addressed and rejected similar competing inferences. 2019 WL 2992242, at \*4. As here, the defendants argued that "[t]he most plausible alternative inference is that Defendants genuinely believed, albeit with cautious confidence, that their statements were accurate." *Id*. The court found that "Plaintiffs' allegations support[ed] an inference of fraudulent intent that is at least as compelling as any competing inference." *Id*. It reasoned:

> Defendants repeatedly insisted that the merger would pass regulatory review, while actively contradicting reports to the contrary… Defendants refused to acknowledge that the merger was rapidly becoming less probable… Plaintiffs also have made factual allegations suggesting Defendants knew or should have known of the merger's looming failure... Given what Defendants knew or should have known, we must again conclude that Defendants were at least reckless with respect to their actionable statements…

*Id*. The Complaint thus alleges facts supporting an inference of fraudulent intent that is at least as compelling as any alternative inference.

Nor are Plaintiffs required to allege that the Capri Defendants acted for pecuniary gain. *See, e.g.*, *Walgreens III*, 2023 WL 2908827, at \*18 ("Defendants ask what motive Pessina could have had for lying to the market about a deal in which he had a major pecuniary stake. Plaintiffs identify a plausible motive: assuaging anxieties in the market and among Walgreens' shareholders while buying time to find a solution to the FTC's perceived intransigence and the increasingly

---

[12] Capri Defendants' citation to *Sanofi*, 87 F. Supp. at 544, is of no avail. There, the court made the unremarkable observation that "[a]bsent 'some particularized facts to indicate that" defendants "held a private opinion different from [their] public opinions,' plaintiffs' allegations 'are simply insufficient to state a claim for securities fraud.'" *Id*. Here, the Complaint alleges facts indicating the Capri Defendants indeed were aware of facts and held opinions that contradicted their public statements.

25

bleak odds of approval."); *Avaya, Inc.*, 564 F.3d at 276-277 ("a general rule that motive allegations are sufficient—or necessary—is unsound").

## V.   PLAINTIFFS SUFFICIENTLY PLEAD LOSS CAUSATION

A complaint need only allege a "short and plain statement provid[ing] the defendant with fair notice" of Lead Plaintiffs' loss causation theory. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (applying Rule 8(a)). "So long as the alleged misrepresentations were a substantial cause of the inflation in the price of a security and in its subsequent decline in value, other contributing forces will not bar recovery." *Semerenko*, 223 F.3d at 186–87. Importantly, "Third Circuit precedent instructs that loss causation is a fact intensive inquiry which is best resolved by the trier of fact." *In re Wilmington Trust Sec. Litig.*, 29 F. Supp. 3d 432, 450 (D. Del. 2014) (citing *EP Medsystems*, 235 F.3d at 884). Plaintiffs' allegations meet these standards.

Citing no in-circuit authority, the Capri Defendants assert that the Complaint fails to allege loss causation because the market's reaction to the FTC's lawsuit and subsequent injunction was merely the materialization of a disclosed risk. Capri Mot. at 29. But loss causation can be established where the existence of a risk is known to the market while the true extent of the risk is concealed or understated by the defendants. *See Walgreens III*, 2023 WL 2908827, at *21 (finding loss causation pled under similar facts where the corrective revelations "relate squarely to the falsehoods and omissions alleged in this case, namely, that defendants knew in January and April 2017 that things were far more dire with the FTC than they publicly insisted."); *see also Walgreens I*, 331 F. Supp. 3d at 428 ("at this early stage, we find that Plaintiff has pled sufficient facts to strongly infer that Walgreens was at least reckless in making statements that would mislead a reasonable investor about the *level of* regulatory risk").

The Complaint meets this standard by alleging that the Capri Defendants misrepresented the level of regulatory risk inherent in the Capri Acquisition, and that the price of Capri securities

declined following: (a) the companies' November 6, 2023 disclosure of the Second Request; (b) comments by FTC Director Henry Liu at the 2024 ABA Antitrust Spring Meeting on April 11, 2024; (c) reporting on April 17, 2024 that the FTC was preparing to block the Capri Acquisition; (d) the filing of the FTC's suit on April 22, 2024; and (e) the *Tapestry* Court's decision on October 24, 2024. *See* ¶¶ 118, 138-40, 145, 148, 173, 186-96. No more is needed.

Here, the public did not know—and could not have known—the extent of the Capri Acquisition's antitrust peril because Defendants actively concealed that information. Capri Defendants' arguments about what might have happened had Judge Rochon issued a summary order instead of a lengthy opinion are unsupported and wholly miss the point. The vast majority of the contemporaneous evidence of falsity was not publicly disclosed until Judge Rochon issued her ruling. *See, e.g.,* ¶¶ 84, 148, 172. Plaintiffs adequately plead: that Capri Defendants' misstatements about the market realities and the timing of the Capri Acquisition's closing artificially inflated the price at which Plaintiffs bought Capri stock and deflated the price at which they sold put options; that the concealed truth caused the Capri Acquisition to fail; and that such failure caused Plaintiffs' economic harm when the stock price decreased. That is enough to plead loss causation. *Semerenko*, 223 F.3d at 186-87.

## VI. THE CAPRI DEFENDANTS' STATEMENTS MADE DURING REGULATORY REVIEW SUPPORT LIABILITY UNDER MYRIAD THIRD CIRCUIT AUTHORITY

The Complaint plausibly alleges that the Capri Defendants intentionally misled investors as to the level of regulatory risk faced by the Capri Acquisition. Multiple decisions from and within the Third Circuit have held that misleading statements made during and about ongoing regulatory review are actionable under the federal securities laws. *See, e.g., Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 351-52 (3d Cir. 2009); *Trevena*, 482 F. Supp. 3d at 323.

As such, the Capri Defendants cannot assert the mere fact of ongoing regulatory review as a shield to liability. Yet, throughout their motion, the Capri Defendants disregard the well-pleaded allegations of the Complaint to argue that Plaintiffs' claims are essentially fraud by hindsight. *See* Capri Mot. at 13-26. Not so. Plaintiffs allege that the Capri Defendants misled investors as to the level of regulatory risk faced by the Capri Acquisition. The Capri Defendants' repeated reliance on the purported knowledge of financial analysts and antitrust experts is of no avail for the same reasons. *See*, *e.g.*, Capri Mot. at 9-12; *see In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3, n.5 (D.N.J. Aug. 28, 2017) (noting that analyst reports submitted by the defendants to show market's awareness of a fact "also reiterate[d] the allegedly false or misleading information"). Plaintiffs' allegations thus state a valid claim for securities fraud in the Third Circuit.[13]

## VII.   THE COMPLAINT PLEADS SCHEME LIABILITY AGAINST THE CAPRI DEFENDANTS

The Complaint adequately alleges scheme liability under Rule 10b-5(a) and (c). *See*, *e.g.*, ¶¶ 33-34, 174-75, 196, 208. To state such a claim, a "plaintiff must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *16 (D.N.J. June 5, 2020) (permitting scheme liability claim to proceed). As the Capri Defendants do not address Plaintiffs' scheme liability allegations, they have waived this issue. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

---

[13] For a more fulsome discussion on this point, see Opp. to Tapestry. Mot. at 10-12.

28

## VIII.   PLAINTIFFS SUFFICIENTLY PLEAD SECTION 20(A) CLAIMS

The Capri Defendants do not raise any separate argument as to control person liability and concede that this claim rises and falls with Section 10(b) claims.  Capri Mot. at 30.  As the Complaint adequately alleges violations of Section 10(b), it also pleads claims under Section 20(a).

### CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court deny the Capri Defendants' motion to dismiss in its entirety.

Respectfully submitted,

Dated: September 12, 2025              **FARNAN LLP**

By:    /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Liaison Counsel for the Class*

**Of Counsel:**

Vincent R. Cappucci (*pro hac vice forthcoming*)
Robert N. Cappucci (*pro hac vice forthcoming*)
Jonathan H. Beemer (*pro hac vice forthcoming*)
Brendan B. Brodeur (*pro hac vice forthcoming*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com
jbeemer@entwistle-law.com
bbrodeur@entwistle-law.com

– and –

29

Andrew J. Entwistle (*pro hac vice forthcoming*)
Callie Crispin (*pro hac vice forthcoming*)

**ENTWISTLE & CAPPUCCI LLP**
500 W. 2nd Street, Suite 1900-16
Austin, Texas  78701
Telephone:  (512) 710-5960
aentwistle@entwistle-law.com
ccrispin@entwistle-law.com

*Counsel for Lead Plaintiff FNY Partners Fund LP,
Lead Counsel for the Class and Chair of Executive
Committee for the Class*

Christopher H. Lyons (#5493)
Tayler D. Bolton (#6640)
**ROBBINS GELLER RUDMAN
 & DOWD LLP**
1521 Concord Pike, Suite 301
Wilmington, DE  19803
Telephone:  (302) 467-2660
Email:  clyons@rgrdlaw.com
        tbolton@rgrdlaw.com

David A. Knotts
Michaela Park
Jake Kalphat-Losego
**ROBBINS GELLER RUDMAN
 & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
dknotts@rgrdlaw.com
mpark@rgrdlaw.com
jlosego@rgrdlaw.com

*Executive Committee Member for the Class and
Counsel for David R. Hurwitz*

30

**SAXENA WHITE P.A.**
David J. Schwartz (*pro hac vice forthcoming*)
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone: (914) 437-8551
dschwartz@saxenawhite.com
mduenas@saxenawhite.com

Thomas Curry (#5877)
**SAXENA WHITE P.A.**
824 North Market Street, Suite 1003
Wilmington, DE 19801
Telephone:  (302) 484-0480
tcurry@saxenawhite.com

Adam Warden (*pro hac vice forthcoming*)
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
awarden@saxenawhite.com

*Executive Committee Member for the Class*

31