# EXHIBIT 11

Table of Contents

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

# FORM 10-Q

☑  **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended March 31, 2023**
**OR**

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Commission File Number 001-37394**

# Black Knight, Inc.

(Exact name of registrant as specified in its charter)

| Delaware | 81-5265638 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification Number) |
| 601 Riverside Avenue, Jacksonville, Florida | 32204 |
| (Address of principal executive offices) | (Zip Code) |

(904) 854-5100

(Registrant's telephone number, including area code)

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol | Name of each exchange on which registered |
|---|---|---|
| Common Stock, $0.0001 par value | BKI | New York Stock Exchange |

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☑ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | ☑ | Accelerated filer | ☐ | Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
|---|---|---|---|---|---|---|---|
| | | | | | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☑

There were 156,770,562 shares outstanding of the Registrant's common stock as of May 1, 2023.

Table of Contents

such consideration. The market value of ICE common stock may fluctuate during this period as a result of a variety of factors, including general market and economic conditions, regulatory considerations, including changes in U.S. monetary policy and its effect on global financial markets and on interest rates, changes in ICE's or our business, operations and prospects, the global coronavirus pandemic and the related disruption to local, regional and global economic activity and financial markets, and the impact that any of the foregoing may have on ICE, us or the customers or other constituencies of ICE or us, many of which factors are beyond ICE's or our control. Therefore, at the time our stockholders approved the Merger Agreement (as amended by the Amendment) at the special meeting, they did not know the market value of the consideration to be received by holders of our common stock at the Effective Time of the Merger.

**_The Merger will not be completed unless important conditions are satisfied or waived._**

Specified conditions set forth in the Merger Agreement must be satisfied or waived to complete the Merger. If the conditions are not satisfied or, to the extent permitted by law, waived, the Merger will not occur or will be delayed, and we and ICE may lose some or all of the intended benefits of the Merger. The following conditions must be satisfied or, to the extent permitted by law, waived before we and ICE are obligated to complete the Merger: (i) the adoption of the Merger Agreement (as amended by the Amendment) by the affirmative vote of holders of a majority of the outstanding shares of our common stock entitled to vote thereon at the special meeting (this vote was obtained at the special meeting on April 28, 2023), (ii) the expiration or early termination of the waiting period applicable to the consummation of the Merger under the Hart-Scott Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act"), (iii) the absence of any law, injunction, order or other judgment, in each case whether temporary, preliminary or permanent, that is in effect and restrains, enjoins or otherwise prohibits the consummation of the Merger, (iv) the effectiveness of the registration statement on Form S-4 filed by ICE to register the shares of ICE common stock to be issued in the Merger (the amended registration statement was declared effective by the SEC on March 30, 2023), (v) approval for listing on the NYSE of the shares of ICE common stock to be issued in the Merger, (vi) compliance by ICE and us in all material respects with their respective obligations under the Merger Agreement that are required to be performed or complied with by the time of the closing and (vii) subject in most cases to exceptions that do not rise to the level of a Material Adverse Effect or a Parent Material Adverse Effect (each as defined in the Merger Agreement), the accuracy of representations and warranties made by us and ICE, respectively, in the Merger Agreement. The respective obligations of ICE and us to consummate the Merger are also subject to there not having occurred since the date of the Merger Agreement an event that has had or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect or a Parent Material Adverse Effect, respectively.

The failure to satisfy all of the required conditions could delay the completion of the Merger for a significant period of time or prevent it from occurring at all. There can be no assurance that the conditions to the closing of the Merger will be satisfied or waived or that the Merger will be completed. Also, subject to limited exceptions, either ICE or we may terminate the Merger Agreement, if the Merger has not been consummated on or before November 4, 2023 (the "outside date"); provided that this right to terminate the Merger Agreement will not be available to a party if the failure of that party to perform any of its obligations under the Merger Agreement has been a principal cause of or resulted in the failure of the Merger to be consummated on or before that date.

If the Merger is not completed, each of ICE's and our ongoing businesses, financial condition, financial results and stock price may be materially and adversely affected and, without realizing any of the benefits of having completed the Merger, ICE and we will be subject to a number of risks, including the following:

● the market price of our common stock or ICE common stock could decline to the extent the current market price reflects an assumption that the Merger will be completed;

● ICE or we could owe a termination fee to the other party under certain circumstances;

● if our Board of Directors seeks another business combination, our stockholders cannot be certain that we will be able to find a party willing to enter into a transaction on terms equivalent to or more attractive than the terms that ICE has agreed to in the Merger Agreement;

● time and financial and other resources committed by ours and ICE's management to matters relating to the Merger could otherwise have been devoted to pursing other beneficial opportunities;

● ICE or we may experience negative reactions from the financial markets or from their customers, suppliers or employees;

32

Table of Contents

- ICE or our current and prospective employees may experience uncertainty about their roles following the completion of the Merger, which may have an adverse effect on ICE's or our ability to attract or retain key management and other key personnel;

- ICE and we will be required to pay costs relating to the Merger, such as legal, accounting, financial advisory, financing (including the redemption by ICE of certain of its notes at a redemption price equal to 101% of par value) and printing fees, whether or not the Merger is completed; and

- ICE or we could be subject to litigation related to any failure to complete the Merger or related to any enforcement proceeding commenced against ICE or us to perform our respective obligations under the Merger Agreement.

Similarly, delays in the completion of the Merger could, among other things, result in additional transaction costs, loss of revenue or other negative effects associated with uncertainty about completion of the Merger and could materially and adversely impact each of our and ICE's ongoing businesses, financial condition and financial results.

*Regulatory clearance may not be received, may take longer than expected or may impose conditions that are not presently anticipated, that could have an adverse effect on ICE following the Merger or that are otherwise unacceptable to ICE.*

Completion of the Merger is conditioned on, among other things, the expiration or early termination of the waiting period applicable to the consummation of the Merger under the HSR Act. On March 9, 2023, the United States Federal Trade Commission (the "FTC") filed an administrative complaint challenging the Merger under the HSR Act and authorized the filing of a complaint in federal district court to pursue a preliminary injunction to prevent the consummation of the Merger pending an administrative trial, and ICE announced that ICE strongly disagrees with, and intends to vigorously oppose, the FTC's decision to challenge the Merger. On April 10, 2023, the FTC filed a parallel complaint in federal court seeking injunctive relief. The FTC seeks to block ICE and BKI from completing the Merger during the pendency of the administrative proceeding on the merits.  On April 21, 2023, the United States District Court for the Northern District of California entered a temporary restraining order that prevents ICE and BKI from consummating the Merger until 11:59 p.m. on the second business day after the Court rules on the FTC's motion for a preliminary injunction, or a date set by the Court, whichever is later. On April 25, 2023, BKI filed its response to the FTC's complaint generally denying the allegations and asserting several defenses. BKI also asserted a counterclaim against the FTC seeking declaratory and injunctive relief alleging violations of BKI's constitutional rights.

There can be no assurance as to the outcome of litigation with the FTC or that this condition to completion of the Merger will be satisfied on a timely basis or at all, and there can be no assurance that if regulatory clearance is obtained, it will not result in the imposition of conditions, limitations, obligations or restrictions that have the effect of preventing the completion of any of the transactions contemplated by the Merger Agreement, imposing additional material costs on or materially limiting the revenues of ICE following the Merger or otherwise reducing the anticipated benefits of the Merger, or result in the delay or abandonment of the Merger.

Under the Merger Agreement, ICE and we have agreed to use our respective reasonable best efforts to cause the transactions contemplated by the Merger Agreement to be consummated as soon as practicable and to obtain all approvals from any governmental entity or third party that are necessary, proper or advisable to consummate the Merger. In particular, each party has agreed to use its reasonable best efforts to take promptly any and all steps necessary to avoid, eliminate or resolve each and every impediment and obtain all clearances, consents, approvals and waivers under U.S. antitrust laws so as to enable the parties to close the Merger as soon as practicable.

Under the Merger Agreement, except as provided below, ICE is not obligated to agree to any structural or behavioral remedy that any government entity may seek to impose. There can be no assurance that regulators will not seek to impose any terms, conditions, limitations, obligations or costs, or restrictions (including a duty to agree to structural or behavioral relief) on the conduct of ICE's business following the completion of the Merger (which would include Black Knight's business) or otherwise require changes to the terms of the transactions contemplated by the Merger Agreement, or that such conditions, limitations, obligations or restrictions would not have the effect of preventing or delaying the completion of any of the transactions contemplated by the Merger Agreement, imposing additional material costs on or materially limiting the revenues of ICE following the Merger or otherwise reduce the anticipated benefits of the Merger if the Merger were consummated successfully within the expected timeframe.

In addition, at any time before or after the completion of the Merger, and notwithstanding the termination of applicable waiting periods, any state attorney general could take such action under the antitrust laws as any such party deems necessary or desirable in the public interest. Such action could include, among other things, seeking to enjoin the completion of the Merger or seeking divestiture of substantial assets of

33

Table of Contents

the parties. In addition, in some circumstances, a third party could initiate a private action under antitrust laws challenging, seeking to enjoin, or seeking to impose conditions on the Merger.

Although ICE was not obligated under the Original Merger Agreement to litigate to defend such efforts to enjoin the transaction contemplated by the Original Merger Agreement under U.S. antitrust laws, the parties, at ICE's option, were permitted to engage in litigation to obtain the clearances, consents, approvals and waivers under U.S. antitrust laws so as to enable the parties to close the Merger. Pursuant to the Amendment, ICE's obligation to use its "reasonable best efforts" to obtain U.S. antitrust clearance specifically requires ICE to (1) (a) effect the transactions contemplated by the Equity Purchase Agreement (the "Divestiture Agreement") with Constellation Web Solutions Inc., a Delaware corporation and a subsidiary of Constellation Software Inc., and ICE (solely for the purposes set forth in the Divestiture Agreement), and the ancillary agreements related thereto subject to the terms and conditions thereof and (b) if the Divestiture Agreement is terminated for any reason prior to the earlier to occur of the closing of the Merger and the termination of the Merger Agreement and at such time ICE believes, acting reasonably and in good faith and after consultation with us, that it remains possible for the closing of the Merger to occur on or prior to the outside date, use reasonable best efforts to enter into a new agreement with a new purchaser, whose acquisition of the Empower® business and the Empower® business products would not raise material antitrust concerns, and consummate the transactions contemplated thereby providing for the divestiture of the Empower® business and the Empower® business products, and (2) litigate against any governmental entity or private party challenging the Merger transactions under any U.S. antitrust law in any litigation, action or proceeding that seeks to prevent, materially impede or materially delay the consummation of the Merger and seek to have vacated, lifted, reversed or overturned any injunction or order that prohibits, prevents or restricts the consummation of the Merger. ICE and Black Knight may not prevail and may incur significant costs in defending or settling any such action.

**Item 2. Unregistered Sales of Equity Securities and Use of Proceeds**

None.

**Item 3. Defaults Upon Senior Securities**

None.

**Item 4. Mine Safety Disclosures**

Not applicable.

**Item 5. Other Information**

None.

34