UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE CAPRI HOLDINGS LTD. SECURITIES LITIGATION | Case No. 24-cv-1410-SB |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUESTS FOR JUDICIAL
<u>NOTICE AND SUBMISSION OF EXTRANEOUS DOCUMENTS</u>**

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**Date: September 12, 2025**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT.........................................................................................................3

      A.    Legal Standard ..........................................................................................3

      B.    SEC Filings, Earnings Call Transcripts, and Stock Price Data May Be
            Considered for Their Contents but Not Their Truth ................................4

      C.    Defendants' News Articles and Media Interviews Should Not Be
            Considered ................................................................................................5

      D.    Defendants' Analyst Reports Should Not Be Considered .......................7

      E.    Defendants' Internal Company Presentations Should Not Be Considered............12

      F.    The Court Filings May Not Be Considered for the Truth of the Matters
            Contained Therein....................................................................................16

III.  CONCLUSION....................................................................................................17

4917-7738-9927

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albion Eng'g Co v. Hartford Fire Ins. Co.*,
779 F. App'x 85 (3d Cir. 2019) ............................................................................... 16

*Behrens v. Arconic, Inc.*,
429 F. Supp. 3d 43 (E.D. Pa. 2019) ........................................................................... 7

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Cap. Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006) ...................................................................................... 7

*Carroll v. Celebrity Cleaning, Inc.*,
2018 WL 6725363 (M.D. Pa. Dec. 21, 2018) .......................................................... 13

*Dang v. Amarin Corp. plc*,
750 F. Supp. 3d 431 (D.N.J. 2024) ............................................................................ 8

*Doe v. Princeton Univ.*,
30 F.4th 335 (3d Cir. 2022) ....................................................................................... 2

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019) ........................................................ *passim*

*In re Amarin Corp. PLC Sec. Litig.*,
2021 WL 1171669 (D.N.J. Mar. 29, 2021) ................................................................ 4

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ................................................................................ 3, 13

*In re Cendant Corp. Litig.*,
60 F. Supp. 2d 354 (D.N.J. 1999) .............................................................................. 5

*In re Egalet Corp. Sec. Litig.*,
340 F. Supp. 3d 479 (E.D. Pa. 2018) ........................................................................ 3

*In re Integra Lifesciences Holdings Corp. Sec. Litig.*,
2025 WL 1798386 (D.N.J. June 30, 2025) ................................................................ 3

*In re Navient Corp. Sec. Litig.*,
2019 WL 7288881 (D.N.J. Dec. 30, 2019) .............................................................. 16

*In re New Century TRS Holdings, Inc.*,
502 B.R. 416 (Bankr. D. Del. 2013) .......................................................................... 7

*In re PTC Therapeutics, Inc. Sec. Litig.*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) ..................................................... 8, 10, 11

*In re Snap Inc. Sec. Litig.*,
  2018 WL 2972528 (C.D. Cal. June 7, 2018) ................................................................. 6

*In re Thoratec Corp. Sec. Litig.*,
  2006 WL 1305226 (N.D. Cal. May 11, 2006) ............................................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ........................................................................... *passim*

*Levins v. Healthcare Revenue Recovery Grp. LLC*,
  902 F.3d 274 (3d Cir. 2018)..................................................................................... 4

*Oran v. Stafford*,
  226 F. 3d 275 (3d Cir. 2000)................................................................................... 4

*Servis One, Inc. v. OKS Grp., LLC*,
  2021 WL 6069168 (E.D. Pa. May 14, 2021) .............................................................. 4

*Shupe v. Rocket Companies, Inc.*,
  660 F. Supp. 3d 647 (E.D. Mich. 2023)..................................................................... 7

*Tomaszewski v. Trevena, Inc.*,
  482 F. Supp. 3d 317. (E.D. Pa. 2020) ............................................................... 2, 5, 9

*U.S. ex rel. Spay v. CVS Caremark Corp.*,
  913 F. Supp. 2d 125 (E.D. Pa. 2012) ...................................................................... 16

*Victaulic Co. v. Tieman*,
  499 F.3d 227 (3d Cir. 2007)................................................................................... 3

Lead Plaintiff FNY Partners Fund LP and Plaintiff David Hurwitz (collectively, "Plaintiffs") respectfully submit this Opposition to the Corrected Request for Judicial Notice in Support of Motion to Dismiss filed by Defendants Tapestry Inc., Joanne C. Crevoiserat, and Scott A. Roe (the "Tapestry Defendants") and the submission of extraneous exhibits attached to a Declaration of Jacob M. Perrone by Defendants Capri Holdings Limited, John Idol, and Tom Edwards (the "Capri Defendants") (together, "Defendants" and the "Requests").[1]

## I.    INTRODUCTION

Defendants' Requests are the latest in a "concerning pattern in securities cases" of defendants seeking to exploit the judicial notice and incorporation by reference doctrines to improperly defeat "what would otherwise constitute adequately stated claims at the pleading stage." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 587 U.S. 1014, 139 S. Ct. 2615, 204 L.Ed.2d 264 (2019).  Here, the Tapestry Defendants request that the Court judicially notice and/or incorporate by reference *51 exhibits* filed in support of their Motion to Dismiss.  The Capri Defendants do not make a substantive request for judicial notice, but instead unceremoniously attach an additional *29 exhibits* to a declaration of their outside counsel.

In so doing, Defendants seek to introduce a wide variety of documents—including news articles, analyst reports, court filings, and internal corporate presentations—in an attempt to

---

[1]  "¶__" and "¶¶__" refer to the Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint"), filed on May 15, 2025.  D.I. 32.  "Tapestry Mot." and "Capri Mot." refer to Defendants' respective Opening Briefs in Support of Motion to Dismiss.  D.I. 41, 49.  "Opp. to Tapestry Mot." and "Opp. to Capri Mot." refer to Plaintiffs' respective Oppositions to the Motions to Dismiss.  Unless otherwise noted: (a) all emphasis is added; (b) internal citations and quotation marks are omitted; and (c) all defined terms herein shall have the same definitions as set forth in the Complaint.

circumvent and/or dispute the well-pled facts of the Complaint.  In a widely cited opinion, the

Ninth Circuit criticized this very conduct, holding:

> The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage.  Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.  This risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access.

*Khoja*, 899 F.3d at 998.[2]

In the instant case, Defendants collectively "pile on" *80 exhibits* to "present their own

version of the facts at the pleading stage" in contradiction of the well-pled allegations of the

Complaint.  *Id.* at 998-99.  Indeed, in one particularly glaring instance—the Tapestry Defendants'

Exhibit 15—Defendants attach an internal presentation slide which Plaintiffs have never before

seen.  Furthermore, throughout their Motions to Dismiss, Defendants quote language from an

exhibit, but then misleadingly omit other language—sometimes from the very same sentence—

that contradicts Defendants' preferred interpretation.  Granting Defendants' Requests would thus

condone such "unscrupulous use of extrinsic documents" and "risk[] premature dismissal[] of

plausible claims."  *See Khoja*, 899 F.3d at 998.  Accordingly, the Court should deny the request as

to the Tapestry Defendants' Exhibits 4-7, 9, 12, 14, 20-23, 27, 36, 37, 46 and the Capri Defendants'

Exhibits L-R, V-Z, AA-CC, and should not consider any arguments in Defendants' Motions to

---

2    *Khoja* is good law in the Third Circuit.  The Third Circuit has cited *Khoja* as being consistent with Third Circuit law on the incorporation by reference doctrine.  *See, e.g.*, *Doe v. Princeton Univ.*, 30 F.4th 335, 343 n.8 (3d Cir. 2022).  The Eastern District of Pennsylvania has applied *Khoja* when ruling on a motion to dismiss securities claims.  *See Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 328-29. (E.D. Pa. 2020).

Dismiss that are premised upon the truth of the matters contained within, or Defendants' factual interpretation of, Defendants' extraneous exhibits.

## II.    ARGUMENT

### A.    Legal Standard

As a general rule, "a district court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) 'may not consider matters extraneous to the pleadings' without converting the motion into one for summary judgment." *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 496 (E.D. Pa. 2018) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Limited exceptions to that rule allow courts to consider: "(1) Exhibits attached to the complaint; (2) Matters of public record; and (3) Undisputedly authentic documents integral to or explicitly relied upon in the complaint." *Id.* Courts may also consider "items subject to judicial notice." *In re Integra Lifesciences Holdings Corp. Sec. Litig.*, 2025 WL 1798386, at *12 (D.N.J. June 30, 2025).

In securities class actions, like this one, courts should take judicial notice "sparingly at the pleading stage," and "[o]nly in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at that point." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007). Judicial notice may be taken when a fact is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, "a court cannot take judicial notice of disputed facts." *Khoja*, 899 F. 3d at 999; *see also id.* at 1000 (courts cannot judicially notice documents that are "subject to varying interpretations" and when there is "a reasonable dispute as to what [they] establish[]").

- 3 -

Under "incorporation by reference," a court can consider "'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018). But "[t]he mere fact that the documents are referenced or quoted" in a complaint does not automatically render them appropriate for consideration on a motion to dismiss. *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *11 (D.N.J. Dec. 27, 2019). Requests for incorporation by reference should be denied where defendants use the documents for inappropriate merits-based arguments and factual assertions. *Id.* ("[T]he inferences that Defendants wish to draw from these documents are inappropriate at this juncture … Defendants largely point to these documents to establish substantive merits-based defenses."); *Servis One, Inc. v. OKS Grp., LLC*, 2021 WL 6069168, at *1 n.1 (E.D. Pa. May 14, 2021) (quoting *Khoja*, 899 F.3d at 998, and declining to consider emails attached to motion to dismiss that were referenced in complaint).

**B.     SEC Filings, Earnings Call Transcripts, and Stock Price Data May Be Considered for Their Contents but Not Their Truth**

Plaintiffs acknowledge that the Court may consider SEC filings, conference call transcripts, and stock price data referenced in the Complaint. *See* Tapestry Defendants' Exs. 1-4, 10, 16-17, 19, 24-25, 28-34, 38-44, 47-51 (SEC filings); Ex. 5, 8 (stock price data); Ex. 11, 18, 26, 35, 45 (earnings call transcripts); Capri Defendants' Exs. A-C, F-K, S-U (SEC filings). Though the Court may judicially notice these documents, they "cannot be offered 'to prove the truth of their contents but only to determine what the documents stated.'" *In re Amarin Corp. PLC Sec. Litig.*, 2021 WL 1171669, at *8 (D.N.J. Mar. 29, 2021) (citing *Oran v. Stafford*, 226 F. 3d 275, 289 (3d Cir. 2000)).

The Capri Defendants' so-called "FACTUAL BACKGROUND" section of their motion to dismiss brief underscores this problem. *See* Capri Mot. at 3-11. In that eight-page section, the Capri Defendants cite to *24* extraneous exhibits simply to spin an alternative story based on

- 4 -

alternative facts pulled from their extraneous documents.  But that is not the purpose of the judicial notice and incorporation by reference doctrines, particularly at the pleading stage.  *See In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 365 (D.N.J. 1999) ("a court may consider documents which are required to be filed with the SEC and are actually filed with the SEC 'only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents.'").

The ruling in *Trevena* is on point:  "Because '[o]nly in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at [the pleading stage],' the Court will not deny Plaintiffs the opportunity for discovery to respond to Defendants' 'new version of the facts' based on these documents."  *Trevena*, 482 F. Supp. 3d at 329 (granting motion to strike extraneous exhibits while denying motion to dismiss securities claims).  So too here, the Court should disregard any factual arguments based on these extraneous exhibits.

## C.   Defendants' News Articles and Media Interviews Should Not Be Considered

Defendants request that the Court consider multiple news articles under the incorporation by reference doctrine or through judicial notice.  *See* Tapestry Def. Exs. 6, 14, 20-23, 37; Capri Def. Exs. N, W, Y-Z.  While the Complaint references portions of these articles, "[t]he mere fact that the documents are referenced or quoted" does not automatically render them appropriate for consideration on a motion to dismiss.  *Johnson & Johnson*, 2019 WL 7207491, at *11.  Rather, "[t]o the extent that the district court judicially noticed the … [exhibit] … to determine what the investors knew …, the district court abused its discretion" where "[r]easonable people could debate what exactly this [exhibit] disclosed" and "there is a reasonable dispute as to what the [exhibit] establishes."  *Khoja*, 899 F. 3d at 1000.

Here, for example, the Tapestry Defendants seek to introduce Exhibit 6, an April 22, 2024 *Bloomberg* article, to support defense-friendly factual inferences contrary to Plaintiffs' well-pled allegations. The Tapestry Defendants cite to this article for the "fact" that the FTC and the DOJ have "brought the highest number of merger challenges since the U.S. began requiring antitrust reviews before deals close in 1976," and that the regulators' success in these cases has been "mixed." Tapestry Mot. at 5. Defendants tout this article as purported evidence that the market recognized that the FTC's enforcement posture posed "an evolving risk," and that investors thus understood the level of regulatory risk faced by the Capri Acquisition. *Id.* The Capri Defendants make similar arguments based on their Exhibits N and Z. This is improper. Judicial notice cannot be used to establish the contested truth of merits-based defenses. *See In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *4 n.12 (C.D. Cal. June 7, 2018) (rejecting defendants' request for judicial notice of news articles to show "the market understood" the alleged omissions because "the articles also may lack material facts about the omitted matters"); *In re Thoratec Corp. Sec. Litig.*, 2006 WL 1305226, at *4 (N.D. Cal. May 11, 2006) (declining to take judicial notice of materials outside complaint submitted by defendants in support of "truth on the market" defense because doing so would "constitute an impermissible use of a judicially noticed fact").

The Tapestry Defendants also seek judicial notice and/or incorporation by reference of six additional news articles which they inaccurately characterize as containing "meaningful cautionary language." *See* Tapestry Mot. at 16-17 (citing Ex. 14, 20, 21, 22, 23, 37). Yet, to do so, the Tapestry Defendants misleadingly quote from these articles and even fabricate such language. For instance, the Tapestry Defendants cite to Exhibit 14, an April 22, 2024 *Reuters* article, to assert that the reporter's unsourced opinion that "investors are skeptical of the deal winning approval" constitutes cautionary language sufficient to immunize Crevoiserat's statements during an

interview from liability under the PSLRA's safe harbor. *See* Tapestry Mot. at 16. However, Defendants omit the rest of the sentence: "most analysts expect the deal to close before August 10." Tapestry Mot. at 16. Under these circumstances, judicial notice is simply inappropriate. *See, e.g.*, *In re New Century TRS Holdings, Inc.*, 502 B.R. 416, 423 (Bankr. D. Del. 2013) (declining to take notice of news articles, noting that "[t]he facts to be gleaned from these articles are not facts that can be 'accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'").

Defendants' Requests should be rejected as to these articles. *See Khoja*, 899 F. 3d at 1000; *Johnson & Johnson*, 2019 WL 7207491, at *11; *see also Behrens v. Arconic, Inc.*, 429 F. Supp. 3d 43, 48 n.9 (E.D. Pa. 2019) (declining to draw factual conclusions that were reasonably contested and central to the plaintiff's theories of liability). And if the Court chooses to take judicial notice of any of these articles, it should only take notice that these articles were "in the public realm at the time, not whether the contents of those articles [are] in fact true." *Benak ex rel. Alliance Premier Growth Fund v. Alliance Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006).

### D.      Defendants' Analyst Reports Should Not Be Considered

Defendants seek judicial notice or incorporation by reference of 12 analyst reports referenced in the Complaint. *See* Tapestry Def. Exs. 7, 27, 36, 46; Capri Def. Exs. L-M, O-R, V-X. None are properly subject to consideration under either doctrine. Courts have denied judicial notice of analyst reports because they are reasonably disputable under Fed. R. Evid. 201(b). *See Shupe v. Rocket Companies, Inc.*, 660 F. Supp. 3d 647, 664-65 (E.D. Mich. 2023) (declining to notice analyst report that reflected the analysts "personal opinions"; stated that "its accuracy is not guaranteed"; conceded the possibility of bias; and was not publicly available to investors on the internet). Additionally, judicial notice of analyst reports should be denied where, as here, defendants' arguments "go beyond the mere existence of statements within them," such as "what

[the Company] actually believed" and "what the investing public actually believed" as "[s]uch contentions cannot properly be weighed on a motion to dismiss." *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3 n.5 (D.N.J. Aug. 28, 2017); *see also Dang v. Amarin Corp. plc*, 750 F. Supp. 3d 431, 455-56 (D.N.J. 2024) (declining to consider analyst reports where the defendants relied on the document "for the truth of the analysts' statements that Amarin's litigation position was strong and that Individual Defendants' statements about the litigation were reasonable").

The Capri Defendants submitted eight analyst reports, not in order to claim that Plaintiffs misrepresented or otherwise misconstrued the actual text of any document, but to use other portions of the document to quarrel with the well-pleaded allegations of the Complaint. Take the Capri Defendants' Exhibit Q, for instance. Exhibit Q is an analyst report issued by Telsey Advisory Group ("TAG") recommending a "Market Perform" rating *on Capri Securities*, during the pendency of the Capri Acquisition. The Complaint alleges as follows:

> Other analysts were similarly swayed by Defendants' misleading statements regarding the Capri Acquisition. For example, TAG on May 23, 2024, reporting on Capri, reiterated Capri and Tapestry management's confidence in the deal: "Immediately following the announcement of the FTC lawsuit*, both TPR and CPRI issued press releases reaffirming their commitment to the merger and the strength of their case against the FTC's suit*. Tapestry's management noted that it has 'full confidence' in the merits of its case and the transaction, arguing that it would benefit the combined company's customers, employees, partners, and shareholders around the world. TPR management noted that it believes it has strong legal arguments supporting the transaction and will work to close the deal in calendar 2024. CPRI's management noted that it *'strongly disagrees' with the FTC's decision, and both statements pointed to the highly competitive and fragmented global luxury industry as evidence that the deal would not erode competition. CPRI management further noted that consumers have 'hundreds of handbag choices at every price point across all channels' with low barriers to entry and competitive pressure across both lower and higher price points*."

¶162.

The Capri Defendants, in contrast, say that the TAG analyst report provides an example where "numerous analysts warned investors of the risks and uncertainty inherent in the litigation process" given that TAG noted elsewhere in the report that "[t]he FTC lawsuit clouds visibility as to the completion of the acquisition, though the announcement was not too surprising." Capri Mot. at 10 (citing Ex. Q).

At bottom, the Capri Defendants are factually disputing the materiality of Defendants' misleading statements. The Complaint alleges that analysts were swayed by the Defendants' misleading statements, given *TAG's specific reliance on statements from both Tapestry and Capri as to the level of antitrust risk on the merger, when issuing a recommendation as to whether to transact in Capri securities*. ¶162. Defendants dispute these allegations by referencing another portion of the report, but that factual dispute only serves to highlight the strength of the Complaint in this regard. Analysts were not swayed by boilerplate risk disclaimers and purported cautionary language, they were swayed by the very same statements alleged as misleading in the Complaint. ¶162. In short, while Defendants' factual disputes are improper, they do not undermine the Complaint's well-pleaded allegations in any event. *See, e.g.*, *Trevena*, 482 F. Supp. 3d at 328-29 (rejecting similar attempt to dispute facts through the incorporation by reference doctrine). The Capri Defendants' Exhibits L-M, O-P, R, and V-X should be rejected for the same reasons.

The Tapestry Defendants' analyst reports fare no better. They cite Exhibit 7, a February 11, 2024 TD Cowen Analyst Report, for several points, including the analyst's statements that the companies' "combined market share is substantial" in certain categories and "investors continue to be in a wait-and-see mode in terms of FTC approval," along with the analyst's purported "confidence" in the merits of the Capri Acquisition. *See* Tapestry Mot. at 5. Defendants "go beyond the mere existence of statements within" the analyst report for the truth of the analyst's

observations as to "what the investing public actually believed" regarding the nature of the regulatory risks faced by the Capri Acquisition. *See PTC Therapeutics*, 2017 WL 3705801, at *3 n.5.

The Tapestry Defendants seek notice of three additional analyst reports which, like several of the news articles discussed above, they curiously characterize as containing "meaningful cautionary language." Tapestry Mot. at 14; Appendix A to Tapestry Mot. For example, Exhibit 27 is an August 23, 2023 Guggenheim analyst report which Defendants' misleadingly quote as follows: "Risks ... include ... an inability to execute transformation/acquisition ...." But this selective quotation omits a crucial part of the sentence, which actually reads as follows: "Risks to the downside include 1) an inability to execute transformation/acquisition *integration/growth initiatives…*" When read in its entirety, it becomes clear that Defendants attempted to alter the entire meaning of the analyst's language: the risk being discussed is not the antitrust approval of the Capri Acquisition itself, but rather the "integration" of Capri into Tapestry. At a minimum, the meaning of the supposed "cautionary language" is vague, and the sufficiency of the cautionary language is at issue. ¶205. Accordingly, the Court should not take judicial notice of the document or incorporate it by reference. *See Khoja*, 899 F. 3d at 1000.[3]

Similarly, Exhibit 36, a March 6, 2024 TAG analyst report, is cited by the Tapestry Defendants for the purported cautionary language: "Risks ... include … unfavorable government regulations ...." Once again, Defendants misleadingly characterize this language as "cautionary." *See* Tapestry Mot, Appx. A. Whether a regulatory action falls within the meaning of "government

---

[3]   As also explained in Plaintiffs' accompanying Opposition to the Tapestry Defendants' Motion to Dismiss, these purported "cautionary warnings" issued by third parties are legally irrelevant in any event. Defendants do not offer, and Plaintiffs have been unable to locate, any authority holding that mere observations reported by third party journalists may constitute cautionary language within the meaning of the PSLRA safe harbor.

regulations" as used in the context of the analyst report is questionable at best; it is far more likely that the report is generally referring to formal rules promulgated by any agency rather than a specific antitrust enforcement action filed by the FTC. As with Exhibit 27, the wording is vague, and its sufficiency as cautionary language is at issue. ¶205. In the same vein, the Tapestry Defendants' Exhibit 46 is a May 23, 2024 Morgan Stanley Analyst Report, which Defendants cite for the following language: "Meetings focused primarily on the proposed [Capri] acquisition, particularly ... deal status ...." Again, this does not qualify as meaningful and sufficiently tailored cautionary language as to the specific and severe extent of the antitrust risks regarding the Capri Acquisition. Defendants' factual quarrels based on these documents are unfounded.

Lastly, to the extent that the Tapestry Defendants cite to analyst reports for the truth of their analysis of the relevant market definition, this is also improper. *See* Tapestry Mot. at 5 (citing Ex. 7). As alleged in detail in the Complaint, Defendants repeatedly pushed back on negative reporting on the Capri Acquisition, including in direct response to questions by analysts, and fueled a misperception among analysts regarding the level of regulatory risk involved in the transaction. *See, e.g.*, ¶¶114, 117, 130, 134-135, 154, 159, 162, 165, 168. Analysts were swayed by Defendants' misstatements, and relied on and repeated Defendants' misstatements in making their recommendations. *See id.* For example, TD Cowen analysts determined in a February 11, 2024 report that, even though "the combined market share is substantial if you chose to define the outlet market or $300-500 price band only," they did not believe that regulatory hurdles would inhibit the deal. ¶134. As such, Defendants' Request as to these reports should be denied. *See PTC Therapeutics*, 2017 WL 3705801, at *3, n.5 (noting that analyst reports submitted by the defendants to show market's awareness of a fact "also reiterate[d] the allegedly false or misleading information").

E.      **Defendants' Internal Company Presentations Should Not Be Considered**

Defendants also seek judicial notice of five internal corporate presentations in order to contradict the well-pleaded facts contained in the Complaint and seek defense-friendly inferences. *See* Tapestry Def. Exs. 13, 15; Capri Def. Exs. AA-CC.  This too is procedurally improper.  *See Johnson & Johnson*, 2019 WL 7207491, at *11 (declining to notice document that "addresses the merits of Plaintiff's claims" and "would require the court to delve into the ... evidence that forms the crux of the parties' dispute").

First, Exhibit 15 is from a February 17, 2022 Tapestry slide deck which Defendants cite for the "fact" that Tapestry noted in a "Pricing Strategy Discussion": "Test and gauge customer 'willingness to pay' with product relativity and valuing attributes."  Defendants rely on this so-called "fact" to show Defendants "intended to reinvigorate the Michael Kors brand and better connect with consumers."  *See* Tapestry Mot. at 7-8 (citing Ex. 15).  But Exhibit 15 does not mention Michael Kors.  Additionally, the meaning Defendants ascribe to this excerpt—that Tapestry "intended to increase Michael Kors's value proposition to consumers, which would be pro-consumer"—is unlikely.  *See* Tapestry Mot. at 27.  It does not follow that testing customers' "willingness to pay" is pro-consumer; a more reasonable interpretation of this wording is that testing "willingness to pay" means testing how *much* customers are willing to pay—*i.e.*, so that Tapestry could *increase* prices.  *See Khoja*, 899 F. 3d at 1000 (noticing a document improper where "[r]easonable people could debate what exactly this [exhibit] disclosed" and "there is a reasonable dispute as to what the [exhibit] establishes").  Regardless, Defendants cite the presentation to counter Plaintiffs' allegations that Defendants knew the Acquisition would reduce competition and allow Tapestry to raise prices.  This is precisely the kind of "substantive merits-

- 12 -

based defense" that the incorporation by reference doctrine cannot be used to supplement. *Johnson & Johnson*, 2019 WL 7207491, at *11.[4]

Moreover, while the Complaint discusses an internal February 17, 2022 Tapestry presentation, it does not cite directly to the presentation, or the presentation as a whole. *See* ¶¶47, 63. Rather, the Complaint only cites to the *FTC v. Tapestry* parties' and Court's limited discussion of a single slide during the preliminary injunction hearing and in the opinion, respectively. *See* ¶¶47 n.32, 63 n.87. The Tapestry Defendants, however, present a wholly different slide as Exhibit 15. Plaintiffs have never seen that slide and have had no access to that slide. Permitting Defendants to obtain judicial notice of facts which Plaintiffs were unable to consider prior to filing the Complaint would put Plaintiffs at a distinct disadvantage at the pleading stage. These are the precise concerns raised by the Ninth Circuit in *Khoja*. *See* 899 F.3d 988, 999 (noting that "defendants possess materials to which the plaintiffs do not yet have access," and criticizing the "'inappropriate efforts by defendants' in SEC matters to 'expand courts' consideration of extrinsic evidence at the motion to dismiss stage'"); *see also Carroll v. Celebrity Cleaning, Inc.*, 2018 WL 6725363, at *2 (M.D. Pa. Dec. 21, 2018) ("Carroll therefore lacked notice of LCCC's submissions, which is 'the primary problem raised by looking to documents outside the complaint.'") (citing *In*

---

[4] The Tapestry Defendants' interpretation of PX2166, a slide deck prepared for a Capri Board meeting held on January 18, 2018, fails for similar reasons. *See* Tapestry Mot. at 7-8 (citing ¶ 90). This document cannot be accepted for its truth, and the Tapestry Defendants' arguments are simply wrong in any event. As the Complaint alleges in detail, Michael Kors had seen a steady decline in brand performance since its peak in 2016. *See* ¶71. During this time, Capri and Michael Kors executives tried and failed to revitalize the brand, ultimately motivating Capri executives to engage in an anticompetitive scheme to merge with Tapestry and reduce competition in the accessible luxury handbag market. *See* ¶72. It is thus far more reasonable to infer that the presentation— dated *five years* before Capri and Tapestry began merger negotiations in 2023—evidences Capri executives' hopes to revitalize the Michael Kors brand as part of a standalone strategy, rather than the Tapestry Defendants' intentions regarding the combined entity.

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).  For this reason, the Court should refuse Defendants' Request as to Exhibit 17.

Second, Exhibit 13 is a slide from an August 29, 2022 Tapestry presentation which, according to the Tapestry Defendants, "compares not only Coach and Michael Kors, but also Calvin Klein, Chanel, Dooney & Bourke, Fossil, Gucci, Guess, Louis Vuitton, Nine West, Prada, and Tory Burch."  Tapestry Mot. at 7.  Defendants argue that the presentation "explicitly recognizes that Coach and Michael Kors consumers shopped for products in different markets." *Id.*  Defendants further argue that this presentation shows that "the fact that Tapestry tracked Michael Kors or considered it a competitor (even a 'fierce' one) does not mean that other brands (as well as potential market entrants) did not also constrain Tapestry's pricing."  *Id.* at 26; *see also id.* at 22.  As above, this document cannot be accepted for its truth.  And even then, the Tapestry Defendants' contrived interpretation is only possible if one ignores the Complaint's allegations as to this presentation altogether.

As Plaintiffs have alleged in detail, the August 29, 2022 Tapestry presentation, entitled "MK Preliminary Consumer Pulse + M&A Consumer Survey Approach Details," summarized "what [Tapestry's M&A team members] have evaluated for MK [Michael Kors] and our recommendation for a more holistic survey for our short-list targets."  ¶65.  The presentation stated, among other things, that "[Coach and Michael Kors] are each other's top competition when consumers are considering other brands for purchase."  ¶66.  The presentation repeatedly noted that differences in pricing and discounting between Coach and Michael Kors "suggest[] room to increase MK AUR" and "suggest[] opportunity to reduce MK discounting."  ¶¶66-68.  As the *FTC* Court held, and as alleged in the Complaint, this "evidence reflects that Tapestry perceived the

- 14 -

acquisition of Michael Kors to be an opportunity to decrease Michael Kors's discounting and increase Michael Kors's prices—a recognized form of anticompetitive effects." ¶68.

Moreover, Plaintiffs do not allege that Michael Kors was the only brand that constrained Coach and Kate Spade prices. To the contrary, the Complaint acknowledges that Michael Kors, Coach, and Kate Spade faced some competition from smaller accessible luxury handbag brands, such as Tory Burch and Marc Jacobs, *see* ¶¶36, 47; and that the accessible luxury handbag market itself is ultimately constrained by mass market handbag prices (< $100) and by luxury handbag prices (> $1,000), *see, e.g.*, ¶¶62-63. Indeed, Tapestry executives commented that "saying we're in the same market with true luxury is a joke." *See, e.g.*, ¶62. As such, Defendants' factual interpretation of the presentation is not only improper, but it is also unreasonable and does not undermine Plaintiffs' allegations that Coach and Michael Kors are each other's top competitors; that the Tapestry Defendants' motivation for entering into the Acquisition was to raise Michael Kors's prices; and that Michael Kors and Coach do not compete with luxury handbag brands. *See, e.g.*, ¶¶64-70. For these same reasons, the Tapestry Defendants' improper factual interpretations of other pricing presentations cited in the Complaint fail as well.[5] As such, Defendants' Request as to Exhibits 13 and 15 should be denied.

Finally, the Capri Defendants' interpretation of similar presentations likewise fails. The Capri Defendants rely on three internal Capri presentations to similarly argue that they "believed that Capri competed broadly." Capri Mot. at 23 n.15 (citing Capri Def. Exs. AA, BB, CC). But these presentations in fact support the Complaint's factual allegations. For example, Defendants rely on Exhibit BB, a 2024 Capri board presentation and its observation that "'[a]ccessible luxury

---

[5]    *See* Tapestry Mot. at 7, 26-27 (citing ¶59 (February 2019 Tapestry presentation and August 2023 Capri presentation); ¶70 (February 2023 Tapestry presentation)).

squeezed from the top and bottom' [i]s [a] threat[] to the business." *Id.* As discussed immediately above, the Complaint acknowledges that the accessible luxury handbag market itself is ultimately constrained by mass market and luxury handbag prices. *See, e.g.*, ¶¶62-63. Defendants' factual squabbles do not diminish the strength of Plaintiffs' allegations that Michael Kors and Coach were fierce competitors within the accessible luxury handbag market. Defendants' reliance on Exhibits AA and CC to generate similar factual quarrels with the Complaint fail for similar reasons, and, as such, the Capri Defendants' request for notice as to these three presentations should be denied.

F.      **The Court Filings May Not Be Considered for the Truth of the Matters Contained Therein**

Lastly, the Tapestry Defendants seek judicial notice of the truth of the matters contained in two court filings: Tapestry's Answer to the operative complaint filed in *FTC v. Tapestry* (Exhibit 9) and the FTC's operative complaint itself (Exhibit 12). This is improper. Indeed, courts in the Third Circuit have held that "[t]aking judicial notice of the truth of the contents of a filing from a related action could reach, and perhaps breach, the boundaries of proper judicial notice." *U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 140-41 (E.D. Pa. 2012) (declining to make findings of fact based on filings or to rely on those documents for the truth of the matters asserted). For this reason, courts routinely refuse to take notice of such documents. *See, e.g., Albion Eng'g Co v. Hartford Fire Ins. Co.*, 779 F. App'x 85, 90 n.29 (3d Cir. 2019) (denying motion for judicial notice, holding that taking notice of arguments in a brief filed in a separate litigation would be inappropriate); *In re Navient Corp. Sec. Litig.*, 2019 WL 7288881, at *7 (D.N.J. Dec. 30, 2019) (declining request for judicial notice of the defendants' "legal arguments in the motion for partial summary judgment brief, and transcripts supporting same."). The Court should do the same here.

The Tapestry Defendants cite to the self-serving statements in Tapestry's own Answer for a number of so-called "facts" that are contested by Plaintiffs. For example, Tapestry cites its own

- 16 -

Answer to argue that the European Commission conducted a market investigation and "concluded that the handbag industry is 'constantly evolving and characterized by low barriers to entry and frequent entry of new players'"; that "'relatively small' competitors can constrain prices of larger companies"; and that "'independent brands and new entrants would be able to compete effectively with the [Companies' brands] post-merger.'" Tapestry Mot. at 5-6. In short, Defendants request that the Court draw factual inferences from Tapestry's own pleading to support a defense related to the nature of the competition faced by Tapestry and Capri. The Court should reject Defendants' request that Tapestry's self-serving Answer, in a separate litigation, which is not cited in the Complaint, be considered for any purpose.

## III.    CONCLUSION

For the foregoing reasons, the Court should (i) decline to incorporate by reference or judicially notice the Tapestry Defendants' Exhibits 4-7, 9, 12, 14, 20-23, 27, 36, 37, 46 and the Capri Defendants' Exhibits L-R, V-Z, AA-CC; and (ii) decline to accept any extraneous exhibits for the truth of the matters asserted or use those exhibits to draw contested inferences in the Tapestry Defendants' favor in contravention of the well-pled allegations of the Complaint.

DATED:  September 12, 2025        Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*

Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE  19801
Telephone:  (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

- 17 -

**Of Counsel:**

ENTWISTLE & CAPPUCCI LLP
Vincent R. Cappucci
Robert N. Cappucci
Jonathan H. Beemer
Brendan J. Brodeur
230 Park Avenue, 3rd Floor
New York, NY  10169
Telephone:  (212) 894-7200
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com
jbeemer@entwistle-law.com
bbrodeur@entwistle-law.com

– and –

Andrew J. Entwistle
Callie D. Crispin
500 W. 2nd Street, Suite 1900-16
Austin, Texas  78701
Telephone:  (512) 710-5960
aentwistle@entwistle-law.com
ccrispin@entwistle-law.com

*Counsel for Lead Plaintiff FNY Partners
Fund LP, Lead Counsel for the Class and
Chair of Executive Committee for the
Class*

David A. Knotts
Michaela Park
Jake Kalphat-Losego
ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
dknotts@rgrdlaw.com
malbert@rgrdlaw.com
jlosego@rgrdlaw.com

*Executive Committee Member for the
Class and Counsel for David R. Hurwitz*

*Liaison Counsel for the Class*

Christopher H. Lyons (#5493)
Tayler D. Bolton (#6640)
ROBBINS GELLER RUDMAN
 & DOWD LLP
1521 Concord Pike, Suite 301
Wilmington, DE  19803
Telephone:  (302) 467-2660
clyons@rgrdlaw.com
tbolton@rgrdlaw.com

*Executive Committee Member for the Class and
Counsel for David R. Hurwitz*

Thomas Curry (#5877)
SAXENA WHITE P.A.
824 North Market Street, Suite 1003
Wilmington, DE 19801
Telephone:  (302) 484-0480
tcurry@saxenawhite.com

*Executive Committee Member for the Class*

David J. Schwartz
SAXENA WHITE P.A.
10 Bank Street, 8th Floor
White Plains, NY  10606
Telephone: (914) 437-8551
dschwartz@saxenawhite.com

– and –

Adam Warden
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
awarden@saxenawhite.com

*Executive Committee Member for the
Class*