**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE CAPRI HOLDINGS LTD. SECURITIES LITIGATION | Case No. 1:24-cv-01410-SB<br><br>CLASS ACTION |

## <u>REPLY BRIEF IN FURTHER SUPPORT OF</u><br><u>MOTION TO DISMISS BY THE CAPRI DEFENDANTS</u>

OF COUNSEL:

WACHTELL, LIPTON, ROSEN &
KATZ

Jonathan M. Moses (*pro hac vice*)
Elaine P. Golin (*pro hac vice*)
Adam L. Goodman (*pro hac vice*)
Beatrice R. Pollard (*pro hac vice*)
51 West 52nd Street
New York, NY  10019
Telephone: (212) 403-1388
JMMoses@wlrk.com
EPGolin@wlrk.com
ALGoodman@wlrk.com
BRPollard@wlrk.com

Dated:  October 27, 2025

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

William M. Lafferty (#2755)
John P. DiTomo (#4850)
Jacob M. Perrone (#7250)
1201 N. Market Street, 16th Floor
Wilmington, DE  19801
Telephone: (302) 351-9231
wlafferty@morrisnichols.com
jditomo@morrisnichols.com
jperrone@morrisnichols.com

*Counsel for Defendants Capri Holdings*
*Limited, John D. Idol, and Thomas J.*
*Edwards, Jr.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

I.    PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISSTATEMENTS............................ 2

      A.  Capri's Opinions Are Not Actionable. ........................................................................ 4

      B.  Plaintiffs Fail to Plead Actionable Omissions. .......................................................... 8

      C.  The PSLRA's Safe Harbor Protects Each of the Challenged Statements..................... 9

      D.  The Capri Defendants Cannot Be Held Liable for Tapestry Statements .................... 11

II.   PLAINTIFS FAIL TO PLEAD SCIENTER ..................................................................... 13

III.  PLAINTIFFS' "SCHEME LIABILITY" CLAIMS FAIL ................................................. 14

IV.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ..................................................... 15

CONCLUSION.......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartesch* v. *Cook*,
    941 F. Supp. 2d 501 (D. Del. 2013)......................................................................15

*Chabot* v. *Walgreens Boots All., Inc.*,
    2023 WL 2908827 (M.D. Pa. Mar. 31, 2023)...........................6, 7 n.4, 8, 14

*Chabot* v. *Walgreens Boots All., Inc.*,
    2019 WL 2992242 (M.D. Pa. Apr. 15, 2019)...........................6, 7 n.4, 8, 14

*City of Edinburgh Council* v. *Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014)................................................................................4, 6

*Dura Pharms., Inc.* v. *Broudo*,
    544 U.S. 336 (2005)................................................................................................15

*Hering* v. *Rite Aid Corp.*,
    331 F. Supp. 3d 412 (M.D. Pa. 2018)...................................................................8

*Ieradi* v. *Mylan Lab'ys., Inc.*,
    230 F.3d 594 (3d Cir. 2000).........................................................3, 7, 7 n.4

*In re Amarin Corp. PLC Sec. Litig.*,
    689 F. App'x 124 (3d Cir. 2017) ........................................................................10

*In re DRDGOLD Ltd. Sec. Litig.*,
    472 F. Supp. 2d 562 (S.D.N.Y. 2007)................................................................13

*In re EQT Corp. Sec. Litig.*,
    504 F. Supp. 3d 474 (W.D. Pa. 2020)................................................................14

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
    2020 WL 1479128 (E.D. Pa. Mar. 25, 2020)...............................................11 n.7

*In re Maiden Holdings Ltd. Sec. Litig.*,
    153 F.4th 354 (3d Cir. 2025) ...............................................................................6

*In re Majesco Sec. Litig.*,
    2006 WL 2846281 (D.N.J. Sept. 29, 2006) .................................................10 n.6

*In re Newell Brands, Inc. Sec. Litig.*,
    2019 WL 6715055 (D.N.J. Dec. 10, 2019),
    *aff'd*, 837 F. App'x 869 (3d Cir. 2020).............................................................5

ii

*In re Ocugen, Inc. Sec. Litig.*,
   659 F. Supp.3d 572 (E.D. Pa. 2023) ........................................................................15

*In re Optimal U.S. Litig.*,
   2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ..................................................... 12-13

*In re PDI Sec. Litig.*,
   2006 WL 3350461 (D.N.J. Nov. 16, 2006) ...............................................................13

*In re Pfizer Inc. Sec. Litig.*,
   819 F.3d 642 (2d Cir. 2016)...............................................................................11, 12

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022).......................................................................12

*In re Walmart Inc. Sec. Litig.*,
   151 F.4th 103 (3d Cir. 2025) ......................................................................................8

*In re Weight Watchers Int'l, Inc. Sec. Litig.*,
   2016 WL 2757760 (S.D.N.Y. May 11, 2016) .............................................................6

*Industriens Pensionsforsikring A/S* v. *Becton, Dickinson & Co.*,
   620 F. Supp. 3d 167 (D.N.J. 2022) .......................................................................7 n.4

*Institutional Invs. Grp.* v. *Avaya, Inc.*,
   564 F.3d 242 (3d. Cir. 2009)................................................................................9, 10

*Janus Capital Grp., Inc.* v. *First Derivative Traders*,
   564 U.S. 135 (2011)...........................................................................................11, 12, 13

*Levon* v. *CorMedix Inc.*,
   2025 WL 2400346 (D.N.J. Aug. 19, 2025) ...............................................................10

*Malack* v. *BDO Seidman, LLP*,
   617 F.3d 743 (3d Cir. 2010)........................................................................................2

*Nash* v. *Qualtrics Int'l. Inc.*,
   2024 WL 231870 (D. Del. Jan. 22, 2024)..................................................................14

*Nat'l Junior Baseball League* v. *Pharmanet Dev. Grp. Inc.*,
   720 F. Supp. 2d 517 (D.N.J. 2010) ...........................................................................15

*OFI Asset Mgmt.* v. *Cooper Tire & Rubber*,
   834 F.3d 481 (3d Cir. 2016)................................................................................ 10-11

*Omnicare, Inc.* v. *Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015).....................................................................................................5

iii

*Peters* v. *Ryan*,
  2017 WL 1393692 (D. Del. Apr. 13, 2017)..........................................................................4 n.3

*SEC* v. *Medallion Fin. Corp.*,
  2024 WL 4227753 (S.D.N.Y. Sept 18, 2024).......................................................................12

*Takata* v. *Riot Blockchain, Inc.*,
  2023 WL 7133219 (D.N.J. Aug. 25, 2023) ........................................................................3 n.2

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).................................................................................................................2

*Tomaszewski* v. *Trevena, Inc.*,
  482 F. Supp. 3d 317 (E.D. Pa. 2020) ....................................................................................14

*Water Island Event-Driven Fund, LLC* v. *Tribune Media Co.*,
  39 F.4th 402 (7th Cir. 2022) ....................................................................................................2

**Statutes and Rules**

15 U.S.C. § 78u-5 ........................................................................................................................9

Rule 10b-5....................................................................................................................................3, 13

Rule 10b-5(b) ..............................................................................................................................15

**Other Authorities**

Melissa Repko, *Three Key Questions that Will Shape Whether Coach and
  Michael Kors Owners Will Merge*, CNBC (Sept. 12, 2024),
  https://www.cnbc.com/2024/09/12/tapestry-capri-antitrust-trial-key-questions-
  about-merger.htm....................................................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs cannot deny that they bought shares in Capri knowing that its merger with Tapestry might not come to fruition.  Mot. 6.  They also cannot dispute that the ultimate question in the underlying proceeding—whether the merger would be anticompetitive in a particular antitrust market—turns on complex issues that are inherently matters of opinion.  Mot. 19-21.  But Plaintiffs insist that their Complaint, seeking recovery for investors in a merger closely watched by the arbitrage community, should survive because the Parties[1] purportedly agreed to the Transaction "*specifically for the purpose of reducing competition*," Opp. 1, and *this* was the truth that was concealed from the market.  Not only does this motive make no sense for Capri, given that the agreed-upon sale of the company for cash meant it and its executives had no stake in the combined company, Plaintiffs provide no explanation as to why Capri, or Tapestry for that matter, would enter into a transaction it knew was doomed.

Plaintiffs claim that the Capri Defendants intentionally downplayed the regulatory risk by failing to disclose certain internal documents that the District Court determined supported the FTC's position.  Putting aside that the content of those documents was publicized in the FTC's complaint, during a high-profile public trial, and in closing arguments (and that the Capri documents cited were in no way inconsistent with the company's public statements), this claim is insufficient to sustain a securities fraud claim.  Case after case makes clear that there is no duty to disclose every piece of arguably contrary information about a company's position in a litigation or regulatory matter.  Mot. 17-18; Section I.B.  Capri's statements about the FTC's challenge and the

---

[1] Capitalized terms not defined herein have the same meaning as in Capri Defendants' Opening Brief in Support of their Motion to Dismiss (D.I. 41, "Mot." or "Opening Brief").  Plaintiffs' opposition brief (D.I. 56) is referred to herein as "Opposition" or "Opp."  All paragraph references refer to the Amended Complaint.  D.I. 32.

1

likelihood of the merger closing despite it are protected both as nonactionable opinions and forward-looking statements.  Sections I.A & I.C.

The Opposition also fails to offer a plausible inference of scienter, let alone one that is as "cogent and at least as compelling as any opposing inference" of nonfraudulent intent.  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  As noted, Plaintiffs can offer no explanation as to why Defendants would enter into a merger subjecting the companies to the substantial burden of regulatory scrutiny and public litigation, if they knew the merger was likely doomed.  As Judge Easterbrook recently explained, this theory defies common sense when "no one [] ha[s] anything to gain by [the deal's] failure."  *Water Island Event-Driven Fund, LLC* v. *Tribune Media Co.*, 39 F.4th 402, 407 (7th Cir. 2022).  Section II.

Finally, while the issue need not be reached, the lack of loss causation is also a basis for dismissal here.  Plaintiffs mischaracterize the record in an effort to suggest falsely that the District Court's decision, reviewing the evidence at a two-week public trial, revealed something more than the Court's own conclusion and interpretation of the record before it.  Section IV.

This is a classic case of fraud by hindsight.  Plaintiffs made a bet on the inherently uncertain outcome of regulatory review and litigation, lost, and are now attempting to use the securities fraud laws to recoup their investment.  But the market has risks—ones that Plaintiffs were fully aware of here—and "[t]he establishment of investor insurance is contrary to the goals of securities laws." *Malack* v. *BDO Seidman, LLP*, 617 F.3d 743, 752 (3d Cir. 2010).  The Complaint should be dismissed with prejudice.

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISSTATEMENTS.

Plaintiffs rest their entire Opposition on a theory of fraud-by-omission, claiming that Capri failed to disclose:  (1) that Capri internally referred to a market for "accessible luxury" handbags;

2

(2) that Tapestry and Capri collectively had 77% of that market; and (3) that Capri's Michael Kors brand adjusted its pricing in lock-step with, or at least in direct response to, Tapestry's Coach brand. ¶¶ 106-07, 110, 153, 164; Opp. 11, 20. But that theory ignores the FTC's public complaint, which described the same information Plaintiffs alleged was concealed, *FTC* v. *Tapestry, Inc.*, No. 24-cv-03109–JLR (S.D.N.Y. Apr. 23, 2024), D.I. 1 ("FTC Compl."),[2] and that Capri apprised investors of litigation risks, Mot. 6-9, 9-12. Capri had no duty to disclaim its litigation position and there are no actual omissions. Furthermore, the statements are inactionable opinions as well as forward-looking statements protected by the PSLRA safe harbor.

The Third Circuit's *Ieradi* case is directly on point. *Ieradi* v. *Mylan Lab'ys, Inc.*, 230 F.3d 594 (3d Cir. 2000). There, the Third Circuit held that because Mylan disclosed an FTC antitrust investigation, it had not run afoul of Rule 10b-5, despite not disclosing the underlying material (supply contracts) that prompted the investigation. In essence, the court held that knowledge of the FTC's investigation "was 'more than sufficient'" to inform Mylan's investors about the associated risks and that disclosure of underlying evidence was not required under the securities laws. *Ieradi*, 230 F.3d at 599-600. Here, Capri's disclosure of the FTC's Second Request, and the subsequent FTC Litigation, functions identically: it put investors on notice that the complex antitrust issues involved in the FTC's claims could jeopardize the Transaction. That disclosure was far more informative than the email snippets Plaintiffs claim were omitted here, which would require investors to perform complex antitrust analysis that took seven days of trial, four experts, and 169 pages in Judge Rochon's opinion to assess. As in *Ieradi*, this nearly identical fact pattern requires dismissal.

---

[2] The Court may take judicial notice of court filings, *Takata* v. *Riot Blockchain, Inc.*, 2023 WL 7133219, at *1 n.2 (D.N.J. Aug. 25, 2023), which are offered not for the truth of the matter, but to show investors were put on notice of the FTC's claims.

3

### A.    Capri's Opinions Are Not Actionable.

1. <u>The Litigation Statements Were Based on Capri's Reasonable Litigation Position</u>.

Statements of opinion, such as predictions about litigation success or the likelihood of a merger closing, are actionable only if "not honestly believed and lack[ing] a reasonable basis." Mot. 18 (citing *City of Edinburgh Council* v. *Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014)). To meet this exacting standard, Plaintiffs point to "internal communications" they claim contradict Capri's Litigation Statements (stating in part, "the government's challenge ignores, [market realities] [that] overwhelmingly demonstrate that this [T]ransaction will not limit . . . competition," ¶¶ 149, 163). Opp. 10. But Plaintiffs never explain how the cited documents are inconsistent with Capri's public statements. For example, Plaintiffs do not show that the documents conflict with Capri's view that the FTC's "accessible luxury" **antitrust** market definition defied marketplace realities. Mot. 5. Nor do they contradict Capri's belief that the hundreds of brands in the industry would mitigate potential anticompetitive effects. *Id.* at 5, 23. Instead, Plaintiffs ask this Court to overlook documents that reinforce Capri's theories and refute theirs. *See* D.I. 59, Opp. to Defs' Reqs. for Judicial Notice[3] (hereinafter, "JN Opp."), at 15-16; Mot. 23 n. 15 (describing evidence of vast competition in FTC exhibits). The point is, even if Capri had made the disclosures Plaintiffs now in hindsight demand, its litigation position would have remained unchanged.

As if to prove the point, Plaintiffs concede that pricing in the accessible luxury handbag market is "constrained by mass market handbag prices [] and by luxury handbag prices []." JN Opp. 15; *see also* ¶¶ 62-63. This was precisely the Parties' argument as to why the merger was

---

[3] Plaintiffs claim that the Court cannot consider the exhibits to the Capri MTD, *see* D.I. 59, but the Court is entitled to take judicial notice of each of these documents which are either SEC filings or documents relied on by Plaintiffs. Mot. 3 n.1. Moreover, because the Opposition did not address Capri's judicial notice argument (and Capri was not a party to the Tapestry Defendants' Request for Judicial Notice, D.I. 50), that issue is "considered waived." *Peters* v. *Ryan*, 2017 WL 1393692, at *2 (D. Del. Apr. 13, 2017).

not anticompetitive and that concession alone should end the inquiry. Plaintiffs also ignore Capri's case at trial, based on offsetting procompetitive effects and low barriers to entry. Mot. 20-21, 26. And Plaintiffs cannot dispute that Capri's opinions were shared by a host of experts both inside and outside the fashion industry, including ones who testified at trial. Mot. 9-12; SDNY Op. 88 (referencing testimony that "[t]here [are] literally hundreds of brands in every single price point, and there's new ones coming all the time"). To succeed, Plaintiffs would need to offer reasons why Capri's litigation position was untenable. They offer none.

Instead, Plaintiffs seek to sidestep long-standing precedent protecting litigation advocacy, Mot. 13, 21, by divorcing the challenged statements from their context to mischaracterize them as containing or embedding untrue factual statements. Opp. 2. But courts are required to "'examine statements in the full context' . . . and not engage in a 'selective reading.'" *In re Newell Brands, Inc. Sec. Litig.*, 2019 WL 6715055, at *11 (D.N.J. Dec. 10, 2019) (citation omitted), *aff'd*, 837 F. App'x 869 (3d Cir. 2020). Here, "a reasonable person reading the [challenged Litigation Statements] fairly and *in context*" would understand Capri's statements as reflecting its opinion about its defenses in the FTC Litigation. *Omnicare, Inc*. v. *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015) (emphasis added)). As Plaintiffs acknowledge (Opp. 2), the FTC had just filed a complaint declaring the relevant **antitrust** market "accessible luxury" and seeking to block the merger that the Capri Defendants' stockholders overwhelmingly supported. FTC Compl., at 7. Capri responded by saying it "strongly disagree[d]" with that decision, because it ignored that the Parties compete in a "fiercely competitive and highly fragmented global luxury industry" with "hundreds of handbag choices" for consumers. *See* ¶¶ 149, 163. Capri concluded the statements at issue by stating its intent to "vigorously defend [the] case in court." *Id*. In context, Capri was plainly offering its view on the merits of the FTC position that the relevant

5

antitrust market was "accessible luxury" handbags.  That is an opinion, not a verifiable statement of fact.  *See In re Weight Watchers Int'l, Inc. Sec. Litig.*, 2016 WL 2757760, at *4-6 (S.D.N.Y. May 11, 2016) (representation about competitive pressures is opinion); *see also Pfizer, Inc.*, 754 F.3d at 170 (subjective interpretations of complex clinical data are inactionable opinion).

Plaintiffs rely heavily on the *Walgreens* cases.  Opp. 8, 10, 13, 15-16, 20-22, 25-26.  However, those cases involved evidence—absent here—that Walgreens had no reasonable basis for its assurances that the merger would close.  In particular, defendants there publicly disputed press reports and cited "inside" knowledge about the FTC's review process to provide investors with a false sense of security about the deal.  Defendants, having already extended the deal's closing date and revised their initial merger agreement, were nonetheless "actively" claiming the merger would close even though the FTC had made clear privately that it was highly skeptical of defendants' proposed divestiture plan.  *See, e.g.*, *Hering* v. *Rite Aid Corp.*, 331 F. Supp. 3d 412, 427–28 (M.D. Pa. 2018); *Chabot* v. *Walgreens Boots All., Inc.*, 2019 WL 2992242, at *3-4 (M.D. Pa. Apr. 15, 2019); *Chabot* v. *Walgreens Boots All., Inc.*, 2023 WL 2908827, at *15 (M.D. Pa. Mar. 31, 2023) (noting "substantial evidence" that showed Walgreens had reason to doubt the FTC would *ever* sign off on its divestiture proposal).  In other words, plaintiffs demonstrated that defendants were well aware of specific concerns that heightened their regulatory risk *at the time* they expressed their stridently optimistic opinions.  Here, the Capri Defendants never commented on discussions with the FTC or promised that the merger would close.  And Plaintiffs themselves allege that the FTC's public actions made clear there was significant regulatory risk.  ¶ 118.

Plaintiffs' reliance on the "knowledge theory" in *In re Maiden Holdings Ltd. Sec. Litig.* fares no better.  153 F.4th 354, 363-66 (3d Cir. 2025) (materiality of the omission is crucial to the "knowledge theory").  There, the court determined that Maiden Holdings omitted adverse

6

historical loss data it knew was material. *Id*. at 365-66. Beyond Plaintiffs' failure to show the Capri Defendants' actual knowledge, the Third Circuit has already stated that it "seriously doubt[s] that 'the reasonable investor'" would possess "the depth of antitrust law expertise" needed to analyze whether undisclosed information is "susceptible to successful attack under the antitrust laws." *Ieradi*, 230 F.3d at 600. Notwithstanding Plaintiffs' claims, Opp. 16, the significance of the Capri Defendants' internal documents depended on antirust analysis, and were thus equally immaterial as the contracts involved in *Ieradi*.[4]

### 2. Capri's Timing Statements Were Optimistic Predictions.

The Timeline Statements are also inactionable opinions. Plaintiffs appear to concede that the first Timeline Statement (that "[t]he transaction is anticipated to close in calendar year 2024," ¶ 104) is neither actionable nor misleading. Opp. 12 (focusing on the latter Timeline Statement). With respect to the second Timeline Statement, that "Capri continues to expect that the [t]ransaction will be completed in calendar year 2024," ¶ 119, Plaintiffs make the naked claim that Capri somehow knew the Transaction would not close by the end of 2024. Opp. 12. But Plaintiffs cannot possibly dispute that if the companies had prevailed before Judge Rochon (who issued her decision in October 2024), the Transaction would have closed in 2024. Thus, Plaintiffs' attack on the Timeline Statements is nothing more than an assertion that Capri believed that it would not prevail in court and its merger would fail.

Plaintiffs contend that the Capri Defendants "knew" the FTC would uncover their internal documents "showing the anticompetitive nature of the [Transaction]" and "delaying it past 2024

---

[4] Plaintiffs attempt to distinguish *Ieradi* by relying on a district court decision, *Industriens Pensionsforsikring A/S* v. *Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 192 (D.N.J. 2022). Opp. 16. But that case is inapplicable for the same reason as the *Walgreen* cases on which Plaintiffs rely. The FTC had given "unambiguous" feedback regarding defendants' software, which precipitated a hold on its release. *Id*.

or *derailing it altogether*." Opp. 12. But as set forth above, the Capri Defendants' documents revealed no such thing. *Supra* at p. 4. And there would be no sense in pursuing a Transaction likely or doomed to failure. Mot. 24-27. None of the facts pled by Plaintiffs show that Capri lacked a sincere belief in its ability to prevail and close in 2024.

### B.    Plaintiffs Fail to Plead Actionable Omissions.

Plaintiffs argue that any time a defendant speaks generally on an issue, they put it "in play," and are required to disclose *every* possible fact that bears on it. Opp. 7. Plaintiffs are essentially arguing that once the FTC expresses concerns about a transaction, a party speaking to the market about that transaction must litigate against itself and immediately disclose all potential evidence that the FTC could use to bolster its claims, and if not, that party is liable for securities fraud. But in the Third Circuit, there is no duty to compromise a company's own litigation strategy or advocacy in the context of active litigation proceedings. Mot. 17-18; *see also In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 119-120 (3d Cir. 2025) (Walmart's filings were not misleading because it omitted it had engaged in conduct for which it was being investigated). Here, Plaintiffs have not shown Capri possessed a duty to disclose internal documents potentially relevant to the FTC Litigation, *supra* at pp. 3, 6-7, nor have they shown the Capri Defendants concealed negative feedback from regulators that contradicted their public statements, as defendants in the *Walgreens* cases did. *Supra* at p. 6.

In any event, the substance of Plaintiffs' alleged omissions was described in the FTC's public complaint,[5] and the subsequent trial filled in any remaining information. *See* Mot. 6 (citing ¶¶ 39, 42 of the Complaint, which describe internal Capri documents used in the FTC's Closing

---

[5] For example, paragraph two of the complaint described the Transaction as creating a market share that would "dwarf[] all other market players" in "accessible luxury" and paragraph 53 described the Parties' "laser-like focus" on the other's pricing. FTC Compl. at 3, 25.

Argument Demonstrative).  Throughout the Class Period, investors could easily access the complaint, and follow the closely-reported trial.  *See, e.g.,* Melissa Repko, *Three Key Questions that Will Shape Whether Coach and Michael Kors Owners Will Merge*, CNBC (Sept. 12, 2024), https://www.cnbc.com/2024/09/12/tapestry-capri-antitrust-trial-key-questions-about-merger.html.  Moreover, Capri's extensive disclosures specifically highlighted the regulatory risks posed by the FTC Litigation.  *See, e.g.*, Mot. 17 (describing detailed "Summary of Risks Affecting [Capri's] Business," including an unfavorable judgment in the FTC Litigation); *see also* Mot. 6-9 (describing various Transaction-related risks in Capri's SEC filings).

Put simply, Plaintiffs' allegations and the documents they use to support them show that the market was made aware, in numerous ways, of the information Plaintiffs allege was concealed. Mot. 5-6, 10, 23, 29.  And the market clearly understood there was significant risk.  Indeed, Capri's stock traded well below the merger price of $57.00 per share throughout the pendency of the FTC's review of the transaction and the ensuing litigation.

### C.    The PSLRA's Safe Harbor Protects Each of the Challenged Statements.

Plaintiffs concede that the Timeline Statements are forward-looking, Opp. 17 ("the statements . . . refer to an expectation about a future event"), an additional basis to dismiss their claims.  Plaintiffs resort to mischaracterizing the safe harbor, claiming it is inapplicable because Capri omitted certain alleged facts.  Opp. 13-14, 17.  But contrary to Plaintiffs' arguments, statements omitting facts are protected by the safe harbor so long as they otherwise qualify.  *See* 15 U.S.C. § 78u-5 ("[I]n any private action . . . based on an . . . omission of a material fact necessary to make the statement not misleading, a person . . . shall not be liable with respect to any forward-looking statement"); *see also Institutional Invs. Grp*. v. *Avaya, Inc.*, 564 F.3d 242, 256 n.23 (3d. Cir. 2009) (noting, in the context of discussing "false or *misleadingly incomplete*" statements, that "if the Safe Harbor were automatically inapplicable whenever a firm's disclosures actually misled

investors, then the Safe Harbor would be superfluous" and that "it would be unsound to read the statute so that the safe harbor never works." (citation omitted)).[6]

The Litigation Statements are also forward-looking: they refer to Capri's expectations about the outcome of litigation *in the future*. Mot. 16. Plaintiffs' suggestion that the statements pertain to present facts is unavailing. When read in the context of the pending litigation, Capri's statements that the FTC had ignored the market realities was a clear reference to how the company intended to "vigorously defend [the] case." *Supra* at pp. 5-6. Thus, the statements are similar to those that cannot be "meaningfully distinguished from the future prediction of which they are part," *Avaya*, 564 F.3d at 255, rendering them protected by the safe harbor.

Plaintiffs' cases are inapposite. For example, in *Levon* v. *CorMedix Inc.*, the court declined to extend the safe harbor to statements where, unlike here, defendants represented that a product *would be* approved, despite being repeatedly told by the FDA that their remediation efforts were insufficient and "know[ing] that [the] identified risk [had or would] occur." 2025 WL 2400346, at *15 (D.N.J. Aug. 19, 2025). Plaintiffs fall far short of alleging Capri knew it was "extremely likely (if not certain)" regulatory approval would not be attained. *In re Amarin Corp. PLC Sec. Litig.*, 689 F. App'x 124, 131 (3d Cir. 2017) (statements inactionable because defendants never guaranteed FDA approval).

Plaintiffs deride Capri's cautionary language as "boilerplate," simply because the same risk factors would allegedly apply to other mergers requiring regulatory approval. Opp. 18; Mot. 6-9, 16-18. This red-lining parlor trick, Opp. 18 n.9, is nothing more than Plaintiffs' attempt to elide Capri's "substantive and tailored" cautionary statements. *OFI Asset Mgmt.* v. *Cooper Tire &*

---

[6] Plaintiffs' reliance on *In re Majesco Sec. Litig.*, 2006 WL 2846281, at *4 (D.N.J. Sept. 29, 2006) to attack Capri's forward-looking statements is misplaced because it assumes Plaintiffs have pled actual omissions (which they have not). *See* Section I.B.

*Rubber*, 834 F.3d 481, 491 (3d Cir. 2016).  Of course, Capri's warnings may have been similar: the risks mergers face are often the same.  Still, Capri properly tailored its explanation, including through detailed summaries of risks posed by the outcome of the FTC Litigation.  Mot. 6-9, 16-18.  This is sufficient in the Third Circuit.  And noticeably absent from the Opposition is *any* case where a defendant's cautions were found insufficient due to similarities to another's disclosures.[7]

### D.    The Capri Defendants Cannot Be Held Liable for Tapestry Statements.

Plaintiffs also fail to show the Capri Defendants are liable for the Tapestry Defendants' statements (which are inactionable in any event).  None of the alleged misstatements by Tapestry were "made" by Capri.  Under *Janus*, a touchstone of liability is whether a statement can be attributed to a speaker.  *Janus Capital Grp., Inc*. v. *First Derivative Traders*, 564 U.S. 135, 142 (2011).  Plaintiffs concede that Tapestry and its executives—not Capri—made the alleged misstatements.  *See, e.g.*, ¶¶ 103, 105, 109.  Plaintiffs focus on a provision that prohibited the Defendants from making a public statement "without the prior written consent of the other Party." ¶ 100.  However, Plaintiffs do not allege that the Capri Defendants were ever presented with approval copies of the Tapestry statements—which should be table stakes under the PSLRA's particularity standard—nor do they explain how this consent right could possibly have been exercised with respect to impromptu media interviews.

Plaintiffs' cases are inapposite.  For example, *In re Pfizer Inc. Sec. Litig.* found a "material question of fact" as to whether a co-promotion agreement provided one party authority over the other party's statements, relying on a Q&A document with scripted answers to press questions that

---

[7] Moreover, despite Plaintiffs' claims, Opp. 18 (citing *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2020 WL 1479128, at *17-18 (E.D. Pa. Mar. 25, 2020)), Capri's disclosures *did* change over time.  *Cf*. Mot. 7, Ex. A at Ex. 99.1 (noting as a risk "the outcome of any legal proceedings related to the merger") with Mot. 9, Ex. I at Ex. 99.1 (describing risk from "the outcome of the [FTC's] lawsuit attempting to block the pending Merger").

indicated that the document would be "reviewed and finalized during a . . . conference call between [the parties], before" distribution.  819 F.3d 642, 657 (2d Cir 2016).  Similarly, in *SEC* v. *Medallion Fin. Corp.*, a consulting agreement between Medallion Financial ("Medallion") and Meyers provided that Meyers "'must receive the prior written approval of both [Medallion's] President and Legal Department,' who were required to 'review and approve or reject' any materials" before publication.  2024 WL 4227753, at \*14 (S.D.N.Y. Sept. 18, 2024) (emphasis omitted).  The complaint quoted e-mails directing Meyers what to write and showed that the parties redrafted the agreement to explicitly provide Medallion approval authority.  *Id*.  Plaintiffs' cases thus involved allegations about a defendant's actual opportunity to review another defendant's statements or additional evidence revealing actual review of the statement.  No similar allegations are made here.

By contrast, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, decided six years after *In re Pfizer Inc.*, is directly on point.  625 F. Supp. 3d 164 (S.D.N.Y 2022).  There, the court held that a contractual provision was insufficient to extend "ultimate authority" over Turquoise's statements to Rio.  *Id*. at 207.  The court focused on an exception in the contract provision that, as here, Mot. 24, Ex. A at Ex. 2.1 at 51, allowed Turquoise to withhold statements from Rio when necessary to ensure its disclosures complied with securities laws.  *In re Turquoise Hill Res. Ltd. Sec. Litig*., 625 F. Supp. 3d at 207.  The court held that under *Janus* an entity being provided the opportunity to "review and comment" on a statement does not transform it into the "maker" of that statement.  *Id*.

The hesitance of the court to read an inference of "ultimate authority" into Turquoise's contractual obligations is also consistent with the purpose of the PSLRA.  If pleading a contractual obligation (with numerous exceptions and contingencies) alone were enough for liability under Section 10(b), it would gut the PSLRA's purpose:  to impose a heightened pleadings standard on securities fraud claims.  *In re Optimal U.S. Litig.*, 2011 WL 4908745, at \*5 (S.D.N.Y. Oct. 14,

12

2011) (noting "*Janus* emphasizes the narrow scope of . . . Rule 10b-5 and a formalistic approach to Rule 10b-5 liability"). That point applies with maximum force here, where Plaintiffs premise Tapestry's liability on its internal documents without alleging that Capri was even privy to them.

## II.     PLAINTIFFS FAIL TO PLEAD SCIENTER.

The Opposition's sole scienter argument is that the Capri Defendants' knowledge of internal documents that supposedly doomed their litigation position amounts to actual knowledge of falsity. Opp. 20, 24. Yet Plaintiffs do not explain how the Capri Defendants could have known *ex ante* that their litigation position, which turned on a battle of the experts and a complex legal question of market definition, would fail. And the possibility, or even the probability, that the FTC would prevail is insufficient to establish scienter. *See, e.g., In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 572-73 (S.D.N.Y. 2007) (A defendant "should not be charged with recklessness unless it [is] clear the endeavor could not possibly succeed"). Indeed, Plaintiffs' own sources recognize the FTC's "surprising" decision to sue, referring to "accessible luxury" as a mere marketing term. Mot. 11 (citing Ex. Z at 2). The aggressive nature of the suit, means its outcome was anything but sure.[8]  *Id*. at Ex. X at 3 (quoting analyst view that there was "essentially no precedent for blocked acquisitions within the fashion and accessories sector").

Moreover, while motive alone cannot establish scienter in the Third Circuit, the absence of any plausible motive supports the Capri Defendants. Mot. 24-26. Plaintiffs have no answer for why, if the Capri Defendants "secretly understood" that the Transaction would fail, they would continue to pursue it despite the burdens of regulatory review, public litigation (that focused on Capri's business shortcomings), and the risks to their investors. ¶¶ 84, 172. As courts in this

---

[8] Plaintiffs' claim that Capri's *public* changes to its SEC filings reflect an attempt "to conceal [its] knowledge of the level of [inherent] regulatory risk" makes no sense on its face. Opp. 23; *see also* Mot. 28-29.

Circuit have held, executives do not defraud investors "for the sheer joy of it." *In re PDI Sec. Litig.*, 2006 WL 3350461, at *16 (D.N.J. Nov. 16, 2006).

The cases Plaintiffs cite are readily distinguishable. For example, in *Tomaszewski* v. *Trevena, Inc.*, defendants represented to investors that the company had reached an agreement with the FDA, despite a later-released FDA Briefing Book showing the characterization to be false. 482 F. Supp. 3d 317, 323-24 (E.D. Pa. 2020). And in *In re EQT Corp. Sec. Litig.*, defendants explicitly denied that their merger synergy figures were "grossly exaggerated" (even though plaintiffs had adequately pleaded that defendants knew they were) and touted a drilling plan they knew was "impossible" to implement. 504 F. Supp. 3d 474, 497 (W.D. Pa. 2020). In other words, Plaintiffs' cases reflect: (1) explicit denial of facts defendants knew were true, or (2) defendants' awareness of regulatory developments that contradicted their public representations. *See also supra* at p. 6 (distinguishing the *Walgreens* cases). No similar facts exist here. Despite Plaintiffs' conclusory claims, Capri never "pushed back on countervailing news" from the FTC, Opp. 22-23, except to convey that Capri believed it would prevail, nor did Capri ever suggest the transaction would "sail through" regulatory approval. *Id*. at 23. To the contrary, Capri tempered its statements with numerous warnings. Mot. 6-9.

## III.    PLAINTIFFS' "SCHEME LIABILITY" CLAIMS FAIL.

Plaintiffs assert that the Capri Defendants failed to address the Complaint's so-called scheme liability claims, Opp. 28, and thus waived opposition to such claims. Not so. The Capri Defendants did not waive any argument opposing the claims because the claims were not actually pled. Though the Complaint uses the word "scheme" repeatedly (as complaints often do), mere recitations of the term do not suffice to plead the theory of scheme liability. A claim for scheme liability must be pled clearly and involve conduct "separate and apart" from its disclosure claim. *Nash* v. *Qualtrics Int'l Inc.*, 2024 WL 231870, at *6-7 (D. Del. Jan. 22, 2024). Moreover, even if

14

Plaintiffs properly pled a claim for scheme liability, and they did not, that claim rests "entirely on the same statements alleged as to Rule 10b-5(b)," which means they rise and fall on the same exact issues in the motion. *In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 572, 598 (E.D. Pa. 2023). Regardless of the packaging, Plaintiffs' claims fail.

## IV.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION.

To plead loss causation, Plaintiffs must plead a "corrective" disclosure that reveals the falsity of prior misrepresentations and thus reasonably caused the decline in the purportedly inflated stock price. *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 345 (2005). Although seldom reached, it warrants dismissal in appropriate cases. *See, e.g.*, *Nat'l Junior Baseball League* v. *Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 562-63 (D.N.J. 2010). And this is one.

None of the disclosures to which Plaintiffs point reveal a fraud to the market; rather, they reveal the materialization of a well-known and disclosed risk. In this Court, the "materialization of risk" test requires Plaintiffs to show the Capri Defendants exposed them to an *undisclosed* risk that resulted in a loss. *Bartesch* v. *Cook*, 941 F. Supp. 2d 501, 512 (D. Del. 2013). In an effort to make out their pleading burden, Plaintiffs claim that Capri concealed risks to the Transaction, which were revealed by Judge Rochon's ruling. Opp. 26-27 (citing ¶¶ 84, 148, 172). But this is plainly false. Plaintiffs' own Complaint relies heavily on slides from the FTC's closing argument summarizing all of the evidence that the FTC had highlighted in the course of litigating its case. ¶¶ 39, 42, 45, 48, 74, 77-78, 80. Despite the disclosure of that evidence throughout the litigation, Plaintiffs continued to trade on their optimism that Capri would prevail. Mot. 6. Plaintiffs' suit amounts to nothing more than arbitrageurs seeking recompense for their failed bets.

## CONCLUSION

For the reasons set forth herein and in the opening brief, the Complaint should be dismissed with prejudice.

15

Respectfully submitted,

|                                    | MORRIS, NICHOLS, ARSHT & TUNNELL LLP                                |
|------------------------------------|---------------------------------------------------------------------|
| OF COUNSEL:                        |                                                                     |
|                                    |                                                                     |
| WACHTELL, LIPTON, ROSEN & KATZ     | */s/ John P. DiTomo*                                                 |
|                                    | William M. Lafferty (#2755)                                          |
| Jonathan M. Moses (*pro hac vice*) | John P. DiTomo (#4850)                                               |
| Elaine P. Golin (*pro hac vice*)   | Jacob M. Perrone (#7250)                                             |
| Adam L. Goodman (*pro hac vice*)   | 1201 N. Market Street, 16th Floor                                   |
| Beatrice R. Pollard (*pro hac vice*) | Wilmington, DE  19801                                             |
| 51 West 52nd Street                | Telephone: (302) 351-9231                                           |
| New York, NY  10019                | wlafferty@morrisnichols.com                                         |
| Telephone: (212) 403-1388          | jditomo@morrisnichols.com                                           |
| JMMoses@wlrk.com                   | jperrone@morrisnichols.com                                          |
| EPGolin@wlrk.com                   |                                                                     |
| ALGoodman@wlrk.com                 | *Counsel for Defendants Capri Holdings*                             |
| BRPollard@wlrk.com                 | *Limited, John D. Idol, and Thomas J.*                              |
|                                    | *Edwards, Jr.*                                                      |

Dated:  October 27, 2025

16