## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE CAPRI HOLDINGS LTD. SECURITIES LITIGATION | Case No. 1:24-cv-01410-SB<br><br>CLASS ACTION |

### REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS BY
### DEFENDANTS TAPESTRY, INC., JOANNE C. CREVOISERAT, AND SCOTT A. ROE

**Of Counsel:**

Timothy Perla
Sonia Sujanani
WILMER CUTLER PICKERING
   HALE & DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 233-6766
timothy.perla@wilmerhale.com
sonia.sujanani@wilmerhale.com

Jessica Lewis
WILMER CUTLER PICKERING
   HALE & DORR LLP
2600 El Camino Real
Palo Alto, CA 94306
Telephone: (628) 235-1160
jessica.lewis@wilmerhale.com

October 27, 2025

Thomas A. Uebler (#5074)
Terisa A. Shoremount (#7113)
MCCOLLOM D'EMILIO SMITH
   UEBLER LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808
Telephone: (302) 468-5960
tuebler@mdsulaw.com
tshoremount@mdsulaw.com

*Counsel for Defendants Tapestry, Inc.,
Joanne C. Crevoiserat, and Scott A. Roe*

MDSU 10518116.v1

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.      Plaintiff Lacks Standing Under The Purchaser-Seller Rule ............................................... 1

II.      Plaintiff Does Not State A Claim Against Tapestry Based On Capri's Inactionable Statements ....................................................................................................................... 3

III.      The Safe Harbor Protects The Tapestry Defendants' Statements ..................................... 4

         A.      Plaintiff Fails To Allege Tapestry's Statements Were Verifiable When Made    ....................................................................................................... 4

         B.      The Forward-Looking Statements Were Accompanied by Sufficiently Tailored Cautionary Language ..................................................................... 6

IV.      The Challenged Statements Are Inactionable Opinions ................................................... 8

V.      Plaintiff's Scienter Theory Rests On Hindsight, Not Contemporaneous Facts ................ 12

VI.      Plaintiff Fails To Allege A Scheme .............................................................................. 14

CONCLUSION ................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Blair v. Infineon Techs. AG*,
720 F. Supp. 2d 462 (D. Del. 2010) ...................................................................................... 17

*Chabot v. Walgreens Boots All., Inc.*,
2019 WL 2992242 (M.D. Pa. Apr. 15, 2019) ........................................................................ 14

*Chabot v. Walgreens Boots All., Inc.*,
2023 WL 2908827 (M.D. Pa. Mar. 31, 2023) ........................................................................ 14

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ............................................................................................ 11, 16

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) .................................................................................................... 3

*Dang v. Amarin Corp. plc*,
750 F. Supp. 3d 431 (D.N.J. 2024) ........................................................................................ 17

*Deutschman v. Beneficial Corp.*,
841 F.2d 502 (3d Cir. 1988) .................................................................................................... 2

*Hering v. Rite Aid Corp.*,
331 F. Supp. 3d 412 (M.D. Pa. 2018) ................................................................................. 6, 11

*In re Aetna Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010) .................................................................................................... 6

*In re DRDGOLD Ltd. Sec. Litig.*,
472 F. Supp. 2d 562 (S.D.N.Y. 2007) ................................................................................... 16

*In re Enzymotec Sec. Litig.*,
2015 WL 8784065 (D.N.J. Dec. 15, 2015) ........................................................................ 17, 18

*In re EQT Corp. Sec. Litig.*,
504 F. Supp. 3d 474 (W.D. Pa. 2020) ................................................................................... 15

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
2020 WL 1479128 (E.D. Pa. Mar. 25, 2020) .......................................................................... 9

*In re Maiden Holdings, Ltd. Sec. Litig.*,
__ F.4th __, 2025 WL 2406864 (3d Cir. Aug. 20, 2025) ....................................................... 12

ii

*In re Newell Brands, Inc. Sec. Litig.*,
2019 WL 6715055 (D.N.J. Dec. 10, 2019) ............................................................. 5

*In re NutriSystem, Inc. Sec. Litig.*,
653 F. Supp. 2d 563 (E.D. Pa. 2009) ........................................................... 6, 7, 8

*In re PDI Sec. Litig.*,
2006 WL 3350461 (D.N.J. Nov. 16, 2006) ........................................................... 15

*In re Pfizer Inc. Sec. Litig.*,
819 F.3d 642 (2d Cir. 2016) ..................................................................................... 4

*In re Royal Dutch/Shell Transport*,
2006 WL 2355402 (D.N.J. Aug. 14, 2006) ........................................................... 19

*In re Sketchers U.S.A., Inc. Sec. Litig.*,
2005 WL 8168047 (C.D. Cal. Mar. 21, 2005) ........................................................ 9

*In re Stone & Webster, Inc., Sec. Litig.*,
414 F.3d 187 (1st Cir. 2005). .................................................................................. 6

*In re Synchronoss Sec. Litig.*,
705 F. Supp. 2d 367 (D.N.J. 2010). ........................................................................ 6

*In re Teva Sec. Litig.*,
512 F. Supp. 3d 321 (D. Conn. 2021) .................................................................... 18

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011) ..................................................................... 6

*In re Weight Watchers Int'l, Inc. Sec. Litig.*,
2016 WL 2757760 (S.D.N.Y. May 11, 2016) ....................................................... 11

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ......................................................................... 5, 6, 16

*Levy v. Luo*,
2025 WL 437022 (D. Del. Feb. 7, 2025) ................................................................ 2

*Martin v. GNC Holdings, Inc.*,
2017 WL 3974002 (W.D. Pa. Sept. 8, 2017) ........................................................ 17

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
54 F.4th 82 (2d Cir. 2022) .................................................................................. 2, 3

iii

*Nash v. Qualtrics Int'l Inc.*,
  2024 WL 231870 (D. Del. Jan. 22, 2024) ............................................................ 18

*National Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ........................................................................ 8

*National Shooting Sports Fdn. v. Att'y Gen. of N.J.*,
  80 F.4th 215 (3d Cir. 2023) .................................................................................... 1

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
  834 F.3d 481 (3d Cir. 2016) ................................................................................... 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) .............................................................................................. 10

*SEC v. Cooper*,
  142 F. Supp. 3d 302 (D.N.J. 2015) ...................................................................... 19

*SEC v. Lucent Techs., Inc.*,
  610 F. Supp. 2d 342 (D.N.J. 2009) ...................................................................... 19

*SEC v. Medallion Fin. Corp.*,
  2024 WL 4227753 (S.D.N.Y. Sept. 18, 2024) ....................................................... 4

*SEC v. Mintz*,
  723 F. Supp. 3d 386 (D.N.J. 2024) ...................................................................... 19

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000) ............................................................................... 2, 9

*Stichting Pensioenfonds Metaal en Techniek v. Verizon Commc'ns, Inc.*,
  775 F. Supp. 3d 826 (D.N.J. 2025) ...................................................................... 18

*Tanaskovic v. Realogy Holdings Corp.*,
  2021 WL 211049 (D.N.J. Jan. 21, 2021) ............................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights*, *Ltd.*,
  551 U.S. 308 (2007) .............................................................................................. 16

*Tomaszewski v. Trevena, Inc.*,
  482 F. Supp. 3d 317 (E.D. Pa. 2020) .............................................................. 16, 17

**STATUTES**

15 U.S.C. § 78u-5(c) ............................................................................................. 5, 8

iv

MDSU 10518116.v1

**INTRODUCTION**

Plaintiff's Opposition confirms that this case is built on hindsight, speculation, and a misapplication of securities law.  The Opposition cannot rebut the reality that Defendants repeatedly disclosed—and investors understood—the risk that the acquisition may not close.  So Plaintiff resorts to insisting that the Tapestry Defendants were in effect legally required to be clairvoyant, both about how the government would construe complex antitrust issues and how a court would apply them on a preliminary injunction.[1]  But the securities laws do not require clairvoyance, and the legal protections for forward-looking statements and opinions preclude precisely the sort of claims Plaintiff now advances.  The Court should dismiss this case with prejudice both because there is no actionable statement (or scienter) and because, in any event, *Capri* shareholders lack standing to sue the *Tapestry* Defendants under the purchaser-seller rule.

**ARGUMENT**

**I.      Plaintiff Lacks Standing Under The Purchaser-Seller Rule**

"Standing . . . demand[s] certainty and immediacy."  *National Shooting Sports Fdn. v. Att'y Gen. of N.J.*, 80 F.4th 215, 219 (3d Cir. 2023) (Bibas, J.).  To establish standing, the purchaser-seller rule requires that the plaintiff be a purchaser or seller of the security *about which an alleged misstatement was made*.  As set forth in the Tapestry Defendants' Opening Brief, both the Second and Ninth Circuit Courts of Appeals have dismissed cases where, like here, the plaintiff owned stock of one company but challenged statements by the issuer of a *different* company's stock.  D.I. 49 at 9–10 (citing *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022) ("*Menora*") and *In re: CCIV / Lucid Motors Sec.*

---

[1] All defined terms used in the Tapestry Defendants' Corrected Opening Brief in Support of Motion to Dismiss (D.I. 49) ("Opening Brief") apply herein.  All paragraph references refer to the Amended Complaint.  D.I. 32.  Citations to Exhibits refer to D.I. 50-2 through D.I. 50-13.

*Litig.*, 110 F.4th 1181, 1185–86 (9th Cir. 2024)).  No court of appeals has held otherwise.

While Plaintiff contends that Third Circuit precedent supports its theory of standing, the cases it relies on are inapposite.  First, *Deutschman v. Beneficial Corp.* did not consider the circumstances present here; it considered whether a purchaser of call options on a company's stock had standing.  841 F.2d 502, 503 (3d Cir. 1988).  *Deutschman* does not hold that a plaintiff need only be a purchaser or seller of *a* security.  Indeed, as the Tapestry Defendants previously explained (and left unaddressed by Plaintiff), such a result would allow a boundless right of action any time an issuer mentions (or says something affecting) another company whose stock later drops.  *Compare* D.I. 49 at 9–10 *with* D.I. 55.  Second, *Levy v. Luo*, a non-precedential report and recommendation, failed to grapple with *Menora*'s reasoning.  *See* 2025 WL 437022, at *4–5 (D. Del. Feb. 7, 2025); *see also* D.I. 49 at 9–10.  Finally, *Semerenko v. Cendant Corp.* did not consider whether the shareholders of a target company had *standing to sue* an acquiring company over its alleged misrepresentations—it considered whether the shareholders adequately alleged the "in connection with" element of Rule 10b-5, an issue that the Tapestry Defendants do not raise.  223 F.3d 165, 174 (3d Cir. 2000).

As a backstop, Plaintiff argues that *Menora*'s purchaser-seller rule nonetheless confers standing because "the statements made by the Tapestry Defendants were certainly 'about' Capri securities."  D.I. 55 at 7.  But Plaintiff fails to point to any such statement.  *See id.*  Moreover, as explained in the Tapestry Defendants' Opening Brief, the *Menora* court expressly rejected that expansive idea.  *See* D.I. 49 at 9–10.  It found no standing where, as here, "a company whose stock the plaintiffs did not purchase made material misstatements about itself that negatively impacted another company's stock, which plaintiffs did purchase," even if "th[e] case involve[s] a merger" and involves the "incorporat[ion] [of] some of [the other company's] misstatements in

2

its SEC filings and investor presentations." *Menora*, 54 F.4th at 88–89.

## II.    Plaintiff Does Not State A Claim Against Tapestry Based On Capri's Inactionable Statements

Plaintiff alleges that Tapestry was the "maker" of Capri's challenged statements by virtue of language in the merger agreement that necessitated Tapestry's "prior written consent" in advance of Capri making any statement regarding the merger. *See* ¶ 100; D.I. 55 at 9. The parties agree that the "maker" of a statement is the person with "ultimate authority" over the statement. D.I. 55 at 8–9 (quoting *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 688 (3d Cir. 2023)). But Plaintiff fails to allege that the Tapestry Defendants had "ultimate authority" over Capri's statements, all four of which were made on Form 8-K. For SEC filings, the merger agreement required only that Capri "shall endeavor, on a basis reasonable under the circumstances, to provide a meaningful opportunity to the other [p]arty to review and comment." Ex. 4 (Exhibit 2.1 to Tapestry's August 10, 2023 Form 8-K) at 51 (carve out for statements "required by applicable Law," *e.g.*, federal securities laws). The Complaint does not allege that Capri actually afforded Tapestry that opportunity, or that Tapestry otherwise had "ultimate authority" over the challenged statements.

*In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642 (2d Cir. 2016) and *SEC v. Medallion Fin. Corp.*, 2024 WL 4227753 (S.D.N.Y. Sept. 18, 2024) do not change this conclusion. In *Pfizer*, plaintiffs alleged that one company was responsible for another company's statements on Form 8-K and to the press by virtue of a "co-promotion agreement" for a drug. 819 F.3d at 655–56. A public relations firm, jointly employed by both parties to the agreement, shared a "Q & A document" containing the content of the challenged statements made to the press with a note that it would be "reviewed and finalized during a . . . conference call" between the two companies and then distributed to both "for *final sign off*." *Id.* at 657 (emphasis added). The court found

3

that these facts precluded summary judgement on the issue of whether the first company had ultimate authority over the second company's statements. *Id*. *Medallion* is also distinguishable. *See* 2024 WL 4227753 at *14 (consultant firm was "maker" of party's statements where it was "*required* to review and approve or reject any materials before they were published" and consultant firm's COO told defendant "what to write" and "direct[ed] him to respond to specific negative articles" (emphasis in original) (internal quotations and citations omitted)). In any event, Capri's statements are inactionable for the reasons stated in the Tapestry Defendants' Opening Brief. D.I. 49 §§ I.B, I.C, I.D (addressing ¶¶ 104, 119, 149, 163).

III.    **The Safe Harbor Protects The Tapestry Defendants' Statements**

   A.    **Plaintiff Fails To Allege Tapestry's Statements Were Verifiable When Made**

Plaintiff argues that the PSLRA safe harbor does not protect some of the Tapestry Defendants' statements because they were not forward-looking. D.I. 55 at 19–21. Plaintiff first takes issue with the Tapestry Defendants citing portions of challenged statements not highlighted by Plaintiffs in their Complaint to support the Tapestry Defendants' argument that certain statements were forward-looking. While Plaintiff may prefer to cherry-pick and excerpt the statements, "courts must 'examine statements in the full context' . . . and not engage in a 'selective reading.'" *In re Newell Brands, Inc. Sec. Litig.*, 2019 WL 6715055, at *11 (D.N.J. Dec. 10, 2019), *aff'd*, 837 F. App'x 869 (3d Cir. 2020). Here, the statements' context shows they were forward-looking. *See* D.I. 49 at 11–14.

Relatedly, Plaintiff argues the Tapestry Defendants "repeat th[e] tactic" of placing their statements in context "to evade" a holding that those statements are "mixed present/future statement[s]." D.I. 55 at 21 (citing *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d

4

Cir. 2009)).[2] This argument fails. In *Avaya*, the court found that the defendant's "on track" statements were protected by the safe harbor because "when read *in context*," they "cannot meaningfully be distinguished from the future projection of which they are a part." 564 F.3d at 256 (emphasis added). Plaintiff also cites *Stone & Webster* for the proposition that a mere reference to the future in one part of a statement cannot bring the entire statement into the safe harbor, but that case dealt with a company's statement that it had, at present, enough funding to meet anticipated future liabilities. *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 213 (1st Cir. 2005). That statement was verifiable when made, *id.*, unlike the statements here, which were not verifiable until the Transaction closed.

Ultimately, Plaintiff does not (and could not) show that any of the Tapestry Defendants' statements were verifiable when made. D.I. 49 at 11 (citing *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (statements are forward-looking if their "accuracy can only be verified after they are made"); *In re NutriSystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 579 (E.D. Pa. 2009) (similar)). And try as Plaintiff might to make Tapestry's statements analogous to those the *Walgreens* court found actionable, the comparison does not hold. As explained in the Tapestry Defendants' Opening Brief, they predicted (1) that the transaction would close, *e.g.*, ¶¶ 103, 104, 105, 112, 115, 119, 120–23, 128, 131–33, 142, 146; (2) that the Transaction was "pro-consumer" or "pro-competition," *e.g.*, ¶¶ 103, 105, 109, 112, 115, 128; and (3) that the Companies intended to

---

[2] Plaintiff also argues the Tapestry Defendants' statements are "not forward-looking because they omit and misrepresent existing facts." D.I. 55 at 20. But whether a statement is forward-looking depends on the language it uses, not whether Plaintiff alleges it was false or misleading. *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 278 (3d Cir. 2010) (citing 15 U.S.C. § 78u-5(c)). And it defies common sense that a plaintiff could defeat the safe harbor merely by alleging an omission. *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 412 n.58 (D.N.J. 2010).

challenge the FTC's arguments in court, *e.g.*, ¶¶ 149, 150, 151–52, 156.[3]  As to the first two

categories, the *Walgreen*s court found similar statements *were* forward-looking.  *See Hering v.*

*Rite Aid Corp.*, 331 F. Supp. 3d 412, 423–25 (M.D. Pa. 2018) (finding forward-looking

statements about "expected timing of consummating transaction,"[4] "expected timetable for

closing the deal," and "value of the merger to shareholders" (albeit the dollar value)).  The

*Walgreens* court did not address statements similar to the third category, *see id.* at 423–26, and

Defendants have explained they are forward-looking, D.I. 49 at 23 n.17.

Moreover, Plaintiff does not respond at all to *In re NutriSystem*, in which a court in this

Circuit found statements to be forward-looking because they "could not be verified . . . without

examining [the company's] future performance."  653 F. Supp. 2d at 579.

## B.    The Forward-Looking Statements Were Accompanied by Sufficiently Tailored Cautionary Language

Plaintiff claims that Tapestry did not "tailor [its cautionary] language for the unique

issues pertaining to the Capri Acquisition," and that the cautions were "true to every merger and

to every transaction subject to antitrust review by the FTC," did not change over time, and were

"copied" from other companies' disclosures regarding the same risks.  D.I. 55 at 22–23.  Even if

that were true (and Plaintiff at most demonstrates only that, unsurprisingly, there happens to be

some overlap with Tapestry's disclosures and the disclosures of other companies facing similar

---

[3] To the extent Plaintiff challenges statements made by Capri, those statements are not attributable to Tapestry, *see supra* § II; *see also* D.I. 41 at 23–24 (arguing the Capri Defendants are not liable for Tapestry statements), and are otherwise inactionable for the reasons explained below.  *See infra* §§ IV, V (addressing ¶¶ 104, 119, 149, 163).

[4] Plaintiff claims that the *Walgreens* court found Walgreens' statements regarding the timeline for closing the deal were not forward-looking.  D.I. 55 at 20 n.10.  That is not so.  The Walgreens court explicitly found that "Walgreens . . . clearly made forward-looking statements related to the expected timetable for closing the deal," but the court could not analyze whether there was sufficient cautionary language because it was not provided with the relevant disclosures.  *Rite Aid*, 331 F. Supp. 3d at 425.  That is not an issue here.  *See* D.I. 49 at Appendix A (Forward-Looking Statement Cautions).

6

risks), it is irrelevant.  What is required is cautionary language that is "substantive and tailored" to the risk.  *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 491 (3d Cir. 2016); *see also National Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 536 (D.N.J. 2010) (cautionary language need only mention "important factors that could cause actual results to differ" (citation omitted)).  And Tapestry's cautionary language did change over time. *Compare* Ex. 17 (Exhibit 99.1 to Tapestry's Aug. 10, 2023 Form 8-K) at 2 (cautioning the Transaction is "anticipated to close in calendar year 2024, subject to . . . receipt of required regulatory approvals") *with* Ex. 31 (Exhibit 99.1 to Tapestry's Nov. 9, 2023 Form 8-K) at 2 (cautioning "Tapestry is working to receive all required regulatory approvals [for the Transaction], including responding to the U.S. Federal Trade Commission's second request received on November 3, 2023").  This language is more than sufficient to invoke the safe harbor.  *See Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *17 (D.N.J. Jan. 21, 2021) (sufficient cautionary language where defendant disclosed risks that "could cause the actual results to differ from [defendant's] expectations").

None of the cases Plaintiff cites requires more in this context.  *See Semerenko*, 223 F.3d at 182 (analyzing whether cautionary language was sufficient to trigger the stricter bespeaks caution doctrine); *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2020 WL 1479128, at *18 (E.D. Pa. Mar. 25, 2020) (caution insufficient because it omitted critical risk that FDA could find product in new drug application was a drug/device combination, not a drug).  And Plaintiff does not cite a single case in which a defendant's cautionary language was insufficient merely because it was similar to (or even "copied" from) another company's disclosure.  D.I. 55 at 22 & n.13.

Plaintiff also challenges the cautions accompanying Ms. Crevoiserat's oral statements supposedly because third parties without "inside knowledge of Tapestry or the review process"

7

wrote them.  D.I. 55 at 23.  But the sufficiency of cautionary language turns on the words used,

not the identity of the drafter.  Indeed, Plaintiff fails to address *In re Skechers U.S.A., Inc. Sec.

Litig.*, which held that a "[p]laintiff may not evade the safe harbor merely by recharacterizing

[d]efendants' otherwise protected statements as unprotected statements made by analysts."  2005

WL 8168047, at *7 (C.D. Cal. Mar. 21, 2005), *aff'd*, 273 F. App'x 626 (9th Cir. 2008).[5]

## IV.    The Challenged Statements Are Inactionable Opinions

Plaintiff argues that the Companies' statements of opinion regarding the "competition

between [Defendants'] brands in the 'luxury market'" were "fact[s]," not opinions, D.I. 55 at 13

(citing ¶¶ 109, 115, 128, 143, 146, 150–52, 160, 163),[6] because they "expresse[d] certainty"

about the market in which Capri and Tapestry compete and because analysts purportedly

understood their statements as fact (which Plaintiff simply asserts without explanation), *id.* at

14.[7]  But whether a statement is fact or opinion depends only on its content.  *See Omnicare, Inc.

v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (explaining that

statement of fact concerns "a thing done or existing" or an "actual happening," while opinion is

"a belief" or "view").  The Tapestry Defendants' statements portraying the competitive market as

broad and fragmented are opinions.[8]  *See In re Weight Watchers Int'l, Inc. Sec. Litig.*, 2016 WL

---

[5] The forward-looking statements are independently shielded under the safe harbor because Plaintiff still fails to allege that Ms. Crevoiserat or Tapestry had "actual knowledge" they were false or misleading when made.  15 U.S.C. §§ 78u-5(c)(1)(B)(i), (ii); *see infra* § V.

[6] Plaintiff also points to Capri's statement disagreeing with the FTC's decision to move to enjoin the merger.  ¶ 149.  That statement is not attributable to Tapestry, *see supra* 6 n.3, and in any event is inactionable opinion, *see infra* § IV.

[7] Several of these statements express the Tapestry Defendants' and Capri Defendants' belief in the merits of their legal arguments in the FTC Litigation, *see, e.g.*, ¶¶ 151–52, 160, 163, and are classic opinion, D.I. 49 at 22–23.

[8] The portions of statements that the luxury market was $200 billion, and includes handbags, footwear, and apparel (¶¶ 109, 128, 150) are opinions because they concern the Tapestry Defendants' view of the legal merits of the FTC litigation, specifically the contours of the appropriate antitrust market.  But even if they convey facts, Plaintiff does not allege they were false.  D.I. 55 at 13–14.

2757760, at *4–6 (S.D.N.Y. May 11, 2016) (statement about competitive pressure was opinion). And Plaintiff does not cite a single case in which a court found that similar statements were statements of fact or respond to any of the cases cited in the Tapestry Defendants' Opening Brief finding similar statements were opinions. *Compare* D.I. 55 at 13–14, *with* D.I. 49 at 18–23. Plaintiff also argues that the Tapestry Defendants' statements regarding competition were not opinions because they were based on "internal knowledge" and because Ms. Crevoiserat stated that her opinions were based on "data." D.I. 55 at 14. But all opinions have a factual foundation; that does not convert them into fact statements. Indeed, "[i]nterpretations of . . . data are considered opinions." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014). Plaintiff also claims that Ms. Crevoiserat's opinions were objectively false because Michael Kors and Coach "dominated the accessible luxury handbag market." D.I. 55 at 14. But Tapestry's internal documents (selectively cited by Plaintiff, *id.* at 16–17) did not foreclose the good faith belief that the merger was pro-competitive and would be evaluated using a broad market definition. *See* D.I. 49 at 22–23; *infra* § V. Indeed, Plaintiff *admits* that "Michael Kors and Coach compete against smaller accessible luxury brands, and that the submarket is ultimately constrained by the luxury and mass markets." D.I. 55 at 27–28 (citing ¶ 62).

Plaintiff does not challenge and therefore concedes that the Tapestry Defendants' other statements, such as their expectation that the Transaction would close, *e.g.*, ¶¶ 103–04, 112, 115, 122–23, 128, 131–32, 136, and their belief in the merits of the FTC litigation, *e.g.*, ¶¶ 150–51, 156–57, 166, 170, were opinions. Plaintiff argues, however, that the opinions are actionable under *Maiden Holdings*' "knowledge theory" because the Tapestry Defendants omitted "facts" concerning their "contemporaneous analysis of the level of regulatory risk faced by the [Transaction]." D.I. 55 at 13, 15 (citing *In re Maiden Holdings, Ltd. Sec. Litig.*, __ F.4th __,

9

2025 WL 2406864 (3d Cir. Aug. 20, 2025)).  In particular, Plaintiff alleges that Tapestry omitted to disclose: (1) the purported anticompetitive rationale for the Transaction; (2) competition with Michael Kors; and (3) the dominance in the accessible luxury handbag submarket that would result from the merger.  D.I. 55 at 16–17.

As an initial matter, none of these purportedly omitted "facts" concerns any analysis by the Tapestry Defendants of regulatory risk, so the argument is a non-sequitur.  They are simply "facts" that Plaintiff claims were contrary to the challenged opinions.  None demonstrates "knowledge" that the merger would be rejected or was not pro-competitive or pro-consumer.

*First*, Plaintiff points to a line from an August 2022 slide deck that posits a possibility that an acquisition could result in the opportunity to raise Michael Kors prices.  D.I. 55 at 16–17.  But this is a single soundbite from an early exploratory document predating the challenged statements by almost a year.  While it was presented to Ms. Crevoiserat, there is *no allegation* that she adopted its views.  *See* D.I. 49 at 27–28.  It hardly shows "knowledge" that a year later the FTC (and, almost two years later, a court) would adopt a very narrow product market definition, or that the transaction would not be pro-consumer.  *Id.*[9]  *Second*, merely tracking Michael Kors as a competitor does not suggest such knowledge, either.  *Id.* at 26.  That two companies are direct competitors does not obviously mean that there cannot be a broader relevant antitrust market within which those companies compete, and mergers between direct competitors often gain approval.  *Id.* at 26 n.18.  *Third*, Plaintiff's allegation that "Tapestry calculated" that Defendants' "combined brands would account for 83% of the accessible luxury

---

[9] Moreover, the internal documents repeatedly reference competition from other brands in a broader market (including that 28% of Coach customers would consider purchasing "luxury" handbags), and posited pro-competitive reasons for the merger including to increase the value of Capri's brands to consumers.  D.I. 49 at 28.

10

market" is simply false. D.I. 55 at 3, 17. Plaintiff cites no source for this figure, and tellingly, the record shows that the *FTC's economic expert*, Dr. Loren K. Smith, made the calculation during the litigation—*not Tapestry*. Preliminary Injunction Order, *FTC v. Tapestry*, No. 1:24-cv-03109, D.I. 339 at 64–65, 97 (S.D.N.Y. Oct. 24, 2024). *Finally*, the internal colloquial use of the term "accessible luxury" is not inconsistent with the belief that for purposes of antitrust analysis and the prospects for merger approval, Tapestry and Michael Kors compete in a much broader market. D.I. 49 at 25–26. At bottom, Plaintiff fails to identify a *single* document reflecting knowledge the merger would be rejected, that it would not be pro-competitive, or even that the regulatory risk was significantly higher than Tapestry cautioned.

Further, Plaintiff relies on the so-called "*Walgreens* trilogy" to suggest Defendants hid negative comments from regulators about the transaction.[10] In *Walgreens*, the defendants contradicted news reports regarding negative regulator feedback by alluding to their non-public knowledge of FTC discussions without disclosing that the FTC had informed the defendants that FTC approval was unlikely. *See Rite Aid*, 331 F. Supp. 3d at 427–28. This was further confirmed by Walgreens pushing the deal back three months. *Id.* at 427. On the other hand, here, Plaintiff's claims that the FTC "certainly raised" concerns, ¶ 127, is sheer speculation based on general "best practices" guidance, not particularized facts about *this* deal or the FTC's review of *this* merger. The Tapestry Defendants highlighted that pleading gap, D.I. 49 at 23 n.17, yet Plaintiff fails to answer it.

---

[10] Plaintiff's labeling of the Walgreens decisions as a "trilogy" is apt only in the sense that, like many trilogies, the sequels add little to the original. *See Chabot v. Walgreens Boots All., Inc.*, 2019 WL 2992242, at *1–2 (M.D. Pa. Apr. 15, 2019) (noting plaintiffs filed action based on same allegations as first action after that court shortened class period such that named plaintiff lost standing, and reaffirming first action's holdings but more "fully set[ting] forth [its] reasoning" regarding scienter); *Chabot v. Walgreens Boots All., Inc.*, 2023 WL 2908827, at *11 (M.D. Pa. Mar. 31, 2023) (denying parties' cross motions for summary judgment).

11

## V.      Plaintiff's Scienter Theory Rests On Hindsight, Not Contemporaneous Facts

Plaintiff's scienter theory fails for four independent and fatal reasons:

*First,* Plaintiff fails to plead any cognizable motive.  Plaintiff argues Defendants sought to maintain Capri's stock price while "buying time to find a solution to the FTC's perceived intransigence," D.I. 55 at 29, but there was no reason for Tapestry to care about Capri's stock price—it was going to pay $57 per share regardless, D.I. 49 at 30; ¶ 102.  Nor does Plaintiff allege any personal financial incentive or benefit to the Individual Defendants, such as benefits by selling *Capri* stock.  D.I. 49 at 29–30.  The absence of any plausible motive undercuts any inference of scienter, much less a strong one.  As courts in this Circuit have explained, executives do not defraud investors "for the sheer joy of it."  *In re PDI Sec. Litig.*, 2006 WL 3350461, at *16 (D.N.J. Nov. 16, 2006).

*Second,* Plaintiff argues that the Tapestry Defendants "fraudulently maintained confidence that the Capri Acquisition would close despite their knowledge of the true level of regulatory risk faced by the transaction."  D.I. 55 at 25.  Again, none of the documents or statements shows that the Tapestry Defendants knew the FTC or court would later determine that the relevant *antitrust* market was "accessible luxury," that the transaction was not pro-competitive, or that regulatory risk was higher than Tapestry had cautioned, *see supra* § IV.[11] And to the extent Plaintiff relies on the preliminary injunction order, that later legal ruling did not exist at the time of the challenged statements.  Plaintiff's cases are distinguishable for that

---

[11] Plaintiff also argues that the Tapestry Defendants "took steps to cover up their knowledge of the level of regulatory risk faced by the Capri Acquisition" by no longer referring to "accessible luxury" in their later SEC filings and not referring to the term in their FTC Litigation testimony. D.I. 55 at 27.  But the notion of a "cover up" makes no sense: all SEC filings are public, and investors could easily determine changes in wording.  Moreover, the Tapestry Defendants testifying in court cuts *against* scienter: it does not stand to reason that Tapestry would continue to litigate through trial if it knew the deal was doomed.  *See* D.I. 49 at 20.

12

reason alone.  In *In re EQT Corp. Sec. Litig.*, defendants were repeatedly and publicly informed that the figures reported for merger synergies were "grossly exaggerated" and the disclosed plan was "impossible."  504 F. Supp. 3d 474, 497 (W.D. Pa. 2020).  And in *Avaya*, the company executive "repeatedly" and "explicitly denied" that it was engaging in the alleged discounting.  564 F.3d at 269–70.  Plaintiff instead merely relies on soundbites divorced from context that do not support a strong inference that the Tapestry Defendants knew the challenged statements were false or misleading or recklessly embraced an intent to deceive.  *See supra* § IV; *see also In re DRDGOLD Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 573 (S.D.N.Y. 2007) (A defendant "should not be charged with recklessness unless it [is] clear the endeavor could not possibly succeed").  To the contrary, Plaintiff admits that "Michael Kors and Coach compete against smaller accessible luxury brands, and that the submarket is ultimately constrained by the luxury and mass markets."  D.I. 55 at 27–28.  The more "cogent and compelling" inference is that the Tapestry Defendants believed the merger was pro-competitive and would be approved.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  Otherwise, why spend time and resources pursuing it?  D.I. 49 at 20 (citing *Pfizer*, 754 F.3d at 170).[12]

*Third,* Plaintiff's allegation that "the FTC certainly raised serious concerns and issues directly to Defendants," D.I. 55 at 26, is pure speculation.  *See supra* § IV.

*Fourth,* and finally, Plaintiff's fallback to core operations, D.I. 55 at 25 n.17, is unavailing.  To start, the phrases "core operation" or "core business" are not present in the

---

[12] Plaintiff argues *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 334 (E.D. Pa. 2020) rejected this argument.  That is not so.  That court found that the company's "continued investment" in its drug "support[ed] an inference that [the defendant] subjectively, though incorrectly, believed [it] would eventually be approved despite some bumps in the road," but that it did "not provide a nonculpable explanation" for failing to disclose negative regulator feedback, which is not at issue here.  *Id.* at 333–34.

13

Complaint. *See Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 472 n.15 (D. Del. 2010) (refusing to consider facts "not contained in the complaint"). In any case, Tapestry is not in the merger and acquisition business—it is a major fashion business at the time owning three brands offering a variety of goods—thus the acquisition was not a "core" operation. *See Dang v. Amarin Corp. plc*, 750 F. Supp. 3d 431, 476–77 (D.N.J. 2024) (core operations are "'core matters of central importance' to the company"); *c.f.*, *Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, at *14 (W.D. Pa. Sept. 8, 2017) (third-party sports nutrition products were core operation of health and wellness retailer), *aff'd*, 757 F. App'x 151 (3d Cir. 2018).[13] Beyond that, the "core operations doctrine . . . is not sufficient to establish scienter." *Stichting Pensioenfonds Metaal en Techniek v. Verizon Commc'ns, Inc.*, 775 F. Supp. 3d 826, 850 (D.N.J. 2025).

## VI.    Plaintiff Fails To Allege A Scheme

In its Opposition, Plaintiff summarily asserts that the "Complaint adequately alleges scheme liability under Rule 10b-5(a) and (c)." D.I. 55 at 30. But Plaintiff merely points to insufficient passing references to a purported "anticompetitive scheme" in the Complaint, ¶¶ 33–34, 174–75, 196, and Count I's complete citation to Rule 10b-5, ¶ 208. D.I. 55 at 30. "Courts rightly insist that a plaintiff who intends to bring a Rule 10b-5 claim based on both misstatement and scheme liability must do so clearly and specifically." *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 337 (D. Conn. 2021); *see Nash v. Qualtrics Int'l Inc.*, 2024 WL 231870, *6–7 (D. Del. Jan. 22, 2024) (no scheme liability where "the specific theory of scheme liability . . . is not pleaded in the complaint[] separate and apart from the allegations under Rule 10b-5(b)").

---

[13] To the extent Plaintiff's argument is based on *In re Enzymotec Sec. Litig.*, the facts in that case are inapposite. 2015 WL 8784065 (D.N.J. Dec. 15, 2015). There, the court concluded that growth in the infant formula market was "central to the core business of the [c]ompany" where infant formula accounted for most of its revenue. *Id.* at *18 & n.17. Plaintiff makes a different argument: that predicting anticompetitive effects and antitrust regulatory responses "involve[s] Tapestry's core business," D.I. 55 at 25 n.17, which the Complaint identifies as "fashion," ¶ 2.

14

In any event, Plaintiff fails to plead the elements of a scheme liability claim. "[A] private plaintiff must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 350 (D.N.J. 2009). Scheme liability allegations "must entail a defendant's undertaking of a deceptive scheme or course of conduct that went beyond misrepresentations." *In re Royal Dutch/Shell Transport*, 2006 WL 2355402, at *8 (D.N.J. Aug. 14, 2006).[14] Many of Plaintiff's "scheme liability allegations" are nothing more than an insufficient repackaging of their misstatement claims. D.I. 55 at 30; *e.g.*, ¶¶ 34 ("In furtherance of that scheme, [Defendants] repeatedly stated in public filings and press releases . . . ."), 174–75 (pointing to challenged statements); *see Royal Dutch*, 2006 WL 2355402, at *8.

The allegations Plaintiff now claims support scheme liability are just conclusory statements without any pleaded facts (and therefore entitled to no weight), or allegations of motive that do not identify any deceptive (much less *inherently* deceptive) acts. *See, e.g.*, ¶¶ 33 (describing the existence of documents that allegedly show anticompetitive motivations for the Transaction), 196 (attributing Plaintiff's economic loss to "Defendants' fraudulent scheme").[15] Thus, Plaintiff has not alleged a deceptive scheme giving rise to a Rule 10b-5(a) or (c) claim.[16]

## CONCLUSION

The Court should dismiss the claims against the Tapestry Defendants with prejudice.

---

[14] For example, courts have found deceptive acts beyond misrepresentations where a party engaged in "sham" transactions and misappropriated investor assets, *SEC v. Cooper*, 142 F. Supp. 3d 302, 316 (D.N.J. 2015), or submitted "false and misleading trade order instructions" and violated "Rule 105 of Regulation M," *SEC v. Mintz*, 723 F. Supp. 3d 386, 407 (D.N.J. 2024).

[15] To the extent Plaintiff argues that Tapestry omitting the term "accessible luxury" in its SEC disclosures "conceal[ed] their knowledge," ¶ 85, this is nonsensical. *See supra* 12 n.11.

[16] Plaintiff argues that the Companies' alleged misstatements caused their loss. D.I. 55 at 29–30. For the reasons set forth in Capri's Opening Brief, D.I. 41 at 29–30, and Reply—including that the stock drop following the court's preliminary injunction was a materialization of a known risk—this argument fails.

15

Dated: October 27, 2025

**Of Counsel:**

Timothy Perla
Sonia Sujanani
WILMER CUTLER PICKERING
  HALE & DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 233-6766
timothy.perla@wilmerhale.com
sonia.sujanani@wilmerhale.com

Jessica Lewis
WILMER CUTLER PICKERING
  HALE & DORR LLP
2600 El Camino Real
Palo Alto, CA 94306
Telephone: (628) 235-1160
jessica.lewis@wilmerhale.com

Respectfully submitted,

*/s/ Thomas A. Uebler*
Thomas A. Uebler (#5074)
Terisa A. Shoremount (#7113)
MCCOLLOM D'EMILIO SMITH
  UEBLER LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808
(302) 468-5960
tuebler@mdsulaw.com
tshoremount@mdsulaw.com